1   STEVEN M. WOODSIDE, COUNTY COUNSEL
    Brian Charles Case SBN 254218
2   3501 Civic Center Drive, Room 275
    San Rafael, CA 94903
3   Tel.: (415) 473-6117, Fax: (415) 473-3796

4
    Attorney(s) for County of Marin (a.k.a. Marin County District Attorney's Office)
5   and Deputy District Attorney Andres H. Perez

6   CHARLES J. MCKEE, COUNTY COUNSEL
    William Merrill Litt SBN 166614
7   168 W Alisal Street, 3rd Floor
    Salinas, CA 93901
8   Tel.: (831) 755-5045, Fax: (831) 755-5283

9   Attorney(s) for County of Monterey (a.k.a. Monterey County District Attorney's Office)
    and Deputy District Attorney John Hubanks
10

11                          UNITED STATES DISTRICT COURT

12                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14
    NATIONWIDE BIWEEKLY                          Case No.: 14-cv-04420-LHK
15  ADMINISTRATION, INC., an Ohio Corporation;
    LOAN PAYMENT ADMINISTRATION LLC, an         (FED. R. CIV. P. 12(b)(5))
16  Ohio limited liability company; and DANIEL S.
    LIPSKY, an individual;
17                          Plaintiffs,          JOINT MEMORNADUM IN
                                                 OPPOSITION TO PLAINTIFFS'
18          v.                                   MOTION FOR PRELIMINARY
                                                 INJUNCTION
19
    JOHN F. HUBANKS, Deputy District Attorney,
20  Monterey County District Attorney's Office, in his   Date:     March 5, 2015
    official capacity; ANDRES H. PEREZ, Deputy          Time:     1:30 p.m.
21  District Attorney, Marin County District Attorney's  Judge:    Hon. Lucy H. Koh
    Office, in his official capacity; MONTEREY          Courtroom 8, 4th Floor
22  COUNTY DISTRICT ATTORNEY'S OFFICE, a     Address: 280 South First Street
    County Agency; and MARIN COUNTY                              San Jose, CA 95113
23  DISTRICT ATTORNEY'S OFFICE, a County
    agency,
24
25                          Defendants.
26
27
28

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND........................................................................................................1

EVIDENTIARY OBJECTIONS TO DECLARATION IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION ...............................................................................................3

ARGUMENT

   I.   PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY THAT
        REQUIRES THAT NATIONWIDE BIWEEKLY MEET A HEAVY BURDEN…...4

   II.  NATIONWIDE BIWEEKLY'S REQUEST FOR A PRELIMINARY INJUNCTION
       SHOULD BE DENIED SINCE IT HAS NOT DEMONSTRATED A
       LIKELIHOOD OF SUCCESS ON ITS CLAIMS ........................................................5

      A.  Because Nationwide Biweekly has Failed to Narrowly Tailor the Injunction
          They seek, Nationwide Biweekly Will Fail to Obtain the Relief Requested ........5

      B.  Nationwide Biweekly's "First Cause of Action" Under Section 1983 Fails
          as A Matter of Law, Therefore Nationwide Biweekely Cannot Demonstrate
          A Likelihood of Success ...............................................................................…6

          1.  Nationwide Biweekly has Not Complained that the Alleged Unconstitutional
             Conduct is the Result of an Official Policy, Pattern or Practice ………………6

          2.  Even if Nationwide Biweekly were to Satisfy *Monell* Pleading Requirements,
             Because the Speech at Issue is "Commercial Speech", Nationwide Biweekly's
             Challenge Fails, as a Matter of Law, to Allege a Free Speech Violation……..9

      C.  Nationwide Biweekly's "Second Cause of Action" under the California
          Constitution Fails as a Matter of Law, Therefore Nationwide Biweekly
          Cannot Demonstrate A Likelihood of Success .......................................................17

      D.  Nationwide Biweekly's Third "Cause of Action" for Declaratory Relief
          Fails to Serve as an Independent Source of Federal Question Jurisdiction ...........18

   III. NATIONWIDE BIWEEKLY FAILS TO DEMONSTRATE IRREPARABLE
       HARM...........................................................................................................................18
      A.  Nationwide Biweekly Does Not Face the Loss of First Amendment Freedoms....18
      B.  Nationwide Biweekly's Alleged Injuries Are Neither Actual Nor Certain………20

   IV. THE RELIEF NATIONWIDE BIWEEKLY REQUESTS WOULD UNDERCUT
       THE PUBLIC INTEREST IN TURE AND FACTUAL DISCLOSURES TO
       CONSUMERS ...........................................................................................................21
CONCLUSION.......................................................................................................................23

## TABLE OF AUTHORITIES

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ...............................................................4, 21
*Azul-Pacifico, Inc. v. City of Los Angeles*
973 F.2d 704 (9th Cir. 1992) ...............................................................6
*Beeman v. Anthem Prescription Mgmt., LLC*
315 P.3d 71 (Ca. 2013) ...............................................................9, 14
*Board of the County Commissioners of Bryan County v. Brown*
520 U.S. 397 (1996) ...............................................................6
*Central Hudson Gas & Elec. v. Public Serv. Comm'n*
447 U.S. 557 (1980)...............................................................12, 22
*City of Canton v. Harris*
489 U.S. 378 (1988)...............................................................6
*Clouthier v. County of Contra Costa*
591 F.3d 1232 (9th Cir. 2010) ...............................................................6
*Elrod v. Burns*
427 U.S. 347 (1976)...............................................................19
*FTC v. Affordable Media, LLC*
179 F.3d 1228 (9th Cir. 1999) ...............................................................21
*Harris Const. Co., Inc. v. Tulare Local Healthcare Dist.*
No. CV F13-1675 LJO SAB, 2013 WL 6576034 (E.D. Cal. Dec. 13,2013)...............18
*Jenkins v. Washington*
No. C11-1376 JCC, 2014 WL 4269446 (W.D. Wash. Aug. 29, 2014) ...............................7
*Jensen v. Quality Loan Service Corp.*
702 F.Supp.2d 1183 (E.D. Cal. 2010)...............................................................18
*Kasky v. Nike, Inc.*
45 P.3d 243 (2002)...............................................................17
*Leoni v. State Bar*
704 P.2d 183 (Cal.1985) ...............................................................17
*Liberty Coins v. Goodman*
748 F.3d 682 (6th Cir. 2014) ...............................................................22
*Los Angeles County v. Humphries*
562 U.S. 29 (2010)...............................................................7
*Madsen v. Women's Health Center, Inc.*
512 U.S. 753 (1994)...............................................................6
*Mbaba v. Indymac Federal Bank F.S.B.,*
No. 1:09-CV-OWW-GSA, 2010 WL 424363 (E.D. Cal. Jan. 27, 2010) ...............................18
*Monell v. Dept. of Soc. Svcs.*
436 U.S. 658 (1978)...............................................................6, 7, 8
*New Kids on the Block v. News Am. Publishing, Inc.,*
971 F.2d 302 (9th Cir. 1992) ...............................................................16

*Planned Parenthood of the Blue Ridge v. Camblos*
    116 F.3d 707 (4th Cir. 1997) ..................................................................................22
*Prigmore v. City of Redding*
    211 Cal.App.4th 1322 (3d Dist.2012)........................................................................5
*Prison Legal News v. Columbia County*
    942 F.Supp.2d 1068  (D.Or.,2013) ............................................................................7
*Safelite Group v. Jepsen*
    764 F.3d 258 (2d Cir. 2014).............................................................................11, 12
*Sammartano v. First District Judicial Court*
    303 F.3d 959 (9th Cir. 2002) ..................................................................................21
*Sorrell v. IMS Health, Inc.*
    131 S.Ct. 2653 (2011)..............................................................................................14
*South/Southwest Ass'n of Realtors, Inc. v. Village of Evergreen Park, IL.*
    109 F.Supp.2d 926 (N.D. Ill. 2000) ........................................................................19
*Thalheimer v. City of San Diego*
    645 F.3d 1109 (9th Cir. 2011) ..................................................................................4
*Toussaint v. McCarthy*
    801 F.2d 1080 (9th Cir. 1986) ..................................................................................5
*U.S. v. Schiff*
    379 F.3d 621 (9th Cir. 2004)  .................................................................................10
*Valencia v. Ryan*
    No. CV 14-1359-PHX-DGC (MEA), 2014 WL 4541482 (D. Ariz. Sept. 12, 2014) .........8
*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)...................................................................................................9
*Winter v. Natural Resources Defense Council*
    555 U.S. 7 (2008).......................................................................................................4
*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*
    471 U.S. 626 (1985).................................................................................9, 10, 11, 12

**RULES & STATUTES**

Business & Professions Code
        Section 14700................................................................................................2, 9
        Section 14701..............................................................................................10, 15
        Section 14702..............................................................................................10, 15
        Section 14703.........................................................................................14, 15, 16
        Section 17200....................................................................................................2
        Section 17500....................................................................................................2

Financial Code section 12000 ................................................................................2

Federal Rules of Civil Procedure 65(d) ..................................................................5

United States Constitution
      Title 42, Section 1983 ...............................................................................................6, 7, 8
      First Amendment ...........................................................................4, 7, 17, 21, 23

Senate Bill 1150 (Cal. 2003-2004) ....................................................................................10

**OTHER**

Arizona Revenue Statute section 44-1799.51 ....................................................................10

Colorado Revenue Statute section 6-1-1001 .....................................................................10

N.Y. Banking Law Section 133 ..........................................................................................10

## OPPOSITION TO MOTION FOR PRELIMINARY INJUCTION

JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County Agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency (the "Defendants") hereby respectfully request that this Court deny the motion for preliminary injunction sought by plaintiffs NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio Corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual (hereafter "Nationwide Biweekly").

Nationwide Biweekly seeks blanket protection from the District Attorney's enforcement of consumer protection laws.

Nationwide Biweekly's request for a preliminary injunction should be denied since it has not demonstrated a likelihood of success on the alleged Constitutional violations, the relief Nationwide Biweekly requests would undercut the public interest in true and factual disclosures to consumers, Nationwide Biweekly fails to demonstrate irreparable harm; and the relief Nationwide Biweekly requests would undercut the public interest in true and factual disclosures to consumers.

## FACTUAL BACKGROUND

Plaintiff Nationwide Biweekly Administration, Inc. ("Nationwide Biweekly") and its affiliates operate loan repayment programs throughout the United States.  According to the pleadings filed by Plaintiffs in this action, "Nationwide is one of the country's largest and most recognized administrators for biweekly loan repayment programs, and is currently helping over 125,000 borrowers across the country, including over 10,000 borrowers in California."  ECF No. 1, at 2:20-22.

Nationwide Biweekly's business model, in a nutshell, is to collect mortgage payments from its client-borrowers biweekly and make mortgage payments to the lender on behalf of the borrowers. Mortgage lenders do not allow borrowers to make biweekly payments; however, because

1

Nationwide Biweekly collects 26 mortgage payments per year instead of 12, Nationwide Biweekly can make one additional mortgage payment per year on behalf of each client-borrower.  This eventually allows the borrower to pay off the loan sooner.

The problem with Nationwide Biweekly's conduct is twofold.  First, the solicitations it mails to borrowers are not in compliance with specific laws designed to protect consumers from being misled into thinking that Nationwide Biweekly is affiliated with the homeowner's mortgage lender; telephonic scripts used by Nationwide Biweekly's customer service representatives reinforce this misconception.  Second, Nationwide Biweekly's written solicitations fail to mention the hefty fee, automatically debited from the borrower's bank account, that the firm charges for its services; moreover, the employees responding to calls from borrowers are carefully trained to obscure the existence or amount of this fee.

In 2013, in response to local consumer complaints and to enforcement actions in other jurisdictions, Deputy District Attorney Andres H. Perez of the Marin County, California, District Attorney's Office and Deputy District Attorney John F. Hubanks of the Monterey County, California, District Attorney's Office began investigating Nationwide Biweekly.

Mr. Perez and Mr. Hubanks determined that Nationwide Biweekly's solicitations violate California Business & Professions Code section 14700 *et seq.*, constitute unfair and deceptive business practices pursuant to Business & Professions Code section 17200 *et seq.*, involve deceptive advertising as defined by Business & Professions Code section 17500 *et seq.*, and may violate other statutes as well, including Financial Code section 12000 *et seq.* ("the Prorater Law").  For approximately a year they communicated with Nationwide Biweekly's attorneys and principal, Mr. Lipsky, attempting to negotiate a resolution that would enable Nationwide Biweekly to continue doing business in California, while protecting California consumers from Nationwide Biweekly's deceptive practices.  They entered into tolling agreements, and made every effort to work cooperatively with Nationwide Biweekly's representatives.

Eventually, Hubanks and Perez determined that their efforts were unlikely to bear fruit, so they resolved to file a civil enforcement action and informed Nationwide Biweekly's counsel of their

2

intentions.  Nationwide Biweekly responded by filing the instant action and motion for preliminary injunction, strategic preemptive strikes in federal court.

## EVIDENTIARY OBJECTIONS TO DECLARATION
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency, respectfully submit the following objections to the "Declaration of Daniel S. Lipsky In Support of Motion for Preliminary Injunction."

| Page and Line: | Objection(s): |
| --- | --- |
| 1:24-2:5 | Hearsay (Federal Rules of Evidence ("FRE") Rules 801-802); Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 2:17-21 | Hearsay (FRE Rules 801-802); Lack of Personal Knowledge (FRE Rule 602). |
| 2:22-24 | Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 3:3-4 | Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 3:8-9 | Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 3:20-22 | Hearsay (FRE Rules 801-802). |
| 3:24-4:8 | Hearsay (FRE Rules 801-802); Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |

3

| 4:12-17 | Hearsay (FRE Rules 801-802); Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 4:19-21 | Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 5:1-5 | Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |
| 5:16-7:2 | Hearsay (FRE Rules 801-802); Lack of Personal Knowledge (FRE Rule 602); Improper Opinion Testimony by Lay Witness (FRE Rule 701). |

## ARGUMENT

### I.  PRELIMINARY INJUNCTION IS AN EXTRAORDINARY REMEDY THAT REQUIRES THAT NATIONWIDE BIWEEKLY MEET A HEAVY BURDEN.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 9 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* If the plaintiff can establish "serious questions" going to the merits, he may obtain preliminary relief only if the balance of hardships tips *sharply* in his favor *and* if an injunction would be in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Ninth Circuit has held that, "[i]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011)(citation omitted).

In the event that the moving party meets its general burden of establishing the elements necessary to obtain injunctive relief, in the context of less protected commercial speech, while mere

4

---

speculation and conjecture will not satisfy this burden; the government must only show "that the harms it recites are real." *Prigmore v. City of Redding*, 211 Cal.App.4th 1322, 1341 (3d Dist. 2012) (*citing Edenfield v. Fane*, 507 U.S. 761, 770–771 (1993)).

## II. NATIONWIDE BIWEEKLY'S REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED SINCE IT HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON ITS CLAIMS.

As set forth in Defendants' Joint Motion to Dismiss, each of Nationwide Biweekly's claims fails as a matter of law. Therefore, Nationwide cannot show a likelihood of success on its claims and is not entitled to the relief it seeks.

### A. Because Nationwide Biweekly Has Failed to Narrowly Tailor the Injunction They Seek, Nationwide Biweekly Will Fail to Obtain the Relief Requested.

In this case, Nationwide Biweekly has requested "injunctive relief, including but not limited to a preliminary injunction and permanent injunction against Defendants prohibiting them from making any threats or taking any action against Nationwide for its use of publicly available information as described above." ECF No. 21, at 9-10.

First, this request does not provide specific terms for the injunction, and only references the complaint, running afoul of the mandates of Fed.R.Civ.P. 65(d). (Under Fed.R.Civ.P. 65(d), "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, *and not by reference to the complaint* or other document, the act or acts sought to be restrained...." [emphasis added])

Second, Nationwide's requested injunction is not narrowly tailored to end the alleged constitutional violation. Nationwide's blanket request to stop the Defendants from "making any threats" or "taking any action" is by no means narrowly tailored. "Injunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation." *Toussaint v. McCarthy,* 801 F.2d 1080, 1086 (9th Cir.1986), *cert. denied,* 481 U.S. 1069 (1987) (citing *Milliken v. Bradley,* 433 U.S. 267, 97 (1977). Nationwide's requested injunction appears to entirely insulate Nationwide from any threat of future consumer protection action, essentially making Nationwide above-the-law so long as it is using "publicly available information."

5

---

Finally, Nationwide's amorphous request for injunctive relief implicates Defendants' First Amendment rights to free speech.  (See Section II(A)(1) of DEFENDANT'S JOINT NOTICE OF MOTION AND MOTION TO STRIKE SECOND AND THIRD CAUSES OF ACTION).  Thus, the requested relief needs to be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs (*See Madsen v. Women's Health Center, Inc.* 512 U.S. 753, 765-766 (1994).  Here, Nationwide's request broadly seeks an injunction precluding Defendants from "making any threats or taking any action against Nationwide for its use of publicly available information."

**B.  Nationwide Biweekly's "First Cause of Action" Under Section 1983 Fails as A Matter of Law, Therefore Nationwide Biweekly Cannot Demonstrate A Likelihood of Success.**

**1.  Nationwide Biweekly has Not Complained that the Alleged Unconstitutional Conduct is the Result of an Official Policy, Pattern, or Practice.**

County of Marin and County of Monterey Defendants (a.k.a. District Attorneys' Offices)

"A municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 691 (1978); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010).  Local governing bodies can be sued directly under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern, or practice.  *Monell*, 436 U.S. at 690.  "[A] municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1988). "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1996); *See also City of Canton*, 489 U.S. at 389 (1988).

The Ninth Circuit in *Azul-Pacifico, Inc. v. City of Los Angeles,* 973 F.2d 704, 705 (9th Cir. 1992), *cert. denied,* 506 U.S. 1081 (1993), held that a "[p]laintiff has no cause of action directly under the United States Constitution.... [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." Here, Nationwide Biweekly causes of action for constitutional violations are asserted under Section 1983 and, therefore, are subject to the requirements of that

6

1   statute.[1]  Because Nationwide Biweekly presents a claim for prospective relief, a fine point of § 1983

2   law becomes relevant: deciding a circuit split in 2010, the Supreme Court held that, "*Monell*'s

3   holding applies to § 1983 claims against municipalities for prospective relief as well as to claims for

4   damages . . . [t]o find the requirement inapplicable where prospective relief is at issue would

5   undermine *Monell*'s logic. For whether an action or omission is a municipality's 'own' has to do with

6   the nature of the action or omission, not with the nature of the relief that is later sought in court."

7   *Los Angeles County v. Humphries*, 562 U.S. 29, 131 S.Ct. 447, 448 (2010).

8          The Supreme Court decision in *Humphries* has subsequently been applied in the first

9   amendment context by other courts.  For example, in *Prison Legal News v. Columbia County*, 942 F.

10  Supp. 2d 1068 (D. Or. 2013), the District Court applied *Humphries* to an action seeking to enjoin the

11  County Jail from restricting all incoming and outgoing inmate personal mail to postcards only,

12  holding that the policy violated the First Amendment.  While the injunction was granted in that case,

13  the decision made it clear that the existence of an actual policy was an important threshold

14  determination: "Whether Defendants had a policy prohibiting magazines or whether Jail staff simply

15  failed to deliver magazines in practice is important in establishing Defendants' liability under 42

16  U.S.C. § 1983. A municipality, such as Columbia County, the CCSO, and Sheriff Dickerson in his

17  official capacity, 'may not be sued under § 1983 for an injury inflicted solely by its employees or

18  agents.' … An 'official-capacity suit is, in all respects other than name, to be treated as a suit against

19  the entity …'." *Id.* at 1088 (citations omitted).

20         Here, Nationwide Biweekly fails to state a valid *Monell* claim against the Counties (sued as

21  the Marin and Monterey County District Attorney's Offices) because it fails to allege that the

22  purported unconstitutional conduct is the result of an official policy, pattern, or practice.  Quite the

23

24  [1] To the extent Nationwide Biweekly asserts causes of action for constitutional violations *directly* under the U.S.
    Constitution; i.e., not under the umbrella of 42 U.S.C. § 1983, Nationwide Biweekly claims fail as a matter of law and
25  therefore it cannot demonstrate a likelihood of success on the merits.  This rule holds true in cases where Nationwide
    Biweekly seeks declaratory or injunctive relief for a violation of the United States Constitution.  *See Jenkins v.*
26  *Washington*, No. C11-1376-JCC, 2014 WL 4269446, at *2-3 (W.D. Wash. Aug. 29, 2014)("recognizing that claims for
    declaratory and injunctive relief against application of state law on constitutional grounds, even though not expressly
27  pleaded under § 1983, are required to be brought under that provision."

28                                                              7

1    opposite, Nationwide Biweekly focuses on the *particular stances* of the two Deputy District

2    Attorneys: "Because the District Attorneys are threatening the unconstitutional application of the

3    Statute against Nationwide for using public information in a truthful, non-misleading manner to offer

4    a valuable service to consumers, and because the District Attorneys refuse to acknowledge that

5    Nationwide's use of lender's names for the purpose of comparing its biweekly program to the typical

6    lender's monthly mortgage repayment plan, and, independently, qualifies as a nominative fair use of

7    the lenders' names, Nationwide now brings this action for declaratory and injunctive relief." ECF

8    No. 1, at 6-7.   As the gravamen of Nationwide Biweekly's claims is an attack on the particular

9    stances of these two Deputy District Attorneys, therefore, Nationwide Biweekly cannot demonstrate

10   a likelihood of success on its claim for declaratory relief under *Monell.* ECF No. 21, at 5.

11   <u>The Individual Deputy District Attorneys in their Official Capacities</u>

12          Moreover, while Nationwide Biweekly could, in theory, maintain a lawsuit against the

13   individual Deputy District Attorneys in their official capacity for prospective injunctive relief under

14   Section 1983, Nationwide Biweekly must, just as with a governmental entity defendant, allege that a

15   policy or custom caused the constitutional injury.   Without such an allegation, Nationwide

16   Biweekly's official capacity claims fail as a matter of law.   *Valencia v. Ryan*, No. CV 14-1359-PHX-

17   DGC (MEA), 2014 WL 4541482 (D. Ariz. Sept. 12, 2014) cites the relevant authority for this point

18   of law:

> 1. Plaintiff may maintain a lawsuit against ADOC employees in their official capacity for prospective injunctive relief. … **However, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."** … A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury.

*Id.* at *5 (citations omitted).

> 2. **Even if Nationwide Biweekly were to Satisfy *Monell* Pleading Requirements, Because the Speech at Issue is "Commercial Speech", Nationwide Biweekly's Challenge Fails, as a Matter of Law, to Allege a Free Speech Violation.**

8

<u>The speech at issue is commercial speech.</u>

Nationwide Biweekly does not dispute that the speech at issue is commercial speech. ECF No. 1, at 1 (Plaintiffs identify statements at issue as "truthful, non-misleading commercial speech"). The Supreme Court defines "commercial speech" as "expression related solely to the economic interests of the speaker and its audience" that does "no more than propose a commercial transaction." *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976).

<u>Nationwide Biweekly fails to state a cognizable claim that the disclosure requirement violates the First Amendment.</u>

Nationwide Biweekly challenges the disclosure requirements set forth in California Business & Professions Code Section 14700 *et seq.* (the "Statute") on free speech grounds. Because the Statute compels disclosure of purely factual, commercial information, it is subject to rational-basis review under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of* Ohio, 471 U.S. 626 (1985). Under that standard, Nationwide Biweekly cannot demonstrate a likelihood of success on the merits of its claims because the Statute does not violate its First Amendment rights as a matter of law.

Although commercial speech is protected speech, the Supreme Court has recognized that a state regulation that requires disclosures that target misleading or deceptive commercial speech must only be "reasonably related to the State's interest in preventing deception of consumers." *See Zauderer,* 471 U.S. at 651. The California Supreme Court has also applied this standard. In *Beeman v. Anthem Prescription Mgmt., LLC,* 315 P.3d 71 (Cal. 2013), the court found that "[l]aws requiring a commercial speaker to make purely factual disclosures related to its business affairs, whether to prevent deception or simply to promote informational transparency, have a 'purpose ... consistent with the reasons for according constitutional protection to commercial speech.'" *Id.* at 89 (citations omitted). The court therefore held that "[b]ecause such laws facilitate rather than impede the 'free flow of commercial information'… they do not warrant intermediate scrutiny" and "[i]nstead , we hold that rational basis review is the proper standard for evaluating such laws under California's free speech clause." *Id.* Therefore, the *Zauderer* rational-basis review is the controlling standard in this

9

case.  *See also U.S. v. Schiff*, 379 F.3d 621, 630-31 (9th Cir. 2004) (holding that the government could compel website operator to post factual information about potential criminal liability if patrons used website to evade taxes).

Here, the Statutes require solicitations that include the name of a lender or the consumer's loan number to disclose that the entity is "not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender" and, if the loan number is referenced, the solicitation must also disclose that the "consumer's loan information was not provided to that person by that lender."  CAL. BUS. & PROF. CODE § 14701-14702 (West 2014).  The Statutes further provide that this information must be made in "close proximity to … the first and most prominent use" of the information, "including on an envelope or through the envelope window."  *Id.*

The Statutes' legislative history shows that the purpose of these disclosure requirements is to prevent deceptive mailings and to ensure that it is clear to consumers that entities, such as Nationwide Biweekly, were not associated with or affiliated with consumers' the mortgage lenders.[2] *See* Sen. Jud. Com., Analysis of Sen. Bill No. 1150 (2003-2004 Reg. Sess.) April 21, 2014, pages 1-8 at *Exhibit B to Defendants' Joint Request for Judicial Notice*.  The Statutes do not restrict Nationwide Biweekly's commercial speech and require minimal, specific disclosures to ensure consumers are fully informed.

Here, Nationwide Biweekly could avoid the disclosure requirements set forth in the Statutes by removing the specific references to the lender's name, loan number or specific loan amount. However, if Nationwide Biweekly chooses to reference the specifics of the consumer's lender and loan information, then the Statute's requirements are triggered.  The disclosure requirements here merely require additional language in the solicitation *if*  Nationwide Biweekly chooses to reference

---

[2] Nationwide Biweekly points out in its Motion that Senate Bill ("SB") 1150 was sponsored by the banking industry. This does not diminish the need for this legislation.  The basis for SB 1150, as set forth in the legislative history, is the increase in the number of complaints by consumers who were confused by solicitations and advertisements using their lender's name, loan number or loan amount.  *See* Sen. Jud. Com., Analysis of Sen. Bill No. 1150 (2003-2004 Reg. Sess.) April 21, 2014, pages 1-8 at *Exhibit B to Defendants' Joint Request for Judicial Notice*.  Further, California is not the only jurisdiction to enact such a law.  Several other jurisdictions have enacted similar laws in an attempt to curtail consumer confusion.  *See, e.g.,* N.Y. BANKING LAW § 133; ARIZ. REV. STAT. § 44-1799.51; COLO. REV. STAT. § 6-1-1001.

1   those specific items.  Therefore, the disclosure requirements facilitate, rather than impede, the free

2   flow of commercial information.  Nationwide Biweekly argues that being required to state that the

3   lender does not "authorize" the solicitation is "controversial" and suggests that the offer is

4   "untoward or perhaps even illegal" and bases this on the definition of "unauthorized."  ECF No. 5, at

5   13. But the Statutes do not require it to say that it is an "unauthorized solicitation."  The Statutes

6   require that it indicate that the lender has not authorized the solicitation.  This is a factual disclosure

7   that will communicate to consumers that the solicitation is not being sent at the request of the lender.

8   Accordingly, because the disclosure requirements are reasonably related to the State's interest in

9   ensuring that solicitations are not deceptive or misleading, they do not violate the Federal or State

10  Constitutions as a matter of law.

11          Nationwide Biweekly attempts to assert that the *Zauderer* rational-basis standard does not

12  apply by arguing that the *Zauderer* standard only applies when the disclosure requirement is related

13  to the *Plaintiffs' product or services* and that the Statutes here  "protects lenders from even being

14  mentioned in competitive advertising." But, Nationwide Biweekly fails to make a true distinction.

15  ECF No. 5, at 8.  The case cited by Nationwide Biweekly for this purported proposition is *Safelite*

16  *Group v. Jepsen*, 764 F.3d 258 (2d Cir. 2014).  However, the disclosure requirements set forth in

17  *Safelite* are not factually similar to the disclosure requirements here.  Safelite operated an insurance

18  claims management company and had an affiliate, Safelite Autoglass in Connecticut that repaired

19  and replaced auto-glass.  When car owners made claims concerning auto-glass issues, Safelite

20  would, when practicable, recommend the use of Safelite AutoGlass to do the repair.  If a Safelite

21  AutoGlass facility was not available, Safelite would then recommend a shop on a list of seventy non-

22  affiliated places.  Safelite would inform consumers of its affiliation with Safelite AutoGlass.  In

23  response to this business model, Connecticut General Assembly passed PA13-67 which provided

24  that Safelite could not mention its affiliate without also naming a competitor.  The legislative history

25  of PA 13-67 showed no consumer dissatisfaction with Safelite's business model but instead the

26  legislators stated that PA 13-67 was needed to protect local glass dealers not affiliated with Safelite.

27  *Id.* at 260.  In *Safelite*, the Second Circuit held that the *Zauderer* standard did not apply and reasoned

28                                              11

that "[p]rohibiting a business from promoting its own product on the condition that it also promote the product of a competitor is a very serious deterrent to commercial speech." *Id.*

Here, on the contrary, the Statutes at issue in this case require that Nationwide Biweekly state that *their* company is not affiliated with the lender and that Nationwide Biweekly's solicitation is not authorized by the lender. These are disclosures about Nationwide Biweekly's services and products and Nationwide Biweekly's associations. This type of disclosure is exactly the type that falls within the *Zauderer* standard. There is no requirement that Nationwide Biweekly provide any information about the lender or a lender's practices, and does not prevent Nationwide Biweekly from mentioning the lenders. Nationwide Biweekly could choose to take out all references to the lender and loan number and still be able to promote its own business. Further, in *Safelite*, there was no evidence that there were consumer complaints that demonstrated confusion about business affiliations, whereas here, that is precisely such evidence of confusion. Unlike the facts in *Safelite*, there have been numerous complaints filed against Nationwide Biweekly, taking issue with their business practices. And, some of these complaints specifically take issue with how Nationwide Biweekly gives the appearance they are affiliated with the homeowner's mortgage company. *See Declaration of John F. Hubanks* at ¶¶ 5, 13-16.

Even if Nationwide Biweekly succeeded in establishing that intermediate scrutiny applies in this case (which it cannot), it still cannot show a likelihood of success on the merits because the statutes at issue pass muster under the test set forth in *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557 (1980).

        1.  <u>Nationwide Biweekly's Speech Is Misleading.</u>

In its Motion, Nationwide Biweekly claims that its solicitations and letters are not misleading or untruthful. As an initial matter, Nationwide Biweekly has only cited to those solicitations that appear to have been sent to consumers in 2012. ECF No. 6. Nationwide Biweekly and the District Attorneys have a tolling agreement in place that makes solicitations and marketing materials several years back relevant to any prospective case. *See Declaration of John F. Hubanks* at ¶8. A sampling of those solicitations and marketing materials show that the statements regarding

12

affiliation on the envelope and letters were not always included.  *See Declaration of John F. Hubanks* at ¶12.  Also the numerous complaints from consumers related to Nationwide Biweekly's solicitations are further evidence that the solicitations and marketing of Nationwide Biweekly is misleading to consumers.  *See Declaration of John F. Hubanks* at ¶¶ 5, 14.  Specifically, one California resident succinctly states the issue: "Since I still thought they were affiliated to my mortgage company, I assumed no fees were involved and cooperated with them."  *See Declaration of John F. Hubanks* at ¶ 16.

2.  <u>The State Has A Substantial Interest And The Disclosure Requirements Are Not Extensive</u>.

In its Motion, Nationwide Biweekly does not dispute that there is a government interest in preventing consumer deception.  Instead, Nationwide Biweekly argues that there were only a "few purported complaints" and they were likely by individuals who did not read the solicitations, that any reasonable consumer would understand, and that requiring disclosures would "hamstring" its "efforts to compare its services" and would only advance "limiting consumer choice".  ECF No. 5, at 11.  But these are all just conclusory statements that have no factual basis.

First, there have been more than just a "few purported complaints" as asserted by Nationwide Biweekly.  And this is not the only jurisdiction that has complaints related to Nationwide Biweekly's practices.  *See Declaration of John F. Hubanks* at ¶6 and 9.  This is a nationwide issue that several jurisdictions have been addressing based on numerous consumer complaints.  Second, the disclosure that is on the solicitation itself (i.e. not on the envelope) is at the bottom of the page.  Whereas, the lender's name is prominently displayed in the envelope window and at the top of the letter with the consumer's loan number. The lender's name and loan number are what are immediately noticeable and recognized by the consumer, which understandably leads to confusion and misplaced trust.  Further, past solicitations, within the relevant statute of limitations period for any enforcement action, failed to contain disclosures on the envelope.  *See Declaration of John F. Hubanks* at ¶12.  Therefore, looking at the actual evidence in the case it is not merely

13

1   "speculation and conjecture", as Nationwide Biweekly claims, that shows that the solicitations are

2   misleading to consumers.

3         Further, the Statutes at issue do not restrict free speech.  Nationwide Biweekly cites to

4   *Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653 (2011) as instructive.  It is not.  In *Sorrell*, speech was

5   prohibited if it contained specific content.  Specifically, the law at issue restricted the sale,

6   disclosure, and use of records that revealed the prescribing practices of individual doctors.  *Id.* at

7   2656.  This is a restriction on speech that has been routinely found to be subject to heightened

8   scrutiny.  *See Beeman v. Anthem Prescription Mgmt., LLC*, 58 P.3d 71, 87 (Cal. 2013) (citing to

9   *Sorrell* as an example and stating "we observe that the intermediate scrutiny standard for commercial

10  speech arose in the context of *restrictions* on truthful, nonmisleading statements about products and

11  services, and the high court has consistently applied intermediate scrutiny to *prohibitions* on such

12  speech used for marketing or advertising").

13        Here, there is not a *restriction* on commercial speech.  Nationwide Biweekly is not prevented

14  from lawfully comparing its services to the lenders, in fact that is expressly permitted in Business &

15  Professions Code Section 14703.  Nationwide Biweekly is merely required to include disclosures *if*

16  it references the lender's name, loan number or loan amount.  The Statutes are narrowly tailored to

17  alleviate consumer confusion and deception, without impeding speech[3].  Accordingly, even if the

18  Court were to apply intermediate scrutiny to the Statutes, Nationwide Biweekly cannot demonstrate

19  a likelihood of success on the merits.

20  <u>The disclosure requirements are not unduly burdensome.</u>

21        Nationwide Biweekly also argues that the disclosure requirements are "unduly burdensome"

22  because the Statutes *may* require up to four separate disclosures and because this would apparently

23  be difficult because the solicitations are only one or two pages.  Again, these statements are

24  completely conclusory.  Nationwide Biweekly already has two disclosures on its most recent

25

26  [3] Nationwide Biweekly also argues in its Motion, that it is improper to restrict its use of publically available information.
    ECF No. 5, at 16. Again, as stated throughout this Opposition, the Statutes are not restricting commercial speech or the

27  use of publically available information. This is merely a disclosure requirement to prevent consumer deception.

28  14

---

*Nationwide Biweekly v. John F. Hubanks, et al.*,               Case No. 5:14-CV-4420-LHK
Joint Memorandum In Opposition to
Motion for Preliminary Injunction

1   solicitations, one on the envelope, and one at the bottom of the first page.  The Statutes would

2   merely require that these disclosures be made in compliance with the Statutes and placed in the

3   appropriate area on the solicitation.  Nationwide Biweekly cites correctly that "Courts have found

4   disclosures to be unduly burdensome when the detail required by the disclosure statute 'effectively

5   rules out' utilizing the commercial speech."  ECF No. 5, at 14.  Nothing in Nationwide Biweekly's

6   conclusory statements suggest that it would be completely prohibited from utilizing the commercial

7   speech, i.e. its solicitations.

8   <u>The solicitations are not excepted from the disclosure requirements as a matter of law.</u>

9           Nationwide Biweekly sets forth in its Motion that its solicitation falls under the exception set

10  forth in Business & Professions Code Section 14703.  It is mistaken.

11          Section 14703 provides that a disclosure is not required if use of the lender's name "is

12  *exclusively* part of a comparison of like services or products in which the person clearly and

13  conspicuously identifies itself or that otherwise constitutes nominative fair use."  CAL. BUS. & PROF.

14  CODE § 14703.   Here, Nationwide Biweekly's use of the lender's name is not *exclusively* part of a

15  comparison.  Although a comparison chart may be provided in some of Nationwide Biweekly's

16  solicitations, the lender's name is also shown in the envelope window and within the solicitation,

17  separate from the comparison.  Further, the comparison does not clearly identify that one column is

18  for the current lender's payments versus Nationwide Biweekly's product or service.  Instead it

19  merely references the comparison as the "Current Monthly Payment" versus "new BIWEEKLY

20  option."  This is not a comparison that would fall under the exception set forth in Section 14703.

21  Further, Section 14703 is only an exemption for Section 14701, and does not apply to the use of the

22  consumer's loan number or loan amount, which is governed by Section 14702.

23          Second, the nominative fair use doctrine is inapplicable.  Nominative fair use is a defense

24  that may be utilized in trademark infringement cases.  *See New Kids on the Block v. News Am.*

25  *Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).  Here, Nationwide is violating state laws that, as

26  explained above, do not impinge on free speech.  Nationwide Biweekly cites no authority for its

27

28                                                  15

---

*Nationwide Biweekly v. John F. Hubanks, et al.*,                    Case No. 5:14-CV-4420-LHK
Joint Memorandum In Opposition to
Motion for Preliminary Injunction

attempt to invoke the fair use doctrine in this novel and unprecedented context. Even if the Court were to consider this argument, it does not qualify as nominative fair use.

       1.  <u>Nationwide Biweekly's Product And Services Are Readily Identifiable Without Use of the Lender's Name, Loan Number, Or Loan Amount</u>.

In its Motion, Nationwide Biweekly argues that it "relies on its ability to refer to specific lenders to inform recipients of the [solicitation] that they are specifically eligible for the biweekly program." ECF No. 5, at 19. This does not satisfy the nominative fair use test. It requires that the product or services not be readily identifiable *without* the use. Nationwide Biweekly has not provided any argument that its services would not be identifiable without the information, but merely that it may be helpful to consumers. In fact, it is clear that the solicitation could leave out reference to the lender's name, loan number and loan amount and still be clear to consumers who Nationwide Biweekly is and the services they offer. Further, Section 14703 allows for a comparison if used exclusively, therefore, Plaintiffs could arguably do a comparison and use the specific lender name to show the consumer this information without having the lender's name and information in the envelope window and without having the information on the top of the solicitation.

       2.  <u>Nationwide Biweekly's Solicitations Mislead Consumers.</u>

To satisfy nominative fair use, Nationwide Biweekly must show that use of the lender's name would not suggest sponsorship or endorsement. Nationwide Biweekly cannot meet this test. First, the solicitation has "[your lender] loan" showing through the envelope window. Although starting in 2012, Nationwide Biweekly included on their envelopes the statement "Nationwide Biweekly Administration is not affiliated with the lender", this disclosure is to the bottom side of the envelope, in bold and larger font the envelope provides "**Mortgage Payment Information Enclosed**" and the lender's name is directly below that statement. ECF No. 6, Ex. B. Further, envelopes *before* 2012, and relevant to any litigation by the Defendants, did not contain such a disclosure. *See Declaration of John F. Hubanks* at ¶ 12. Therefore, there was no indication on the envelopes initially that this solicitation was not from the lender.

16

1
2
3
4
5
6
7

Further, once the envelope is opened, the solicitation has the lender's name at the top, directly above the consumer's name and information.  Although there is a statement at the bottom that Nationwide Biweekly is not affiliated with the lender, there is still a *suggestion* by the use of the lender's name at the top that this solicitation is in some way endorsed by the lender.  The nominative fair use doctrine standard is clear that the use of such trademark must do *nothing* to suggest sponsorship or endorsement.  For these reasons, if this Court were to consider the nominative fair use argument, Nationwide Biweekly cannot show a likelihood of success on that defense.

8
9
10

**C.    Nationwide Biweekly's "Second Cause of Action" under the California Constitution Fails As A Matter of Law,  Therefore Nationwide Biweekly Cannot Demonstrate A Likelihood of Success.**

11
12
13
14
15
16
17

In determining what constitutes commercial speech, the California Supreme Court has not articulated a separate test but instead has used the same standard set forth by the United States Supreme Court.  *See Kasky v. Nike, Inc.*, 45 P.3d 243, 27 Cal.4th 939, 969 (Cal. 2002) (applying the federal test for commercial speech and finding that there is "no need to articular a separate test for commercial speech under the state Constitution").  Here, the speech at issue consists of Nationwide Biweekly's solicitations to consumers related to a service that Nationwide Biweekly provides.  This is classic commercial speech under both the federal and California Constitutions.

18
19
20
21

Moreover, the Supreme Court of California has held that, in the context of evaluating the propriety of restrictions on commercial speech, "[it is appropriate to] base the analysis [of the merits of the claim itself] equally on [the California Constitution], although throughout this opinion we will refer to the First Amendment to the United States Constitution…."  *Leoni v. State Bar*, 704 P.2d 183, 39 Cal.3d 609, 614 fn. 2 (Cal. 1985).

22
23
24

Thus, as the scope of protections of commercial speech under both Constitutions is identical, because there is no cognizable First Amendment violation in this case as a matter of law (as explained in Section II(B)(2), above), there cannot be a violation of the California Constitution.

25
26
27

**D.    Nationwide Biweekly's Third Cause of Action for Declaratory Relief Fails to Serve as an Independent Source of Federal Question Jurisdiction.**

28

17

Declded ve Relief, Where Relief Requested Involves a Remedy for a *Federal Claim*

As set forth above, Nationwide Biweekly fails to establish a viable federal claim against any defendant in this case.  Thus, while Nationwide Biweekly's complaint identifies a cause of action for "declaratory relief" (ECF  No. 1, at 8), that cause of action cannot serve as an independent source of federal question jurisdiction.  *See Harris Const. Co., Inc. v. Tulare Local Healthcare Dist.*, No. CV F13-1675 LJO SAB, 2013 WL 6576034, at *3 (E.D. Cal. Dec. 13, 2013)(finding "The injunctive and declaratory relief claims are derivative of a viable federal question claim [under the First Amendment] and not an independent source of federal question jurisdiction"). A "request for injunctive relief by itself does not state a cause of action and is properly raised as a separate motion." *Mbaba v. Indymac Federal Bank F.S.B.,* No. 1:09-CV-OWW-GSA, 2010 WL 424363, at *4 (E.D. Cal. Jan. 27, 2010) (citing *Shamsian v. Atl. Richfield Co.,* 107 Cal.App.4th 967, 984–85 (2d Dist. 2003). "An injunction is a remedy, not a separate claim or cause of action. A pleading can ... request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Service Corp.,* 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).

Declaratory Relief, Where Relief Requested Involves a Remedy for a State Law Claim

To the extent Nationwide Biweekly's "Third Cause of Action" for "Declaratory Relief" asks this Court to remedy a state law controversy (whether under the California Constitution, or the California Business and Professions Code), any viable state law cause of action to support such a remedy would not serve as an independent source of federal question jurisdiction.

Therefore, in sum, Nationwide Biweekly's motion for a preliminary injunction on its declaratory relief claim should be denied because Nationwide Biweekly has failed to demonstrate that it has a likelihood of success on the merits.

## III. NATIONWIDE BIWEEKLY FAILS TO DEMONSTRATE IRREPARABLE HARM

### A.  Nationwide Biweekly Does Not Face The Loss of First Amendment Freedoms

18

1   "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably

2   constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

3   Citing the above quote from *Elrod v. Burns*, the Court of Appeals has held that, "Although

4   the Supreme Court made this statement in the context of restrictions on core political speech, the

5   epitome of First Amendment values, the principal applies to regulation of commercial speech as

6   well." *South/Southwest Ass'n of Realtors, Inc. v. Village of Evergreen Park, IL.*  109 F. Supp. 2d

7   926, 929 -930 (N.D. Ill. 2000) (citation omitted).  Indeed, even in the less protected category of

8   commercial speech, the loss or threatened loss of any First Amendment freedoms appears to give

9   rise to a finding of "irreparable harm," as a matter of law.

10   Thus, the irreparable harm inquiry hinges on whether or not there is any loss of First

11   Amendment freedoms.

12   In this case there is no constitutional violation (for reasons set forth above), and therefore no

13   "irreparable harm," as a matter of law.  While Nationwide Biweekly and other similarly situated

14   companies must comply with the Business and Professions Code in the absence of a preliminary

15   injunction, the burden of complying with disclosure requirements when mailing solicitations to

16   homeowners does not rise to the level of a constitutional violation.

17   Because Nationwide Biweekly has not lost and has not been threatened with losing any First

18   Amendment freedoms, there is no "irreparable harm" in this case.

19   **B.  Nationwide Biweekly's Alleged Injuries Are Neither Actual Nor Certain.**

20

21   While Mr. Lipsky has taken the position that a civil enforcement action "could destroy [their]

22   entire business," the specific facts underlying that position are not convincing.  ECF No. 6, at 5.

23   Specifically, Mr. Lipsky alleges that four harms could result from the filing of a civil enforcement

24   action: (1) Nationwide will experience an immediate rate-cut with the Better Business Bureau, losing

25   their "A+ Rating"; (2) an enforcement action would "jeopardize" Nationwide's banking

26   relationships; (3) the action would trigger reporting requirements in other States, and "may result" in

27   suspension/revocation in those states, based on the allegations alone; and (4) because customers

28

19

"trust government regulators" refunds may be demanded. ECF No. 6 at ¶¶ 14-15. These projections are highly speculative and attenuated.  Moreover, the only evidence proffered to support the anticipated consequences is Mr. Lipsky's declaration.  Unless Mr. Lipsky or his companies have, indeed, been subjected to a previous California civil enforcement action, he lacks personal knowledge regarding the effects of such an action.  On this topic the declaration is nothing more than conjecture and hearsay.

Further, although government actions are factored into the grades set forth by the Better Business Bureau, under their grading system, "government action" can only result in a maximum point reduction of 30 points. *See Exhibit A to Defendant's Joint Request for Judicial Notice In Support of Opposition to Motion for Preliminary Injunction and In Support of Motion to Dismiss*. It states that "government actions against the business that relate to its marketplace activities and, *in BBB's opinion*, raise questions about the business' ethics or its reliability in providing products/services." *Id.*  In other words, a point reduction for "government action" is not automatic under this system. Accordingly, such harm is purely speculative.  Numerous other government actions have already been taken against Nationwide Biweekly in other jurisdictions.  Moreover, Nationwide Biweekly has already entered into Consent Orders with government enforcement agencies, for admitted advertising violations. These include a 2010 Stipulation to settle a Ohio action, a 2011 Consent Order to settle a New Hampshire action, a 2012 consent Order to settle a Georgia action, and a 2013 Consent Order to settle a Washington Action.  In the Georgia Consent Order, Nationwide Biweekly stipulated that "Nationwide conducted unlicensed money transmitter activity … Nationwide has also failed to ensure its advertisements comply with RSA 384:67 … Nationwide does not deny the facts, statements, or violations contained herein and Nationwide hereby agrees to the entry of this Consent Order." *See Declaration of John F. Hubanks* at ¶¶ 6 and 9, citing *Attachments C, D, E, and G.*

Therefore, Nationwide Biweekly's position that this particular government action "could destroy [their] entire business" is unsupported by their recent history as a business.  Actions have been brought, they have settled, and Nationwide Biweekly has continued operating.  Moreover, Nationwide Biweekly has, in the past, *expressly admitted an advertising violation* in the Georgia

20

1    Consent Order, making their public record of compliance with consumer protection laws less than

2    untarnished at this point in time.

3    **IV. THE RELIEF NATIONWIDE BIWEEKLY REQUESTS WOULD UNDERCUT THE
     PUBLIC INTEREST IN TRUE AND FACTUAL DISCLOSURES TO CONSUMERS.**

4

5        "[W]hen a district court balances the hardships of the public interest against a private

6    interest, the public interest should receive greater weight." *FTC v. Affordable Media, LLC*, 179 F.3d

7    1228, 1236 (9th Cir. 1999). Further, "[t]he public interest in maintaining a free exchange of ideas,

8    though great, has in some cases been found to be overcome by a strong showing of other competing

9    public interests, especially where the First Amendment activities of the public are only limited,

10   rather than entirely eliminated." *Sammartano v. First District Judicial Court*, 303 F.3d 959, 974 (9th

11   Cir. 2002).  Here, this case involves a corporate disclosure requirement that does not go to core free

12   speech concerns. Nationwide Biweekly can continue to make any necessary statements regarding its

13   products and services in its solicitations, with the required disclosures. Thus, the First Amendment

14   implications are "limited." *Id*. And therefore, by definition, the balance of hardships does not tip

15   "sharply" in Nationwide Biweekly's favor, which means an injunction may not issue. *Cottrell*, 632

16   F.3d at 1135.

17       Indeed, the public interest is harmed when a law duly enacted by the elected representatives

18   of the people is prevented from being implemented, absent a showing by the plaintiff of a

19   "substantial" likelihood of success on the merits. *Planned Parenthood of the Blue Ridge v. Camblos*,

20   116 F.3d 707, 721 (4th Cir. 1997). To delay enforcement of the measure at this point would be to

21   disrupt the status quo, not to maintain it. *Id*. ("In this context, the status quo is that which the People

22   have wrought . . .").

23       Further, the consumer protection laws at issue in this case constitute a valid exercise of the

24   State's police power, and this factor weighs in favor of denying the preliminary injunction.

25       This case is analogous to *Liberty Coins v. Goodman*, 748 F.3d 682 (6th Cir. 2014), where the

26

27

28
                                                    21

---

1   Court of Appeals examined the public interests at stake when reversing the trial court's issuance of a

2   preliminary injunction that had enjoined Ohio government officials from enforcing the Ohio

3   Precious Metals Dealers Act.  The First Amendment issue in that case centered around the fact that

4   under the Ohio regulations, one holding themselves out as a precious metal dealer (i.e. through

5   signage, business cards, newspaper ads, etc.) must acquire a license, or be in violation of the law.  In

6   *Liberty Coins*, the Court held, "If the government has a legitimate, and even compelling or

7   substantial, interest in regulating precious metals dealers to protect the public from theft, fraud,

8   money laundering, fencing, and even terrorism, as Nationwide Biweekly concedes, then the absence

9   of such a regulation could cause substantial harm to others. Although the district court found that

10  Defendants presented insufficient evidence to demonstrate a proper 'fit' between the [Ohio]

11  licensing requirement and the governmental interest, as required under *Central Hudson,* such a fit

12  need not be demonstrated under rational basis review. In the instant case, where it is reasonable for

13  the Ohio legislature to have concluded that businesses dealing in potentially substantial quantities of

14  precious metals are likely to move stolen items through the marketplace, the absence of such a

15  licensing scheme could result in substantial harm to others." *Id* at 698.

16          In this case, much like the regulatory scheme in *Liberty Coins*, laws were passed to protect

17  citizens from engaging in transactions that could potentially result in significant financial harm.  The

18  harm in this case is not trivial, it is significant.  Nationwide Biweekly charges a "deferred fee," six

19  months down the road, for an amount that equals *one-half* of the homeowner's normal monthly

20  mortgage payment.  This is a significant sum of money to be unexpectedly charged.  Thus, there is a

21  real, concrete threat of financial hardship arising from misplaced trust in these solicitations.  See

22  *Declaration of John F. Hubanks* at ¶¶ 13-16, citing *Exhibit J.*

23                                      **CONCLUSION**

24          This case presents numerous issues of jurisdiction and law.  At the bottom, however, it is a

25  case of a corporation seeking to enjoin the enforcement of important consumer protection legislation

26  that will survive First Amendment scrutiny.  The laws at issue simply require that a business like

27

28                                          22

1  Nationwide Biweekly to make specified efforts to safeguard against giving the false impression that

2  they are affiliated with the trusted name of a homeowner's lender.

3          While Mr. Lipsky has taken the position that a civil enforcement action "could destroy [their]

4  entire business," the specific facts underlying that position are not convincing. A significant public

5  interest is at stake here: Nationwide Biweekly charges a "deferred fee" 6 months into providing

6  services that is the equivalent of *half of a homeowner's normal mortgage payment*.  This hefty fee

7  should not be the result of Nationwide Biweekly failing to comply with laws that protect against

8  such misplaced trust.

9          Nationwide Biweekly's request for a preliminary injunction should be denied since it has not

10  demonstrated a likelihood of success on the alleged Constitutional violations, the relief Nationwide

11  Biweekly requests would undercut the public interest in true and factual disclosures to consumers,

12  Nationwide Biweekly fails to demonstrate irreparable harm; and the relief Nationwide Biweekly

13  requests would undercut the public interest in true and factual disclosures to consumers.

14  Dated:  December 30, 2014.          CHARLES J. McKEE, COUNTY COUNSEL

15

16                                          By:    */s/  William Litt*
                                                   WILLIAM M. LITT
17                                                 Deputy County Counsel
                                                   Attorneys for Defendants JOHN F. HUBANKS
18                                                 and  the COUNTY OF MONTEREY

19  Dated:  December 30, 2014.          STEVEN M. WOODSIDE, COUNTY COUNSEL

20

21                                          By:    */s/  Brian Case*
                                                   BRIAN C. CASE
22                                                 Deputy County Counsel
                                                   Attorneys for Defendants Andres H. Perez and
23                                                 the COUNTY OF MARIN

24

25

26

27

28                                          23