1  CHARLES J. MCKEE, COUNTY COUNSEL
   William Merrill Litt SBN 166614
2  168 W Alisal Street, 3rd Floor
   Salinas, CA 93901
3  Tel.: (831) 755-5045, Fax: (831) 755-5283

4  Attorney(s) for County of Monterey (a.k.a. Monterey County District Attorney's Office)
   and Deputy District Attorney John Hubanks
5
   STEVEN M. WOODSIDE, COUNTY COUNSEL
6  Brian Charles Case SBN 254218
   3501 Civic Center Drive, Room 275
7  San Rafael, CA 94903
   Tel.: (415) 473-6117, Fax: (415) 473-3796
8  Attorney(s) for County of Marin (a.k.a. Marin County District Attorney's Office)
   and Deputy District Attorney Andres H. Perez
9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                             SAN JOSE DIVISION

13

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency,<br><br>Defendants. | Case No: 5:14-CV-04420-LHK<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO STRIKE SECOND AND THIRD CAUSES OF ACTION OF PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>[Cal. Civ. Proc. Code § 425.16]<br><br>Hearing Date:   March 5, 2015<br>Hearing Time:   1:30 p.m.<br>Judge:          Hon. Lucy H. Koh<br>Courtroom:      Courtroom 8, 4th Floor<br>Address:        280 South First Street,<br>                San Jose, CA 95113 |

# TABLE OF CONTENTS

ARGUMENT ..........................................................................................................................2

   I.   INTRODUCTION AND STATEMENT OF FACT …………………………………2

   II.  POINTS AND AUTHORITIES……………………………………………………..4

       A. Plaintiff's Second and Third Causes of Action Constitute a Strategic
          Lawsuit Against Public Participation and Should be Stricken Pursuant to
          California's Anti-SLAPP Statute, Code of Civil Procedure  Section 425.16..........4
            1.  Anti-SLAPP ……………………………………………………………….4
            2.  California's Anti-SLAPP Statute Applies in Federal Court………..............9
            3.  Plaintiffs Cannot Establish A Probability of Prevailing on the Merits.........9

                i.   The Applicable Standard……………………………………………9

                ii.  Plaintiffs Are Unlikely to Prevail Because They Failed to Join
                    the State of California, A Party "Necessary to the Action"
                    Under Federal Rule 19(A)…………………………………………..9

                iii. Plaintiffs Are Unlikely to Prevail Because the Counties are
                    improper parties to this action………………………………………..10

                iv. Plaintiffs Are Unlikely to Prevail Because, Under the
                    "Prudential Ripeness Doctrine," the Factors Militate In Favor
                    of Delaying A Decision on the Merits…………………………............10

                v.  Plaintiffs are Unlikely to Prevail Because the Pullman
                    Abstention Doctrine Counsels this Court to Decline to Act
                    When All Relevant Issues May Be Resolved in a State
                    Court Proceeding…………………………………………………............10

                vi. Plaintiffs Are Unlikely to Prevail Because the Speech and
                    Conduct in Which They Are Engaging is Deceptive and
                    Violates Valid California Statutes…………………………….………11

            4.  Plaintiffs Are Unlikely to Succeed On the Merits and their
                Transparent Motives for Filing this Action Exemplify Strategic
                Litigation Against Public Participation…………………………………...12

   I.   CONCLUSION……………………………………………………………...................12

# TABLE OF AUTHORITIES

*Bradbury v. Superior Court*
  49 Cal.App.4th 1108 (2d Dist. Cal. 1996)......................................................................5,7
*Central Hudson Gas & Electric Corp. v. Public Service Comm'n*
  447 U.S. 557 (1980).........................................................................................................11
*City of Colton v. Singletary*
  206 Cal. App. 4th 751 (4th Dist. Cal. 2012)....................................................................7
*City of Costa Mesa v. D'Alessio Investments, LLC*
  214 Cal. App. 4th 358 (4th Dist. Cal. 2013)....................................................................5
*CKE Restaurants, Inc. v. Moore*
  159 Cal. App. 4th 262 (2d Dist. Cal. 2008).....................................................................8
*Equilon Enterprises v. Consumer Cause, Inc.*
  52 P.3d 685, 29 Cal. 4th 53 (Cal. 2002) ..................................................................5, 7, 8
*Fleming v. City of Oceanside*
  No. 10cv1090–LAB (BLM), 2011 WL 197586 (S.D. Cal. Jan. 19, 2011).....................6
*Gilbert v. Sykes*
  147 Cal. App. 4th 13 (3d Dist. Cal. 2007) .......................................................................4
*Kasky v. Nike, Inc.,*
  45 P.3d 243 (Cal. 2002) .................................................................................................11
*Keimer v. Buena Vista Books, Inc.*
  75 Cal. App. 4th 1220 (1st Dist. Cal. 1999) ..................................................................11
*Manufactured Home Communities, Inc. v. County of San Diego*
  655 F.3d 1171 (9th Cir. 2011) .........................................................................................9
*Maranatha Corrections, LLC v. Dept. of Corrections & Rehabilitation*
  158 Cal.App.4th 1075 (3d Dist. Cal. 2008) .................................................................5, 6
*Matson v. Dvorak*
  40 Cal. App. 4th 539 (3d Dist. Cal. 1995) ......................................................................4
*Neville v. Chudacoff*
  160 Cal. App. 4th 1255 (2d Dist. Cal. 2008) ..................................................................9
*People v. Superior Court (Olson)*
  96 Cal. App. 3d 181 (4th Dist. Cal. 1979) ....................................................................11
*Price v. Stossel*
  620 F.3d 992 (9th Cir. 2010) ...........................................................................................9
*Schaffer v. City and County of San Francisco*
  168 Cal. App. 4th 992 (1st Dist. 2008)............................................................................7
*Squires v. City of Eureka*
  231 Cal.App.4th 577 (2014) ............................................................................................6
*Thomas v. Fry's Electronics., Inc.,*
  400 F.3d 1206 (9th Cir. 2005) .........................................................................................9
*U.S. v. Lockheed Missiles & Space Co.,*
  190 F.3d 963 (9th Cir. 1999) ...........................................................................................9
*Vargas v. City of Salinas*
  205 P.3d 207 (Cal. 2009) .............................................................................................5, 9
*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*
  425 U.S. 748 (1976)........................................................................................................11
*Westfall v. City of Crescent City*
  No. CV 10–5222 NJV, 2011 WL 2110306 (N.D. Cal. May 26, 2011) ...........................5

*Nationwide Biweely Administration, Inc., et al. v. John F. Hubanks, et al.*       CASE NO. 5:14-CV-04420-LHK
Defendants' Anti-SLAPP Motion to Strike

**RULES & STATUTES**

Article I, Section 2 of the California Constitution ............................................................ 3, 12

California Business & Professions Code
       Section 14700 ............................................................................................................. 3
       Section 17200 ............................................................................................................. 3
       Section 17500 ............................................................................................................. 3

California Code of Civil Procedure
       Section 425.16(a) .................................................................................................... 3, 4
       Section 425.16(b)(1) ................................................................................................... 4
       Section 425.16(c)(1) ................................................................................................. 12
       Section 425.16(e)(2) ............................................................................................... 5, 8

Federal Rules of Civil Procedure
       Rule 12(b)(6) ........................................................................................................... 12
       Rule 19(A) ................................................................................................................. 9

Financial Code section 12000 ................................................................................................ 3

Health & Safety Code section 25249.5-25249.13 .................................................................. 8

United States Constitution First Amendment ................................................................ 11, 12

# NOTICE OF MOTION AND MOTION

**TO: PLAINTIFFS NATIONWIDE BIWEEKLY ADMINISTRATION, INC., AN OHIO CORPORATION; LOAN PAYMENT ADMINISTRATION LLC, AN OHIO LIMITED LIABILITY COMPANY; AND DANIEL S. LIPSKY, AN INDIVIDUAL, THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **March 5, 2015 at 1:30 p.m.**, or as soon thereafter as the matter can be heard in the courtroom of United States District Judge Lucy H. Koh, U.S. District Court for the Northern District of California, **Courtroom 8, 4th Floor, 280 South First Street, San Jose, California**, all Defendants will move the Court to strike the Second and Third Causes of Action of Plaintiffs' ("Nationwide Biweekly's") Complaint for Declaratory and Injunctive Relief ("Complaint"), under California's "Anti-SLAPP" statute, California Code of Civil Procedure section 425.16.

Defendants' motion is made on the following grounds and as more fully set forth in the memorandum of points and authorities, filed herewith:

1. Nationwide Biweekly's Second Cause of Action, for violation of Article I, Section 2 of the California Constitution, and Third Cause of Action, for declaratory relief, are based entirely on the good faith efforts of Deputy District Attorneys in Marin and Monterey Counties to enforce lawful, constitutional, California statutes to address Plaintiffs' failure to comply with consumer protection laws designed to prevent misleading commercial solicitations. Accordingly, the Second and Third Causes of Action constitute strategic litigation against public participation, a "SLAPP" lawsuit. This Court should strike Nationwide Biweekly's Second and Third Causes of Action and award Defendants their costs and attorney fees pursuant to California Code of Civil Procedure section 425.16, the Anti-SLAPP statute.

Defendants' motion is based on this notice of motion and motion, on the following memorandum of points and authorities filed in support of this motions, on all the

1

pleadings and papers in this action, and on any oral argument entertained by the Court during the hearing on this matter.

## ARGUMENT

### I.     INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Nationwide Biweekly Administration, Inc. ("Nationwide Biweekly") and its affiliates operate loan repayment programs throughout the United States.  According to the pleadings filed by Plaintiffs in this action, "Nationwide is one of the country's largest and most recognized administrators for biweekly loan repayment programs, and is currently helping over 125,000 borrowers across the country, including over 10,000 borrowers in California."  ECF No. 1, at 2:20-22.

Nationwide Biweekly's business model, in a nutshell, is to collect mortgage payments from its client-borrowers biweekly and make mortgage payments to the lender on behalf of the borrowers.  Mortgage lenders do not allow borrowers to make biweekly payments; however, because Nationwide Biweekly collects 26 mortgage payments per year instead of 12, Nationwide Biweekly can make one additional mortgage payment per year on behalf of each client-borrower. This eventually allows the borrower to pay off the loan sooner.

The problem with Nationwide Biweekly's conduct is twofold.  First, the solicitations it mails to borrowers are not in compliance with specific laws designed to protect consumers from being misled into thinking that Nationwide Biweekly is affiliated with the homeowner's mortgage lender; telephonic scripts used by Nationwide Biweekly's customer service representatives reinforce this misconception.  Second, Nationwide Biweekly's written solicitations fail to mention the hefty fee, automatically debited from the borrower's bank account, that the firm charges for its services; moreover, the employees responding to calls from borrowers are carefully trained to obscure the existence or amount of this fee.

In 2013, in response to local consumer complaints and to enforcement actions in other jurisdictions, Deputy District Attorney Andres H. Perez of the Marin County, California, District

Attorney's Office and Deputy District Attorney John F. Hubanks of the Monterey County, California, District Attorney's Office began investigating Nationwide Biweekly.

Mr. Perez and Mr. Hubanks determined that Nationwide Biweekly's solicitations violate California Business & Professions Code section 14700 *et seq.*, constitute unfair and deceptive business practices pursuant to Business & Professions Code section 17200 *et seq.*, involve deceptive advertising as defined by Business & Professions Code section 17500 *et seq.*, and may violate other statutes as well, including Financial Code section 12000 *et seq.* ("the Prorater Law").  For approximately a year they communicated with Nationwide Biweekly's attorneys and principal, Mr. Lipsky, attempting to negotiate a resolution that would enable Nationwide Biweekly to continue doing business in California, while protecting California consumers from Nationwide Biweekly's deceptive practices.  They entered into tolling agreements, and made every effort to work cooperatively with Nationwide Biweekly's representatives.

Eventually, Hubanks and Perez determined that their efforts were unlikely to bear fruit, so they resolved to file a civil enforcement action and informed Nationwide Biweekly's counsel of their intentions.  Nationwide Biweekly responded by filing the instant action and motion for preliminary injunction, strategic preemptive strikes in federal court.

Plaintiff's Second Cause of Action, for violation of Article I, Section 2 of the California Constitution, and Third Cause of Action, for declaratory relief, are based entirely on the good faith efforts of Deputy District Attorneys Hubanks and Perez to enforce lawful, constitutional, California statutes to address Plaintiffs' intentionally misleading commercial solicitations. Accordingly, the Second and Third Causes of Action constitute strategic litigation against public participation, a "SLAPP" lawsuit.  This Court should strike Plaintiff's Second and Third Causes of Action and award Defendants their costs and attorney fees pursuant to California Code of Civil Procedure section 425.16, the Anti-SLAPP statute.

## II. POINTS AND AUTHORITIES

**A. Plaintiffs' Second and Third Causes of Action Constitute a Strategic Lawsuit Against Public Participation and Should be Stricken Pursuant to California's Anti-SLAPP Statute, Code of Civil Procedure Section 425.16.**

### 1. Anti-SLAPP

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CAL. CIV. PROC. CODE § 425.16(b)(1).  The Anti-SLAPP statute resulted from a finding by the California Legislature that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." CAL. CIV. PROC. CODE § 425.16(a); *see also Gilbert v. Sykes*, 147 Cal. App. 4th 13, 21-22 (3d Dist. Cal. 2007) (section 425.16 "was enacted in 1992 to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue.") (quoting *Sipple v. Foundation for Nat. Progress,* 71 Cal.App.4th 226, 235 (2d Dist. Cal. 1999)).

The Anti-SLAPP statute "shall be construed broadly." CAL. CIV. PROC. CODE § 425.16(a).  Once the moving party has made a prima facie showing that the lawsuit arises from an act by the defendant in furtherance of her right of petition or free speech under the United States or California Constitution in connection with a public issue, the plaintiff must establish a "probability" that she will prevail on the merits of the complaint. CAL. CIV. PROC. CODE § 425.16(a); *see, e.g., Matson v. Dvorak,* 40 Cal. App. 4th 539, 548 (3d Dist. Cal. 1995).   In other words, if "the act or acts of which the plaintiff complains were taken 'in furtherance of the [moving party's] right of petition or free speech under the United States or California

4

1  Constitution in connection with a public issue,' as defined in the statute. . . . [the court] then
2  determines whether the plaintiff has demonstrated a probability of prevailing on the claim."
3  *Equilon Enterprises v. Consumer Cause, Inc.,* 52 P.3d 685, 29 Cal. 4th 53, 67 (Cal. 2002). "To
4  establish such a probability, a plaintiff must demonstrate that the complaint is both legally
5  sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable
6  judgment if the evidence submitted by the plaintiff is credited." *Matson*, 40 Cal. App. 4th at 548.
7       Causes of action under the California Constitution, but not the United States Constitution,
8  are subject to Anti-SLAPP motions to strike. *Westfall v. City of Crescent City,* No. CV 10–5222
9  NJV, 2011 WL 2110306 (N.D. Cal. May 26, 2011).
10      The Anti-SLAPP statute protects District Attorney personnel acting pursuant to their
11  official duties. "[A] long and uniform line of California Court of Appeal decisions explicitly
12  holds that governmental entities are entitled to invoke the protections of section 425.16 when
13  such entities are sued on the basis of statements or activities engaged in by the public entity or its
14  public officials in their official capacity." *Vargas v. City of Salinas,* 205 P.3d 207, 46 Cal. 4th 1,
15  17 (Cal. 2009); *see, e.g., Bradbury v. Superior Court,* 49 Cal.App.4th 1108, 1115 (2d Dist. Cal.
16  1996) ("section 425.16 extends to public employees who issue reports and comment on issues of
17  public interest relating to their official duties").
18      Contrary to the common perception of SLAPP and Anti-SLAPP litigation, the speech or
19  conduct at issue need not occur in the course of political activity or public debate. As used in
20  section 425.16(e)(2), a matter is "under consideration" if it "is one kept 'before the mind,'" or
21  given "'attentive thought, reflection, meditation.'" *City of Costa Mesa v. D'Alessio Investments,*
22  *LLC,* 214 Cal. App. 4th 358, 373 (4th Dist. Cal. 2013) (citations omitted). A matter under
23  review can be one subject to "an inspection, [or] examination" by public officials. *Maranatha*
24  *Corrections, LLC v. Dept. of Corrections & Rehabilitation,* 158 Cal.App.4th 1075, 1085 (3d
25  Dist. Cal. 2008) ("*Maranatha*"). The review or consideration process need not consist of official
26  or formal proceedings. *Id.* In *Maranatha*, a private firm sued a state executive branch

5

department based on alleged defamatory matter in a publicized letter and oral comments by an employee explaining the reasons the department was terminating its contract with the firm.  The department alleged the company had misappropriated funds.  *Id.* at 1080–1082.  In evaluating the first step of the anti-SLAPP analysis, pursuant to section 425.16(e)(2), the court rejected an argument that the department could not bring an anti-SLAPP motion because it had not instituted formal or official proceedings in connection with the misappropriation allegations. *Maranatha,* 158 Cal.App.4th at 1085.

In the case at bar, the Deputy District Attorneys' investigation of Nationwide Biweekly, their communications with the company's counsel and principal, and their attempts to encourage Nationwide Biweekly to comply with California law all constitute protected activity.  *See Fleming v. City of Oceanside*, No. 10cv1090–LAB (BLM), 2011 WL 197586, at *3 (S.D. Cal. Jan. 19, 2011)("The anti-SLAPP statute does not require that the asserted public interest be the subject of a *live* debate or discussion . . . .  It is sufficient that the speech act at issue addresses a *latent* matter of public interest, such as the public's general and enduring interest that those charged with protecting their safety can be relied upon when duty calls.").

Enforcement actions such as those contemplated by the Marin County and Monterey County District Attorneys' Offices fall squarely within the protections of the Anti-SLAPP statute.  *See Squires v. City of Eureka*, 231 Cal.App.4th 577, 180 Cal. Rptr. 3d 10, 18 (1st Dist. Cal. Oct. 17, 2014) ("'defendants have made an initial showing that plaintiffs' causes of action arise from protected activity under CCP section 425.1[6]' because plaintiffs' claims against defendants 'involve actions allegedly taken by the defendants in the investigation and prosecution of plaintiffs regarding code enforcement violations occurring at real properties owned by plaintiffs.'") (quoting trial court below).  The Anti-SLAPP statute asks whether the statements were "made in connection with an issue under consideration or review" by a branch of the government.  Much like the communications and analysis in which Deputy District Attorneys Hubanks and Perez engaged in determining what action, if any, to take against

6

1  Plaintiffs, written statements by police officers have been held to have been made "in connection
2  with" an executive branch investigation.  *Schaffer v. City and County of San Francisco*, 168 Cal.
3  App. 4th 992, 999-1002 (1st Dist. 2008).  *Schaffer* emphatically rejects the claim that police
4  officers who are merely "doing their job" are not entitled to SLAPP protection.  *Id.* at 1003-
5  1004.  Moreover, the *Bradbury* decision makes clear that communications *among* law
6  enforcement personnel, not just their public communication, are protected by the Anti-SLAPP
7  statute.  The *Bradbury* court held, "[p]rivate conversations concerning the report were also
8  protected under the anti-SLAPP statute. . .  The request that the Los Angeles County Sheriff and
9  other law enforcement agencies investigate the matter was in furtherance of the right to petition
10 government for grievances."  *Bradbury,* 49 Cal.App.4th at 1117.  Accordingly, all of the Deputy
11 District Attorneys' conduct in investigating, negotiating with, and determining a course of action
12 with regard to Plaintiffs' California activities should be accorded Anti-SLAPP protection.
13      It is not merely the investigation and communications leading up to the filing of an
14 enforcement action that are protected by the Anti-SLAPP statute.  Lawsuits like this one,
15 intended to preempt or short circuit a contemplated civil or criminal enforcement action, are
16 squarely within the ambit of Anti-SLAPP protection.  *See, e.g., City of Colton v. Singletary,* 206
17 Cal. App. 4th 751 (4th Dist. Cal. 2012) (Anti-SLAPP motion to strike cross-complaint).
18 *Equilon*, *supra,* is closely analogous to the Nationwide Biweekly scenario. In *Equilon*, a
19 consumer group, Consumer Cause, Inc., filed a Proposition 65 notice against the successor-in-
20 interest to two oil companies. It alleged that the oil companies had polluted the groundwater by
21 discharging benzene, toluene and lead into the soil. Rather than respond to the notice, Equilon
22 filed an action for declaratory and injunctive  relief. It claimed that the notice had not been
23 properly served and sought a declaration that the notice failed to comply with the California
24 Code of Regulations by not describing the toxic discharges with sufficient particularity. It also
25 sought an injunction barring Consumer Cause from filing a Proposition 65 enforcement action.
26 Consumer Cause moved to strike Equilon's complaint under the anti-SLAPP statute. The court

7

1  concluded that the pleadings and affidavits established that Equilon's actions arose from

2  Consumer Cause's act of filing a Proposition 65 notice and was therefore subject to a motion to

3  strike. *Equilon,* 29 Cal.4th at 67.

4  In the same vein is *CKE Restaurants, Inc. v. Moore*, in which the defendant sent a notice

5  to a restaurant stating that some of its food products contained a cancer-causing chemical,

6  naphthalene, requiring the restaurant to warn consumers pursuant to Proposition 65 (codified at

7  CAL. HEALTH & SAFETY CODE §§ 25249.5-25249.13).  The court concluded that the restaurant's

8  action arose from defendant's protected activity of filing the Proposition 65 notice and was

9  properly subject to a special motion to strike:

> CKE directly challenged the merits of the 60-day notice by referring to and quoting from the 60-day notice. CKE requested a judicial determination that its food products complied with Proposition 65. Instead of using the 60-day period to avoid litigation, CKE used it to commence litigation. Moreover, CKE threatened to sue respondents unless they withdrew their notice. CKE's action arose entirely from the filing of the Proposition 65 notice. The trial court recognized this, stating, "without the Notice, there would have been no actual, present controversy, and no controversy at all." Thus, no basis existed for CKE's filing of the declaratory relief action.
>
> We conclude that CKE's action arose from respondents' protected activity of filing the Proposition 65 notice and was properly subject to a motion to strike.

*CKE Restaurants, Inc. v. Moore*, 159 Cal. App. 4th 262, 271 (2d Dist. Cal. 2008)(internal

citation omitted).  The parallels between CKE's conduct and the conduct of Nationwide

Biweekly herein are striking.

It is irrelevant that the two District Attorney's Offices have not yet filed the contemplated

action against Nationwide Biweekly and its principal.  "Although many anti-SLAPP cases

involving prelitigation communications concern demand letters or other statements to adverse

parties or potential adverse parties . . . there is no such requirement in the text of section 425.16,

subdivision (e)(2). That provision has been held to protect statements to persons who are not

8

1  parties or potential parties to litigation, provided such statements are made 'in connection with'
2  *pending or anticipated litigation.*"  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1270 (2d Dist.
3  Cal. 2008) (emphasis added; internal citations omitted).

4      **2.**    **California's Anti-SLAPP Statute Applies in Federal Court.**

5      It is well settled that California's anti-SLAPP statute is available in federal court.  *Thomas
6  v. Fry's Electronics., Inc.,* 400 F.3d 1206, 1206 (9th Cir. 2005); s*ee U.S. v. Lockheed Missiles &
7  Space Co.,* 190 F.3d 963, 970-73 (9th Cir. 1999).  In fact, federal courts routinely apply
8  California's Anti-SLAPP statute in appropriate cases.  *See, e.g., Manufactured Home
9  Communities, Inc. v. County of San Diego,* 655 F.3d 1171 (9th Cir. 2011); *Price v. Stossel* 620
10 F.3d 992 (9th Cir. 2010).

11     **3.**    **Plaintiffs Cannot Establish A Probability of Prevailing on The Merits.**

12     **i.**    **The Applicable Standard**

13     To establish a probability of prevailing on the claim, a plaintiff responding to an anti-
14 SLAPP motion must state and substantiate a legally sufficient claim. In other words, the plaintiff
15 "must demonstrate that the complaint is both legally sufficient and supported by a sufficient
16 prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the
17 plaintiff is credited."  *Vargas,* 46 Cal. 4th at 19-20 (citations omitted).  In deciding the question
18 of potential merit, the trial court considers the pleadings and evidentiary submissions of both the
19 plaintiff and the defendant.  The court does not weigh the credibility or comparative probative
20 strength of competing evidence, but it should grant the Anti-SLAPP motion if, as a matter of
21 law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish
22 evidentiary support for the claim. *Id.*

23     **ii.**    **Plaintiffs Are Unlikely to Prevail Because They Failed to Join the
24     State of California, a Party "Necessary to the Action" Under Federal
    Rule 19(A)**

9

As more fully explained in Section III of Defendants' Joint Motion to Dismiss, Neither the State of California nor an officer thereof, is a party to this action, and such failure is grounds for dismissal.

### iii. Plaintiffs Are Unlikely to Prevail Because the Counties are improper parties to this action.

As more fully explained in Section IV of Defendants' Joint Motion to Dismiss, Neither Deputy D.A., the Counties (a.k.a. District Attorney's Offices) are improper parties because the prosecutorial conduct at issue was done on behalf of the state.

### iv. Plaintiffs Are Unlikely to Prevail Because, Under the "Prudential Ripeness Doctrine," the Factors Militate In Favor of Delaying A Decision on the Merits.

As more fully discussed in Section V of Defendants' Joint Motion to Dismiss, this case is not ripe for adjudication because the District Attorney's Offices have not yet filed their enforcement action, and it is unclear how a California court will apply the law to the facts. Moreover, it is unlikely that any of Plaintiffs' constitutional rights will be irreparably harmed by a delay, and the harms Plaintiffs contend will result from fling of the enforcement action are highly speculative.

### v. Plaintiffs Are Unlikely to Prevail Because the *Pullman* Abstention Doctrine Counsels this Court to Decline to Act When All Relevant Issues May Be Resolved in a State Court Proceeding.

While *Younger* abstention is inapplicable when there is no state litigation pending, *Pullman* abstention – examined in depth in Section VI of Defendants' Joint Motion to Dismiss -- counsels this court to decline to intervene in this dispute because it concerns matters of great import to the people of the State of California, and implicates a statute that has never been interpreted or applied by an appellate court.  An action will be filed in the near future in state court that could resolve all of the issues Plaintiffs have prematurely placed before this Court, and

10

it would be most appropriate for this Court to abstain from involvement unless the California courts decide the issues in a manner that does violence to the U.S. Constitution.

      **vi.**    **Plaintiffs Are Unlikely to Prevail Because the Speech and Conduct in Which They Are Engaging Is Deceptive and Violates Valid California Statutes.**

Neither the First Amendment of the United States Constitution nor Article I, Section 2 of the California Constitution give the speaker an unfettered right to engage in deceptive, misleading commercial speech. *See Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 566 (1980) (First Amendment protects commercial speech only when it concerns lawful activity and is not misleading).; *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771-772 (1976) ("The First Amendment . . . does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely."). Nor does the California Constitution protect deceptive or misleading commercial speech to a greater degree than the First Amendment. *E.g., Kasky v. Nike, Inc.,* 45 P.3d 243, 27 Cal. 4th 939, 959 (Cal. 2002) ("This court has never suggested that the state and federal Constitutions impose different boundaries between the categories of commercial and noncommercial speech.").

As set forth in section VII of Defendants' Joint Motion to Dismiss, the California statutes at issue are designed to protect consumers from precisely the kind of deceptive acts and practices in which Plaintiffs engage. None of those protective statutes has been declared unconstitutional, and in fact those which have faced challenges on free speech grounds have been held to be valid. *People v. Superior Court (Olson),* 96 Cal. App. 3d 181, 195 (4th Dist. Cal. 1979), cert. den. 446 U.S. 935 (1980); a*ccord, Keimer v. Buena Vista Books, Inc.* 75 Cal. App. 4th 1220, 1230, fn. 10 (1st Dist. Cal. 1999).

11

**4. Plaintiffs Are Unlikely to Succeed On The Merits, and Their Transparent Motives for Filing this Action Exemplify Strategic Litigation Against Public Participation.**

The California Constitution protects the right of free speech under Article 1, Section 2(a), which provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The California Constitution, unlike the First Amendment of the United States Constitution, expressly holds speakers responsible for abuse of the right of free speech. The Defendants in this action, the people responsible for enforcing the laws of the State of California, contend Plaintiffs have abused their free speech rights by disseminating misleading information for their pecuniary benefit, in a manner that violates several California statutes. Defendants seek to hold Plaintiffs responsible for this abuse. Concerned that a California court may find their highly profitable business model and methods unlawful, Plaintiffs have filed the instant action in federal court as a "preemptive strike." Plaintiffs' arguments in their Complaint are unpersuasive, their motives transparent.

Accordingly, Plaintiffs are highly unlikely to succeed on the merits of this action and Defendants are entitled to have the Second and Third Causes of Action stricken pursuant to Code of Civil Procedure section 425.16. They also are entitled to their costs and attorney fees pursuant to Section 425.16(c)(1).

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court strike Plaintiffs' Second and Third Causes of Action and award attorney fees and costs pursuant to California Code of Civil Procedure section 425.16, and dismiss Plaintiffs' First Cause of Action with prejudice, pursuant to FRCP Rule 12(b)(6).

Dated:  December 30, 2014.    CHARLES J. McKEE, COUNTY COUNSEL

By:  _/s/  William Litt_
WILLIAM M. LITT
Deputy County Counsel
Attorneys for Defendants JOHN F. HUBANKS and  the COUNTY OF MONTEREY

Dated:  December 30, 2014.    STEVEN M. WOODSIDE, COUNTY COUNSEL

By:  _/s/  Brian Case_
BRIAN C. CASE
Deputy County Counsel
Attorneys for Defendants Andres H. Perez and the COUNTY OF MARIN

13

*Nationwide Biweekly v. John F. Hubanks, et al.,*              Case No. 5:14-CV-4420-LHK
Defendant's Anti-SLAPP Motion to Strike