1  STEVEN M. WOODSIDE, COUNTY COUNSEL
   Brian Charles Case SBN 254218
2  3501 Civic Center Drive, Room 275
   San Rafael, CA 94903
3  Tel.: (415) 473-6117, Fax: (415) 473-3796
   Attorney(s) for County of Marin (a.k.a. Marin County District Attorney's Office)
4  and Deputy District Attorney Andres H. Perez

5  CHARLES J. MCKEE, COUNTY COUNSEL
   William Merrill Litt SBN 166614
6  168 W Alisal Street, 3rd Floor
   Salinas, CA 93901
7  Tel.: (831) 755-5045, Fax: (831) 755-5283

8  Attorney(s) for County of Monterey (a.k.a. Monterey County District Attorney's Office)
   and Deputy District Attorney John Hubanks

9

10

11                          UNITED STATES DISTRICT COURT

12                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  NATIONWIDE BIWEEKLY                          Case No.: 14-cv-04420-LHK
    ADMINISTRATION, INC., an Ohio Corporation;
15  LOAN PAYMENT ADMINISTRATION LLC, an
    Ohio limited liability company; and DANIEL S.
16  LIPSKY, an individual;
                                                 **JOINT MOTION TO DISMISS**
17              Plaintiffs,                       **(FED. R. CIV. P. 12(b)(1); 12(b)(6); and
                                                 12(b)(7) )**
18         v.

19  JOHN F. HUBANKS, Deputy District Attorney,
    Monterey County District Attorney's Office, in his
20  official capacity; ANDRES H. PEREZ, Deputy
    District Attorney, Marin County District Attorney's
21  Office, in his official capacity; MONTEREY
    COUNTY DISTRICT ATTORNEY'S OFFICE, a
22  County Agency; and MARIN COUNTY
    DISTRICT ATTORNEY'S OFFICE, a County
23  agency,

24
                Defendants.
25

26

27

28

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2     PLEASE TAKE NOTICE THAT on, March 5, 2015, at 1:30 p.m.,  or as soon thereafter as

3  counsel may be heard, before the Hon. Lucy H. Koh in Courtroom 8, 4th Floor, of the United States

4  Courthouse located at 280 South First Street, San Jose, CA., defendant County of Marin will move

5  the Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6),

6  and 12(b)(7).

7     The relief the moving parties jointly seek is an order dismissing Nationwide Biweekly's

8  Complaint against all defendants, without leave to amend, on the basis that the Complaint fails to

9  state any claim upon which relief may be granted, on the grounds that the Complaint fails to join a

10  necessary party under Rule 19, and on the grounds of lack of subject-matter jurisdiction.

11     The motion to dismiss is based upon this Notice, the attached Memorandum of Points and

12  Authorities, the Request for Judicial Notice served and filed herewith, the papers and pleadings on

13  file herein, and upon such other matters as may be presented to the court at the time of the hearing.

14

15  Dated:  December 30, 2014.          CHARLES J. McKEE, COUNTY COUNSEL

16

17                          By:    _/s/  William Litt_____
                                   WILLIAM M. LITT
18                                 Deputy County Counsel
                                   Attorneys for Defendants JOHN F. HUBANKS
19                                 and  the COUNTY OF MONTEREY

20

21  Dated:  December 30, 2014.          STEVEN M. WOODSIDE, COUNTY COUNSEL

22

23                          By:    _/s/  Brian Case_____
                                   BRIAN C. CASE
24                                 Deputy County Counsel
                                   Attorneys for Defendants Andres H. Perez and
25                                 the COUNTY OF MARIN

26

27

28

---

1

## **TABLE OF CONTENTS**

2   I. STATEMENT OF ISSUES ....................................................................................1

3   II. STATEMENT OF FACTS.................................................................................2

4   III. NATIONWIDE BIWEEKLY HAS FAILED TO JOIN THE STATE OF CALIFORNIA, A
5   PARTY "NECESSARY TO THE ACTION" UNDER FEDERAL RULE 19(a)..............3

6   IV. THE COUNTIES (A.K.A. DISTRICT ATTORNEY'S OFFICES) ARE IMPROPER
    PARTIES BECAUSE THE PROSECUTORIAL CONDUCT AT ISSUES WAS
7   DONE ON BEHALF OF THE STATE ...........................................................6

8   V. UNDER THE PRUDENTIAL RIPENESS FACTOR OF "HARDSHIP TO THE
9   PARTIES OF WITHHOLDING COURT CONSIDERATION," NATIONWIDE
    BIWEEKLY'S PRE-ENFORCEMENT CHALLENGE FAILS .......................8
10

11   VI. THE *PULLMAN* FACTORS MILITATE IN FAVOR OR ABSTENTION ..........................12

12   VII. EACH OF NATIONWIDE'S CAUSES OF ACTION FAILS AS A MATTER
     OF LAW ...................................................................................14
13   A. Nationwide Biweekly's Complaint is Subject to Dismissal, Without Leave to
14   Amend, Under Federal Rules of Civil Procedure, Rule 12(b)(6) ......................14

15   B. Nationwide's "First Cause of Action" Under Section 1983 Fails as a Matter of
     Law as to All Defendants.....................................................................15
16
     1. Nationwide Has Not Complained that the Alleged Unconstitutional Conduct is
17   the Result of an Official Policy, Pattern or Practice ...................................15

18   2. Even if Nationwide Biweekly were to Satisfy *Monell* Pleading Requirements,
19   Because the Speech at Issue is "Commercial Speech", Nationwide Biweekly's
     Challenge Fails, as a Matter of Law, to Allege a Free Speech Violation ...................18
20

21   C. Nationwide Biweekly's "Second Cause of Action" under the California Constitution
     Fails as a Matter of Law.....................................................................21
22

23   D. Nationwide Biweekly's "Third Cause of Action" for "Declaratory Relief" Fails to
     Serve as an Independent Source of Federal Question Jurisdiction....................22
24

25   VIII. CONCLUSION...…………………………………………………………………23

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott Laboratories v. Gardner*
    387 U.S. 136 (1967)..............................................................................................9

*Albrecht v. Lund*
    845 F.2d 193 (9th Cir. 1988) ............................................................................15

*Azul-Pacifico, Inc. v. City of Los Angeles*
    973 F.2d 704 (9th Cir. 1992) ............................................................................16

*Beeman v. Anthem Prescription Mgmt., LLC*
    58 Cal.4th 329 (Cal. 2013)................................................................................18

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)..........................................................................................15

*Board of the County Commissioners of Bryan County v. Brown*
    520 U.S. 397 (1996)..........................................................................................16

*Brown v. American National* Bank
    197 F.2d 911 (10th Cir. 1952) ............................................................................5

*Chicago, M., St. P. & P. R. Co. v. Adams County*
    72 F.2d 816 (9th Cir. 1934) ................................................................................5

*City of Canton*
    489 U.S. at 389 (1988)......................................................................................15

*Clouthier v. County of Contra Costa*
    591 F3d 1232 (9th Cir. 2010) ..........................................................................15

*Colo. River Water Conservation Dist. v. United States*
    424 U.S. 800 (1976)..........................................................................................12

*Colwell v. Department of Health and Human Services*
    558 F.3d 1112 (9th Cir. 2009) ..........................................................................11

*Confederated Salish v. Simonich*
    29 F.3d 1398 (9th Cir. 1994) ......................................................................13, 14

*Doe v. Bolton*
    410 U.S. 179 (1973)............................................................................................9

*Dombrowski v. Pfister*
    380 U.S. 479 (1965)............................................................................................9

*E.E.O.C. v. Peabody Western Coal Co.*
    400 F.3d 774 (9th Cir. 2005) ..............................................................................4

*Epstein v. Washington Energy Co.*
    83 F3d 1136 (9th Cir. 1996) ............................................................................14

*Gregory v. Stetson*
    133 U.S. 579 (1890)............................................................................................5

*Harris Const. Co., Inc. v. Tulare Local Healthcare Dist.*
    No. CVF13-1675 LJO SAB, 2013 WL 6576034, 3 (E.D. Cal. Dec. 13, 2013)................22

*Jenkins v. Washington*
    2014 WL 4269446 (W.D.Wash., 2014)............................................................16

*Jensen v. Quality Loan Service Corp.,*
    702 F.Supp.2d 1183 (E.D. Cal. 2010)..............................................................22

*Johnson v. Riverside Healthcare System*
    534 F.3d 1116 (9th Cir. 2008) ........................................................14

*Kasky v. Nike, Inc.*
    27 Cal.4[th] 939 (2002) ...............................................................21

*Kiser v. Reitz*
    765 F.3d 601(6th Cir. 2014) .......................................................10

*Lake Carriers' Assn. v. MacMullan*
    406 U.S. 498 (1972)...................................................................12

*Leoni v. State Bar*
    39 Cal.3d 609 (Cal.1985) ............................................................22

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000) .....................................................15

*Los Angeles County v. Humphries*
    562 U.S. 29, 131 S.Ct. 447 (2010).................................................16

*Mbaba v. Indymac Federal Bank F.S.B.,*
    No. 1:09 CV OWW-GSA, 2010 WL 424363 (E.D. Cal. Jan. 27, 2010) .........22

*McKay v. Federspiel*
    14-CV-10252, 2014 WL 1400091 (E.D.Mich., 2014).............................5

*McShan v. Sherrill*
    283 F.2d 462 (9th Cir. 1960) .........................................................4

*Monell v. Department of Soc. Svcs.*
    436 U.S. 658 (1978)..........................................................15, 16, 17

*Moore v. Sims*
    442 U.S. 415 (1979)..............................................................12, 13

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001) .......................................................14

*Neitzke v. Williams*
    490 U.S. 319 (1989)...................................................................14

*Neri v. County of Stanislaus Dist. Attorney's Office,*
    No. 1:10-CV-823 AWI GSA, 2010 WL 3582575 (E.D. Cal. Sept. 9, 2010) ....8

*New Kids on the Block v. News Am. Publishing, Inc.*
    971 F.2d 302 (9th Cir. 1992) .......................................................21

*Pennzoil Co. v. Texaco, Inc.*
    481 U.S. 1 (1987)......................................................................13

*Perez v. Ledesma*
    401 U.S. 82 (1971).....................................................................9

*Potter v. Blue Shield of California Life and Health Ins. Co.*
    No. SACV 14-0837-DOC (ANx), 2014 WL 6910498 (C.D. Cal. Nov. 26, 2014).............4

*Prison Legal News v. Columbia County*
    942 F.Supp.2d 1068 (D.Or.,2013) ...........................................16, 17

*Railroad Comm'n of Texas v. Pullman Co.*
    312 U.S. 496 (1941)..........................................................12, 13, 23

*Reno v. ACLU*
    521 U.S. 844 (1997)...................................................................9

*Simmonds v. I.N.S.*
    326 F.3d 351 (2nd Cir. 2003) ........................................................8

*Texas v. Synchronal Corp.*
    800 F. Supp. 1456 (W.D. Tex. 1992)..................................................................14
*United States v. Schiff,*
    379 F.3d 621 (9th Cir. 2004) ........................................................................19
*U.S. v. Bowen,*
    172 F.3d 682 (9th Cir. 1999) ......................................................................3
*Valencia v. Ryan,*
    No. CV14-1359 PHX-DGC (MEA), 2014 WL 4541482, 5  (D. Ariz., Sept. 12, 2014) ...17
*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976)....................................................................................18
*Weiner v. County of San Diego,*
    210 F.3d 1025 (9th Cir. 2000) ..............................................................7, 15
*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of* Ohio
    471 U.S. 626 (1985)...............................................................18, 19, 20, 21


**RULES & STATUTES**

California Constitution, Article 1, Section 2 ...................................................................1

Business & Professions Code
    Section 14700..................................................................2, 12, 13, 18
    Section 14701(a) ................................................................19, 21
    Section 14702.....................................................................19, 21
    Section 14703.....................................................................20, 21
    Section 17200......................................................................2, 12
    Section 17500......................................................................3, 12

Financial Code section 12000 ....................................................................3

Federal Rules of Civil Procedure
    Section 12(b)(1) ......................................................................23
    Section 12(b)(6) ................................................................14, 23
    Section 12(b)(7) ..................................................................4, 23
    Section 19................................................................................3, 4
    Section 19(a) ..........................................................................3, 6

Federal Rules of Civil Procedure 19 Advisory Committee Note (1966) ......................................6

United States Constitution
Title 42, Section 1983................................................1, 7, 15, 16, 17
    First Amendment .............................................................21, 22
    Fourteenth Amendment ........................................................1

**OTHER**

Richard H. Fallon Jr., <u>Fact and Fiction About Facial Challenges</u>,
     99 Cal. L. Rev. 915 (2011) ..................................................................................................6

Senate Bill 1150 (Cal. 2003-2004) ..................................................................................................19

Arizona Revenue Statute Section 44-1799.51 ..................................................................................19
Colorado Revenue Statute Section 6-1-1001 ..................................................................................19
New York Banking Law section 133 ..................................................................................19

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. STATEMENT OF ISSUES

Plaintiff's ("Nationwide Biweekly's") Complaint seeks declaratory relief, to enjoin the efforts of Deputy District Attorneys Hubanks and Perez to enforce lawful, constitutional, California consumer protection laws that serve to protect homeowners from solicitations that could potentially cause them to make uninformed financial decisions, because homeowners who see the name of their lender on a piece of mail tend to trust that name.  Nationwide alleges three purported "causes of action," in support of the requested relief, to enjoin enforcement of these laws: (1) Violation of the First and Fourteenth Amendments of the U.S. Constitution (42 U.S.C. § 1983); (2) Violation of the California Constitution, Article 1, Section 2; and (3) Declaratory Relief.  ECF No. 1, 1-11.  The issues presented by this motion are as follows:

A)  Whether this Court should decline to exercise subject matter jurisdiction because this suit is (1) lacking in prudential ripeness; and/or (2) the appropriate subject of dismissal under *Pullman* abstention.

B) Whether each of Nationwide Biweekly's Causes of Action should be dismissed as they do not state a cognizable claim for which relief can be granted, as each claim fails as a matter of law; and

C) Whether this case should be dismissed because (1) Nationwide Biweekly has failed to join a necessary party, The State of California; and (2) identifies improper parties for this action.  FED. R. CIV. P. 12(b)(7).

All Defendants (County of Marin, County of Monterey, Deputy D.A.s Perez, Deputy D.A. Hubanks) respectfully submit that this court should resolve each of these issues in their favor, and accordingly, dismiss the Complaint against each of them, without leave to amend.

1

## II. STATEMENT OF FACTS

Plaintiff Nationwide Biweekly Administration, Inc. ("Nationwide Biweekly") and its affiliates operate loan repayment programs throughout the United States. According to the pleadings filed by Plaintiffs in this action, "Nationwide is one of the country's largest and most recognized administrators for biweekly loan repayment programs, and is currently helping over 125,000 borrowers across the country, including over 10,000 borrowers in California." ECF No. 1, at 2:20-22.

Nationwide Biweekly's business model, in a nutshell, is to collect mortgage payments from its client-borrowers biweekly and make mortgage payments to the lender on behalf of the borrowers. Mortgage lenders do not allow borrowers to make biweekly payments; however, because Nationwide Biweekly collects 26 mortgage payments per year instead of 12, Nationwide Biweekly can make one additional mortgage payment per year on behalf of each client-borrower. This eventually allows the borrower to pay off the loan sooner.

The problem with Nationwide Biweekly's conduct is twofold. First, the solicitations it mails to borrowers are not in compliance with specific laws designed to protect consumers from being misled into thinking that Nationwide Biweekly is affiliated with the homeowner's mortgage lender; telephonic scripts used by Nationwide Biweekly's customer service representatives reinforce this misconception. Second, Nationwide Biweekly's written solicitations fail to mention the hefty fee, automatically debited from the borrower's bank account, that the firm charges for its services; moreover, the employees responding to calls from borrowers are carefully trained to obscure the existence or amount of this fee.

In 2013, in response to local consumer complaints and to enforcement actions in other jurisdictions, Deputy District Attorney Andres H. Perez of the Marin County, California, District Attorney's Office and Deputy District Attorney John F. Hubanks of the Monterey County, California, District Attorney's Office began investigating Nationwide Biweekly.

Mr. Perez and Mr. Hubanks determined that Nationwide Biweekly's solicitations violate California Business & Professions Code section 14700 *et seq.*, constitute unfair and deceptive business practices pursuant to Business & Professions Code section 17200 *et seq.*, involve deceptive

2

advertising as defined by Business & Professions Code section 17500 *et seq.*, and may violate other statutes as well, including Financial Code section 12000 *et seq.* ("the Prorater Law").  For approximately a year they communicated with Nationwide Biweekly's attorneys and principal, Mr. Lipsky, attempting to negotiate a resolution that would enable Nationwide Biweekly to continue doing business in California, while protecting California consumers from Nationwide Biweekly's deceptive practices.  They entered into tolling agreements, and made every effort to work cooperatively with Nationwide Biweekly's representatives.

Eventually, Hubanks and Perez determined that their efforts were unlikely to bear fruit, so they resolved to file a civil enforcement action and informed Nationwide Biweekly's counsel of their intentions.  Nationwide Biweekly responded by filing the instant action and motion for preliminary injunction, strategic preemptive strikes in federal court.

## III. NATIONWIDE BIWEEKLY HAS FAILED TO JOIN THE STATE OF CALIFORNIA, A PARTY "NECESSARY TO THE ACTION" UNDER FEDERAL RULE 19(A)

In seeking to have state statutes declared unconstitutional, Nationwide Biweekly has failed to join an indispensable and necessary party pursuant to FRCP 19.  Neither the State of California nor an officer thereof is named as a defendant, and this is grounds for dismissal.

As set forth in *U.S. v. Bowen* , 172 F.3d 682 (9th Cir. 1999), the Ninth Circuit employs the FRCP Rule 19 three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party:

> First, the court must determine whether the absent party is "necessary:"
>
> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed.R.Civ.P. 19(a).

3

If the absent party is "necessary," the court must determine whether joinder is "feasible." *See* Fed.R.Civ.P. 19(a) & (b). Finally, if joinder is not "feasible," the court must decide whether the absent party is "indispensable," *i.e.*, whether in "equity and good conscience" the action can continue without the party. *See* Fed.R.Civ.P. 19(b) (listing factors for courts to consider).

. . .  **As is evident, Fed.R.Civ.P. 19(a) provides that a party is "necessary" in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action.** ***See Yellowstone County v. Pease,*** **96 F.3d 1169, 1172 (9th Cir. 1996) (citing those two circumstances).** [emphasis added]**.**

*Id.* at 688 .

In interpreting Rule 19, the Ninth Circuit has held, in *E.E.O.C. v. Peabody Western Coal Co.,* 400 F.3d 774, 779 (9th Cir. 2005), that the term "necessary" is "too strong a word" in Rule 19 jurisprudence:

First, the court must determine whether a nonparty should be joined under Rule 19(a). We and other courts use the term "necessary" to describe those "[p]ersons to [b]e [j]oined if [f]easible." Fed.R.Civ.P. 19(a); *see also Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861, 867 n. 5 (9th Cir. 2004) (explaining that the term "necessary" is a "term [ ] of art in Rule 19 jurisprudence"); *Bowen,* 172 F.3d at 688. If understood in its ordinary sense, "necessary" is too strong a word, for it is still possible under Rule 19(b) for the case to proceed without the joinder of the so-called "necessary" absentee. In fact, Rule 19(a) "defines the persons whose joinder in the action is *desirable*" in the interests of just adjudication. Fed.R.Civ.P. 19 Advisory Committee Note (1966) (emphasis added); *see also Bowen,* 172 F.3d at 688. Absentees whom it is desirable to join under Rule 19(a) are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act [.]" *Shields v. Barrow,* 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854).

"In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings. *See McShan v. Sherrill,* 283 F.2d 462, 464 (9th Cir. 1960). The party moving under Rule 12(b)(7) 'bear[s] the burden in producing evidence in support of the motion.'" *Potter v. Blue Shield of California Life and Health Ins. Co.,* No. SACV 14–0837–DOC (ANx), 2014 WL 6910498, at *4 (C.D. Cal. Nov. 26, 2014) (citations omitted).

Here, under Rule 19, complete relief is not possible without the presence of the State of California, and dismissal is warranted.  Specifically, Nationwide Biweekly's *in personam*

4

jurisdiction over Deputy D.A.s Hubanks and Perez will have no effect upon the statute's application by other prosecutors in the State (not even over prosecutors in their same offices).  Similarly, even if the counties were proper parties to the action (which they are not as explained in Section IV, below), Nationwide Biweekly's *in personam* jurisdiction over the County of Marin and County of Monterey will have no binding effect upon the statute's application by the other 56 counties in the State of California.  *See Gregory v. Stetson*, 133 U.S. 579, 587 (1890); *Chicago, M., St. P. & P. R. Co. v. Adams County*, 72 F.2d 816, 819 (9th Cir. 1934); *Brown v. American National* Bank, 197 F.2d 911, 914 (10th Cir. 1952)("Judgment may not be entered with binding effect against one not actually or constructively before the court.")

Accordingly, Nationwide Biweekly's challenge does not grant Nationwide Biweekly the relief they seek: continuing to mail their solicitations, as written, without threat of prosecution.  For all intents and purposes, the relief requested, if granted, would have no effect beyond the actual parties to this litigation.  Only a successful challenge against the State of California could insulate Nationwide Biweekly from future prosecution.

*McKay v. Federspiel*, No. 14–cv–10252, 2014 WL 1400091, at *8 (E.D. Mich. Apr. 10, 2014) is distinguishable from the case at bar, but instructive.  In *McKay*, the defendants unsuccessfully argued that the case could not proceed without joinder of the State of Michigan.  The case involved an action, based on the First Amendment, for injunctive and declaratory relief, prohibiting the County Sheriff's Department from enforcing an Electronics Ban Order issued by the Chief Judges of the County Courts.  In reviewing the joinder issue, the District Court held, "In this case, meaningful relief for [the plaintiff] would consist of a declaratory judgment that the Electronics Ban Order is unconstitutional and an injunction prohibiting its enforcement."  *Id.* at *8.  But, that case is different from the one at bar: in *McKay* an order enjoining the Sheriff's Department could actually provide the plaintiff with the relief he requested: use of his cell phone in the government facilities *in that county*, unimpeded by the threat of the County Sheriff's Department enforcing the terms of the Chief Justices' Order.  That is meaningful relief.

5

Here, in contrast, Nationwide Biweekly can only obtain very circumscribed relief: an order over Deputy D.A.s Hubanks and Perez (or even orders against the two County D.A. Offices) will have no effect upon the statute's application by other prosecutors in the State.

Further, Rule 19(a) "defines the persons whose joinder in the action is *desirable*" in the interests of just adjudication.  Fed.R.Civ.P. 19 Advisory Committee Note (1966) (emphasis added)." Here, in the interests of just adjudication it is "desirable" to join the State of California because the State of California not only has an interest in defending its statutes but in having uniform administration of the law throughout the State.  A judgment against one or two prosecutors, in their individual capacities, or even against two relatively small counties (especially where it is less than clear whether Nationwide Biweekly's complaint should be understood as a "facial challenge" or an "as applied challenge") works against that interest in uniformity.

Finally, a balancing of the duty to defend versus the ramifications of such duty weighs strongly against the Deputy D.A.s' participation in the facial challenge[1]  in the absence of the State of California.  Plaintiffs have prayed for attorney's fees in the event they prevail.  Inasmuch as neither the individual Deputy D.A.s, nor the Counties, have an interest in the outcome of the facial challenge, all Defendants in this case should be spared the burden of defending the suit: it is unfair to saddle Marin and Monterey Counties with the entire cost of defending a statutory scheme that applies statewide.

## IV.   THE COUNTIES (A.K.A. DISTRICT ATTORNEY'S OFFICES) ARE IMPROPER PARTIES BECAUSE THE PROSECUTORIAL CONDUCT AT ISSUE WAS DONE ON BEHALF OF THE STATE.

---

[1] Plaintiffs' complaint requests a declaration that Defendants' "threatened enforcement of California Business & Professions Code §§ 14701(a) and 14702 is unconstitutional …".  ECF No.1, at 9.  Because the "threatened enforcement" at issue in this case is the *only possible application* of very specific consumer protection laws regulating solicitations for financial services related to home loans, Plaintiffs present a facial challenge.  While Plaintiffs use the phrase "as applied" at various places in their complaint, it doesn't change the true nature of the case: a wholesale, across-the-board attack on these very specific consumer protection laws.  As stated in Richard H. Fallon Jr.,Fact and Fiction About Facial Challenges, 99 Cal. L. Rev. 915 (2011) (citing *Sabri v. United States,* 541 U.S. 600, 609 (2004))(additional citations omitted), "Courts and commentators have tended to adopt a definition of facial challenges as ones seeking to have a statute declared unconstitutional in all possible applications."

6

---

The Counties of Monterey and Marin (a.k.a the District Attorney's Offices) are improper parties because the "prosecutorial conduct" at issue is not attributable to the County.  While not clearly alleged by Nationwide Biweekly, the prosecutorial conduct at issue is either allegedly attributable to the District Attorney's Offices acting as *state offices* or the Deputy D.A.s acting as *state officials*, but not the County.

In *Weiner v. County of San Diego*, 210 F.3d 1025 (9th Cir. 2000), an individual brought a §1983 action against the district attorney for alleged wrongful prosecution and defamation following his acquittal of murder charges.  In the dismissal motion, the district attorney contended that he acted as a state rather than as a county official in deciding to proceed with the criminal prosecution of the accused following the granting of a new trial. The Ninth Circuit affirmed the dismissal in the civil case.

In *Weiner*, the civil plaintiff was tried and convicted of murder in state court. But he was granted a new trial. Before the retrial began, the district attorney's office allegedly hid exculpatory serological data from the civil plaintiff's criminal defense team. In addition, a new blood test conducted undermined the prosecution's original trial theory. Nonetheless, the district attorney's office continued with the second murder trial, and the jury acquitted the plaintiff.  Responding to a press query following the acquittal, the prosecutor stated, "This just proves that cases, unlike fine wine, get worse rather than better, with age." *Weiner,* 210 F.3d at 1027. The plaintiff then sued in federal court. He claimed that he was wrongfully prosecuted and defamed.

In deciding whether the district attorney acted as a county official or as a state official the Ninth Circuit concluded at page 1031:

> All relevant California cases, including *Pitts,* have held that district attorneys are state officers for the purpose of investigating and proceeding with criminal prosecutions. In 1894, the California Supreme Court held that the district attorney is "the law officer of the county and the public prosecutor" and that "[w]hile, in the former capacity, he represents the county, and is largely subordinate to and under the control of the board of supervisors, he is not so in the latter. In the prosecution of criminal cases he acts by the authority and in the name of the people of the state." *Modoc County v. Spencer,* 103 Cal. 498, 37 P. 483, 484 (1894); *see also Graham v. Municipal Court,* 123 Cal.App.3d 1018, 177 Cal.Rptr. 172, 174 (1981) ("A county district attorney prosecuting a criminal action within a county, acts as a state officer exercising ultimately powers which may not be abridged by a county board of supervisors."). ¶ We conclude that a California district attorney is a state officer when deciding whether to prosecute an individual.

7

Therefore, a California district attorney is a state officer when acting "by the authority an in the name of the people of the state." *Id*. at 1031.  That is where the line is drawn.  Here, while the actions at issue do not involve a threatened criminal prosecution (a civil action is threatened), the action would still be brought "in the name of the people of the state."  In that regard, the prosecutorial conduct at issue is either allegedly attributable to the District Attorney's Offices acting as *state offices* or the Deputy D.A.s acting as *state officials*, but not the County.

Because the consumer protection action at issue is not attributable to the County, no declaratory or injunctive relief is appropriate as to the County.  Standing as an analogous and similar case, in  *Neri v. County of Stanislaus Dist. Attorney's Office*,  No. 1:10–CV–823 AWI GSA, 2010 WL 3582575, at *8 -9  (E.D. Cal. Sept. 9, 2010), the Court dismissed the County as a Defendant after finding that "because the conduct at issue was done on behalf of the state … [and,] [r]elatedly, because the 'Brady List conduct' at issue is not attributable to the County, no declaratory or injunctive relief is appropriate as to the County.")

On the other hand, with regard to the individual Deputy District Attorneys sued in their official capacities, it must be conceded that prospective relief is permitted under section 1983, even where the Deputy District Attorneys are determined to be acting as state officials.  But, as previously stated, Nationwide Biweekly can only obtain very circumscribed relief: an order over Deputy D.A.s Hubanks and Perez will have no effect upon the statute's application by other prosecutors in the State, making the State an indispensable party to this action.

## V.  UNDER THE PRUDENTIAL RIPENESS FACTOR OF "HARDSHIP TO THE PARTIES OF WITHHOLDING COURT CONSIDERATION," NATIONWIDE BIWEEKLY'S PRE-ENFORCEMENT CHALLENGE FAILS.

Nationwide Biweekly's pre-enforcement challenge to the District Attorneys' enforcement action should not be considered because it is not prudentially ripe.

In *Simmonds v. I.N.S.*,  326 F.3d 351 (2d Cir. 2003), the Court of Appeals examined the scope of the prudential ripeness inquiry:

> [W]hen a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not

8

1
2
3
4
5
6
7
8
9

> have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III. Of course, in deciding whether 'better' means later, the court must consider the likelihood that some of the parties will be made worse off on account of the delay. But that, and its degree, is just one—albeit important—factor the court must consider. Prudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.   See Alexander M. Bickel, <u>The Supreme Court 1960 Term Foreword: The Passive Virtues,</u> 75 Harv. L.Rev. 40, 58–64 (1961).

10 | *Id.* at 357.

11 |     With regard to the type of case at bar, a "pre-enforcement action" involving constitutional

12 | rights, a number of federal courts have declined to invoke the prudential ripeness doctrine.  But,

13 | those cases are distinguishable and instructive because they involve *significantly more onerous*

14 | *present consequences* than those alleged by Nationwide Biweekly.

15 |     For example, in *Abbott Laboratories*, the plaintiff was required to immediately expend large

16 | amounts of money to modify drug labels in compliance with the challenged regulation. *Abbott*

17 | *Laboratories v. Gardner*, 387 U.S. 136, 153 (1967). Here, Nationwide Biweekly has not alleged any

18 | similar requirement. To the contrary, compliance in this case appears, at most, to involve minimal

19 | word processing changes to Nationwide Biweekly's printed solicitations to homeowners.

20 |     Further, in several other cases where hardship was found, the plaintiffs were subject to

21 | criminal prosecution. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 872 (1997) (noting stigma that

22 | accompanies a criminal prosecution); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (standing found

23 | where plaintiffs subject to threat of criminal prosecution); *Perez v. Ledesma*, 401 U.S. 82, 119

24 | (1971) (raising constitutional defenses at criminal trial is inadequate); *Dombrowski v. Pfister*, 380

25 | U.S. 479, 486 (1965) (threat of criminal prosecution is substantial deterrent). A threat of criminal

26 | prosecution, with its stigma and potential penalties, poses a greater hardship on an individual or

27 | business than an action for civil penalties for an advertising violation.   Here, no criminal

28 | prosecution has been threatened.  Instead, the communication from Monterey County Deputy

9

1    District Attorney Hubanks to attorney Kim Manolius of Hanson Bridgett threatened a *civil* suit: "Our

2    offices are done with the games … [p]lease advise if you are still authorized to accept service of

3    process on behalf of Mr. Lipsky and Nationwide."  ECF No. 6, at Ex. F.

4         As another distinguishable example, the practical harm in the present case is distinguishable

5    from the practical harm considered in the recent Court of Appeals decision in *Kiser v. Reitz*, 765

6    F.3d 601, 609-610 (6th Cir. 2014), where the Court of Appeals held that a dentist's pre-enforcement

7    First Amendment action was not barred for lack of prudential ripeness "merely because [the

8    enforcement action] was not accompanied by a threat of criminal sanctions."  There, the court

9    focused on the present consequences to the dentist, finding, "the Board is empowered to suspend or

10   revoke Kiser's license to practice dentistry in the State of Ohio … and thus Kiser faces a threat to his

11   livelihood should he persist in flouting the Board's [advertising] regulations [that mandate that a

12   "specialist" cannot also advertise as having a "general practice"]."  *Id.*

13        Here, there is no present "threat to the livelihood" of Nationwide Biweekly's business that

14   compares to the threat of license revocation faced by the dentist in *Kiser.*  While Mr. Lipsky has

15   taken the position that a civil enforcement action "could destroy [their] entire business," the specific

16   facts underlying that position are not convincing.  ECF No. 6, at 5.  Specifically, Mr. Lipsky alleges

17   that four harms could result from the filing of a civil enforcement action: (1) Nationwide will

18   experience an immediate rate-cut with the Better Business Bureau, losing their "A+ Rating"; (2) an

19   enforcement action would "jeopardize" Nationwide's banking relationships; (3) the action would

20   trigger reporting requirements in other States, and "may result" in suspension/revocation in those

21   states, based on the allegations alone; and (4) because customers "trust government regulators"

22   refunds may be demanded.  ECF No 6 at ¶¶ 14-15.  These projections are highly speculative and

23   attenuated, unlike revocation of a license.  Moreover, the only evidence proffered to support the

24   anticipated consequences is Mr. Lipsky's declaration.  Unless Mr. Lipsky or his companies have,

25   indeed, been subjected to a previous California civil enforcement action, he lacks personal

26   knowledge regarding the effects of such an action.  On this topic the declaration is nothing more than

27   conjecture and hearsay.

28

10

1    Further, although government actions are factored into the grades set forth by the Better

2  Business Bureau, under their grading system, "government action" can only result in a maximum

3  point reduction of 30 points. *See Exhibit A to Defendant's Joint Request for Judicial Notice In*

4  *Support of Opposition to Motion for Preliminary Injunction and In Support of Motion to Dismiss*. It

5  states that "government actions against the business that relate to its marketplace activities and, *in*

6  *BBB's opinion*, raise questions about the business' ethics or its reliability in providing products/services."

7  *Id.* In other words, a point reduction for "government action" is not automatic under this system.

8  Accordingly, such harm is purely speculative.

9    Also, numerous other government actions have already been taken against Nationwide

10  Biweekly in other jurisdictions.  Moreover, Nationwide Biweekly has already entered into Consent

11  Orders with government enforcement agencies, for admitted advertising violations. These include a

12  2010 Stipulation to settle an Ohio action, a 2011 Consent Order to settle a New Hampshire action, a

13  2012 consent Order to settle a Georgia action, and a 2013 Consent Order to settle a Washington

14  Action.  Moreover, Nationwide Biweekly has, in the past, *expressly admitted an advertising*

15  *violation* in the Georgia Consent Order, making their public record of compliance with consumer

16  protection laws less than untarnished at this point in time.  (Copies of the Consent Orders are

17  attached to *the Declaration of John Hubanks as Exhibits C, D, E, and G,* and Defendants have

18  requested that the Court take judicial notice of these court documents, in relation to this Motion to

19  Dismiss).  See *Defendant's Joint Request for Judicial Notice In Support of Opposition to Motion for*

20  *Preliminary Injunction and In Support of Motion to Dismiss.*  These documents show that actions

21  have been brought, they have settled, and Nationwide Biweekly has continued operating.

22    In short, while withholding court consideration of Nationwide Biweekly's pre-enforcement

23  challenge may "make life harder[2]" for Nationwide Biweekly, it would not impose "hardship of a

24  legal kind" -- as defined by federal case-law applying the ripeness doctrine -- on them.

25

26

27    _____

    [2] The Ninth Circuit, ruling on a pre-enforcement suit filed by physicians against the Department of Health and
28  Human Services, held that "hardship in this context 'does not mean just anything that makes life harder; it means
    hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff.'" *Colwell v.
    Department of Health and Human Services,* 558 F.3d 1112, 1128 (9th Cir. 2009) citing *Natural Res. Def. Council v.
    Abraham,* 388 F.3d 701, 706 (9th Cir. 2004).

11

1    **VI. THE *PULLMAN* FACTORS MILITATE IN FAVOR OF ABSTENTION.**

2         Using the First Amendment and the California Constitution as swords rather than shields,

3    Nationwide Biweekly challenges the application of Business and Professions Code section 14700 *et*

4    *seq.* to their conduct and their solicitations.  They also contend their conduct and communications do

5    not deceive consumers, so it would infringe on their free speech rights to enforce California's unfair

6    or deceptive business practices statutes, Business and Professions Code sections 17200 *et seq.*

7    (unfair competition) and 17500 *et seq.*(false or misleading advertising), against them.

8         No California court has applied section 14700 *et seq.*in a reported case.  As Nationwide

9    Biweekly emphasizes in their Complaint and preliminary injunction motion, the Marin and

10   Monterey County District Attorney's Offices are on the verge of filing a civil enforcement action

11   against Nationwide Biweekly.  The enforcement action will be intensely fact-specific, and will

12   accord California courts the opportunity to determine whether California consumer protection

13   statutes apply to Nationwide Biweekly's activities.  Nationwide Biweekly, in turn, will have a full

14   opportunity to litigate their free speech arguments under the First Amendment and the California

15   Constitution.   Accordingly, the factors articulated in *Railroad Comm'n of Texas v. Pullman Co.*, 312

16   U.S. 496 (1941)("*Pullman*") counsel this Court to abstain from intervening in a dispute that

17   implicates important state policies and the interpretation of state consumer protection statutes.

18        Stated simply, the paradigm for *Pullman* abstention occurs where a challenged state statute is

19   susceptible to construction by state courts that would moot, avoid, or modify the federal

20   constitutional question.  *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 510 (1972).  In

21   appropriate cases, therefore, federal courts should abstain from deciding constitutional questions

22   pending determination of the state law at issue by the courts of that state.  *See Colo. River Water*

23   *Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976).  The *Pullman* principles are grounded in

24   conceptions of equity, aimed at avoiding federal-state friction that may be engendered by premature

25   constitutional adjudications of state law by federal courts.  *Moore v. Sims*, 442 U.S. 415, 427 (1979).

26   As stated by the *Pullman* Court: "Few public interests have a higher claim on the discretion of a

27   federal chancellor than the avoidance of needless friction with state policies, whether the policy

28

12

1  relates to the enforcement of the criminal law . . . or the final authority of a state court to interpret

2  doubtful regulatory laws of the state. . . ." *Pullman*, 312 U.S. at 500.[3]

3       Even in cases that "tender[ ] a substantial constitutional issue," *Pullman* abstention serves the

4  interest of judicial economy by eliminating the need for federal interpretation of a state statute

5  without the benefit of an authoritative state court interpretation. *Pullman,* 312 U.S. at 498.  It

6  addresses concerns of comity, which counsel a federal court to refrain from entering into a "sensitive

7  area of [state] social policy . . . unless no alternative to its adjudication is open." *Id.*  Another

8  objective of *Pullman* abstention is to avoid federal constitutional pronouncements arising from a

9  reading of a state statute that is not binding on the state courts and, "may be discredited at any time -

10  - thus essentially rendering the federal-court decision advisory and the litigation underlying it

11  meaningless." *Moore*, 442 U.S. at 428; *Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 11 (1987).

12       The Ninth Circuit has held that *Pullman* abstention is appropriate where:  "(1) the case

13  touches on a sensitive area of social policy upon which the federal courts ought not enter unless no

14  alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a

15  definite ruling on the state issue would terminate the controversy, and (3) the possible determinative

16  issue of state law is uncertain."  *Confederated Salish v. Simonich*,  29 F.3d 1398, 1407 (9th Cir.

17  1994).

18       First, in this case, the Defendants intend to enforce important consumer protection statutes

19  enacted by the California Legislature.  In the case of section 14700 *et seq.*, the California Legislature

20  enacted the statute just ten years ago, to address precisely the kind of deceptive business practices in

21  which Nationwide Biweekly allegedly engages.  Nationwide Biweekly, on the other hand, contends

22  that they are honest businesspeople providing a beneficial service to borrowers.  This is an

23  important, sensitive regulatory area in which California has decided to proscribe certain deleterious

24  conduct.

25       Second, Nationwide Biweekly argues that they are not violating this regulatory scheme.

26  Until California courts interpret Section 14700 *et seq.* and whether and how it applies to Nationwide

27

28  _____
[3] The opinion refers to "doubtful regulatory laws of the state" because the Supreme Court had been asked to decide an equal protection challenge to a Texas Jim Crow law pertaining to African American Pullman train porters and Caucasian Pullman train conductors.

13

1   Biweekly's activities, any determination about whether the statute impinges on Nationwide

2   Biweekly's freedom of speech would be an advisory opinion that could be rendered moot by the

3   decision of a California court. *See Texas v. Synchronal Corp.*, 800 F. Supp. 1456, 1459-1461 (W.D.

4   Tex. 1992)(abstaining pursuant to *Pullman* from deciding case of "threatened enforcement" by

5   Texas attorney general of state cable television consumer protection laws).

6   Third, no reported decisions have applied or interpreted Section 14700 *et seq.*, so "the

7   possible determinative issue of state law is uncertain." *Confederated Salish,* 29 F.3d at 1407.  The

8   case at bar is closely analogous to *Synchronal Corp.*, in which the court emphasized when discussing

9   its decision to abstain that,  "Texas has not only had no opportunity to decide the applicability of the

10  DTPA or FD&C Act to infomercials, but there are no reported cases in Texas discussing those acts

11  applicability to regular television commercials either." *Synchronal Corp.*, 800 F. Supp. at 1461.

12  All of the *Pullman* factors, as articulated by the Ninth Circuit in *Confederated Salish*, militate

13  in favor of abstention by this Court.

14  **VII. EACH OF NATIONWIDE'S CAUSES OF ACTION FAILS AS A MATTER OF LAW.**

15      **A.  Nationwide Biweekly's Complaint Is Subject To Dismissal, Without Leave to
         Amend, Under Federal Rules of Civil Procedure, Rule 12(b)(6)**
16

17  The purpose of FRCP Rule 12(b)(6) is to permit trial courts to terminate lawsuits that are

18  fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of

19  unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Under

20  Rule 12(b)(6), a claim may be dismissed because of the plaintiff's failure to state a claim upon which

21  relief can be granted. FED. R. CIV. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the

22  lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable

23  legal theory.  *See Johnson v. Riverside Healthcare System*, 534 F.3d 1116, 1121 (9th Cir. 2008);

24  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).

25  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not

26  suffice to prevent a motion to dismiss." 2-12 Moore's Federal Practice – Civil § 12.34 (citing in part

27  *Anderson v. Clow,* 89 F.3d 1399, 1403 (9th Cir. 1996) (conclusory allegations of law and

28  unwarranted inferences are insufficient to defeat motion to dismiss for failure to state claim); *Epstein

    v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). "While facts must be accepted as

14

alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." 2-12 Moore's Federal Practice – Civil § 12.34 (citations omitted.)

Here, Nationwide Biweekly does not plead facts giving rise to a cognizable legal theory against any Defendant.  Despite references to violations of First Amendment rights under the U.S. and California Constitutions, Plaintiff does not plead facts that would support any cognizable legal theory. Courts "are not bound to accept as true a *legal conclusion* couched as a factual allegation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (emphasis added).

Further, "leave to amend may be denied … if amendment of the complaint would be futile…If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

As discussed below, plaintiffs' complaint fails to state facts sufficient to state each of the claims asserted.  Amendment is futile and dismissal should be granted without leave to amend. Argument and authorities on these points follow.

**B. Nationwide's "First Cause of Action" Under Section 1983 Fails as A Matter of Law as to All Defendants**

> **1.  Nationwide has Not Complained that the Alleged Unconstitutional Conduct is the Result of an Official Policy, Pattern, or Practice.**

County of Marin and County of Monterey Defendants (a.k.a. District Attorneys' Offices)

As previously discussed in Section III, above, the Counties (a.k.a. District Attorney's Offices) are improper parties because the prosecutorial conduct at issue was done on behalf of the state. *Weiner v. County of San Diego*, 210 F.3d 1025 (9th Cir. 2000).

Even if the Counties were proper parties, "A municipality cannot be held liable under § 1983 on a respondeat superior theory.  *Monell v. Department of Soc. Svcs.*, 436 U.S. 658, 691 (1978); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010).)  Local governing bodies can be sued directly under § 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern, or practice.  *Id.* at 690.  "[A] municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation."  *City of Canton v.*

15

1   *Harris*, 489 U.S. 378, 389 (1988). "[A] plaintiff must show that the municipal action was taken with

2   the requisite degree of culpability and must demonstrate a direct causal link between the municipal

3   action and the deprivation of federal rights." *Board of the County Commissioners of Bryan County*

4   *v. Brown*, 520 U.S. 397, 404 (1996); *City of Canton*, 489 U.S. at 389 (1988).

5       The Ninth Circuit in *Azul-Pacifico, Inc. v. City of Los Angeles,* 973 F.2d 704, 705 (9th Cir.

6   1992), *cert. denied,* 506 U.S. 1081 (1993), held that a "[p]laintiff has no cause of action directly

7   under the United States Constitution.... [A] litigant complaining of a violation of a constitutional

8   right must utilize 42 U.S.C. § 1983." Here, Nationwide Biweekly's causes of action for

9   constitutional violations are asserted under Section 1983 and, therefore, are subject to the

10  requirements of that statute.[4]  Because Nationwide Biweeekly presents a claim for prospective relief,

11  a fine point of Section 1983 law becomes relevant: deciding a circuit split in 2010, the Supreme

12  Court held that, "*Monell*'s holding applies to § 1983 claims against municipalities for prospective

13  relief as well as to claims for damages . . . [t]o find the requirement inapplicable where prospective

14  relief is at issue would undermine *Monell*'s logic. For whether an action or omission is a

15  municipality's 'own' has to do with the nature of the action or omission, not with the nature of the

16  relief that is later sought in court." *Los Angeles County v. Humphries*, 562 U.S. 29, 131 S.Ct. 447,

17  448 (2010).

18      The Supreme Court decision in *Humphries* has subsequently been applied in the first

19  amendment context by other courts.  For example, in *Prison Legal News v. Columbia County*, the

20  District Court applied *Humphries* to an action seeking to enjoin the County Jail from restricting all

21  incoming and outgoing inmate personal mail to postcards only, holding that the policy violated the

22  First Amendment.  While the injunction was granted in that case, the decision made it clear that the

23  existence of an actual policy was an important threshold determination: "Whether Defendants had a

24  policy prohibiting magazines or whether Jail staff simply failed to deliver magazines in practice is

25

26  ───────────────
    [4] To the extent Nationwide Biweekly asserts causes of action for constitutional violations *directly* under the U.S.
    Constitution; i.e., not under the umbrella of 42 U.S.C. § 1983, Nationwide Biweekly claims fail as a matter of law and

27  therefore it cannot demonstrate a likelihood of success on the merits.  This rule holds true in cases where Nationwide
    Biweekly seeks declaratory or injunctive relief for a violation of the United States Constitution.  *See Jenkins v.*

28  *Washington*, No. C11-1376-JCC, 2014 WL 4269446, at *2-3 (W.D. Wash. Aug. 29, 2014)("recognizing that claims for
    declaratory and injunctive relief against application of state law on constitutional grounds, even though not expressly
    pleaded under § 1983, are required to be brought under that provision."

16

1   important in establishing Defendants' liability under 42 U.S.C. § 1983. A municipality, such as

2   Columbia County, the CCSO, and Sheriff Dickerson in his official capacity, 'may not be sued under

3   § 1983 for an injury inflicted solely by its employees or agents.' … An 'official-capacity suit is, in

4   all respects other than name, to be treated as a suit against the entity [citations omitted]'." *Prison*

5   *Legal News v. Columbia County*, 942 F.Supp.2d 1068, 1088 (D. Or. 2013).

6         Here, Nationwide Biweekly's complaint fails to state a valid *Monell* claim against the

7   Counties (sued as the Marin and Monterey County District Attorney's Offices) because Nationwide

8   Biweekly fails to allege that the purported unconstitutional conduct is the result of an official policy,

9   pattern, or practice.  Quite the opposite, the complaint focuses on the *particular stances* of the two

10   Deputy District Attorneys: "Because the District Attorneys are threatening the unconstitutional

11   application of the Statute against Nationwide [Biweekly] for using public information in a truthful,

12   non-misleading manner to offer a valuable service to consumers, and because the District Attorneys

13   refuse to acknowledge that Nationwide [Biweekly]'s use of lender's names for the purpose of

14   comparing its biweekly program to the typical lender's monthly mortgage repayment plan, and,

15   independently, qualifies as a nominative fair use of the lenders' names, Nationwide [Biweekly] now

16   brings this action for declaratory and injunctive relief."  ECF No. 1, at 6-7.  As the gravamen of the

17   complaint is an attack on the particular stances of these two Deputy District Attorneys, it fails to

18   state a claim for declaratory relief under *Monell.*  ECF No. 21, at 5.

19   <u>The Individual Deputy District Attorneys in their Official Capacities</u>

20         Moreover, while Nationwide Biweekly could, in theory, maintain a lawsuit against the

21   individual Deputy District Attorneys in their official capacity for prospective injunctive relief under

22   Section 1983, Nationwide Biweekly must, just as with a governmental entity defendant, allege that a

23   policy or custom caused the constitutional injury.  Without such an allegation, Nationwide

24   Biweekly's official capacity claims must also be dismissed, as a matter of law.  *Valencia v. Ryan*,

25   No. CV 14-1359-PHX-DGC (MEA), 2014 WL 4541482 (D. Ariz. Sept. 12, 2014) cites the relevant

26   authority for this point of law:

27

28              Plaintiff may maintain a lawsuit against ADOC employees in their official capacity
                 for prospective injunctive relief. … **However, "in an official-capacity suit the**

17

**entity's 'policy or custom' must have played a part in the violation of federal law."** … A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury.

*Id.* at *5 (citations omitted).

> **2. Even if Nationwide Biweekly were to satisfy *Monell* Pleading requirements, because the speech at issue is "commercial speech", Nationwide Biweekly's challenge fails, as a matter of law, to allege a free speech violation.**

The Speech at Issue is Commercial Speech.

Nationwide Biweekly does not dispute that the speech at issue is commercial speech.  (*See* Complaint at p. 1, Nationwide Biweekly identifies statements at issue as "truthful, non-misleading commercial speech.")  The Supreme Court defines "commercial speech" as "expression related solely to the economic interests of the speaker and its audience" that does "no more than propose a commercial transaction." *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976).

Nationwide Biweekly Fails to State a Cognizable Claim that the Disclosure Requirement Violates the First Amendment.

Nationwide Biweekly challenges the disclosure requirements set forth in California Business & Professions Code Section 14700 *et seq.* (the "Statute") on free speech grounds.  Because the Statute compels disclosure of purely factual, commercial information, it is subject to rational-basis review under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of* Ohio, 471 U.S. 626 (1985).  Under that standard, the Complaint fails to state a cognizable claim for relief.

Although commercial speech is protected speech, the Supreme Court has recognized that a state regulation that requires disclosures that target misleading or deceptive commercial speech must only be "reasonably related to the State's interest in preventing deception of consumers."  *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). The California Supreme Court has also applied this standard.  *Beeman v. Anthem Prescription Mgmt., LLC,* 315 P.3d 71 (Cal. 2013), the court found that "[l]aws requiring a commercial speaker to make purely factual disclosures related to its business affairs, whether to prevent deception or simply

18

to promote informational transparency, have a 'purpose ... consistent with the reasons for according constitutional protection to commercial speech.'" *Id.* at 89 (citations omitted).  The court therefore held that "[b]ecause such laws facilitate rather than impede the 'free flow of commercial information'… they do not warrant intermediate scrutiny" and "[i]nstead , we hold that rational basis review is the proper standard for evaluating such laws under California's free speech clause." *Id.* Therefore, the *Zauderer* rational-basis review is the controlling standard in this case.  *See also United States v. Schiff*, 379 F.3d 621, 630-31 (9th Cir. 2004) (holding that the government could compel website operator to post factual information about potential criminal liability if patrons used website to evade taxes).

Here, the Statutes require solicitations that include the name of a lender or the consumer's loan number to disclose that the entity is "not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender" and, if the loan number is referenced, the solicitation must also disclose that the "consumer's loan information was not provided to that person by that lender."  CAL. BUS. & PROF. CODE § 14701-14702 (West 2014).   The Statutes further provide that this information must be made in "close proximity to … the first and most prominent use" of the information, "including on an envelope or through the envelope window."  *Id.*

The Statutes' legislative history shows that the purpose of these disclosure requirements is to prevent deceptive mailings and to ensure that it is clear to consumers that entities, such as Nationwide Biweekly, were not associated with or affiliated with consumers' the mortgage lenders.[5] *See* Sen. Jud. Com., Analysis of Sen. Bill No. 1150 (2003-2004 Reg. Sess.) April 21, 2014, pages 1-8 at *Exhibit B to Defendants' Joint Request for Judicial Notice*.  The Statutes do not restrict Nationwide Biweekly's commercial speech and require minimal, specific disclosures to ensure consumers are fully informed.

---

[5] Nationwide Biweekly points out in their Motion for Preliminary Injunction that Senate Bill ("SB") 1150 was sponsored by the banking industry.  This does not diminish the need for this legislation.  The basis for SB 1150, as set forth in the legislative history, is the increase in the number of complaints by consumers who were confused by solicitations and advertisements using their lender's name, loan number or loan amount.  Further, California is not the only jurisdiction to enact such a law.  Several other jurisdictions have enacted similar laws in an attempt to curtail consumer confusion.  *See, e.g.,* N.Y. BANKING LAW § 133; ARIZ. REV. STAT. § 44-1799.51; COLO. REV. STAT. § 6-1-1001.

1   Here, Nationwide Biweekly could avoid the disclosure requirements set forth in the Statutes

2   by removing the specific references to the lender's name, loan number or specific loan amount.

3   However, if Nationwide Biweekly chooses to reference the specifics of the consumer's lender and

4   loan information, then the Statute's requirements are triggered.  The disclosure requirements here

5   merely require additional language in the solicitation *if*  Nationwide Biweekly chooses to reference

6   those specific items.  Therefore, the disclosure requirements facilitate, rather than impede, the free

7   flow of commercial information.  Because the disclosure requirements are reasonably related to the

8   State's interest in ensuring that solicitations are not deceptive or misleading, they do not violate the

9   Federal or State Constitutions as a matter of law.

10   To the extent Nationwide Biweekly's complaint attempts to assert that the *Zauderer* rational-

11   basis standard does not apply (by arguing that the *Zauderer* standard only applies when the

12   disclosure requirement is related to the *Nationwide Biweekly's product or services* and that the

13   Statutes here  "protects lenders from even being mentioned in competitive advertising"), Nationwide

14   Biweekly fails to make a true distinction.  ECF No. 5, at 8.  The Statutes at issue in this case require

15   that Nationwide Biweekly states that *their* company is not affiliated with the lender and that

16   Nationwide Biweekly's solicitation is not authorized by the lender.  These are disclosures about

17   Nationwide Biweekly's' services and products and Nationwide Biweekly's associations.  This type

18   of disclosure is exactly the type that falls within the *Zauderer* standard.   There is no requirement

19   that Nationwide Biweekly provide any information about the lender or a lender's practices, and does

20   not prevent Nationwide Biweekly from mentioning the lenders.

21   The Complaint does not allege facts that could possibly support a theory of constitutional

22   injury under the *Zauderer* standard, and therefore fails as a matter of law.

23   The Solicitations are not Excepted From the Disclosure Requirements as a Matter of Law.

24   Nationwide Biweekly sets forth in the Complaint that their solicitation falls under the

25   exception set forth in Business & Professions Code Section 14703.  Nationwide Biweekly is

26   mistaken.

27   Section 14703 provides that a disclosure is not required if use of the lender's name "is

28   *exclusively* part of a comparison of like services or products in which the person clearly and

20

conspicuously identifies itself or that otherwise constitutes nominative fair use."  CAL. BUS. & PROF. CODE § 14703.   Here, Nationwide Biweekly's use of the lender's name is not *exclusively* part of a comparison.  Although a comparison chart may be provided in some of Nationwide Biweekly's solicitations, the lender's name is also shown in the envelope window and within the solicitation, separate from the comparison.  Further, the comparison does not clearly identify that one column is for the current lender's payments versus Nationwide Biweekly's product or service.  Instead it merely references the comparison as the "Current Monthly Payment" versus "new BIWEEKLY option."  This is not a comparison that would fall under the exception set forth in Section 14703. Further, Section 14703 is only an exemption for Section 14701, and does not apply to the use of the consumer's loan number or loan amount, which is governed by Section 14702.

Second, the nominative fair use doctrine is inapplicable.  Nominative fair use is a defense that may be utilized in trademark infringement cases.  *See New Kids on the Block v. News Am. Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).  Here, Nationwide Biweekly is violating state laws that, as explained above, do not impinge on free speech.  Nationwide Biweekly cites no authority for their attempt to invoke the fair use doctrine in this novel and unprecedented context.

Thus, to the extent their Complaint can be viewed as an "as applied" First Amendment challenge, there is no supportable argument that Nationwide Biweekly's solicitations actually fit within one of the exceptions set forth in these statutes.  What remains is an unsupportable facial attack on the statutes themselves, under the *Zauderer* standard (as previously explained).

### C. Nationwide Biweekly's "Second Cause of Action" under the California Constitution Fails As A Matter of Law.

In determining what constitutes commercial speech, the California Supreme Court has not articulated a separate test but instead has used the same standard set forth by the United States Supreme Court.  *See Kasky v. Nike, Inc.*, 45 P.3d 243, 27 Cal.4th 939, 969 (Cal. 2002) (applying the federal test for commercial speech and finding that there is "no need to articular a separate test for commercial speech under the state Constitution").  Here, the speech at issue consists of Nationwide Biweekly's solicitations to consumers related to a service that Nationwide Biweekly provides.  This is classic commercial speech under both the federal and California Constitutions.

21

1

2        Moreover, the Supreme Court of California has held that, in the context of evaluating the

3   propriety of restrictions on commercial speech, "[it is appropriate to] base the analysis [of the merits

4   of the claim itself] equally on [the California Constitution], although throughout this opinion we will

5   refer to the First Amendment to the United States Constitution  . . ."  *Leoni v. State Bar*, 704 P.2d

6   183, 39 Cal.3d 609, 614 fn. 2 (Cal. 1985).

7        Thus, as the scope of protections of commercial speech under both Constitutions is identical,

8   because there is no cognizable First Amendment violation in this case as a matter of law (as

9   explained in Section VII, above), there cannot be a violation of the California Constitution.

10

11          **D. Nationwide Biweekly's "Third Cause of Action" for "Declaratory Relief" Fails to**
            **Serve as an Independent Source of Federal Question Jurisdiction.**

12   <u>Declaratory Relief, Where Relief Requested Involves a Remedy for a *Federal Claim*</u>

13        As set forth above, Nationwide Biweekly fails to establish a viable federal claim against any

14   defendant in this case.  Thus, while Plaintiff's complaint identifies a cause of action for "declaratory

15   relief" (ECF  No. 1, at 8), that cause of action cannot serve as an independent source of federal

16   question jurisdiction.  *See Harris Const. Co., Inc. v. Tulare Local Healthcare Dist.*, No. CV F13-

17   1675 LJO SAB, 2013 WL 6576034, at *3 (E.D. Cal. Dec. 13, 2013), "The injunctive and declaratory

18   relief claims are derivative of a viable federal question claim [under the First Amendment] and not

19   an independent source of federal question jurisdiction. A "request for injunctive relief by itself does

20   not state a cause of action and is properly raised as a separate motion." *Mbaba v. Indymac Federal*

21   *Bank F.S.B.*, No. 1:09-CV-OWW-GSA, 2010 WL 424363, at *4 (E.D. Cal. Jan. 27, 2010) (citing

22   *Shamsian v. Atl. Richfield Co.*, 107 Cal.App.4th 967, 984–85 (2d Dist. 2003). "An injunction is a

23   remedy, not a separate claim or cause of action. A pleading can ... request injunctive relief in

24   connection with a substantive claim, but a separately pled claim or cause of action for injunctive

25   relief is inappropriate." *Jensen v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal.

26   2010).

27   ///

28   ///

     ///

                                          22

---

1    <u>Declaratory Relief, Where Relief Requested Involves a Remedy for a State Law Claim</u>

2         To the extent Nationwide Biweekly's "Third Cause of Action" for "Declaratory Relief" asks

3    this Court to remedy a state law controversy (whether under the California Constitution, or the

4    California Business and Professions Code), any viable state law cause of action to support such a

5    remedy would not serve as an independent source of federal question jurisdiction.

6    **VII. CONCLUSION**

7         Because this suit is (1) lacking in prudential ripeness; and (2) the appropriate subject of

8    dismissal under *Pullman* abstention, this Court should decline to exercise subject matter jurisdiction.

9    FED. R. CIV. P. 12(b)(1).

10        Moreover, each of Nationwide Biweekly's Causes of Action should be dismissed as they do

11   not state a cognizable claim for which relief can be granted, as each claim fails as a matter of law.

12   (FED. R. CIV. P. 12(b)(6)).  Consequently, because the declaratory relief "cause of action" is only

13   derivative of a viable Federal claim and does not support subject-matter jurisdiction, the declaratory

14   relief "cause of action" must be dismissed.  FED. R. CIV. P. 12(b)(1).

15        Further grounds for dismissal are that (1) Nationwide Biweekly has failed to join a necessary

16   party, The State of California; and (2) identifies improper parties for this action.  FED. R. CIV. P.

17   12(b)(7).

18        Defendants respectfully request that this Court grant its Motion to Dismiss, without leave to

19   amend.

20

21

22    Dated:  December 30, 2014.            CHARLES J. McKEE, COUNTY COUNSEL

23
                                           By:    **_/s/  William Litt_**
24                                                WILLIAM M. LITT
                                                  Deputy County Counsel
25                                                Attorneys for Defendants JOHN F. HUBANKS
                                                  and  the COUNTY OF MONTEREY
26

27
///
28

                                           23

1

2

Dated:  December 30, 2014.          STEVEN M. WOODSIDE, COUNTY COUNSEL

3

4                                      By:     _/s/  **Brian Case**_____
                                              BRIAN C. CASE
                                              Deputy County Counsel
5                                              Attorneys for Defendants Andres H. Perez and
                                              the COUNTY OF MARIN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24