CHARLES J. McKEE (SBN 152458)
County Counsel
WILLIAM M. LITT (SBN 166614)
Deputy County Counsel
OFFICE OF THE MONTEREY COUNTY COUNSEL
168 W. Alisal Street, Third Floor
Salinas, CA  93901-2439
Telephone:  (831) 755-5045
Facsimile:  (831) 755-5283
Email: littwm@co.monterey.ca.us

Attorneys for Defendants, JOHN F. HUBANKS,
COUNTY OF MONTEREY, MONTEREY COUNTY
DISTRICT ATTORNEY'S OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual,<br><br>                    Plaintiffs,<br>vs.<br><br>JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency,<br><br>                    Defendants. | Case No: 5:14-CV-04420-LHK<br><br>**DECLARATION OF MONTEREY COUNTY DEPUTY DISTRICT ATTORNEY JOHN F. HUBANKS** |

1

*Nationwide v. John F. Hubanks, et al.*                                                                                  CASE NO. 5:14-CV-04420-LHK
Declaration of John F. Hubanks

I, JOHN F. HUBANKS, declare:

1.   I am a Deputy District Attorney with the Monterey County District Attorney's ("District Attorney") Office and a named Defendant in *Nationwide Biweekly Administration, Inc., Daniel Lipsky, individually v. John F. Hubanks, et. al.* (Case No: 5:14-CV-04420-LHK) If called on to do so, and except as to those matters stated on information and belief which I believe to be true, I would and could competently testify to the following based on my own personal knowledge.

2.   I have been a licensed California attorney since 1992. I have been a prosecutor with the District Attorney since January, 2005. I am assigned to the District Attorney's Consumer Protection & Real Estate Fraud Unit.  My assignment requires the evaluation, investigation and, when appropriate, civil or criminal prosecution of real estate-related fraud. The District Attorney receives fraud referrals from a variety of sources, including consumers, homeowners; local, state or federal law enforcement or public agencies; and the California Attorney General. It is very typical in the investigation or prosecution of real estate fraud complaints to join with other District Attorney offices or California agencies, including the Bureau of Real Estate ("BRE") and the Department of Business Oversight ("DBO"), formerly known as the Department of Corporations.

3.   In March 2013, a Monterey County homeowner complained to the District Attorney's office about unsolicited mailers promoting a mortgage reduction service. The marketing letters, true and correct copies of which are attached hereto as **Exhibits A & B,** contained information about the homeowner's mortgage.

The marketing letter identified as **Exhibit A** describes a service known as a "bi-weekly payment program" which is designed to reduce mortgage principal over time. At the bottom of

2

**Exhibit A**, Nationwide Biweekly Administration, Inc. ("Nationwide") is identified as a "licensed and bonded" company with license "# OHMT29."

On information and belief, the second marketing letter, **Exhibit B**, was received by the homeowner about 7 days after **Exhibit A**.  On information and belief, **Exhibit B** differs from **Exhibit A**, particularly in that it warns the homeowner that "if you waive the biweekly option, you will be asked to confirm that you understand that you are voluntarily waiving the interest savings and loan term reduction achieved with the biweekly option."

4.      Regarding the licensing number identified in both **Exhibits A & B,** I checked with both the BRE and the DBO about whether Nationwide was a licensed entity.  The BRE, and corresponding public records, confirmed that, since 2004, Nationwide had a California broker's license: number 01428771.  The DBO verified that Nationwide did not have a license to act as a pro-rater in California.  Further, the license number identified on both of Nationwide's marketing letter, **Exhibits A & B**, is not a license affiliated with either agency nor is it a California-state license.

5.      After researching Nationwide's licensing status, I obtained copies and summaries of numerous consumer and lender complaints filed against Nationwide, Loan Payment Administration, Inc. and Daniel Lipsky ("Mr. Lipsky") with various entities between 2007 and 2013, including the California Attorney General, the Federal Trade Commission, the Marin County District Attorney, and the Better Business Bureau.  I reviewed the various consumer complaints and found the consumers complained about the following business practices:

A.      The format and content of Nationwide's various marketing letters created the false impression that Nationwide was somehow affiliated with or related to the consumer's particular lender or that the biweekly payment program was being offered by the lender;

3

*Nationwide v. John F. Hubanks, et al.*                                                            CASE NO. 5:14-CV-04420-LHK
Declaration of John F. Hubanks

B.     Homeowners who called the 800 number listed on the marketing letters often believed they were calling their own lender;

C.     Nationwide's sales representatives who answered consumer calls made claims and statements that tended to create the false impression that Nationwide had an affiliation or relationship with the consumer's lender or that the biweekly program was being offered by the lender;

D.     Nationwide's sales representatives misled many homeowners who elected to purchase Nationwide's biweekly payment product about the nature and amount of the fees which Nationwide would ultimately charge and collect;

E.     Nationwide's sales representatives engaged in high pressure sales tactics on the initial call from a consumer designed to get the consumer to enter into a contractual obligation over the phone, including providing Nationwide with access to the consumer's banking account;

F.     Nationwide's failed to make timely or proper mortgage payments on behalf of its clients; and,

G.     Nationwide withdrew monies from client bank accounts either in excess of the contract or without authority.

6.     After reviewing the consumer complaints, on information and belief, I reviewed public records and verified that Nationwide, Loan Payment Administration and Mr. Lipsky have, since 2002, been the subject of numerous enforcement actions:

A.     In September 2002, the State of Illinois' Office of Banks and Real Estate, Bureau of Banks and Trust Companies issued an Order to Cease & Desist (No. 2002-BBTC-70) finding, in part, that Nationwide's solicitation materials violated Illinois law;

B.     In April, 2005, the Ohio Attorney General obtained an "Assurance of Voluntary Compliance" (No. 244238) with Mr. Lipsky intended to ensure that Nationwide's marketing

4

*Nationwide v. John F. Hubanks, et al.*                                           CASE NO. 5:14-CV-04420-LHK
Declaration of John F. Hubanks

materials and disclosures complied with Ohio Law.  Then, on approximately June 9, 2008, the Ohio Attorney General, in response to continued consumer complaints, filed a civil enforcement action (No. 2008 CV 0678) against Nationwide for injunctive relief and penalties.  The Ohio Attorney General alleged that Nationwide's marketing and business practices violated Ohio's Consumer Sales Practices Act, Telephone Solicitation Sales Act and Home Solicitation Sales Act.

C. On approximately February 10, 2010, Nationwide agreed that a stipulated judgment could be entered to resolve the Ohio Attorney General's civil enforcement action, No. 2008 CV 0678.  The  injunction obligated Nationwide to change its solicitation letters, envelopes and sales scripts.  **(Exhibit "C")**

D. In October, 2011, Nationwide entered into a consent order with the State of New Hampshire's Banking Department.  This order required Nationwide to ensure that its advertisements comply with 384:67.  (**Exhibit "D"**).  I am aware of the specific requirements of Section 384:67, as I retrieved a copy of that section from a State of New Hampshire website, also attached at "**Exhibit D.**"

E. In December, 2012, Nationwide entered into a consent order with the State of Georgia's Department of Banking and Finance. This order required Nationwide to comply with the Georgia Residential Mortgage Act, O.C.G.A. Section 7-1-1000 *et. seq.* and not transact business under any names not approved by that Georgia agency. **(Exhibit "E")**

7. On or about August 19, 2013, after conferring with Marin County District Attorney Deputy District Attorney Andy J. Perez, I sent Nationwide and Mr. Lipsky a letter, by certified mail, advising of a joint investigation of Nationwide's marketing and business practices based on complaints about violations of California laws.   A true and correct copy of that letter

5

*Nationwide v. John F. Hubanks, et al.*  CASE NO. 5:14-CV-04420-LHK
Declaration of John F. Hubanks

is attached hereto as **Exhibit "F."**  As is customary in consumer protection investigations, the letter proposed a pre-filing meeting.

8. On or about August 20, 2013, attorney Barbara Bison Jacobsen responded to the District Attorney's letter.  Through email and telephone conversations, I conferred with Ms. Jacobsen about the factual and legal issues under investigation and asked whether  Nationwide and Mr. Lipsky wished to meet with the District Attorney to discuss the issues. She indicated her clients did wish to meet.  Discussions ensued about a venue and date for this meeting, which ultimately occurred on January 9, 2014 at the Marin County District Attorney's offices.  Deputy District Attorney Andy Perez and I were present for that meeting.  Nationwide and Mr. Lipsky were not present, but had their attorneys attend. Those attorneys were Ohio attorney Helen MacMurray, with MacMurray, Petersen & Shuster, LLP, and California attorneys Frank Di Marco and Kimon Manolius, both with Hanson & Bridgett. At the conclusion of the meeting, the attorneys agreed to enter into a Tolling Agreement. In addition, defense counsel agreed to provide Andy Perez and me with documentation and information relevant to our investigation and to engage in settlement communications.

9. After this meeting, Andy Perez and I learned that, on August 21, 2013, the State of Washington's Department of Financial Institutions had filed a civil enforcement action against Nationwide and Mr. Lipsky, individually, based on allegations of deceptive advertising and sales practices, as well as licensing issues. On information and belief, attached hereto as **Exhibit "G"** are true and correct copies of the Consent Agreement and associated Statement of Charges, settling the case.

10. In April 2014, the DBO, which was then conducting a parallel investigation of Nationwide's failure to be licensed as a pro-rater in California, advised me that:  (a) the State of Washington's Department of Financial Institutions had obtained a Consent Agreement with

6

*Nationwide v. John F. Hubanks, et al.*  CASE NO. 5:14-CV-04420-LHK
Declaration of John F. Hubanks

Nationwide and Mr. Lipsky to resolve the enforcement action filed in August 2013, and (b) Nationwide had been enjoined by a Michigan federal court on or about February 7, 2014 in the course of the civil action styled *Quicken Loans, Inc. v. Nationwide Biweekly Administration, Inc. et al.,* Case No. 13-13431.  I obtained and read a copy of Opinion and Order issued by the Honorable Judge Lawrence P. Zatkoff, District Judge for the Eastern District of Michigan, Southern Division.  Judge Zatkoff granted Quicken Loans, Inc.'s Motion for Preliminary Injunction based, in part, on his review of as many as 75 phone calls between Quicken Loans, Inc.'s borrowers and its service representatives, which demonstrated actual customer confusion about the origin and of Nationwide's marketing letters and the affiliation between Nationwide and Quicken Loans, Inc. On information and belief, attached hereto as **Exhibit "H"** is a true and correct copy of that Opinion and Order.

11. The District Attorney, in conjunction with the Marin County District Attorney, continues to investigate Nationwide, Loan Payment Administration and Mr. Lipsky, individually, for engaging in false advertising and illegal business practices in violation of California's Unfair Competition Law, codified at *Business & Professions Code* section 17200.  The District Attorney's investigation and, ultimately, an enforcement action, seek to protect California consumers, obligate Nationwide, Loan Payment Administration and Mr. Lipsky to comply with California's various consumer protection and licensing laws and impose civil penalties and consumer restitution.

12. On information and belief, attached hereto as **Exhibit "I"** are true and correct copies of envelopes utilized by Nationwide Biweekly in 2010 that do not feature the same disclosure as the sample envelope attached to the Declaration of Mr. Lipsky in Support of the Motion for Preliminary Injunction.  Under California Law, the 2010 envelopes are within the Statute of Limitations for an enforcement action.

7

13. I am aware that Nationwide Biweekly charges a "deferred enrollment fee" for its services, charged 6 months after service begins.  The charge is equivalent to one biweekly debit (i.e. half of a homeowner's usual monthly mortgage payment).  I am aware of at least 27 Better Business Bureau ("BBB") complaints filed by California residents between August of 2011 and March of 2014, which take issue with Nationwide Biweekly's advertising practices and/or fee structure.

14. For example, I am aware that, in an August 03, 2011 response to BBB Case #42036571, a representative of Nationwide Biweekly admitted that they charge a "'differed fee' that would be collected in 6 months." It was alleged that Nationwide Biweekly did not properly disclose the fee. (See **Exhibit "J,"** pages 1-4).  The amount in controversy was $1,588.37.

15. As another example, on January 31, 2014, a BBB complaint was filed in which the homeowner wrote, "Neither my wife nor I knew that within the document that was supposedly electronically signed by my wife, there is what is referred to as SET UP FEE, It reads specifically, By signing below, I acknowledge that I agree to a non-refundable deferred set up fee equivalent to one bi-monthly debit and that I currently owe that amount to NBA; and I authorize NBA to collect such amount by deducting it from the amount it collects from my Designated account."  It was alleged that Nationwide Biweekly did not properly disclose the fee.  In this case, the amount in controversy was $2,301.31. (See **Exhibit "J,"** pages 5-6).

16.  I am aware that, as an example of a California complaint documenting actual confusion about whether Nationwide Biweekly is affiliated with the homeowner's lender, one complaint states, "Since I still thought they were affiliated to my mortgage company, I assumed no fees were involved and cooperated with them." (See **Exhibit "J,"** pages 7-13).

**I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 29th day of December, 2014 in Monterey, California.**

By _____/s/_____
    JOHN F. HUBANKS, Deputy D.A.