BRUCE E. H. JOHNSON (State Bar No. 159927)
 brucejohnson@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 3rd Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

THOMAS R. BURKE (State Bar No. 141930)
 thomasburke@dwt.com
NICOLAS A. JAMPOL (State Bar No. 244867)
 nicolasjampol@dwt.com
DIANA PALACIOS (State Bar No. 290923)
 dianapalacios@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency,<br><br>Defendants. | Case No. 14-cv-04420-LHK<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: March 12, 2015<br>Time: 1:30 p.m.<br>Crtrm: Courtroom 8 - 4th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. NATIONWIDE IS LIKELY TO PREVAIL ON ITS CLAIMS. ........................ 2

    A. Enforcement of the Statute is Unconstitutional Under *Central Hudson*. ................ 2

    B. Enforcement of the Statute Is Unconstitutional Under *Zauderer*. ......................... 7

    C. Nationwide is Exempt from Liability Under Both of the Statute's Exceptions. ................................................................................................ 8

    D. The Statute Unconstitutionally Prohibits Republication of Public Information. ................................................................................................ 9

    E. Nationwide Is Likely to Prevail Against the District Attorneys. ......................... 10

    F. Nationwide Is Likely to Prevail Against the District Attorney's Offices. ............ 10

III. NATIONWIDE WILL SUFFER IRREPARABLE HARM. .............................. 12

IV. THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION. ...................... 14

V. THE REQUESTED INJUNCTION IS NOT OVERBROAD. ........................... 15

VI. CONCLUSION .................................................................................................. 15

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION
DWT 25877125v6 0100966-000001

# TABLE OF AUTHORITIES

Page

**Cases**

*Affiliated Hospitals of San Fran. v. Scearce*,
   418 F. Supp. 711 (N.D. Cal. 1976) .................................................................................. 13

*AP v. Otter*,
   682 F.3d 821 (9th Cir. 2012) ............................................................................................. 14

*California ex rel. California Dep't of Toxic Substances Control v. Campbell*,
   138 F.3d 772, 783 (9th Cir. 1998) ..................................................................................... 15

*Central Hudson Gas & Elec. Corp. v. Public Service Commission*,
   447 U.S. 557 (1980) .................................................................................................. 2, 5, 7

*Clark v. Rameker*,
   134 S. Ct. 2242 (2014) ........................................................................................................ 9

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................................................. 5

*Clement v. Cal. Dep't of Corr.*,
   364 F.3d 1148 (9th Cir. 2004) ........................................................................................... 15

*County of Santa Clara v. Superior Court*,
   50 Cal. 4th 35 (2010) ........................................................................................................ 11

*Elrod v. Burns*,
   427 U.S. 347 (1976) .......................................................................................................... 12

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ............................................................................................ 5

*Garcia v. Green Fleet Sys.*,
   2014 U.S. Dist. Lexis 168196 (C.D. Cal. Oct. 10, 2014) .................................................. 3

*Liberty Coins v. Goodman*,
   748 F.3d 682 (6th Cir. 2014) ............................................................................................. 14

*McNabola v. Chicago Transit Auth.*,
   10 F.3d 501 (7th Cir. 1993) ............................................................................................... 11

*Monell v. Department of Social Services*,
   436 U.S. 658 (1978) .......................................................................................................... 10

*New Kids on the Block v. News America Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ............................................................................................... 9

*Odebrecht Construction, Inc. v. Fl. Dep. of Trans.*,
   715 F.3d 1268 (11th Cir. 2013) ............................................................................. 14

*Planned Parenthood of the Blue Ridge v. Camblos*,
   116 F.3d 707 (4th Cir. 1997) ................................................................................. 14

*Rounds v. Clements*,
   495 F. App'x 938, 941 (10th Cir. 2012) ................................................................ 10

*Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*,
   2015 U.S. Dist. Lexis 9195 (C.D. Cal. Jan. 21, 2015) ............................................ 3

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) ................................................................................................ 6

*Safelite Group v. Jepsen*,
   764 F.3d 258 (2d Cir. 2014) .................................................................................... 2

*Sorrell v. IMS Health Inc.*,
   131 S. Ct. 2653 (2011) ............................................................................................ 6

*Tillman v. Miller*,
   133 F.3d 1402 (11th Cir. 1998) .............................................................................. 8

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ........................................................................ 5, 8, 9

*Valencia v. Ryan*,
   2014 WL 4541482 (D. Ariz. Sept. 12, 2014) ....................................................... 10

*Wham-O, Inc. v. Paramount Pictures Corp.*,
   286 F. Supp. 2d 1254 (N.D. Cal. 2003) .................................................................. 9

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ................................................................................................ 10

*Zauderer v. Office of Disc. Counsel*,
   471 U.S. 626 (1985) ............................................................................................ 2, 7

**Statutes**

Cal. Bus. & Prof. Code
   § 14700 *et seq.* ................................................................................................ *passim*
   § 17206 .................................................................................................................. 10

Cal. Gov't Code § 25303 ............................................................................................. 10

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................ 15

**Other Authorities**

William L. Stern, *Bus. & Prof. C. § 17200 Practice* (The Rutter Group 2014) ........................... 11

## I. INTRODUCTION

Plaintiffs Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel S. Lipsky (collectively, "Nationwide") seek a preliminary injunction against the unconstitutional enforcement of California Business & Professions Code § 14700 *et seq.* (the "Statute") by Defendants John F. Hubanks, Andres H. Perez, Monterey County District Attorney's Office, and Marin County District Attorney's Office (collectively, "Defendants"). Nationwide has established that reasonable mortgage borrowers reading the Offer Letter sent to them would understand that Nationwide is not affiliated with their lender, and the numbers bear that out: of the more than *four million* letters sent to California consumers over the past six years, Defendants were able to muster up only a few isolated complaints, including a "complaint" made by the spouse of a deputy district attorney who works in the Monterey County District Attorney's Office with Mr. Hubanks. As described in more detail below, application of the Statute against Nationwide simply cannot pass constitutional muster as a matter of law. Defendants, on the other hand, reargue their Motion to Dismiss (Dkt. # 34), and fail to document any basis-in-fact for their case. They provide only a single declaration by one of the defendants summarizing the results of his investigation, which included a manufactured complaint (that they attempt to pass off as genuine) and a slew of documents he collected (but must not have actually read).

Defendants steadfastly refuse to consider the Statute's two exceptions, which ensure that the Statute comports with the right of free speech guaranteed by the U.S. and California Constitutions, and which exempt Nationwide from liability under the Statute. In their Opposition, Defendants make the telling claim that applying the Statute's nominative fair use exception, which is expressly contained in Business & Professions Code § 14703, would be a "novel and unprecedented" application of the nominative fair use doctrine. Opp. at 15-16. Yet it is Defendants' fundamental misuse of the Statute that has forced Nationwide to seek relief from this Court. Nationwide is not seeking "blanket protection" from an enforcement action, Opp. at 1, only that the Court enjoin Defendants who are openly ignoring or misinterpreting express statutory exceptions and threatening to enforce a statute in a manner that contradicts its intended purpose and would infringe Nationwide's constitutional rights as a matter of law.

Nationwide has established that it has a likelihood of success on its claims against Defendants, that it will suffer irreparable injury without a preliminary injunction, and that the balance of the equities and public interest factors weigh in favor of a preliminary injunction. The evidence that it offers in support of its motion is largely undisputed. Accordingly, Nationwide respectfully requests that the Court grant its Motion for Preliminary Injunction.

## II. NATIONWIDE IS LIKELY TO PREVAIL ON ITS CLAIMS.

### A. Enforcement of the Statute is Unconstitutional Under *Central Hudson*.[1]

While Defendants argue that the Court should analyze the constitutionality of the Statute under *Zauderer v. Office of Disc. Counsel*, 471 U.S. 626 (1985), Mot. at 9-12, that standard applies only to disclosures "about a company's own products or services." *Safelite Group v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014) (applying intermediate scrutiny standard in *Central Hudson Gas & Elec. Corp. v. Public Service Commission*, 447 U.S. 557 (1980)). Defendants argue that "[t]here is no requirement that Nationwide Biweekly provide any information about the lender or a lender's practices." Mot. at 12. This contention is false.

The Statute *does* require that Nationwide provide information about lenders' practices – it *mandates* that Nationwide inform potential customers whether or not a particular lender has "authorized" Nationwide to offer its services in connection with that lender's mortgages. In fact, to expressly reference another company's decision about biweekly programs *by definition* relates to that other company. The Statute-required words "not authorized" create the suggestion that a lender has prohibited Nationwide from administering the biweekly program in connection with that lender, or that Nationwide requires the lender's cooperation to administer the program on behalf of a mortgage borrower (which it does not). Because application of the Statute to Nationwide would compel a disclosure about lenders and their practices in the manner described above, *Central Hudson* – and not *Zauderer* – applies here. And application of the Statute against Nationwide does not survive constitutional scrutiny under *Central Hudson*.

---

[1] Defendants argue that Nationwide's claims under the U.S. and California Constitutions fail for the same reasons. Opp. at 17. Nationwide thus addresses them together.

### 1. A Few "Complaints" Out of Millions of Letters Do Not Establish that the Offer Letters Are Misleading.

Nationwide has mailed over *four million* Offer Letters to new mortgage borrowers in California over the last six years. Supp. Lipsky Decl. ¶ 2, Ex. G. Defendants attempt to establish that these millions of letters are misleading by relying on "copies and summaries" of purported complaints from consumers *and lenders* made to "various entities" during a time period starting eight years ago. Hubanks Decl. ¶ 5. This "evidence" has *multiple* problems and cannot be afforded any weight: (1) Defendants actually submit only *three* of these complaints, instead relying on hearsay to generally describe the purported complaints without any substantiation;[2] (2) they expressly rely on complaints from *lenders*, which are entirely irrelevant to *consumer* deception; and (3) they include complaints from well outside the statutory period (even factoring in the tolling agreement). Defendants also rely heavily on bare speculation, and without documentary evidence claim that homeowners who called Nationwide "often believed they were calling their own lender," or sales representatives engaged in "high pressure sales tactics," or that Nationwide "misled many homeowners … about the nature and amount of fees which Nationwide would ultimately charge and collect," just to name a few. None of these accusations has *any support whatsoever* in the form of *actual evidence*.[3]

---

[2] Of the three complaints actually attached as evidence, one of them states that it was assumed to have been resolved after the consumer did not formally respond to Nationwide's explanation (meaning that the customer likely resolved the dispute directly with Nationwide to the customer's satisfaction). Hubanks Decl., Ex. J, p. 5. And the second complaint was actually withdrawn by the customer because "it was filed in error." *Id.* at 7. At most, Defendants have thus submitted evidence of *one or two genuine complaints by consumers* out of millions of letters sent.

[3] While courts may consider inadmissible evidence in connection with preliminary injunction motions, the Court must accord any such evidence the appropriate weight. *See, e.g., Garcia v. Green Fleet Sys.*, 2014 U.S. Dist. Lexis 168196, at *16 (C.D. Cal. Oct. 10, 2014) (issues pertaining to knowledge and hearsay "properly go to weight, rather than admissibility"). Here, most of the purported complaints referenced by Hubanks are not attached to his declaration, and thus the Court – and Nationwide – have no information about who made the complaints, the context in which they made them, and the substance of the complaints, among other things, and thus they do not have a reasonable opportunity to evaluate or respond to the accuracy or significance of the purported complaints. Accordingly, this evidence should be accorded no weight. *See, e.g., Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 2015 U.S. Dist. Lexis 9195, at *44-45 (C.D. Cal. Jan. 21, 2015) (in preliminary injunction context, according no weight to assertion unsupported by evidence). For these same reasons, the Court should overrule Defendants' objections to the Lipsky Declaration.

A similar lack of evidentiary merit applies to the two envelopes dated from five years ago. Since approximately March 2010, Nationwide's standard practice has been to place an additional disclaimer on the outside of each envelope (which references a particular lender) that Nationwide is not affiliated with the lender. Supp. Lipsky. Decl. ¶ 3. Defendants incorrectly assert that offering a few envelopes from before March 2010 somehow overcomes Nationwide's evidence that the Offer Letters are not misleading, including the *miniscule* number of recipients who have complained about the Offer Letters over the entire relevant time period. *Id.* at ¶ 2. It bears repeating that all envelopes contained *Offer Letters*, which themselves: (1) explain to the consumer that the lender "may not have made you aware of the option to setup a smaller biweekly program payment option for your mortgage loan"; (2) state that "[t]he savings gained from the biweekly program goes entirely to you the customer and not to the lender"; (3) explain that "[a]s always we work for you and not the lender," and that "[p]artnering with you the customer, and not your lender, ensures that you receive 100% of the savings benefit"; and (4) state that Nationwide is "*not affiliated, connected, or associated with, sponsored by or approved* by the lender listed above." (Emphasis in original). Lipsky Decl., Exs. A-D.[4] In sum, there is *nothing* in the Offer Letters that suggests any affiliation with or endorsement by the lender identified in each letter and there is nothing inaccurate or misleading in the Offer Letters. Defendants' sparse "evidence" does not satisfy Defendants' burden of establishing that the Statute is a constitutional restriction on speech.

Most notably, Mr. Hubanks declares that "[i]n March 2013, a Monterey County homeowner complained to the District Attorney's office about unsolicited mailers promoting a mortgage reduction service," and attached the (completely accurate) Offer Letter purportedly received by the homeowner as an exhibit to his declaration. Hubanks Decl. ¶ 3., Ex. A. Using the unredacted information visible in the attached Offer Letter, Nationwide was able to locate the full mailing

---

[4] Defendants claim that the disclaimers on "the envelope and letters were not always included," Opp. at 13, but this is untrue. The undisputed evidence shows that Nationwide has placed a disclaimer on every Offer Letter (which references a particular lender) since at least 2009 and an additional disclaimer on the outside of each envelope (which references a particular lender) since March 2010. *Id.* Defendants state elsewhere that envelopes before 2012 did not contain the disclaimer, Opp. at 16, but this appears to be a mistake – the declaration cited in support of this statement correctly says 2010, not 2012. Hubanks Decl. ¶ 12.

---

4
REPLY ISO MOTION FOR PRELIMINARY INJUNCTION
DWT 25877125v6 0100966-000001

record in its records.  Supp. Lipsky Decl. ¶ 19.  That letter, which Defendants rely on to support their allegation that they have received complaints from Monterey County homeowners, was sent to a mortgage borrower who is married to a deputy district attorney *in the Monterey County District Attorney's Office* (who is also the co-borrower on the loan referenced in the letter).  *Id.*  Not only that, but a person claiming to be the borrower called Nationwide's customer service *from the same phone number as the district attorneys' office in Monterey County* and interrogated Nationwide's representative for over twenty minutes about Nationwide's relationship to lenders, how Nationwide obtained its information about borrowers, and the fees charged to administer the biweekly program, among other things.  *Id.* at ¶ 20, Exs. H-I.  The "borrower," however, did not know his own mortgage rate, the length of his mortgage, or even his own email address.  *Id.*  This brazen attempt to mislead the Court by relying on a manufactured "complaint" apparently made by the spouse of a fellow Monterey County deputy district attorney simply highlights Defendants' lack of genuine evidence against Nationwide.

For Defendants to carry their burden of establishing that the Offer Letters are misleading, and thus not subject to First Amendment protection, they must have more than bare speculation and a few complaints out of millions of letters.  In fact, even if they could demonstrate that *a few* consumers were confused, such confusion would not be *reasonable* because the Offer Letters themselves make it plain that Nationwide is not affiliated with the lender.  *See Farah v. Esquire Magazine*, 736 F.3d 528, 537 (D.C. Cir. 2013) (whether a satirical article was protected by the First Amendment did not depend on "whether some actual readers were misled, *but whether the hypothetical reasonable reader could be* (after time for reflection)") (emphasis added); *Central Hudson*, 447 U.S. at 563 (speech is misleading if it is "more likely to deceive the public than to inform it").  *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) ("a few isolated examples of actual deception are insufficient" in unfair competition context); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176, 1179 (9th Cir. 2010) (in the nominative fair use context, "our focus must be on the 'reasonably prudent consumer' in the marketplace" and that even "momentary uncertainty" is not dispositive).

Defendants have failed to establish that the Offer Letters are misleading. Here, as a matter of law, the reasonable reader would not be confused into thinking that his or her lender sent an offer stating that "we work for you *and not the lender*," and that "[p]artnering with you the customer, *and not your lender*, ensures that you receive 100% of the savings benefit." Lipsky Decl., Exs. A-D (emphases added). Such a reader would also be informed by the express disclosure that Nationwide is "*not affiliated, connected, or associated with, sponsored by or approved* by the lender listed above." *Id.* (emphasis in original). This conclusion is borne out by the data, which shows only a few isolated examples of complaints out of *millions* of Offer Letters delivered.

### 2. Enforcement Against Nationwide Would Not Directly Advance the State's Interest and is More Extensive Than Necessary.

The only state interest Defendants have articulated is preventing consumer deception. Defendants have not satisfied their burden of showing that enforcement of the Statute against Nationwide would advance this interest "in a direct and material way." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995). As applied to Nationwide, this argument fails.

As explained above, Defendants cannot establish that the Offer Letters are misleading to consumers in the first place, and thus enforcement would not advance the State's interest in preventing deception. Defendants also attempt to explain away the U.S. Supreme Court's decision in *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2663 (2011), by claiming that the Statute would not even restrict Nationwide's speech because "Nationwide Biweekly is not prevented from lawfully comparing its services to the lenders, in fact that is expressly permitted in Business & Professions Code Section 14703." Opp. at 14. This is disingenuous. Comparing the benefits of Nationwide's Interest Minimizer program to the standard lender-provided repayment plan is *exactly what Nationwide is doing* and is legally entitled to do as an exercise of their constitutionally protected speech, but Defendants refuse to acknowledge that Section 14703's exceptions apply here, even arguing that the nominative fair use defense – *one of the Statute's two exceptions* – would be a "novel and unprecedented" application. Opp. at 16. Just as in *Sorrell*, applying the Statute to Nationwide without considering the Statute's exceptions would burden "speech with a particular content" by a "disfavored speaker[.]" *Id.* at 2663.

Most importantly, a consumer could only conceivably be confused by the Offer letter if he or she did not actually read any of the multiple statements on the envelope and letter previously discussed. For such a consumer, Defendants still cannot explain how "including additional disclaimers would do anything at all to prevent consumer deception." Mot. at 12. In other words, how does adding more reading content to a letter assist a consumer who does not read the letter? Even assuming Defendants are correct that "homeowners who see the name of their lender on a piece of mail tend to trust that name," Dkt. #34 at 1, even more disclaimers than Nationwide already provides would do nothing to assist a consumer who chooses not to read the Offer Letter. Thus application of the Statute to Nationwide does not directly advance the state interest involved (preventing consumer deception) and would be more extensive than necessary to serve that interest.

### B. Enforcement of the Statute Is Unconstitutional Under *Zauderer*.

Even if the Court does not assess the Statute's constitutionality under *Central Hudson*, it still constitutes an unconstitutional restriction on speech under *Zauderer* for several reasons.

First, Defendants ignore the fact that *Zauderer* requires disclosures to be "purely factual" *as well as* uncontroversial. *See Zauderer*, 471 U.S. at 651. Nationwide argued that being compelled by the government to state that its Offer Letters were not "authorized by the lender" is controversial because (1) it suggests that lenders have authority to approve or not approve the Offer Letters; (2) it suggests that a lender that does not "authorize" the Offer Letter does not allow for the biweekly repayment of a mortgage, which is untrue; and (3) calling an offer "unauthorized" suggests that it is untoward. Mot. at 13. Defendants do not dispute any of these points, arguing only that "the Statutes do not require it to say that it is an 'unauthorized solicitation.' The Statutes require that it indicates that the lender has not authorized the solicitation." Opp. at 11. This is a distinction without a difference, and does not dispute that self-identifying an offer as being unauthorized constitutes a "controversial" disclosure.

Second, the purportedly required disclosures are not "minimal." Opp. at 10. As Defendants concede, the Statute may require as many as four separate lengthy disclosures in even a one-page letter. Opp. at 14. Defendants argue that these disclosures are not unduly burdensome because Nationwide would not be "completely prohibited from utilizing the commercial speech." Opp. at

7
REPLY ISO MOTION FOR PRELIMINARY INJUNCTION
DWT 25877125v6 0100966-000001

15. But disclosures need not "completely prohibit" speech to be unconstitutional. In *Tillman v. Miller*, 133 F.3d 1402 (11th Cir. 1998), the Eleventh Circuit held that requiring a lawyer to include a five-second message in his thirty-second advertisements was unduly burdensome, and "not a trifling one" at that. *Id.* at 1403-1404, n.4. Similarly, the Statute's required disclosures are unduly burdensome as applied to Nationwide even though they would not "completely prohibit" its speech.

Lastly, applying the Statute to Nationwide is not reasonably related to the State's interest in preventing consumer deception. As explained above, the Offer Letters feature disclaimers and clearly communicate that Nationwide is not affiliated with the lender. Defendants suggest that homeowners blindly "trust" mail with their lender's name on it, which means, by definition, that additional disclosures would not do anything to prevent consumer deception or confusion.

### C. Nationwide is Exempt from Liability Under Both of the Statute's Exceptions.

The Statute exempts uses of lenders' names that are "exclusively part of a comparison of like services" or which "constitute[] nominative fair use." Cal. Bus. & Prof. Code § 14703.

First, Nationwide uses the lender's name exclusively as part of a comparison of like services. Defendants appear to concede that a comparison chart qualifies under the Statute's exclusive-use exception, although argue that Nationwide's use of the lender's name outside the strict confines of such a chart removes Nationwide from the exception. Opp. at 15. But the Offer Letters *overall* provide an accurate comparison between a borrower's current monthly repayment plan and Nationwide's biweekly program. Because Nationwide uses the lender's name exclusively in connection with this comparison, Lipsky Decl., Ex. A, they qualify under the exclusive-use exception.[5]

Second, Defendants argue that Nationwide "cites no authority for its attempt to invoke the fair use doctrine in this novel and unprecedented context." Opp. at 16. But the authority is *the Statute itself*, which expressly allows nominative fair uses of a lender's name. Cal. Bus. & Prof.

---

[5] Defendants argue that Section 14703's exceptions apply only to the use of a lender's name, and not a loan number or loan amount. Such an interpretation – that *any* use of a borrower's publicly available loan number or loan amount is unlawful – would run afoul of the U.S. and California Constitutions. *See Tabari*, 610 F.3d at 1176 (enjoining a nominative fair use "can raise serious First Amendment concerns").

Code § 14703.[6] Defendants argue that even if the nominative fair use defense applies – which of course it does – Nationwide "has not provided any argument that its services would not be identifiable without the information." Opp. at 16. But the Ninth Circuit has squarely rejected such a "draconian" interpretation of the fair use doctrine that "would require no other possible way to communicate the nature of one's business." *Tabari*, 610 F.3d at 1180. In *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1263 (N.D. Cal. 2003), for example, the court explained that while defendants could have used other "verbal formulas" to describe a Slip 'N Slide-brand water slide, those other descriptions did not "capture or identify the toy with adequate specificity." It held that "defendants intend to identify the slide as a specific product; to do so requires the use of the product's name." *Id.* Similarly, Nationwide intends to identify borrowers' *specific lender* to inform them that their *specific loan* is eligible for the biweekly program, and to do so requires the use of the lender's name.[7] Such uses of lenders' names are nominative fair uses and thus are exempt from liability under the Statute's fair-use exception.

**D.  The Statute Unconstitutionally Prohibits Republication of Public Information.**

In its Motion, Nationwide argued that "states cannot prohibit the republication of publicly available information," and thus "the Statute's attempt to significantly restrict the mere use of the name of a mortgage lender or loan amount should not be permitted." Mot. at 15-17. Defendants relegate their conclusory response to a footnote, stating that the Statute is "not restricting commercial speech or the use of publically available information." Opp. at 14 n.3. Defendants fail to address or distinguish any of the U.S. Supreme Court cases holding that states cannot prohibit republication of public information – such as a borrower's lender, loan amount, and loan number – and thus concede the issue.

---

[6] It is a fundamental principle of statutory construction that a statute "should be construed so that effect is given to all its provisions." *Clark v. Rameker*, 134 S. Ct. 2242, 2248 (2014).

[7] As the Ninth Circuit warned, "much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademarks." *See New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 306-307 (9th Cir. 1992) (applying nominative fair use defense because it is "far simpler (and more likely to be understood) to refer to the Chicago Bulls" instead of "the professional team from Chicago").

### E. Nationwide Is Likely to Prevail Against the District Attorneys.

While Defendants argue that Nationwide must allege that a "policy or custom" caused its injury under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Mot. at 8, *Monell* held that *local* governing bodies and *local* officials in their official capacities can be sued under Section 1983 where the allegedly unconstitutional action "implements or executes" an official policy or custom. *Id.* at 691. Because Defendants argue that the District Attorneys are *state actors*, Dkt. # 34 at 7-8, the "policy or custom" requirement from *Monell* does not apply to the District Attorneys. *See, e.g., Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012) ("the 'policy or custom' standard … has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex parte Young* for injunctive relief").[8]

### F. Nationwide Is Likely to Prevail Against the District Attorney's Offices.

Nationwide is also likely to prevail against the District Attorney's Offices because their own budgetary policies and customs improperly incentivized district attorneys to threaten unmeritorious consumer actions. It was, therefore, *their* actions that directly contributed to, and were a substantial and motivating factor of, the District Attorneys' attempt to unconstitutionally enforce the Statute.

Under California law, counties have "budgetary authority" over district attorney's offices. *See* Cal. Gov't Code § 25303. Counties also have the responsibility to maintain appropriate budgetary controls – in particular, ensuring that the structure or operation of the budget does not improperly influence local officials. This local budgetary function became significant when, in 2004, California voters passed Proposition 64, which amended California's unfair competition law to provide that penalties collected by district attorneys "shall be for the exclusive use" of the district attorneys "for the enforcement of consumer protection laws." Bus. & Prof. Code § 17206(c).

---

[8] Defendants cite to *Valencia v. Ryan*, 2014 WL 4541482 (D. Ariz. Sept. 12, 2014), which stated that in an official-capacity lawsuit, the entity's custom or policy must have played a part in the constitutional violation. Mot. at 17-18. That standard relies on the principle that a lawsuit against a state official in his or her official capacity is essentially a lawsuit against the official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). But "official-capacity actions for prospective relief are *not treated as actions against the State*." *Id.* at 71 n.10 (emphasis added). Accordingly, Nationwide is *not* required to show that the District Attorneys acted pursuant to a "policy or custom" to prevail on its claims against them.

As a result, since 2004, any settlements or penalties obtained by the consumer protection units in the District Attorney's Offices have been used for the "exclusive benefit" of those units. As a leading treatise explains, "[t]he fact that the civil penalty is returned to the county coffers for the district attorney's office … lends a powerful incentive to local law enforcement agencies to bring §§ 17200 and 17500 actions, especially against large and solvent defendants." William L. Stern, *Bus. & Prof. C. § 17200 Practice*, § 9:82 (The Rutter Group 2014) (referring to these penalties as "County Bounty"). Over the last ten years, the District Attorneys' Offices have created, either by affirmative conduct or failure to act, budgetary policies and customs regarding the use of these Proposition 64 funds, potentially including the salaries, benefits, and even *bonuses* for its attorneys in the consumer sections of these Offices. In fact, Marin County *actually budgets* a particular amount of settlements and fines it *intends* to collect – $955,187 for Fiscal Year 2013-2014.[9] Such policies and customs have created an environment in which district attorneys are incentivized to bring and threaten enforcement actions to satisfy their internal budgets and ensure sufficient revenue to keep the lights on and pay themselves.

This practice has resulted in a *de facto* policy or custom of improper incentives for the District Attorneys, and which directly allowed and substantially contributed to the unconstitutional threats against Nationwide. *See County of Santa Clara v. Superior Court*, 50 Cal. 4th 35, 57 (2010) (describing the "heightened standard of neutrality" for prosecutors because the government owes a duty "to ensure that the judicial process remains fair and untainted by an improper motivation on the part of attorneys representing the government"); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993) ("[A] practice of unconstitutional conduct, although lacking formal approval, may provide a basis for municipal liability if the plaintiff can establish that the policymaking authority acquiesced in a pattern of unconstitutional conduct."). Indeed, the manufactured "complaint" by the spouse of a deputy district attorney shows the dangers of a policy or custom of improper incentives.

---

[9] *See* Pgs. 19, 101 of Marin County's publicly available "Final Budget" at http://www.marincounty.org/~/media/files/departments/df/1314webfinal.pdf. Nationwide respectfully requests that the Court take judicial notice of Marin County's budget.

The District Attorney's Offices had the obligation to ensure that the budgeting of Proposition 64 funds did not create a perverse legal incentive for their deputy district attorneys to commit unconstitutional actions in the pursuit of County Bounty. They did not fulfill that obligation, and that failure led to the unconstitutional conduct against Nationwide here.

### III. NATIONWIDE WILL SUFFER IRREPARABLE HARM.

Defendants concede, as they must, that the loss of First Amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." Opp. at 19 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). For the reasons set forth above and in Nationwide's Motion, allowing Defendants to enforce the Statute against Nationwide without honoring the exemptions that Nationwide satisfies would threaten its First Amendment freedoms, and thus the irreparable injury requirement is met and the preliminary injunction should issue for this reason alone.

In addition, Defendants' pretense that no harm will come to Nationwide from a major lawsuit filed against it by a prosecutorial team of two District Attorneys and one state agency is preposterous.[10] Nationwide's founding President, Mr. Lipsky, knows from personal experience the devastating consequences that the filing of a consumer enforcement action would have on Nationwide. Lipsky Dec. ¶ 15; Supp. Lipsky Dec. ¶¶ 4-12. The one time that Nationwide was sued by a state agency, in 2008 by the Ohio Attorney General, the effects were deep and long-lasting. Supp. Lipsky Decl. ¶¶ 4-12. When the suit was filed in June 2008, the Better Business Bureau ("BBB") immediately placed a description of the suit under "Government Actions" of Nationwide's BBB web entry.[11] *Id.* at ¶ 7. During the almost two years of the suit, this remained and was later replaced with a summary of the settlement in February 2010 after the case settled. *Id.*

---

[10] Although tellingly, Defendants do not dispute Mr. Lipsky's testimony that an enforcement action would put Nationwide's banking relationships at risk and curtail Nationwide's ability to attract and retain customers. Lipsky Decl. ¶ 15; Opp. at 20-21.

[11] Defendants argue that government action against Nationwide "could only result in maximum point reduction of 30 points" to its rating with the Better Business Bureau. Opp. at 20. Without the proper context of knowing what point totals correspond to what BBB grades, however, the contention that Nationwide could lose "only" 30 points is meaningless. And while Defendants argue that a point reduction is not automatic as the result of government action, even if true, as a practical matter government actions result in immediate point deductions. Supp. Lipsky Decl. ¶ 12.

This lawsuit was attached to Nationwide's name even though there were no findings of violations and Nationwide did not know there was an issue before the suit. *Id.* at ¶ 6. The "Government Actions" section of Nationwide's BBB web entry was not cleared until three years later (roughly five years from the filing of the suit). *Id.* at ¶ 8. Yet the stigma remains from the filing of the lawsuit. *Id.* at ¶ 11. Still to this day, Nationwide experiences people making erroneous assumptions (just as Defendants did in their brief) that Nationwide was guilty of violations (which it was not). *Id.*

While Defendants argue that "[n]umerous other government actions have already been taken against Nationwide Biweekly in other jurisdictions," Opp. at 20, this is completely untrue. Defendants identified four purported "actions" taken against Nationwide. *Only one of them*, Ohio, involved a lawsuit (which caused Nationwide great harm, as described above). The three remaining matters involved licensing with other states and had nothing to do with a lawsuit. *See* Supp. Lipsky Dec. ¶¶ 13-18. And as a result of the difficult experience in the Ohio case, Nationwide worked cooperatively with the licensing agencies in those three states to resolve their concerns and reach mutual agreements leading to the issuance of licenses by each state.[12]

Nationwide seeks a preliminary injunction because if Defendants proceed with an enforcement action, the "damage will have been done. Relief at a later time will be of little if any value." *Affiliated Hospitals of San Fran. v. Scearce*, 418 F. Supp. 711, 715 (N.D. Cal. 1976). In addition, even if such damage was compensable by money damages – which it is not – Nationwide is barred from seeking monetary relief from the District Attorneys for their unconstitutional

---

[12] In one of them, Nationwide simply agreed with the Georgia Department of Banking and Finance to certain conditions "to obtain a mortgage lender license." Hubanks Decl., Ex. E. In two others, Nationwide agreed to resolve disagreements with state agencies, but did not admit any liability or wrongdoing whatsoever. Hubanks Decl., Ex. C, ¶ 7 (denying allegations and asserting compliance with all laws in Ohio Attorney General action); Ex. G, ¶ C (agreeing that the consent agreement "does not constitute evidence or an admission of any issues of fact suggesting fault or wrongdoing by Respondents or any violation of any laws"). Lastly, in response to an inquiry by the New Hampshire Banking Department approximately five years ago, Nationwide decided not to undergo the time and expense of challenging the agency's allegations, and thus agreed to certain limited relief and to "not deny" the agency's findings. Hubanks Decl., Ex. D. It stands to reason that a company with licenses in over forty states to have inquiries from government agencies about its business practices in connection with those licenses.

conduct. *See Odebrecht Construction, Inc. v. Fl. Dep. of Trans.*, 715 F.3d 1268, 1289 (11th Cir. 2013) ("In the context of preliminary injunctions, numerous courts have held that the inability to recover monetary damages because sovereign immunity renders the harm suffered irreparable.") Accordingly, Nationwide will suffer irreparable injury without a preliminary injunction.

### IV. THE EQUITIES AND PUBLIC INTEREST FAVOR AN INJUNCTION.

Defendants do not dispute that "[p]reliminarily enjoining the enforcement of a statute against a party that did not violate that statute or which might constitute an unconstitutional application of the Statute is in the public interest." Mot. at 22. *See also Odebrecht Const., Inc. v. Sec. Florida Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013) (public has "no interest" in enforcing "what is very likely an unconstitutional statute"). Instead, Defendants' arguments rely solely on their belief that Nationwide is not likely to succeed on the merits. Opp. at 21. Beyond the fact that Nationwide has established a likelihood of success on its claims, however, courts "considering requests for preliminary injunctions have *consistently* recognized the significant public interest in upholding First Amendment principles." *AP v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (emphasis added).

Defendants rely on *Planned Parenthood of the Blue Ridge v. Camblos*, 116 F.3d 707, 721 (4th Cir. 1997), but that case found the balance of harms to favor the defendant because "its legislation is under facial challenge only and the likelihood that the legislation will ultimately be held unconstitutional is remote." Likewise, in *Liberty Coins v. Goodman*, 748 F.3d 682, 698 (6th Cir. 2014), the court dedicated a single sentence to its conclusion that a preliminary injunction failed to serve the public interest because the statute at issue "constitutes a valid exercise of the State's police power and does not impermissible burden a constitutional right." Here, in contrast, Nationwide has established that enforcement of the Statute against Nationwide is unconstitutional, and thus the reasoning in *Camblos* and *Liberty Coins* has no application here.

To maintain the current status quo, the Court should grant the preliminary injunction to allow a resolution of Nationwide's claims on the merits before Defendants are permitted to enforce the Statute (without its exemptions) against Nationwide. Delaying a consumer enforcement action until the Court determines the merits of Nationwide's constitutional claims would have little to no

14

impact on Defendants, whereas Nationwide's entire business could be destroyed by the mere filing of a complaint. Lipsky Decl. ¶¶ 14-15.

## V. THE REQUESTED INJUNCTION IS NOT OVERBROAD.

Nationwide's requested injunction is appropriate and not broader than necessary to enjoin Defendants' unconstitutional conduct.

First, Defendants mistakenly argue that Nationwide's request runs afoul of FRCP 65 because Nationwide's prayer for relief references the complaint. But Rule 65 only applies to the "order granting an injunction," not the prayer for relief. Fed. R. Civ. P. 65(d). *See also California ex rel. California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 783 (9th Cir. 1998) (Ninth Circuit has never read "Rule 65(d) so strictly as to preclude any incorporation").

Second, Nationwide seeks injunctive relief prohibiting Defendants from enforcing the Statute for Nationwide's truthful, non-misleading offers to potential customers. Compl. ¶¶ 26, 30. This requested relief does nothing more than assure Defendants' compliance with the U.S. and California Constitutions. It would not "entirely insulate Nationwide from any threat of future consumer protection action." Opp. at 5. An injunction would not prohibit applications of the Statute against any other company and would not "insulate" Nationwide from actions involving facts different than those at issue here. *See Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1152-1153 (9th Cir. 2004) (injunction was "no broader than the constitutional violation").

Lastly, the requested injunction does not implicate Defendants' own First Amendment rights because Defendants' conduct in threatening the unconstitutional application of the Statute is not protected speech. *See* Nationwide's Opp. to Defs.' Anti-SLAPP Mot., Dkt. # 41, at 6-9.

## VI. CONCLUSION

For the reasons stated above and in its Motion for Preliminary Injunction, Nationwide respectfully requests that this Court temporarily enjoin Defendants from enforcing the Statute against Nationwide pending adjudication on the merits.

Dated: February 5, 2015          DAVIS WRIGHT TREMAINE LLP

By:    /s/ Thomas R. Burke
       Thomas R. Burke

15
REPLY ISO MOTION FOR PRELIMINARY INJUNCTION