1 CHARLES J. MCKEE, COUNTY COUNSEL
William Merrill Litt SBN 166614
2 168 W Alisal Street, 3rd Floor
Salinas, CA 93901
3 Tel.: (831) 755-5045, Fax: (831) 755-5283

4 Attorney(s) for County of Monterey (a.k.a. Monterey County District Attorney's Office)
and Deputy District Attorney John Hubanks
5

6 STEVEN M. WOODSIDE, COUNTY COUNSEL
Brian Charles Case SBN 254218
7 3501 Civic Center Drive, Room 275
San Rafael, CA 94903
8 Tel.: (415) 473-6117, Fax: (415) 473-3796

9 Attorney(s) for County of Marin (a.k.a. Marin County District Attorney's Office)
and Deputy District Attorney Andres H. Perez
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency,<br><br>Defendants. | Case No: 5:14-CV-04420-LHK<br><br>**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO STRIKE SECOND AND THIRD CAUSES OF ACTION OF PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF.**<br><br>[CAL. CIV. PROC. CODE § 425.16]<br><br>Hearing Date: April 30, 2015<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Lucy H. Koh<br>Courtroom: Courtroom 8, 4th Floor<br>Address: 280 South First Street, San Jose, CA 95113 |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................1

II. POINTS AND AUTHORITIES ……………..................................................1

A. Plaintiffs' Second and Third Causes of Action Constitute a Strategic Lawsuit Against Public Participation and Should be Stricken Pursuant to California Anti-SLAPP Statue Code of Civil Procedure Section 425.16 ................1

   1. California's Anti-Slapp Statute ........................................................1

   2. Defendant District Attorneys Are Speaking on Behalf of the People ................2

   3. California's Anti-SLAPP Law Protects Government Entities and Speakers Employed by Government Entities ........................................................3

   4. Plaintiffs Cannot Establish A Probability of Prevailing on the Merits ...............8

      i. The Applicable Standard ........................................................8

      ii. Plaintiff Failed to Join the State of California, a Party Necessary to the Action "Under Federal Rule 19(a) ..........................10

      iii. The Counties are Improper Parties to this Action ...............................10

      iv. Under the "Prudential Ripeness Doctrine," the Factors Militate in Favor of Delaying A Decision on the Merits..................................10

      v. The *Pullman* Abstention Doctrine Counsels this Court to Decline to Act When All Relevant Issues May be Resolved In State Court ..................................................................11

      vi. The Speech and Conduct in Which Plaintiffs Are Engaging Is Deceptive and Violates Valid California Statutes..........................11

III. CONCLUSION ..................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Bradbury v. Superior Court,* 49 Cal.App.4th 1108, 1117 (1996) ...................................................... 2, 6

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 566 (1980) ........ 13

*City of Colton v. Singletary,* 206 Cal. App. 4th 751 (2012) ................................................................ 6

*CKE Restaurants, Inc. v. Moore*, 159 Cal. App. 4th 262 (2008), ..................................................... 6,8

*Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal. 4th 53, 67 (2002) .................................. 6,7,8

*Gilbert v. Sykes,* 147 Cal. App. 4th 13, 21-22 (2007) ......................................................................... 1

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 181 Cal. App. 4th 1207 (2010) ................. 5

*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures,* 184 Cal.App.4th 1539(2010) ... 7,8

*Henne v. City of Yakima*, Case No. 89674-7, 2015 WL 276358 (D. Wash. Jan. 22, 2015) ................ 4

*Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 959 (2002) .............................................................................. 11

*Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459 (2014) ........................................................... 7,8

*Maranatha Corrections, LLC v. Dept. of Corrections & Rehabilitatio,* 158 Cal.App.4th 1075, 1085 (2008) ............................................................................................................................................. 3

*Matson v. Dvorak,* 40 Cal. App. 4th 539, 548 (1995) ........................................................................ 1

*Miles v State of California* 320 F.3d 986, 987 (9th Cir. 2003) .......................................................... 9

*Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978) ............................................................... 10

*New Kids on the Block v. News Am. Publishing, Inc.,* 971 F.2d 302(9th Cir. 1992) ........................ 14

*People v. Dehle*, 166 Cal. App. 4th 1380, 1388 (2008) ...................................................................... 2

*Rohde v. Wolf*, 154 Cal. App. 4th 28, 34-35 (2007) ............................................................................ 8

*San Ramon Valley Fire Protection District v. Contra Costa Employees' Retirement Ass'n*, 125 Cal. App. 4th 343 (2004) ........................................................................................................................ 4

*Sipple v. Foundation for Nat. Progress,* 71 Cal.App.4th 226, 235 (1999) ......................................... 1

*Squires v. City of Eureka*, 231 Cal.App.4th 577 (2014) ..................................................................... 6

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................................................... 4

*USA Waste of California, Inc. v. City of Irwindale*, 184 Cal.App. 4th 53 (2010) ............................... 5

*Vargas v. City of Salinas*, 46 Cal. 4th 1, 16 (2009) ................................................................... 3,4,8,9

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771-772 (1976) .......................................................................................................................................... 11

*Women Strike for Peace v. Morton,* 472 F.2d 1273 (D.C. Cir. 1972) ................................................ 4

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626 (1985) ........................................................................................................................ 11,12,13

**Statutes**

CAL. BUS. & PROF. CODE § 14700 ................................................................................................ 11, 12

CAL. BUS. & PROF. CODE § 14703 ...................................................................................................... 13

CAL. BUS. & PROF. CODE §§ 14700 ................................................................................................. 8,11

CAL. BUS. & PROF. CODE §§ 17200 ................................................................................................. 8,11

CAL. BUS. & PROF. CODE §§ 17203, .................................................................................................... 2

CAL. BUS. & PROF. CODE §§ 17204 ..................................................................................................... 2

CAL. BUS. & PROF. CODE §§ 17500 ............................................................................................ 2, 8, 11

CAL. CIV. PROC. CODE § 425.16(c)(1) ............................................................................................... 15

CAL. CIV. PROC. CODE § 425(e) ............................................................................................................ 3

CAL. CIV. PROC. CODE § 425.16 ....................................................................................................... 4,15

CAL. CIV. PROC. CODE § 425.16(e)(2) .................................................................................................. 3

CAL. CIV. PROC. CODE §425.1[6] ......................................................................................................... 6

CAL. CODE CIV. PROC. § 425.16(a) ............................................................................................... 1, 2, 3

CAL. GOVT. CODE §§ 26500, ................................................................................................................ 2

CAL. GOVT. CODE §§ 26506 ................................................................................................................. 2

**Rules**

FED. R. CIV. P. 19(A). ....................................................................................................................... 9,10

FED. R. EVID. 201(d) ............................................................................................................................ 9

**Other:**

N.Y. BANKING LAW § 133 ................................................................................................................. 12

ARIZ. REV. STAT. § 44-1799.51 .......................................................................................................... 12

COLO. REV. STAT. § 6-1-1001 ............................................................................................................. 12

## I. INTRODUCTION

Defendants JOHN F. HUBANKS, ANDRES H. PEREZ, the COUNTY OF MONTEREY (sued herein as MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE), and the COUNTY OF MARIN (sued herein as MARIN COUNTY DISTRICT ATTORNEY'S OFFICE) (collectively "Defendants" or "District Attorneys") hereby submit the following Reply in support of their Anti-SLAPP Motion to Strike.

## II. POINTS AND AUTHORITIES

**A. Plaintiffs' Second and Third Causes of Action Constitute a Strategic Lawsuit Against Public Participation and Should be Stricken Pursuant to California's Anti-SLAPP Statute, Code of Civil Procedure Section 425.16.**

### 1. California's Anti-SLAPP Statute

As explained in the District Attorneys' motion to strike, California's Anti-SLAPP statute resulted from a finding by the California Legislature that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." CAL. CODE CIV. PROC. § 425.16(a); *see also Gilbert v. Sykes,* 147 Cal. App. 4th 13, 21-22 (2007) (section 425.16 "was enacted in 1992 to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue.") (quoting *Sipple v. Foundation for Nat. Progress,* 71 Cal.App.4th 226, 235 (1999)).

Once the moving party has made a prima facie showing that the lawsuit arises from an act by the defendant in furtherance of her right of petition or free speech under the United States or California Constitution in connection with a public issue, the plaintiff must establish a "probability" that she will prevail on the merits of the complaint. CAL. CIV. PROC. CODE § 425.16(a). "To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Matson v. Dvorak* 40 Cal. App. 4th 539, 548 (1995)

1

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike         Case No. 5:14-CV-4420-LHK

The Anti-SLAPP statute "shall be construed broadly." CAL. CIV. PROC. CODE § 425.16(a). Nothing in the statute itself excludes government employees or government entities from Anti-SLAPP protection. On the contrary, as explained below, numerous cases have upheld the use of Anti-SLAPP motions by government entities and government employees communicating about the public's business, or petitioning another governmental branch or agency for redress of grievances. *See* Burke, Cal. Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2014) ("Burke") ¶ 2:27 ("The anti-SLAPP statute is also available to a government official or the government itself, where appropriate.").

### 2. Defendant District Attorneys Are Speaking on Behalf of the People.

The First Amendment and Article I, Section 2 of the California Constitution protect the free speech rights of the people. This is *not* antithetical to protecting the rights of government employees to speak on behalf of the people. Here, the District Attorneys are acting on behalf of the people in investigating and communicating with Plaintiffs and, unless enjoined, will be filing a civil enforcement action against Plaintiffs on behalf of "the People of the State of California." CAL. BUS. & PROF. CODE §§ 17203, 17204; CAL. GOVT. CODE §§ 26500, 26506; *cf. People v. Dehle*, 166 Cal. App. 4th 1380, 1388 (2008); ("the People have an interest in being heard throughout the course of a criminal prosecution and it is the duty of the district attorney to advocate on the People's behalf in an effort to achieve a fair and just result."). This is not semantics. The District Attorneys seek to enforce important consumer protection statutes in response to consumer complaints that Plaintiffs' written and telephonic communications are deceptive. The District Attorneys' enforcement action would, by definition, be a petition to the judicial branch of the government for redress of the people's grievances against Plaintiffs. *See, e.g., Bradbury v. Superior Court,* 49 Cal.App.4th 1108, 1117 (1996); ("The request [by a District Attorney] that the Los Angeles County Sheriff and other law enforcement agencies investigate the matter was in furtherance of the right to petition government for grievances."). The District Attorneys' pre-filing communications with Plaintiffs are speech. Unlike Plaintiffs' commercial speech, the speech of the District Attorneys to Plaintiffs was

2

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike          Case No. 5:14-CV-4420-LHK

part of an effort to enforce California consumer protection statutes. The subject of these communications is, or should be, of substantial importance to every California resident who has a mortgage or expects to have one in the future.

Plaintiffs argue an overly literal view of California's Anti-SLAPP law when they emphasize that its primary purpose is to protect the speech of people. This cramped interpretation ignores the legislative mandate that the statute "shall be construed broadly." CAL. CIV. PROC. CODE § 425.16(a). Even accepting *arguendo* Plaintiffs' narrow definition, it would be nonsensical if that protection did not extend to lawyers speaking on behalf of their clients, the people. *See* Burke, *supra,* at ¶ 2:22 ("An anti-SLAPP motion may be brought on behalf of another 'person' to protect that person's petitioning and free speech activities.") (citing CAL. CIV. PROC. CODE § 425.16(b)).

### 3. California's Anti-SLAPP Law Protects Government Entities and Speakers Employed by Government Entities.

If a lawsuit arises from an act by a governmental defendant in furtherance of the right of petition or free speech, governmental speakers are accorded the same protections under CAL. CIV. PROC. CODE § 425(e) as are private speakers. *E.g., Vargas v. City of Salinas,* 46 Cal. 4th 1, 16 (2009); (section 425.16 protection extends to "all" such statements, without regard to whether they are made by the government or private entities). "[A] long and uniform line of California Court of Appeal decisions explicitly holds that governmental entities are entitled to invoke the protections of [CAL. CIV. PROC. CODE §] 425.16 when such entities are sued on the basis of statements or activities engaged in by the public entity or its public officials in their official capacity." *Id* at 17.

Contrary to the common perception of SLAPP and Anti-SLAPP litigation, the speech or conduct at issue need not occur in the course of political activity or public debate. As used in CAL. CIV. PROC. CODE § 425.16(e)(2), a matter under review can be one subject to "an inspection, [or] examination" by public officials. *Maranatha Corrections, LLC v. Dept. of Corrections & Rehabilitation* 158 Cal.App.4th 1075, 1085 (2008), ("*Maranatha*"). The review or consideration process need not consist of official or formal proceedings. *Id.* In *Maranatha*, the court rejected an

3

argument that the Department could not bring an anti-SLAPP motion because it had not instituted formal or official proceedings concerning misappropriation allegations against the plaintiff. *Id.* at 1085.

Plaintiffs support their argument that California's Anti-SLAPP statute does not protect the free speech rights of governmental actors by citing three federal cases, *United States v. Stevens*, 559 U.S. 460 (2010), *Women Strike for Peace v. Morton,* 472 F.2d 1273 (D.C. Cir. 1972), and *Henne v. City of Yakima*, Case No. 89674-7, 2015 WL 276358 (D. Wash. Jan. 22, 2015). However, each case is inapposite, each quote simply a platitude about the First Amendment. None of the three cases analyzes California's Anti-SLAPP law. None of them addresses the role of government speakers in communicating on behalf of the people or petitioning for redress of grievances on their behalf. Moreover, cases such as *Vargas* make it clear that the ship has sailed on the argument that section 425.16 can never apply to governmental speech or petitioning.

Plaintiffs' next tactic is to attempt to dichotomize between "action" and "speech." Although a familiar dichotomy in First Amendment jurisprudence, it is a red herring here. The District Attorneys' "actions" involved primarily speech, in the form of telephone calls, meetings with Plaintiffs, and correspondence with them. Much of the District Attorneys' non-communicative conduct was directed to preparing the threatened enforcement action, a mechanism for petitioning the judicial branch of government with the people's – not the government's – grievances. "[G]overnmental entities are entitled to invoke the protections of [CAL. CIV. PROC. CODE §] 425.16 when such entities are sued on the basis of *statements or activities* engaged in by the public entity or its public officials in their official capacity." *Vargas, supra,* 46 Cal. 4th at 17 (emphasis added).

The speech and conduct of the District Attorneys bears no resemblance to the "action" at issue in *San Ramon Valley Fire Protection District v. Contra Costa Employees' Retirement Ass'n*, 125 Cal. App. 4th 343 (2004), a case relied upon by Plaintiffs. In *San Ramon*, the court framed the issue as "whether litigation seeking judicial review of an action or decision by a public entity is subject to a special motion to strike under the anti-SLAPP statute," a question the court answered in

4

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike          Case No. 5:14-CV-4420-LHK

the negative. *Id.* at 346. The *San Ramon* court was very careful to differentiate between the "act" of adopting a specific enactment and all of the communicative and petitioning activity that may have preceded or may result from that enactment. *Id.* at 346-347.

The same speech/conduct dichotomy underpins the decisions in *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* 181 Cal. App. 4th 1207 (2010), and *USA Waste of California, Inc. v. City of Irwindale*, 184 Cal.App. 4th 53 (2010), cited by Plaintiffs. In both cases, as in *San Ramon*, the governmental entity whose official action was being challenged responded with an Anti-SLAPP motion to strike. In *Graffiti Protective Coatings*, the original action involved a challenge to the awarding of a government contract. *USA Waste*, while holding section 425.16 inapplicable to the city's issuance of a notice of violation to the plaintiff, actually lends support to the District Attorneys' arguments herein. The court held that "the 'principal thrust or gravamen' of USA Waste's causes of action concerns the applicable compaction standards for Pit No. 1 and not the filing of the NOV." 184 Cal. App. 4th at 63. Consequently, USA Waste's lawsuit was not subject to a 425.16 motion because, first, it was not "based on any statement, writing, or conduct in furtherance of the City's right of petition or free speech," *Id.* at 65 (quoting *Graffiti Protective Coatings, supra,* 81 Cal. App. 4th at 1225); and, second, because the communication was not made "in connection with 'a public issue or an issue of public interest.'" 184 Cal. App. 4th at 65 (quoting CAL. CIV. PROC. CODE § 425.16 (e).). Neither of the cases involved a lawsuit predicated on the speech or communicative conduct of a government employee, nor on attempts by a governmental actor to petition another branch of government for redress of the people's grievances.

Here, in contrast to *Graffiti Protective Coatings* and *USA Waste*, Plaintiffs' entire case is predicated on the alleged "threats" and other communications made to Plaintiffs by the District Attorneys in their efforts to protect the public, and anticipation of the District Attorneys' threatened enforcement action to petition the judicial branch of government to redress the grievances of consumers who believe they were hoodwinked by Plaintiffs' business practices. If the District Attorneys had merely investigated Plaintiffs' activities without communicating with Plaintiffs and

5

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike         Case No. 5:14-CV-4420-LHK

their counsel, this lawsuit would not exist; Plaintiffs would have been ignorant of the pending enforcement action and would have had to wait until the District Attorneys filed it to pit their free speech arguments against the legitimate and constitutional regulation of deceptive commercial speech. Enforcement actions, such as that contemplated by the District Attorneys, fall squarely within the protections of the Anti-SLAPP statute. *See Squires v. City of Eureka*, 231 Cal.App.4th 577 (2014) ("'defendants have made an initial showing that plaintiffs' causes of action arise from protected activity under [CAL. CIV. PROC. CODE §] 425.1[6] because plaintiffs' claims against defendants 'involve actions allegedly taken by the defendants in the investigation and prosecution of plaintiffs regarding code enforcement violations occurring at real properties owned by plaintiffs.'") (quoting trial court below).

The Anti-SLAPP statute asks whether the statements were "made in connection with an issue under consideration or review" by a branch of the government. The *Bradbury* decision makes clear that communications *among* law enforcement personnel, not just their public communication, are protected by the Anti-SLAPP statute. The *Bradbury* court held, "[p]rivate conversations concerning the report were also protected under the anti-SLAPP statute. . . The request that the Los Angeles County Sheriff and other law enforcement agencies investigate the matter was in furtherance of the right to petition government for grievances." 49 Cal.App.4th at 1117 (*Bradbury*). Accordingly, all of the Deputy District Attorneys' pre-petition conduct in investigating, negotiating with, and determining a course of action with regard to Plaintiffs' California activities should be accorded Anti-SLAPP protection.

It is not merely the communications leading up to the filing of an enforcement action that are protected by the Anti-SLAPP statute. Lawsuits like this one, intended to preempt or short circuit a contemplated civil or criminal enforcement action, are squarely within the ambit of Anti-SLAPP protection. *See, e.g., City of Colton v. Singletary,* 206 Cal. App. 4th 751 (2012) (Anti-SLAPP motion to strike cross-complaint). *Equilon Enterprises v. Consumer Cause, Inc.* 29 Cal. 4th 53, 67 (2002) and *CKE Restaurants, Inc. v. Moore*, 159 Cal. App. 4th 262 (2008), involving Proposition 65

6
*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike      Case No. 5:14-CV-4420-LHK

enforcement actions, are closely analogous to the case at bar, as explained in the District Attorneys' motion to strike. Plaintiffs attempt to distinguish Equilon and *CKE*, alleging that the lawsuits at issue were challenges to the contents of the Proposition 65 notices issued by the respective defendants, the issuance of which was an activity protected by the Anti-SLAPP statute. Dkt. No. 41 at 12:2-12. But it is both simplistic and inconsistent with precedent to draw this artificial distinction between the contents of a notice and the context in which that communication was made. *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459 (2014), is instructive. The *Lunada* decision cites *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* 184 Cal.App.4th 1539 (2010) for the proposition that, "[i]n general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. … [¶] Where … a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 'unless the protected conduct is 'merely incidental' to the unprotected conduct.'" 184 Cal.App.4th 1539, 1550–1551 (2010) (internal citations omitted). *Lunada* then applies *Haight Ashbury* to a situation nearly identical to the case at bar:

> Here, the correspondence clearly arose in connection with the litigation that was contemplated or under serious consideration. Indeed, the CLRA Notice was required under the CLRA before an action for damages could be filed and thus is part of the litigation process. But for the CLRA Notice and demand letters, there would be no dispute. In order to satisfy the first prong, the challenged action must arise from the protected activity. (*Equilon Enterprises v. Consumer Cause, Inc.*, supra, 29 Cal.4th at pp. 66–67.) In construing the anti-SLAPP statute broadly, as we must do (id. at p. 60, fn. 3), we believe that the CLRA Notice and correspondence not only preceded and triggered the declaratory relief action, but they were also the basis of the cause of the action. The declaratory relief action therefore arose out of those communications, which are protected activities.

230 Cal. App. 4th at 47.

Here, Plaintiffs' lawsuit was triggered by the District Attorneys' oral and written communications with Plaintiffs and their counsel designed to encourage voluntary compliance with California law in advance of filing an enforcement action. Throughout Plaintiffs' pleadings, including their opposition to the District Attorneys' motion to strike, they repeatedly reference the

7

District Attorneys' "threats" to enforce CAL. BUS. & PROF. CODE §§ 14700 *et seq.*, 17200 *et seq.*, and 17500 *et seq.*, "threats" that culminated in Deputy District Attorney Hubanks' oft-quoted remark that the District Attorneys were "done with the games" in his October 1, 2014 e-mail to Plaintiffs. *E.g.* Dkt. No. 1 at 6:9-15; Dkt. No. 41 at 5:8-13. That e-mail, and the July 2013 letter from Mr. Hubanks to Plaintiffs cited in Plaintiffs' Complaint (Dkt. No. 1 at 5:25-6:7), are indistinguishable from the Prop. 65 notices at issue in *Equilon* and *CKE* and the CLRA notice at the heart of *Lunada*, in terms of their legal import. They each served as fair warning to the Plaintiffs that their conduct may be violating state law and could subject them to an enforcement action. The same was true of all of the District Attorneys' communication with Plaintiffs and their counsel. In *Equilon*, *CKE*, *Lunada*, and the instant case these cautionary communications, designed to encourage legal compliance by the recipients, instead prompted lawsuits by the recipients. These lawsuits were properly subjected to Anti-SLAPP motions to strike. The communications by the District Attorneys to Plaintiffs in this case were by no means "'merely incidental' to the unprotected conduct." *Haight Ashbury*, 184 Cal.App.4th at 1550–1551.

**4. Plaintiffs Cannot Establish A Probability of Prevailing on The Merits.**

**i. The Applicable Standard**

Once the moving party establishes, as the District attorneys have done, that a lawsuit arises from protected speech or activity, the motion to strike must be granted unless the plaintiff can establish a probability of prevailing. To do so, a plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Vargas, supra,* 46 Cal. 4th at 19-20 (citations omitted). The burden is on the plaintiff to establish a probability of prevailing. *Rohde v. Wolf*, 154 Cal. App. 4th 28, 34-35 (2007). In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. The court does not weigh the credibility or comparative probative strength of competing evidence, but it should grant the Anti-SLAPP motion if, as a matter of law, the

8

defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. *Vargas,* 46 Cal. 4th at 19-20.

In that regard, Defendants respectfully request that the Court take judicial notice of the declarations of John Hubanks and the exhibits thereto filed in conjunction with Defendants' motion to dismiss (Dkt. Nos. 35-0 through 36-2). Judicial records and dockets from the same or a closely related case are proper facts for judicial notice under this standard. FED. R. EVID. 201(d). *See, e.g., Miles v State of California* 320 F.3d 986, 987 (9th Cir. 2003) (taking judicial notice of a state court order and docket).

Deputy District Attorney Hubanks' declarations and the exhibits filed therewith provide ample evidence that Plaintiffs' business practices and materials have deceived a large number of consumers in California and throughout the United States, and that Plaintiffs will not voluntarily conform their conduct to the law. They also demonstrate that the injunctive relief requested by Plaintiffs actually would be detrimental to the public.

In contrast, the declarations filed by Mr. Lipsky are speculative, lack a proper foundation, and are self-serving. The District Attorneys already have filed objections to Mr. Lipsky falsely asserting personal knowledge, attesting to hearsay, and subscribing under oath to subjects without establishing a foundation for his purported knowledge. Consequently, the District Attorneys' evidence supporting the motion to strike easily defeats Plaintiffs' attempts to establish evidentiary support for their claims. *See Vargas,* 46 Cal. 4th at 19-20.

In the interest of judicial economy and compliance with the page limitations of Civil Local Rules 7-3(b) and 7-4(b), in the following subsections the District Attorneys will summarize the reasons why Plaintiffs are unlikely to prevail, with reference to the arguments made and supported at greater length in their motion to dismiss and their reply in support thereof.

   **ii. Plaintiffs Failed to Join the State of California, a Party "Necessary to the Action" Under FED. R. CIV. P. 19(A).**

9

As more fully explained in Section III of Defendants' Joint Motion to Dismiss and Section I(B) of the Reply in Support of Defendants' Joint Motion to Dismiss, neither the State of California nor an officer thereof, is a party to this action, and such failure to join necessary or indispensable parties is grounds for dismissal.

### iii. The Counties are improper parties to this action.

As more fully explained in Section IV of Defendants' Joint Motion to Dismiss and Section I(A) of the Reply in Support of Defendants' Joint Motion to Dismiss, the Counties of Marin and Monterey (sued as the counties' respective District Attorney's Offices) are improper parties because the Deputy District Attorneys were and are functioning as state, not county, actors in negotiating with Plaintiffs and preparing to file an enforcement action on behalf of the People of the State of California. Plaintiffs can cite no county policy or custom on which to base liability pursuant to *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978).

### iv. Under the "Prudential Ripeness Doctrine," the Factors Militate In Favor of Delaying A Decision on the Merits.

As more fully explained in Section V of Defendants' Joint Motion to Dismiss and Section IV of the Reply in Support of Defendants' Joint Motion to Dismiss, this case is not ripe for adjudication because the District Attorney's Offices have not yet filed their enforcement action, and it is unclear how a California court will apply the law to the facts. Moreover, it is unlikely that any of Plaintiffs' constitutional rights will be irreparably harmed by a delay, and the harms Plaintiffs contend will result from fling of the enforcement action are highly speculative.

### v. The *Pullman* Abstention Doctrine Counsels this Court to Decline to Act When All Relevant Issues May Be Resolved in State Court.

While *Younger* abstention is inapplicable when no state litigation is pending, *Pullman* abstention – examined in depth in in Section VI of Defendants' Joint Motion to Dismiss and Section III of the Reply in Support of Defendants' Joint Motion to Dismiss -- counsels this court to decline to intervene because this dispute concerns matters of great import to the people of the

10

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike          Case No. 5:14-CV-4420-LHK

State of California, and implicates a statute that has never been interpreted or applied by an appellate court. The District Attorneys' enforcement action in state court likely will resolve all of the issues Plaintiffs have prematurely placed before this Court, including interpretation of CAL. BUS. & PROF. CODE § 14700 *et seq.* and application of CAL. BUS. & PROF. CODE §§ 17200, 17500, and 14700 *et seq.* to Plaintiffs' business activities. This Court should not assume an unconstitutional interpretation by California courts.

### vi. The Speech and Conduct in Which Plaintiffs Are Engaging Is Deceptive and Violates Valid California Statutes.

Neither the First Amendment of the United States Constitution nor Article I, Section 2 of the California Constitution give the speaker an unfettered right to engage in deceptive, misleading commercial speech. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771-772 (1976) ("The First Amendment . . . does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely."). Nor does the California Constitution protect deceptive or misleading commercial speech to a greater degree than the First Amendment. *E.g., Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 959 (2002), ("This court has never suggested that the state and federal Constitutions impose different boundaries between the categories of commercial and noncommercial speech.").

A statute that compels disclosure of purely factual commercial information is subject to rational-basis review under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* 471 U.S. 626 (1985). Plaintiffs argue that the rational basis standard only applies when the disclosure is "about a company's own products or services." As more fully explained in Section VII of Defendants' Joint Motion to Dismiss and Section II of the Reply in Support of Defendants' Joint Motion to Dismiss, Plaintiffs are mistaken, at least under the circumstances at issue. Here, Plaintiffs allege that the Statute mandates that it "inform potential customers that their particular lender does not 'authorize' Nationwide's services." CAL. BUS. & PROF. CODE § 14700 *et seq.* does not require that Plaintiffs provide any information whatsoever about the lender. It merely requires that *if*

11

Nationwide Biweekly *chooses* to reference a lender's name, loan number, or loan amount in its solicitation that it truthfully inform the consumer that *its product and service* are not affiliated with or authorized by the lender. An authorization, or lack thereof, by the lender is not a disclosure about a product or service of that lender. Accordingly, the type of disclosure at issue is precisely the type to which the *Zauderer* standard applies.

Plaintiffs argue that, even if *Zauderer* applies, the disclosure requirements must be reasonably related to the State's interest in preventing deception and not unduly burdensome *but* Defendants have "failed to mention *how* the Offer Letters are deceptive or misleading in the first place." (Dkt. No. 41 at 24:10-11). However, the District Attorneys' enforcement action is the proper forum for determining whether the actual Offer Letters are deceptive or misleading and whether the disclosures are sufficient. Here, Plaintiffs essentially are asking this Court to determine whether the statutes at issue are constitutional. As set forth in the moving papers, the legislature, in enacting the statutes at issue, found that solicitations referencing borrowers' mortgage lenders were misleading to a large number of consumers. This likewise has been an issue of national concern, as is evident from the numerous states that have enacted similar laws.[1] Accordingly, there is a legitimate state interest in regulating communications of the kind at the core of Plaintiffs' business model.

Next, Nationwide Biweekly argues that the disclosures would be "unduly burdensome" because the Statutes could require up to "four separate lengthy disclaimers." (Dkt. No. 41 at 19:18-24). Plaintiffs are exaggerating the facts. The disclosure must say, simply, that Nationwide Biweekly is not affiliated with or sponsored by the lender and that the lender has not authorized or provided the information for the solicitation. That can be said in a single sentence. Plaintiffs are in control of the number and length of disclosures it must make. They could, for example, simply mention the lender and loan information next to each other and make a single disclosure. The reason

---

[1] *See, e.g.,* N.Y. BANKING LAW § 133; ARIZ. REV. STAT. § 44-1799.51; COLO. REV. STAT. § 6-1-1001.

12

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike    Case No. 5:14-CV-4420-LHK

the statutes are written as they are is that, the more often a firm like Nationwide Biweekly mentions the actual lender in its solicitations, the more likely it will create consumer confusion. Plaintiffs can render the disclosure requirement far less "burdensome" if they opt not repeat the lenders' names and loan information again and again.

Even if the standard to be applied was the intermediate scrutiny of *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 566 (1980) rather than *Zauderer*, Plaintiffs' solicitations are misleading. As set forth in the Opposition to Preliminary Injunction, Plaintiffs and the District Attorneys executed a tolling agreement making solicitations and marketing materials going back several years relevant to any enforcement action. *See Declaration of John F. Hubanks in Support of Opposition to Preliminary Injunction* at Dkt. No. 35 at ¶8. A sampling of those solicitations and marketing materials show that the statements regarding affiliation on the envelope and letters were not always included. *See id.* at ¶12. The ones that now appear are at the end of the letter. Plaintiffs are merely required to include disclosures *if* they reference the lender's name, loan number, or loan amount. The statutes are narrowly tailored to alleviate consumer confusion and deception, without impeding speech.

Plaintiffs also assert that two exceptions apply to its solicitation, the exception set forth in CAL. BUS. & PROF. CODE § 14703 and the nominative fair use doctrine. Neither exception is applicable. As set forth in the moving papers, section 14703 provides that a disclosure is not required if use of the lender's name "is *exclusively* part of a comparison of like services or products in which the person clearly and conspicuously identifies itself or that otherwise constitutes nominative fair use." CAL. BUS. & PROF. CODE § 14703. Here, Plaintiffs' use of the lender's name is not *exclusively* part of a comparison. Although a comparison chart is part of some solicitations, the lender's name is also shown in the envelope window and within the solicitation, separate from the comparison. The comparison also does not make clear that one column consists of current payments to the lender as compared with a product or service offered by Nationwide Biweekly. Instead it references the comparison as the "Current Monthly Payment" versus "new BIWEEKLY

13

option." This is not a comparison that would fall under the exception set forth in Section 14703. It makes it appear that the "BIWEEKLY option" is offered by the borrower's mortgage lender. Moreover, section 14703 only applies to section 14701, not to the use of the consumer's loan number or loan amount, which is governed by Section 14702.

Nominative fair use likewise does not apply. It is a defense that may be utilized in trademark infringement cases. *See New Kids on the Block v. News Am. Publishing, Inc.* (9th Cir. 1992) 971 F.2d 302. Section 14703 sets forth that it is not a violation of the statutes if the use constitutes nominative fair use. The use must, of course, meet the test for that normative fair use. This requires that (1) the product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*

Plaintiffs' use of lenders' names does not meet this test. Plaintiffs' products and services are readily identifiable without use of the lender's name, loan number, or loan amount. The solicitation could leave out reference to the lender's name, loan number, and loan amount and it would still be evident to consumers who Nationwide Biweekly is and what services it offers. Section 14703 also allows a comparison if used exclusively. Plaintiffs arguably could compare current payments to a specific lender in a chart, without having the lender's name and information in the envelope window and at the top of the solicitation. But Plaintiffs' *purpose* for using the lender's name on the envelope and repeatedly in the solicitation is to mislead debtors into believing Nationwide Biweekly is affiliated with their lender. This in turn reduces the number of consumers who simply dispose of the solicitations unopened. Consequently, Plaintiffs cannot satisfy the final element for nominative fair use: that use of the lender's name would not suggest sponsorship or endorsement. This is true even of recent solicitations. However, envelopes and solicitations dating from *before* 2012 -- relevant to enforcement litigation by virtue of the tolling agreement – were even more deceptive. *See Declaration of John F. Hubanks* at Dkt. No. 35 at ¶ 12. So, for example, until recently there was no

14

*Nationwide Biweekly v. John F. Hubanks, et al*
Defendants' Reply ISO Anti-SLAPP Motion to Strike          Case No. 5:14-CV-4420-LHK

disclaimer on the envelope that Plaintiffs' solicitation was not from the lender.  The nominative fair use doctrine is clear that the use of such trademark must do *nothing* to suggest sponsorship or endorsement.  For these reasons, the nominative fair use argument fails.

### III. CONCLUSION

Plaintiffs' lawsuit is a transparent "preemptive strike" intended to interfere with the District Attorneys' attempts to enforce California consumer protection laws.  It arises out of protected communications by the District Attorneys and in the context of a contemplated enforcement action that constitutes a petition on behalf of the People of the State of California to the judicial branch for redress of grievances.  As explained herein, Plaintiffs are unlikely to succeed on the merits of this action.

For the foregoing reasons, Defendants respectfully request that this Court strike Plaintiffs' Second and Third Causes of Action pursuant to CAL. CIV. PROC. CODE § 425.16, and award attorney fees and costs under § 425.16(c)(1).

Dated:  February 10, 2015.   CHARLES J. McKEE, COUNTY COUNSEL

By:  */s/ William Litt*
WILLIAM M. LITT, Deputy County Counsel
Attorneys for Defendants JOHN F. HUBANKS
and the COUNTY OF MONTEREY

Dated:  February 10, 2015.   STEVEN M. WOODSIDE, COUNTY COUNSEL

By:  */s/ Brian Case*
BRIAN C. CASE, Deputy County Counsel
Attorneys for Defendants Andres H. Perez and
the COUNTY OF MARIN

15