STEVEN M. WOODSIDE, COUNTY COUNSEL
Brian Charles Case SBN 254218
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Tel.: (415) 473-6117, Fax: (415) 473-3796

Attorney(s) for County of Marin (a.k.a. Marin County District Attorney's Office)
and Deputy District Attorney Andres H. Perez

CHARLES J. MCKEE, COUNTY COUNSEL
William Merrill Litt SBN 166614
168 W Alisal Street, 3rd Floor
Salinas, CA 93901
Tel.: (831) 755-5045, Fax: (831) 755-5283

Attorney(s) for County of Monterey (a.k.a. Monterey County District Attorney's Office)
and Deputy District Attorney John Hubanks

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio Corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County Agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency, <br><br> Defendants. | Case No.: 14-cv-04420-LHK <br><br> **(FED. R. CIV. P. 12(b)(5))** <br><br> **JOINT REPLY MEMORNADUM IN SUPPORT OF MOTION TO DISMISS (FED. R. CIV. P. 12(b)(1); 12(b)(6); and 12(b)(7) )** <br><br> Date: April 30, 2015 <br> Time: 1:30 p.m. <br> Judge: Hon. Lucy H. Koh <br> Courtroom 8, 4th Floor <br> Address: 280 South First Street <br> San Jose, CA 95113 |

**<u>TABLE OF CONTENTS</u>**

I.  Only the Deputy District Attorneys, Sued in Their Official Capacities, Are
    Proper Parties, and Plaintiffs Fail to Allege Liability Under *Monell.* ....................1

    A.  The Counties are Improper Parties Because the Prosecutorial Conduct
        at Issue was Done on Behalf of the State ................................................1

    B.  The State or the Attorney General, in her Official Capacity, is an
        "Indispensable Party." .........................................................................1

    C.  Plaintiffs Cannot Avoid the *Monell* "Custom or Policy" Requirement
        by Naming the Individual Deputies in Their Official Capacities, and
        They Do Not Allege Harm Resulting From an Unconstitutional County
        Custom or Policy..................................................................................2

    D.  Nationwide Has Not Properly Stated a Claim Under
        *Monell*..............................................................................................4

II. Nationwide Does Not State A Cognizable Claim of Underlying Constitutional Injury....5

    A.  The *Zauderer* Standard Applies……………………………………………..5

    B.  Nationwide Fails to Plead a Cognizable Claim of Constitutional Injury
        Under *Zauderer*…………………………………………………………6

    C.  If Central Hudson Applied, Nationwide Still Fails to State a Claim……………..7

    D.  The Offer Letters Do Not Qualify Under the Statue's Two Exceptions…………8

III. *Pullman* Abstention is Appropriate……………………………………………......10

IV. Nationwide's Claims Are Not Ripe Under Prudential Considerations…………………11

    1.  Nationwide's Claims Are Not Fit for Determination…………………………...12

    2.  Nationwide Faces No Imminent, Irreparable Harm…………………………13

    3.  This Court can Consider The Insufficiency of Nationwide's Evidence…………13

V.  CONCLUSION…………………………………………………………............15

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Addington v. U.S. Airline Pilots Ass'n.,*
    606 F.3d 1174 (9th Cir. 2010)……………………………………………12

*Babbitt v. UFW Nat'l Union*
    442 U.S. 289 (1979)…………………………………………………..11

*Bates v. State Bar of Ariz.*
    433 U.S. 350 (1977)…………………………………………………...10

*Beavers v. Arkansas State Bd. Of Dental Exam'rs*
    151 F.3d 838 (8th Cir. 1998)……………………………………………11

*Bender v. Williamssport Area Sch. Dist.*
    475 U.S. 534 (1986)…………………………………………………...14

*Central Hudson Gas & Elec. v. Public Serv. Comm'n.*
    447 U.S. 557 (1980)…………………………………………...7, 8, 10

*Chaloux v. Killeen*
    668 F.2d 247 (9th Cir. 1989)…………………………………………....2, 3

*Chen-Cheng Wang ex rel. United States v. FMC Corp.*
    975 F2d 1412 (9th Cir. 1992)…………………………………………14

*Chula Vista Citizens for Jobs and Fair Competition v. Norris*
    755 F.3d 671 (9th Cir. 2014)…………………………………………...10

*Confederated Salish v. Simonich*
    29 F.3d 1398 (9th Cir. 1994) ……………………………………………10

*Coons v. Lew*
    762 F.3d 891 (9th Cir. 2014)………………………………………11, 12

*Doe v. Harris*
    772 F.3d 563 (9th Cir. 2014)……………………………………………2

*Doe v. Holy See*
    557 F3d 1066 (9th Cir. 2009)…………………………………………14

*Harrison v. NAACP*
    360 U.S. 167 (1959)…………………………………………………11

*In re Coleman*
    560 F.3d 1000 (9th Cir. 2009)……………………………………....13

*J.M. v. City of King City*
    No. 12-CV-01951 LHK, 2012 WL 4005465 (N.D. Cal. Sept 11, 2012)……………….5

*Kee v. Mersch*
    297 Fed. Appx. 615 (9th Cir. 2008)……………………………………….4

*Kokkonen v. Guardian Life Ins. Co. of America*
    511 U.S. 375 (1994)…………………………………………………...14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    134 S.Ct. 1377 (2014)………………………………………………....11

*Los Angeles County v. Humphries*
    562 U.S. 29, 131 S.Ct. 447 (2010)..............................................2, 3

---

ii

*Monell v. Department of Soc. Svcs.*
    436 U.S. 658 (1978)...............................................................................2, 3, 4, 5

*Natural Res. Def. Council v. Abraham*
    388 F.3d 701 (9th Cir. 2004)………………………………………….…..13

*Neri v. County of Stanislaus Dist. Attorney's Office,*
    No. 1:10-CV-823 AWI GSA, 2010 WL 3582575 (E.D. Cal. Sept. 9, 2010) ....................1

*New Kids on the Block v. News Am. Publishing, Inc.*
    971 F.2d 302 (9th Cir. 1992) ...............................................................9

*People v. Dehle*
    166 Cal.App. 4th 1380 (2008)……………………………………………….1

*Porter v. Jones*
    319 F.3d 483 (9th Cir. 2003)……………………………………………….10

*Ripplinger v. Collins*
    868 F.2d 1043 (9th Cir. 1989)……………………………………………....10

*Rizzo v. Goode*
    423 U.S. 362 (1976)……………………………………………………...5

*Railroad Comm'n of Texas v. Pullman Co.*
    312 U.S. 496 (1941)...........................................................10, 11, 15

*Roberts v. Corrothers*
    812 F.2d 1173 (9th Cir. 1987)…………………………………………….15

*Rounds v. Clements*
    495 F. App'x 938 (10th Cir. 2012)……………………………………….…4

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)…………………………………………14, 15

*Safelite Group v. Jepsen*
    764 F.3d 258 (2d Cir. 2014)…………………………………………….…6

*Savage v. Glendale Union High School*
    343 F.3d 1036 (9th Cir. 2003)…………………………………………....15

*Spencer Enters. Inc. v. United States*
    345 F.3d 683 (9th Cir. 2003)……………………………………………......14

*Susan B. Anthony List v. Driehaus*
    134 S. Ct. 2334 (2014)………………………………………………....11, 12

*Thomas v. Anchorage Equal Rights Comm'n.,*
    220 F.3d 1134 (9th Cir. 1999) …………………………………………12, 13

*Thornhill Publ'g v. Gen. Tel. & Elec. Corp.*
    594 F2d 730 (9th Cir. 1979)…………………………………………....14

*Top Dollar Pawn, Gun & Car Audio No. 5 LLC v. Caddo Parish*
    No. 12-05777, 2013 SL 1069184 (W.D.La. March 14, 2013)…………………………..4

*Weiner v. County of San Diego,*
    210 F.3d 1025 (9th Cir. 2000) ...........................................................1

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000)………………………………………….14, 15

*U.S. v. Bowen,*
    172 F.3d 682 (9th Cir. 1999) ...........................................................1, 5

*US W. Commc'ns. MFS Intelent, Inc.*
     193 F.3d 1112 (9th Cir. 1999) ……………………………………………………13

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of* Ohio
     471 U.S. 626 (1985)...........................................................................5, 6, 7

**STATUTES**

26 U.S.C. Internal Revenue Code
     Section 5000A…………………………………………………………………12

California Constitution
     Article 20, Section 3……………………………………………………………5

Business & Professions Code
     Section 14700……………………………………………………………………11
     Section 14703……………………………………………………………………8, 9
     Section 17200……………………………………………………………………10
     Section 17203………………………………………………………………………1
     Section 17204………………………………………………………………………1
     Section 17500……………………………………………………………………10

Federal Rules of Civil Procedure
     Section 12(b)(1)…………………………………………………………………14, 15
     Section 12(b)(6)…………………………………………………………………4, 15
     Section 12(b)(7)…………………………………………………………………15
     Section 19…………………………………………………………………………1

Federal Rules of Evidence
     Section 201(b)……………………………………………………………………5

Government Code
     Section 26500 ……………………………………………………………………1
     Section 26506……………………………………………………………………1

**OTHER**

David J. Barron, Why (and When) Cities Have a Stake in Enforcing the Constitution
     115 Yale L.J. 2218 (2006)……………………………………………………..3

Richard H. Fallon Jr., Fact and Fiction About Facial Challenges,
     99 Cal. L. Rev. 915 (2011) ...................................................................1

Schwarzer, et al., Rutter Group Practice Guide Federal Civil Procedure Before Trial
  California and 9th Cir. Editions, Section 9:212.1 (TRG 2014)……………………………8

Senate Bill 1150 (Cal. 2003-2004) ...........................................................................7
Arizona Revenue Statute Section 44-1799.51 ..........................................................7
Colorado Revenue Statute Section 6-1-1001 ...........................................................7
New York Banking Law section 133 .........................................................................7

**I. ONLY THE DEPUTY DISTRICT ATTORNEYS, SUED IN THEIR OFFICIAL CAPACITIES, ARE PROPER PARTIES, AND PLAINTIFFS FAIL TO ALLEGE LIABILITY UNDER *MONELL*.**

**A. The Counties are Improper Parties Because The Prosecutorial Conduct at Issue was Done on Behalf of the State.**

A California district attorney is a state officer when acting "by the authority and in the name of the people of the state." *Weiner v. County of San Diego*, 210 F.3d 1025, 1031 (9th Cir. 2000). Here, while the actions at issue do not involve a threatened criminal prosecution, but instead a civil action, that action would still be brought "in the name of the people of the state[1]." Because the consumer protection action at issue is not attributable to the County, declaratory or injunctive relief is inappropriate as to the County. *Neri v. County of Stanislaus Dist. Attorney's Office*, No. 1:10–CV–823 AWI GSA, 2010 WL 3582575, at *8 -9 (E.D. Cal. Sept. 9, 2010) is closely analogous. In *Neri*, the Court dismissed the County as a Defendant after finding that "because the conduct at issue was done on behalf of the state … [and,] [r]elatedly, because the 'Brady List conduct' at issue is not attributable to the County, no declaratory or injunctive relief is appropriate as to the County."

**B. The State or the Attorney General, in her Official-Capacity, is an "Indispensable Party."**

Under FED. R. CIV. P. 19[2], "complete relief" is not possible if the State of California is not a party, and dismissal is warranted. Even if it were successful, Nationwide's challenge would not provide Plaintiffs the relief they seek: continuing to mail their solicitations, as written, without threat of prosecution under the plain terms[3] of state consumer protection laws. For all intents and purposes, the relief requested, if granted, would have no effect beyond the actual parties to this

---

[1] Here, the District Attorneys are acting on behalf of the people in investigating and communicating with Plaintiffs and, unless enjoined, will be filing a civil enforcement action against Plaintiffs on behalf of "the People of the State of California." CAL. BUS. & PROF. CODE §§ 17203, 17204; CAL. GOVT. CODE §§ 26500, 26506; *cf. People v. Dehle* (2008) 166 Cal. App. 4th 1380, 1388 ("the People have an interest in being heard throughout the course of a criminal prosecution and it is the duty of the district attorney to advocate on the People's behalf in an effort to achieve a fair and just result.").

[2] "Fed.R.Civ.P. 19(a) provides that a party is 'necessary' in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action." *U.S. v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999)

[3] Because the "threatened enforcement" at issue in this case is the *only possible application* of very specific consumer protection laws regulating solicitations for financial services related to home loans, Plaintiffs present a facial challenge. As stated in Richard H. Fallon Jr.,Fact and Fiction About Facial Challenges, 99 Cal. L. Rev. 915 (2011) (citing *Sabri v. United States*, 541 U.S. 600, 609 (2004))(additional citations omitted), "Courts and commentators have tended to adopt a definition of facial challenges as ones seeking to have a statute declared unconstitutional in all possible applications."

1

litigation. Only a successful challenge against the State of California could insulate Nationwide from future prosecution.

To illustrate why the State is the proper defendant in this action, the case of *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) is instructive. There, sex offenders who had completed their terms of probation brought an action for prospective relief, alleging the Californians Against Sexual Exploitation (CASE) Act violated the First Amendment. The Attorney General, in her official capacity, was the subject of the suit. Accordingly, plaintiffs were able to obtain statewide relief.

**C. Plaintiffs Cannot Avoid the *Monell* "Custom or Policy" Requirement By Naming the Individual Deputies in their Official-Capacities, and they do Not Allege Harm Resulting from an Unconstitutional County Custom or Policy.**

Nationwide claims that the *Monell* "custom or policy" causation requirement is inapplicable to the official-capacity suit against the District Attorneys, but appears to concede it is applicable to the suit against the Counties. (Dkt. No. 40 at 4-6.) Nationwide is wrong: *Monell* applies to all aspects of this case. The Supreme Court settled the issue in *Los Angeles County v. Humphries,* 562 U.S. 29, 131 S.Ct. 447, 453–54 (2010).

Without addressing *Humphries*, Nationwide appears to base its argument on two particular circumstances that exist in this case: (1) the District Attorneys *act as "state officials"* when bringing a civil suit in the name of the People of the State of California; and (2) Nationwide *does not seek money damages*, only prospective relief. These facts are undisputed. But, as decided in *Humphries*, *Monell's* bar on *respondeat superior* liability under Section 1983 applies regardless of the category of relief sought. And, while the "state official" aspect of this case does set this case apart from *Humphries*, that aspect of the case should not direct a different result.

Plaintiffs appear to advance an argument set forth in *Chaloux v. Killeen,* 886 F.2d 247 (9th Cir.1989), that has been expressly overruled by *Humphries*. *Chaloux* held that *Monell* did not govern an action for prospective relief against a county that enforced unconstitutional laws. *Id.* at 250. The Section 1983 action in *Chaloux* implicated Idaho "state officials" -- County Sheriffs enforcing state law. Thus, *Chaloux* is similar to the case at bar insofar as it dealt with a municipality's liability for state policy. *Monell* did not address directly this application of vicarious liability. *See id.*; *see also Chaloux,* 886 F.2d at 251.

2

In 2006, a commentator described the "unclear" status of the law in 2006:

> Precisely because Monell does not address that issue, the lower court case law is unclear. The Ninth Circuit has held that the official policy or custom requirement does not apply if a plaintiff seeks prospective injunctive relief from a city's policy because Monell was primarily concerned with protecting the local treasury. Thus, cities may be sued under § 1983 for enforcing an unconstitutional state law, though plaintiffs may not recover damages. [footnote omitted, citing *Chaloux v. Killeen,* 886 F.2d 247 (9th Cir.1989)] The Ninth Circuit's reasoning, however, cannot be right. Dispensing with the official policy or custom requirement in all injunctive actions would, as the Seventh Circuit explains, effectively make cities responsible for individual actions that are in fact against official city policy. [footnote omitted, citing *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468-69 (7th Cir. 2001)] Why make the city subject to suit for a choice made by a low-level official that the city itself never countenanced?

David J. Barron, *Why (and When) Cities Have a Stake in Enforcing the Constitution,* 115 Yale L.J. 2218, 2236 (2006).

The last line of Barron's commentary gets at the heart of the issue presented by Nationwide's challenge: Why make the County subject to suit without *Monell's* "policy or custom" bar on *respondeat superior* liability? More precisely, in this case, why make the County subject to suit for a choice made by a public prosecutor, in his capacity as a "state official," to threaten a civil action to enforce State law?

The answer – that a County should not be subject to such a suit - can be found in *Humphries,* 562 U.S. 29, 131 S.Ct. at 453–54 . As the *Humphries* Court explains, regardless of the relief sought, a local government should only be subject to suit under Section 1983 when its "own" violations are at issue; to hold otherwise would "undermine *Monell's* logic." *Id.* at 453.

Furthermore, the answer has nothing to do with the economic cost to the municipality (here, the Counties.) There are obvious costs in defending a suit for purely prospective relief, including liability for attorney's fees, even where money damages are not sought. But, that isn't the point of *Humphries,* where the Supreme Court said, "as we have pointed out, the Court's rejection of *respondeat superior* liability [in *Monell*] primarily rested not on the municipality's economic needs, but on the fact that liability in such a case does not arise out of the municipality's own wrongful conduct." *Id.* at 453-454.

The distinction here - that the conduct at issue implicates the Deputy District Attorneys as "state officials" - provides all the more reason to say that the logic of *Monell* would be undermined if

3

the "policy or custom" requirement were cast aside. Absent the allegation of a County "policy or custom," there is nothing about a choice made by a public prosecutor, in his capacity as a "state official," threatening a civil action to enforce State law that has anything to do with the County's "own wrongful conduct."

The case relied on by Nationwide, *Rounds v. Clements*, 495 F. App'x 938, 941 (10th Cir. 2012), does not address the scenario at bar. In *Rounds*, the officer was an agent of the Colorado Department of Corrections. Thus, the answer to the question in that case is much more straightforward: shouldn't the *State of Colorado* be subject to a suit for prospective relief without *Monell's* "policy or custom" bar on *respondeat superior* liability, in an action against a state officer for prospective relief? Yes, of course it should. But that isn't the issue in this case. Perhaps, because *Rounds* makes a rather obvious point of law, it has never been cited in any federal case for this same point.

In sum, under the Supreme Court's decision in *Humphries*, this issue should be decided as it was in *Top Dollar Pawn, Gun & Car Audio No. 5 LLC v. Caddo Parish,* Case No. 12-0577, 2013 WL 1069184, at *4 (W.D.La., March 14, 2013): "With no factual allegations asserting an official policy, custom, or practice on the part of DA Scott or the Caddo Parish District Attorney's Office, there can be no *Monell* claim."

**D. Nationwide Has Not Properly Stated a Claim Under *Monell*.**

Also as in *Top Dollar Pawn*, this Court should not consider the new *Monell* contentions in Nationwide's opposition brief, because the opposition brief in no way amends its Complaint. ("Top Dollar Pawn's [new *Monell* policy or custom] contentions in its opposition brief in no way amend its Supplemental and Amended Complaint." *Top Dollar Pawn,* supra, at fn3. The contents of an opposition or other pleading cannot be deemed part of the original complaint, and cannot operate to provide additional facts or the missing elements of a defective claim. *E.g.*, *Kee v. Mersch* 297 Fed. Appx. 615, 617 (9th Cir. 2008)("In deciding a Rule 12(b)(6) motion, a court is generally limited to considering the contents of the complaint."). As this Court stated in a recent decision: "While responsive to Defendants' attack, these allegations are not found within the four corners of Plaintiffs' SAC itself or in any attachments thereto, nor are they judicially noticeable facts. See Fed. R. Evid.

201(b). The Court therefore may not consider these additional allegations for purposes of ruling on the pending motion to dismiss . . .". *J.M. v. City of King City,* Case No. 12-CV-01951-LHK, 2012 WL 4005465, at *5 (N.D. Cal. Sept. 11, 2012).

Even if the Court did consider these new contentions as part of Nationwide's Complaint, which would be improper, Nationwide's new *Monell* contention that "the District Attorney's Offices acted in their local capacity by creating budgetary incentives and/or failing to implement safeguards against the undue influence of County Bounty" is insufficient, as a matter of law. Dkt. 40 at 12:16. Nationwide's new contention, even taken as true for purposes of this 12(b)(6) Motion, cannot possibly support *Monell* liability because Nationwide fails to plead a causal link to the alleged constitutional injury. (*See Monell v. Department of Social Servs.,* 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where ... causation [is] absent."); and *Rizzo v. Goode,* 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct.))."

Nationwide alleges that "the District Attorney's Offices should have the obligation to ensure that the budgeting of such funds does not create a "perverse legal incentive" for their deputy district attorneys to commit unconstitutional actions." (Dkt. No 40, page 14). But, significantly, Nationwide has not pled *any specific facts* to support the idea that the Deputy District Attorneys in this case were actually driven by this imagined "perverse legal incentive to commit unconstitutional actions." Such an allegation is outrageous, contradicts a Deputy D.A.'s Oath of Office[4], and is entirely unsupported by any specific factual allegations.

## II. NATIONWIDE DOES NOT STATE A COGNIZABLE CLAIM OF UNDERLYING CONSTITUTIONAL INJURY

### A. The *Zauderer* Standard Applies.

As set forth in the moving papers, a statute that compels disclosure of purely factual, commercial information, is subject to rational-basis review under *Zauderer v. Office of Disciplinary*

---

[4] The Oath of Office, at Section 3 of Article 20 of the Constitution of California, provides, " "I, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

5

*Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985). Nationwide argues in its Opposition that this standard only applies when the disclosure is "about a company's own products or services." (Dkt. No 40, page 9) But Nationwide's only support for this argument is the Second Circuit case *Safelite Group v. Jepsen*, 764 F.3d 258 (2d Cir. 2014), which is not factually similar to the disclosure requirement here.

Safelite operated an insurance claims management company and had an affiliate, Safelite Autoglass in Connecticut that repaired and replaced auto-glass. When car owners made claims concerning auto-glass issues, Safelite would, when practicable, recommend the use of Safelite AutoGlass to do the repair. If a Safelite AutoGlass facility was not available, Safelite would then recommend a shop on a list of seventy non-affiliated places. Safelite would inform consumers of its affiliation with Safelite AutoGlass. In response to this business model, Connecticut General Assembly passed PA13-67 which provided that Safelite could not mention its affiliate without also naming a competitor. The legislative history of PA 13-67 showed no consumer dissatisfaction with Safelite's business model but instead the legislators stated that PA 13-67 was needed to protect local glass dealers not affiliated with Safelite. *Id.* at 260. In *Safelite*, the Second Circuit held that the *Zauderer* standard did not apply and reasoned that "[p]rohibiting a business from promoting its own product on the condition that it also promote the product of a competitor is a very serious deterrent to commercial speech." *Id.*

Here, Nationwide alleges that the Statute mandates that it "inform potential customers that their particular lender does not 'authorize' Nationwide's services." This is not a disclosure about the lender's product or service. The Statute does not require that Nationwide indicate that the lender has a certain product, or that the lender offers a certain interest rate or other service. It merely requires that *if* Nationwide *chooses* to reference a lender's name, loan number or loan amount in its solicitation that it truthfully informs the consumer that *Nationwide's product and service* is not affiliated with or authorized by the lender. An authorization, or lack thereof, by the lender is not a disclosure about a product or service of that lender.

**B. Nationwide Fails to Plead a Cognizable Claim of Constitutional Injury Under *Zauderer***

6

Nationwide states that even if *Zauderer* applies – which it does – that the disclosure requirements must be reasonably related to the State's interest in preventing deception and not unduly burdensome *but* the District Attorneys have "failed to mention *how* the Offer Letters are deceptive or misleading in the first place." (Dkt. No 40, page 11)

That is not the issue in this case. The District Attorneys have not yet brought their case against Nationwide. If, and when, that case is filed that is the forum for determining whether the actual Offer Letters are deceptive or misleading and whether the disclosures are sufficient. Here, Nationwide is essentially asking this Court to determine whether the Statutes at issue are constitutional. As set forth in the moving papers, the State in enacting the Statutes at issue did find that deceptive and misleading solicitations in the mortgage industry were an issue – this has also been an issue of national concern as is evident from the other states that have enacted similar laws.[5] Accordingly, there is a legitimate state interest.

Next, Nationwide argues that the disclosures would be "unduly burdensome" because the Statutes could require up to "four separate lengthy disclaimers." (Dkt. No. 40, page 12) This is not so. The Statutes require that Nationwide disclose that is not affiliated or sponsored by the lender and that the lender has not authorized or provided the information for the solicitation. That can be said in one, maybe two sentences, in what is otherwise a very lengthy solicitation. Further, to argue that it would require "up to four" disclaimers is just nonsensical. Nationwide could, just mention the lender and loan information next to each other and make one disclosure. But if it chooses to reference that information on the envelope and throughout the solicitation, then the Statute *could* require up to four disclaimers. They would not, however, have to be lengthy and the minor word processing involved is not burdensome. In essence, Nationwide is in control of what lender or loan information it uses in its solicitation and is only required to make the disclosures if it chooses to utilize that information.

**C. If *Central Hudson* is Applied, Nationwide Still Fails to State a Claim.**

---

[5] The basis for SB 1150, as set forth in the legislative history, is the increase in the number of complaints by consumers who were confused by solicitations and advertisements using their lender's name, loan number or loan amount. *See* Sen. Jud. Com., Analysis of Sen. Bill No. 1150 (2003-2004 Reg. Sess.) April 21, 2014, pages 1-8 at *Exhibit B to Defendants' Joint Request for Judicial Notice*. Further, California is not the only jurisdiction to enact such a law. Several other jurisdictions have enacted similar laws in an attempt to curtail consumer confusion. *See, e.g.,* N.Y. BANKING LAW § 133; ARIZ. REV. STAT. § 44-1799.51; COLO. REV. STAT. § 6-1-1001.

Under the *Central Hudson* standard, Nationwide's claims still fail because the solicitations are misleading, the state has a substantial interest in ensuring its consumers are not deceived, and the disclosure requirements are not extensive.

Nationwide's solicitations are misleading. *Central Hudson Gas & Elec. V. Public Serv. Comm'n*, 447 U.S. 557 (1980). Nationwide and the District Attorneys have a tolling agreement in place that makes solicitations and marketing materials several years back relevant to any prospective case. *See Declaration of John F. Hubanks in Support of Opposition to Preliminary Injunction* at Dkt. No. 40 at ¶8. A sampling of those solicitations and marketing materials show that the statements regarding affiliation on the envelope and letters were not always included. *See id.* at ¶12. The ones that now appear are at the end of the letter. According to the Hubanks Declaration and exhibits thereto, the current version of the solicitations are *still* misleading. Even if Nationwide's current offer letters may be clearer to consumers, the former solicitations were misleading.

Further, as set forth in the moving papers, this is a nationwide issue that several jurisdictions have addressed with similar statutes. The Statutes do not restrict free speech. Nationwide is not prevented from lawfully comparing its services to the lenders, in fact that is expressly permitted in Business & Professions Code Section 14703. Nationwide is merely required to include disclosures *if* it references the lender's name, loan number or loan amount. Accordingly, the Statutes are narrowly tailored to alleviate consumer confusion and deception, without impeding speech and would pass muster under *Central Hudson* as well.

**D. The Offer Letters Do Not Qualify under the Statute's Two Exceptions.**

In its Opposition, Nationwide again asserts that two exceptions apply to its solicitation, the exception set forth in Section 14703 and the nominative fair use doctrine. CAL. BUS. & PROF. CODE § 14703. This is not the case.[6] Section 14703 provides that a disclosure is not required if use of the

---

[6] Nationwide argues that whether the comparison exception applies "requires reference to the evidence, which is outside the scope of this motion to dismiss." (Dkt. No 40, page 13) However, the law is clear, that where the Complaint references a document but fails to attach it, the document may be considered on a motion to dismiss. *See* Schwarzer, et al, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. and 9th Cir. Editions, §9:212.1 (TRG 2014). Further, Defendants are not arguing the truthfulness of the evidence and are in fact assuming that Nationwide's Offer Letters attached to its preliminary injunction are true and correct copies of the Offer Letters. Nationwide opened the door to discussion of these Offer Letters because it referred to them in the Complaint and claims they are proper comparisons. (Dkt. No 40, ¶¶ 14, 32)

lender's name "is *exclusively* part of a comparison of like services or products." CAL. BUS. & PROF. CODE § 14703. Here, Nationwide's use of the lender's name is not *exclusively* part of a comparison. Although a comparison chart may be provided in some of Nationwide's solicitations, the lender's name is also shown in the envelope window and separately within the solicitation. Further, the comparison does not clearly identify that one column is for the current lender's payments versus Nationwide's product or service. Instead it merely references the comparison as the "Current Monthly Payment" versus "new BIWEEKLY option." This is not a comparison that would fall under the exception set forth in Section 14703.

Next, Nationwide argues that nominative fair use applies because it is set forth expressly in the Statute and that "itself … qualifies as sufficient authority for Nationwide's argument." But Nationwide fails to apply that defense to the facts here. Nominative fair use is a *defense* that may be utilized in trademark infringement cases. *See New Kids on the Block v. News Am. Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992). The nominative fair use defense requires that (1) the product or service in question must be one not readily identifiable without use of the trademark, (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*

Nationwide has not, and cannot, assert that its services would not be identifiable without the information. In fact, the solicitation could leave out reference to the lender's name, loan number and loan amount and still be clear to consumers who Nationwide is and the services they offer. Further, to satisfy nominative fair use, Nationwide must show that use of the lender's name would not suggest sponsorship or endorsement. Nationwide cannot meet this test. First, the solicitation has "[your lender] loan" showing through the envelope window. Further, envelopes *before* 2012, and relevant to any litigation by the Defendants, did not contain such a disclosure. Once the envelope is opened, the solicitation has the lender's name at the top, directly above the consumer's name and information. Although there is a statement at the bottom that Nationwide is not affiliated with the lender, there is still a strong *suggestion* by the use of the lender's name at the top and on the

*Nationwide Biweekly v. John F. Hubanks, et al.*,                     Case No. 5:14-CV-4420-LHK
Joint Reply Memorandum in Support of Motion to Dismiss

envelope that this solicitation is in some way endorsed by the lender.  The nominative fair use doctrine standard is clear that the use of such trademark must do *nothing* to suggest sponsorship or endorsement.

### III. *PULLMAN ABSTENTION IS APPROPRIATE.*

The Ninth Circuit has held that in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) abstention is appropriate where:  "(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the possible determinative issue of state law is uncertain." *Confederated Salish v. Simonich*, 29 F.3d 1398, 1407 (9th Cir. 1994).  No California appellate court has examined the constitutionality of the challenged statutes, Section 14700 either facially or as applied to Plaintiffs' loan repayment solicitations.  These statutes and California's broader UDAP statutes, Sections 17200 and 17500 embody important state consumer protection policies.

In *Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003), involving a vote-swapping website on which Plaintiffs rely, the court found that the first *Pullman* prong was not met.  The courts deciding *Ripplinger v. Collins*, 868 F.2d 1043 (9th Cir. 1989), and *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, 755 F.3d 671 (9th Cir. 2014), like the *Porter* court, opted not to abstain because of concern over the chilling effect on activities protected by the First Amendment if a federal court did not consider the challenges at issue.  However, contrary to Plaintiffs' assertions, *Pullman* abstention may be viable in cases involving the First Amendment and commercial speech. "Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation."  *Bates v. State Bar of Ariz.*, 433 U.S. 350, 381 (1977).  It is far less likely to be "chilled" than core First Amendment speech. "[C]ommercial speech, the offspring of economic self-interest, is a hardy breed of expression." *Central Hudson, supra,* 447 U.S. at 564.

Where, as here, a state court has yet to interpret a challenged statute and apply it to the facts at bar, abstention is appropriate.  "[W]hile Pullman abstention has generally been disfavored in the context of First Amendment claims where state statutes have been facially challenged under the

federal constitution . . . *Pullman* abstention has nonetheless been upheld in some cases in the interest of comity and federalism." *Beavers v. Arkansas State Bd. of Dental Exam'rs*, 151 F.3d 838, 841(8th Cir. 1998)(internal citations omitted). *See Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 312 (1979) ("in this case the District Court should not have adjudicated substantial constitutional claims with respect to statutory provisions that are patently ambiguous on their face"); *Harrison v. NAACP*, 360 U.S. 167, 178 (1959); ("these enactments should be exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, so that federal judgment will be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court.").

Rather than assume California courts will interpret and apply Section 14700 in a manner that does violence to the First Amendment, this Court should apply the *Pullman* criteria and abstain until California courts have applied these important, recently enacted, consumer protection statutes to Plaintiffs' business model.

## IV. NATIONWIDE'S CLAIMS ARE NOT RIPE UNDER PRUDENTIAL CONSIDERATIONS.

Contrary to Nationwide's suggestion, the Supreme Court did not "question" the "continuing vitality of the prudential ripeness doctrine" in the recent case of *Susan B. Anthony v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). In fact, a few months prior to *Susan B. Anthony*, the Supreme Court ruled in the matter of *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014). In *Lexmark*, the Supreme Court did not do away with all legal theories "prudential" in nature. *Lexmark Int'l, Inc*, 134 S.Ct. at 1387, n. 3. Instead, it reframed the matter as one of statutory interpretation. *Id.* at 1387-88 and n. 4. Later that year in *Susan B. Anthony v. Driehaus*, the Supreme Court clarified and reminded parties seeking dismissal based on prudential ripeness of its "virtually unflagging" obligation to hear cases. *Susan B. Anthony*, 134 S.Ct. at 2347. However, the Supreme Court merely stated that it need not "resolve the continuing vitality of the prudential ripeness doctrine" because such factors were "easily satisfied" in this particular case. 134 S.Ct. at 2347.

Instead, prudential considerations are alive and well. In *Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014), which was decided after *Susan B. Anthony*, the Ninth Circuit dismissed an action in part for

being prudentially unripe. In 2010, Nick Coons and Eric Novack brought a facial constitutional challenge to two provisions of the Patient Protection and Affordable Care Act (ACA). *Coons v. Lew*, 762 F.3d 891, 894-895 (9th Cir. 2014). Coons alleged that the ACA's so-called "individual mandate" in 26 U.S.C. §5000A of the Int. Rev. Code, which requires that specified individuals maintain a minimum level of health insurance coverage or pay a penalty, denied his substantive due process rights to medical autonomy and informational privacy. *Coons*, 762 F.3d at 899. The Ninth Circuit found that the district court properly dismissed Coons' informational privacy claim for lack of ripeness. *Id.* at 900-901. The court noted that Coons specifically alleged that his fundamental right to privacy in his medical information was burdened by the requirement that he provide his medical information to third-party insurance providers. *Id.* However, Coons did not allege that he had applied for medical insurance or that any third party had requested his disclosure of medical information as a condition precedent to obtaining the minimum required coverage. *Id.* Accordingly, Coons' challenge was found prudentially unripe because it would require evaluation of a speculative intrusion. *Id.*

Ripeness involves a prudential doctrine, under which a court must evaluate (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1141 (9th Cir. 1999) (internal references omitted).

### 1. Nationwide's Claims Are Not Fit For Determination

Nationwide argues that, although no civil enforcement suit has been brought, its claims are fit for determination because the District Attorneys have issued a "threat" of civil action by way of a letter to it. In addition, it appears that by way of the Lipsky Declaration, Nationwide is asserting that the letter to it created an injury, which makes the issue presently fit for determination. Dkt. No. 40 at 8:7-8.

However, the letter is neither sufficiently certain nor sufficiently imminent to satisfy the ripeness doctrine[7]. First, the letter merely threatens a possible civil action. Second, a resolution of

---

[7] The Ninth Circuit has consistently held that a case is not fit for review if factual components depend on pending determinations by public or private entities. See, e.g., *Addington v. U.S. Airline Pilots Ass'n,*, 606 F.3d 1174, 1179-80 (9th Cir. 2010) (holding that the case was not fit for determination when the Union's seniority proposal had not yet been

the civil action would have to occur, e.g. a trial on the merits, before any action could be taken against Nationwide as a result of the civil action. Accordingly, without more, a letter detailing an event that *might* occur if the Nationwide continued to refuse to correct its written solicitations is not an active threat such that this issue is imminent and fit for determination. See *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.") (internal quotation marks and citation omitted); *Thomas*, 220 F.3d at 1141 (claim not ripe for review where "any threat of enforcement or prosecution against [plaintiffs] in this case—though theoretically possible—is not reasonable or imminent . . . [and t]he asserted threat is wholly contingent upon the occurrence of unforeseeable events.").

## 2. Nationwide Faces No Imminent, Irreparable Harm

For the purpose of prudential considerations, hardship "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Natural Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004). The "absence of any real or imminent threat of enforcement, . . . seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142.

In its Opposition, Nationwide claims that it has established such harm through the Lipsky Declaration – in particular through paragraphs 14-15. Dkt. No. 40 at 20:1-3. Yet, these very paragraphs only highlight the speculative nature of the alleged harm – "[a]llowing the District Attorneys to bring an enforcement action . . . *could* destroy Nationwide's business;" "[j]ust the mere suggestion by a governmental authority that Nationwide is deceiving its customers . . . *could* destroy our entire business;" and "Nationwide *would likely be harmed . . . if* the District Attorneys are able to pursue an action against Nationwide." Lipsky Decl. at ¶¶ 14-15, emphasis added. Because Nationwide has not demonstrated that delaying determination on this issue until it becomes ripe would cause irreparable hardship, its claims are not prudentially ripe for consideration.

## 3. This Court Can Consider The Insufficiency of Nationwide's Evidence

adopted); *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (finding the legality of interim rates not fit for determination because "the Commission may not have reached a final decision on the rates").

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject matter jurisdiction. *Chen–Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). The Court is under a continuing duty to dismiss an action whenever it appears that it lacks jurisdiction. *Id.*; see also *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Thus, in the present action, Nationwide bears the burden of demonstrating that subject matter jurisdiction exists over its Complaint.

On a motion to dismiss pursuant to Federal Rules of Civil Procedure, Section 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. A Section 12(b)(1) jurisdictional attack may be "facial" or "factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In evaluating a *facial* attack on jurisdiction, the Court must accept the factual allegations in Nationwide's complaint as true and draw all reasonable inferences in its favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

However, by contrast, in a factual attack such as this one, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Accordingly, in this case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publ'g v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

Further, "[i]n resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039 (citation omitted). And "[d]ismissal is then appropriate 'where it appears beyond doubt that the *plaintiff* can prove no set of facts in support of his claim

14

which would entitle him to relief.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987), emphasis added.

Therefore, contrary to Nationwide's argument that evidence may not be weighed on a motion to dismiss, it is well established that when a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," *Safe Air*, 373 F.3d at 1039, citing *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003), and "need not presume the truthfulness of the plaintiff's allegations," *id.*, citing *White*, 227 F.3d at 1242.

## VI.   CONCLUSION

Because this suit is (1) lacking in prudential ripeness; and (2) the appropriate subject of dismissal under *Pullman* abstention, this Court should decline to exercise subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  Moreover, each claim fails as a matter of law. (FED. R. CIV. P. 12(b)(6)).  Also, Nationwide Biweekly has failed to join a necessary party, The State of California. FED. R. CIV. P. 12(b)(7).

Dated:  February 10, 2015.

CHARLES J. McKEE, COUNTY COUNSEL

By:   __/s/  William Litt_____
  WILLIAM M. LITT
  Deputy County Counsel
  Attorneys for Defendants JOHN F. HUBANKS
  and  the COUNTY OF MONTEREY

Dated:  February 10, 2015.  STEVEN M. WOODSIDE, COUNTY COUNSEL

By:   __/s/  Brian Case_____
  BRIAN C. CASE
  Deputy County Counsel
  Attorneys for Defendants Andres H. Perez and
  the COUNTY OF MARIN