1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

LOAN PAYMENT ADMINISTRATION
LLC, et al.,

Plaintiffs,

v.

JOHN F. HUBANKS, et al.,

Defendants.

Case No.:14-CV-04420-LHK

**ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 5, 17

Before the Court is a motion for preliminary injunction filed by Plaintiffs Nationwide

Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel S. Lipsky

(collectively, "Nationwide"). ECF No. 5 ("Motion").[1] Nationwide requests that the Court issue a

preliminary injunction prohibiting Defendants John F. Hubanks, Andres H. Perez, Monterey

County District Attorney's Office, and Marin County District Attorney's Office (collectively,

"Defendants") from enforcing certain consumer fraud provisions of the California Business and

Professions Code against Nationwide. Having considered the submissions of the parties and the

---

[1] On October 8, 2014, Nationwide filed an amended notice of its motion for preliminary
injunction. ECF No. 17. The amended notice provided the current hearing date of March 12, 2015,
at 1:30 p.m. *Id.* at 2.

1

relevant law, the Court hereby DENIES Nationwide's Motion, for the reasons stated below.

## I. BACKGROUND

### A. Factual Background

Nationwide Biweekly Administration, Inc. is an Ohio Corporation with its headquarters in Xenia, Ohio. ECF No. 1 ("Compl."), ¶ 2. Loan Payment Administration LLC is a subsidiary of Nationwide Biweekly Administration, Inc., also with its headquarters in Xenia, Ohio. *Id.* ¶¶ 3, 15. Daniel S. Lipsky is the sole shareholder of Nationwide Biweekly Administration, Inc. *Id.* ¶ 4.

Defendant John F. Hubanks ("Hubanks") is a deputy district attorney with the Monterey County District Attorney's Office. *Id.* ¶ 5. Andres H. Perez is a deputy district attorney with the Marin County District Attorney's Office. *Id.* ¶ 6. The Monterey County District Attorney's Office and the Marin County District Attorney's Office are the local district attorney offices for the County of Monterey and County of Marin, respectively. *Id.* ¶¶ 7-8.

Nationwide is an administrator of biweekly loan repayment programs. *Id.* ¶ 12. Nationwide has approximately 125,000 customers around the country, including over 10,000 in California. *Id.* At issue in the instant litigation is a Nationwide program called the "Interest Minimizer" biweekly program, which is targeted at borrowers with home mortgages. *Id.* ¶ 13. According to Nationwide, most mortgage servicers debit a borrower's mortgage payments on a monthly basis. *Id.* Under Nationwide's "Interest Minimizer" program, Nationwide acts as an intermediary between the borrower and the mortgage servicer. Specifically, Nationwide arranges with the borrower to debit one-half of the borrower's monthly mortgage payment from the borrower's checking account every other week. *Id.* Nationwide then remits the mortgage payments to the mortgage servicer once per month, as required by the servicer. *Id.* However, because Nationwide debits the mortgage payments on a bi-weekly (as opposed to monthly) basis, Nationwide debits 26 times over the course of the year, effectively resulting in the creation of a 13th annual payment (as opposed to 12 annual payments under a traditional monthly repayment plan). *Id.* Nationwide claims that the extra payment per year saves its customers money by helping Nationwide's customers to pay off their mortgage loans faster than they otherwise would. *Id.*

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    According to Defendants, Nationwide charges customers of the "Interest Minimizer"

2    program a "deferred enrollment fee." Declaration of John F. Hubanks, ECF No. 35 ("Hubanks

3    Decl."), ¶ 13. This fee is equivalent to one biweekly debit, or half of a homeowner's usual

4    monthly mortgage payment, and is charged six months after enrollment in the "Interest

5    Minimizer" program. *Id*. Nationwide's written solicitations do not disclose the existence of this

6    fee. *See* Hubanks Decl., Exs. A & B. Defendants allege that Nationwide employees "responding to

7    calls from borrowers are carefully trained to obscure the existence or amount of this fee." Opp'n at

8    2.

9    In conjunction with their opposition, Defendants submitted three consumer complaints

10   filed with the Better Business Bureau about Nationwide's business practices. *See* Hubanks Decl.,

11   Ex. J. In one of those complaints dated August 24, 2011, the consumer, an enrollee in the "Interest

12   Minimizer" program, complained that Nationwide "never told [the consumer] that there will be [a]

13   deferred enrollment fee and I am sure of it because if they ever mentioned a fee I would

14   immediate[ely] drop discussion and wouldn't proceed to this program." *Id*. at 2. The fee at issue in

15   the consumer's complaint was $1,588.37. *Id*. According to the consumer's complaint,

16   Nationwide's investigation of the consumer complaint determined that although the Nationwide

17   employee who handled the consumer's call "did disclose the fact that there was a 'deferred fee'

18   that would be collected in 6 months, the manner in which the fee was disclosed was not compliant

19   with [Nationwide's] policies and procedures." *Id*. at 3.

20   **1. Nationwide's Practice of Customer Solicitation**

21   To solicit customers to participate in its "Interest Minimizer" program, Nationwide

22   (sometimes through Loan Payment Administration LLC, the subsidiary of Nationwide Biweekly

23   Administration, Inc.) mails letters to borrowers. Because Nationwide's solicitation letters are

24   relevant to the instant Motion, the Court summarizes the content of these letters here.

25   In March 2013, a homeowner in Monterey County received a solicitation from

26   Nationwide. Hubanks Decl. ¶ 3. The solicitation arrived in an envelope with the return address of

27

28

3

United States District Court
Northern District of California

Nationwide Biweekly Administration, Inc. Hubanks Decl. Ex. A, at 4. Above the window where the homeowner's address appears, the letter stated in large bold font: "Loan Payment Change Request." *Id*. To the far right of the address window, the letter stated in smaller, non-bolded font: "Nationwide Biweekly Administration is not affiliated with the lender." *Id*. The solicitation letter itself used the name of the homeowner's mortgage servicer, Provident Savings Bank Fsb, at the top of the letter, in the first sentence of the letter, and at least two other times in the letter. *Id*. at 2. The letter also referred to the specific amount of the homeowner's loan several times, often in connection with explicit references to the mortgage servicer.[2] *See id*. ("Since your $348,000 loan with Provident Savings Bank Fsb is one of the largest bills you have to pay, it makes sense to use an <u>easier and faster way to pay it off</u>.") (emphasis in original); *id*. ("To change your payment to a smaller weekly or bi-weekly debit amount for your $348,000 loan with Provident Savings Bank Fsb . . ."). The letter also included a "Sample Comparison" chart comparing the amount of the borrower's monthly mortgage payments with the hypothetical payments the homeowner would make on a bi-weekly or weekly basis, as well as the interest savings the homeowner could realize by paying his or her loan on a bi-weekly or weekly basis. *Id*. There is a disclaimer at the very bottom of the letter which stated, in what appears to be somewhat smaller font than the font used throughout the letter, that Nationwide "is *not affiliated, connected, associated with, sponsored, or approved* by the lender listed above." *Id*. (emphasis in original).

The solicitation letter also referred the homeowner to an attached document with questions and answers about the "Interest Minimizer" program. *Id*. at 3. In response to the first question ("Does my Lender or loan change?"), the soliciting letter stated: "No. The bi-weekly program is administered to your current lender. There is no change in your interest rate or the terms of your loan." *Id*. In response to the eighth question ("Who is Nationwide Biweekly Administration?"), the soliciting letter states that Nationwide is "one of the nation's largest and most recognized

---

[2] Nationwide obtains consumer loan information, including the borrower's name, address, the lender name, and the loan amount from public records. Declaration of Daniel Lipsky in Support of Motion for Preliminary Injunction, ECF No. 6, ¶ 5.

4

1    Independent processors." *Id.*

2         Also in March 2013, the same Monterey County homeowner received a second solicitation

3    letter from Nationwide. Hubanks Decl. ¶ 3. This letter arrived in an envelope with the return

4    address of Loan Payment Administration. Hubanks Decl. Ex. B, at 3. Above the window where

5    the homeowner's address appears, the letter stated in large bold font: "Mortgage Payment

6    Information Enclosed." *Id.* To the far right of the address window, the letter stated in smaller font:

7    "Loan Payment Administration is not affiliated with the lender." *Id.* The second solicitation letter

8    also used the name of the homeowner's mortgage servicer, Provident Savings Bank Fsb, at the

9    very top of the letter, in the first sentence of the letter, and in the letter's third paragraph. *Id.* As

10   with the first solicitation letter, the second solicitation letter also referenced the homeowner's

11   specific loan amount. *See id.* ("Contact us by May 10, 2013 to inform us if you want to change to

12   the biweekly option for your $348,000 loan with Provident Savings Bank Fsb . . ."). The letter also

13   advised the homeowner that "[i]f you waive the biweekly option, you will be asked to confirm that

14   you understand that you are voluntarily waiving the interest savings and loan term reduction

15   achieved through the biweekly option." *Id.* (emphasis in original). The letter also contained a

16   comparison chart of the loan term, approximate interest savings, and loan term reduction under the

17   homeowner's "Current Monthly Payment," referred to elsewhere as a "$348,000, 30 year fixed

18   term, $2,595 monthly payment," compared to the "NEW BIWEEKLY Option." *Id.* At the bottom

19   of the letter, in font that appears to be roughly equivalent in size to the non-bolded font used in the

20   second solicitation letter, there is a disclaimer which stated that Loan Payment Administration

21   LLC "*is not affiliated, connected, or associated with, sponsored or approved* by the lender listed

22   above." *Id.* (emphasis in original).

23        According to another consumer complaint filed with the Better Business Bureau on

24   December 9, 2013 and submitted by Defendants in conjunction with their opposition, one

25   consumer claimed that he "received a letter from Nationwide Biweekly Administration featuring

26   my lender's name, Mountain West Financial Inc., above my name and address on the top left

27

28

*(left margin, vertical text)* United States District Court   Northern District of California

5

corner and assumed wrongly that it was coming from my lender." Hubanks Decl., Ex. J, at 8. The consumer further stated that when he called Nationwide, Nationwide did not disclose the existence of the deferred enrollment fee equivalent to one-half of the consumer's monthly mortgage payment. *Id*. Rather, the consumer stated that "[s]ince I still thought they were affiliated [with] my mortgage company, I assumed no fees were involved and cooperated with them." *Id*. The consumer further stated that he is a "[n]ative French speaker" and "I am not comfortable speaking in English, especially on the phone where I may not properly understand and interpret what I am being told." *Id*.

### 2.   The Investigations of the Defendant Deputy District Attorneys

On July 30, 2013, Nationwide received a letter from Hubanks, a deputy district attorney in the Consumer Protection Unit of the Monterey County District Attorney's Office. Exhibit E to the Declaration of Daniel Lipsky in Support of Motion for Preliminary Injunction ("Lipsky Decl."), ECF No. 6 ("Enforcement Letter"). The Enforcement Letter stated that the District Attorneys for Marin and Monterey County "are in receipt of numerous complaints about the marketing and business practices of Nationwide Bi-Weekly Administration, Inc." *Id*. The Enforcement Letter further stated that these consumer complaints "indicate a pattern of deceptive business practices having an adverse impact on California consumers," based on Nationwide's practice of referencing the names of consumers' lenders and the consumers' loan information in Nationwide's solicitation letters. *Id*.

The Enforcement Letter also stated that Nationwide's solicitation letters violate two state statutes. First, the Enforcement Letter stated that Nationwide's use of lenders' names violates Business and Professions Code § 14701(a), which prohibits a person from using the "name, trade name, logo, or tagline of a lender in a written solicitation . . . without the consent of the lender," unless the letter is accompanied by a statutorily-prescribed disclaimer. *Id*. (quoting California Business and Professions Code § 14701(a)).[3] Second, the Enforcement Letter stated that

---

[3] The relevant statute provides: "No person shall include the name, trade name, logo, or tagline of

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

Nationwide's use of consumers' loan amounts in Nationwide's solicitation letters violates Business and Professions Code § 14702, which prohibits a person from using a consumer's "loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer," unless the solicitation contains a statutorily-prescribed disclaimer.[4] *Id.* at 2.

The Enforcement Letter then stated that, because of Nationwide's alleged violations of Business and Professions Code §§ 14701(a) and 14702, "Nationwide's solicitations have the capacity to deceive and mislead consumers into believing Nationwide is sponsored by or affiliated with the lender, the solicitation is authorized by the lender, or the consumer's loan information was provided by the lender." *Id.* The Enforcement Letter also stated that "the placement of the lender's name in the header of the letter may lead the consumer to believe their lender is, in fact, the originator of the correspondence or affiliated with Nationwide." *Id.*  The Enforcement Letter concluded by stating in part that the Monterey and Marin County District Attorneys "are now determining what formal legal action, if any, will be taken." *Id.* at 3.

The Enforcement Letter also stated that Nationwide "may be in violation of California's Check Sellers, Bill Payers and Proraters Law" because "it would appear Nationwide is acting as a prorater and therefore required to obtain a prorater license" from the state's Department of

---

a lender in a written solicitation for financial services directed to a consumer who has obtained a loan from the lender without the consent of the lender, unless the solicitation clearly and conspicuously states that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, which shall be identified by name. This statement shall be made in close proximity to, and in the same or larger font size as, the first and the most prominent use or uses of the name, trade name, logo, or tagline in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Profs. Code § 14701(a).

[4] The relevant statute provides: "No person shall include a consumer's loan number or loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer, unless the solicitation clearly and conspicuously states, when applicable, that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, and states that the consumer's loan information was not provided to that person by that lender. This statement shall be made in close proximity to, and in the same or larger font as, the first and the most prominent use or uses of the consumer's loan information in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Profs. Code § 14702.

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1  Business Oversight. *Id*. Nationwide has filed a related lawsuit against Jan Owen, in her official

2  capacity as Commissioner of the Department of Business Oversight for the State of California, in

3  which Nationwide has sought an injunction prohibiting the state from enforcing California's

4  prorater laws against Nationwide. *See Nationwide Biweekly Administration, Inc. v. Jan Lynn*

5  *Owen*, Case No. 14-CV-05166-LHK, ECF No. 5.

6  ### 3.  Nationwide Changes the Solicitation Letters

7  In December 2013, Nationwide stopped using actual consumer loan information in its

8  solicitation letters. Lipsky Decl. ¶ 6. Nationwide also changed the comparison chart in

9  Nationwide's solicitation letters such that, instead of comparing Nationwide's "Interest

10  Minimizer" program to the borrower's actual current mortgage payments, the chart uses the

11  "typical monthly repayment plan" of the borrower's lender. *Id*.

12  According to sample letters provided by Nationwide in connection with the instant Motion,

13  some current template solicitation letters also contain the following two sentences: "As always we

14  work for you and not the lender. Partnering only with you the customer who we provide all the

15  savings benefit to, is why we do not contract or partner with the lender." Lipsky Decl., Ex. A.

16  These two sentences did not appear in either of the solicitation letters the Monterey County

17  homeowner received in March 2013. *See* Hubanks Decl., Exs. A & B.

18  ### 4.  Other Enforcement Actions Against Nationwide

19  Nationwide has been the subject of enforcement actions or inquiries in other states for

20  grounds similar to those mentioned in the Enforcement Letter. In February 2010, Nationwide

21  Biweekly Administration, Inc. entered into a stipulated judgment with the Ohio Attorney

22  General's office whereby Nationwide agreed to modify some of its business practices. *See*

23  Hubanks Decl. Ex. C. Among the terms of the stipulated judgment was that Nationwide would not

24  "represent in any manner that it is sponsored, approved, or affiliated with any specific mortgage

25  lender, bank, or loan servicer" in violation of applicable state laws in Nationwide's "written and

26  oral solicitations, envelopes, advertising or promotional materials." *Id*. at 7.

27

28  Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

8

1    Similarly, on October 21, 2011, Nationwide Biweekly Administration, Inc. entered into a

2    consent order with the State of New Hampshire Banking Department. Hubanks Decl. Ex D.

3    According to the consent order, Nationwide failed to ensure Nationwide's advertisements

4    complied with New Hampshire law which, *inter alia*, provide that no individual or business shall

5    use the "full or abbreviated name, trade name, service mark, or trademark of any financial

6    institution in any written, electronic, or oral advertisement or solicitation for products and

7    services" without the financial institution's consent. *Id*. at 3-6. On September 12, 2012,

8    Nationwide entered into similar consent order in Georgia which provided that, among other things,

9    Nationwide would not use advertisements to solicit Georgia consumers that "include an

10   individual's loan number, loan amount, or other publicly available information" unless the

11   solicitation clearly and conspicuously states that Nationwide is not "authorized by, in sponsorship

12   with, or otherwise affiliated with the individual lender." *See* Hubanks Decl. Ex. E, at 3.

13   **B.  Procedural History**

14   On October 2, 2014, Nationwide filed the instant lawsuit in this Court. *See* Compl. The

15   gravamen of Nationwide's lawsuit is that Business and Professions Code §§ 14701(a) and 14702

16   constitute illegal restraints on free speech as applied to Nationwide, in violation of the First

17   Amendment of the U.S. Constitution and Article I, § 2 of the California Constitution. *See, e.g.*,

18   Compl. ¶¶ 25, 28. Nationwide brought one cause of action under 42 U.S.C. § 1983 alleging that

19   Defendants sought to enforce an unconstitutional statute in violation of Nationwide's First and

20   Fourteenth Amendment rights; one cause of action under California Constitution, Article I, § 2;

21   and a third cause of action for declaratory relief that Nationwide's use of lenders' names is exempt

22   from liability under Business and Professions Code § 14703. *Id*. ¶¶ 23-33.

23   Also on October 2, 2014, Nationwide filed the instant Motion. ECF No. 5. In the Motion,

24   Nationwide requests that the Court enjoin the Defendants from enforcing California Business and

25   Professions Code § 14700 *et seq. Id*. at 2. Nationwide also filed a supporting declaration. ECF No.

26   6. On December 30, 2014, Defendants filed a joint memorandum in opposition to the Motion, as

27

28

United States District Court
Northern District of California

9

well as a supporting declaration. ECF Nos. 32 ("Opp'n") & 35. Defendants also filed a joint request for judicial notice. ECF No. 36. On February 5, 2015, Nationwide filed a reply, along with a supporting declaration. ECF Nos. 42 & 43 ("Reply").

## II. LEGAL STANDARD

Preliminary relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id* . at 20. "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). The party seeking the injunction bears the burden of proving the requisite elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2010).

## III. ANALYSIS

### A. Defendants' Request for Judicial Notice

The Court first addresses Defendants' joint request for judicial notice. ECF No. 36. In general, a court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters which are appropriate subjects of judicial notice include the legislative history of state statutes, *Zephyr v. Saxon Mortgage Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012), and publicly-accessible web pages when neither party disputes the pages' accuracy, *Perkins v. LinkedIn Corp.*, Case No. 13-CV-04303-LHK, 2014 WL 2751053, at *8 (N.D. Cal. June 12, 2014).

Here, Defendants request judicial notice of the legislative history of Business and

10

United States District Court
Northern District of California

1   Professions Code § 14700 *et seq.*, and a web page from the Council of Better Business Bureaus

2   web site. ECF Nos. 36-1 & 36-2. These are appropriate subjects for judicial notice, and

3   Nationwide does not oppose the request. Accordingly, Defendants' joint request for judicial notice

4   is GRANTED.[5]

5         The Court now turns to Nationwide's Motion. The Court will address each required

6   element in turn. *See Winter*, 555 U.S. at 20 (a plaintiff seeking a preliminary injunction must

7   establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

8   absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

9   in the public interest).

10         **B.  Likelihood of Success on the Merits**

11         The First Amendment's free speech clause provides that "Congress shall make no law . . .

12   abridging the freedom of speech, or of the press." U.S. Const. amend. I; *see 44 Liquormart, Inc. v.*

13   *Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (noting that the First Amendment "applies to the

14   States under the Due Process Clause of the Fourteenth Amendment."). "As a general matter, the

15   First Amendment means that the government has no power to restrict expression because of its

16   message, its ideas, its subject matter, or its content." *Bolger v. Youngs Drug Prods. Corp.*, 463

17   U.S. 60, 65 (1983) (internal quotation marks omitted).

18         Article I, § 2 of the California Constitution provides that "[e]very person may freely speak,

19   write and publish his or her sentiments on all subjects, being responsible for the abuse of this right.

20   A law may not restrain or abridge liberty of speech or press." Calif. Const. Art. I, § 2. Where, as

21

22   _____

23   [5] In its opposition, Defendants also make several objections to evidence in the Declaration of
Daniel S. Lipsky in Support of Motion for Preliminary Injunction. Opp'n at 3-4. Defendants object

24   to certain statements in the declaration on the grounds that they are hearsay, made without
personal knowledge, or constitute improper opinion testimony, all in violation of the Federal Rules

25   of Evidence. *Id.* at 2. In ruling on a motion for preliminary injunction, a court may consider
evidence that would normally be inadmissible. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389,

26   1394 (9th Cir. 1984) (in deciding motion for preliminary injunction, "[t]he trial court may give
even inadmissible evidence some weight" because "[t]he urgency of obtaining a preliminary

27   injunction . . . makes it difficult to obtain affidavits from persons who would be competent to
testify at trial."). Therefore, the Court DENIES Defendants' objections as moot.

28   

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    here, a statute is challenged on the grounds that it inhibits commercial speech in violation of the

2    California Constitution, the California Supreme Court has used the same standards to evaluate the

3    propriety of those restrictions under the First Amendment to the U.S. Constitution. *See Kasky v.*

4    *Nike, Inc.*, 27 Cal. 4th 939, 969 (2002) ("[W]e have not articulated a separate test for determining

5    what constitutes commercial speech under the state Constitution, but instead we have used the

6    tests fashioned by the United States Supreme Court."). Accordingly, the inquiry used to evaluate

7    whether Nationwide is likely to succeed on the merits of its claim that California Business and

8    Professions Code §§ 14701-02 are unconstitutional under Article I, § 2 of the California

9    Constitution is the same as the inquiry under the First Amendment. *See id.*

10        As a preliminary matter, to determine whether Nationwide is likely to succeed on the

11   merits of its claim, the Court must determine what level of scrutiny applies to California Business

12   and Professions Code §§ 14701-02. *Klein*, 584 F.3d at 1201. Nationwide argues that the standard

13   of intermediate scrutiny should apply. Mot. at 8. Defendants argue that the lower reasonable

14   relationship standard of review applies. Opp'n at 9. The Court now evaluates the two standards,

15   and determines which one is appropriate here.

16        **1.  Applicable Level of Scrutiny**

17        The parties agree that the speech at issue here is commercial speech. *See* Mot. at 2; Opp'n

18   at 9. In general, where a law prohibits commercial speech, that law is subject to intermediate

19   scrutiny under the First Amendment. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 598 (9th Cir.

20   2010). Specifically, intermediate scrutiny applies if a law seeks to restrict commercial speech that

21   is "neither misleading nor related to unlawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub.*

22   *Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). In *Central Hudson*, for instance, the U.S.

23   Supreme Court held that a law which barred "all advertising that promotes the use of electricity"

24   must be justified by a "substantial interest" on the part of the government, and the law must be "no

25   more extensive than necessary to further the State's interest." *Id.* at 558, 564, 569-70 (internal

26   quotation marks omitted).

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

However, where a law is intended to counteract misleading commercial speech by compelling the speaker to disclose otherwise accurate information, that law must meet the lower reasonable relationship—sometimes also referred to as a rational basis—standard of review. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-50 (2010). *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio* is the leading case on this rule. 471 U.S. 626 (1985). At issue in *Zauderer* was a state law which required attorneys who "advertise their willingness to represent clients on a contingent-fee basis" also disclose in their advertisements "that the client may have to bear certain expenses even if he loses." *Id*. at 650.

The *Zauderer* Court held that the law was valid provided that the disclosure requirements were not "unduly burdensome" and the requirements were "reasonably related to the State's interest in preventing deception of consumers." *Id*. at 651. This lower standard of review was appropriate because "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech," as "warnings or disclaimers might be appropriately required in order to dissipate the possibility of consumer confusion or deception." *Id*. (internal quotation marks and alterations omitted); *see also id.* at 650 ("Ohio has not attempted to prevent attorneys from conveying information to the public; it has only required them to provide somewhat more information than they might otherwise be inclined to present."). Furthermore, "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides . . . [the advertiser's] constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal." *Id*. at 651 (internal citation omitted and emphasis in original). Therefore, where a law merely requires that commercial speech disclose additional factual information, the disclosure is reasonably related to the state's interest in preventing consumer deception, and the disclosure is not unduly burdensome, such a law is constitutional. *Id*. at 652-53; *see also Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 966 (9th Cir. 2009) ("[T]he Court has upheld compelled commercial speech where the state required inclusion of

13

1   purely factual and uncontroversial information in advertising.") (internal quotation marks

2   omitted).

3       Here, the Court agrees with Defendants that the reasonable relationship standard of review

4   in *Zauderer* is appropriate. First, the *Zauderer* standard of review applies to state statutes that

5   require a party to disclose additional factual information and thereby "provide somewhat more

6   information than they might otherwise be inclined to present." *Zauderer*, 471 U.S. at 650. Here,

7   Business and Professions Code §§ 14701-02 require that a person who uses a "solicitation for

8   financial services" disclose additional factual information, assuming that such information is true.

9   Specifically the statute requires: (1) if a solicitor uses the name, trade name, logo, or tagline of a

10  lender, that the solicitor state the solicitor is "not sponsored by or affiliated with the lender and

11  that the solicitation is not authorized by the lender"; and (2) if the solicitor uses a consumer's loan

12  number or loan amount, that the solicitor state that the solicitor "is not sponsored or affiliated with

13  the lender and that the solicitation is not authorized by the lender." Cal. Bus. & Profs. Code §§

14  14701(a) & 14702. Therefore, where, as here, a person is required to disclose additional factual

15  information, the individual's "constitutionally protected interest in *not* providing any particular

16  factual information in [the solicitation] is minimal." *Zauderer*, 471 U.S. at 651 (emphasis in

17  original).

18      Second, the *Zauderer* standard applies where the statute at issue has the goal of

19  "dissipat[ing] the possibility of consumer confusion or deception." *Zauderer*, 471 U.S. at 651; *see*

20  *also Milavetz*, 559 U.S. at 250 (lower standard of review applies to laws that, *inter alia*, "are

21  intended to combat the problem of inherently misleading commercial advertisements"). Here, the

22  legislative history of Business and Professions Code §§ 14701-02 makes clear that the statutes

23  were enacted with the goal of "prevent[ing] the *deceptive use* of lenders' trade names in consumer

24  solicitations." Cal. Sen. Bill Analysis, S.B. 1150 (June 24, 2004) (emphasis added); *see also id.*

25  (stating that the law "prohibits a person from using an identical or similar name to a lender in a

26  solicitation *where that use confuses consumers* as to the lender's sponsorship of the person or its

27

28  Case No.: 14-CV-04420-LHK
    ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

14

1 | services.") (emphasis added). Accordingly, the second requirement of *Zauderer*—that the statute

2 | have the purpose of "dissipat[ing] the possibility of consumer confusion or deception"—is met

3 | here as well. *See Zauderer*, 471 U.S. at 651

4 |     In its motion, Nationwide argues that the *Zauderer* standard does not apply because "the

5 | *Zauderer* standard only applies to disclosures about a company's own products or services,"

6 | which Nationwide contends is not the case with Business and Professions Code §§ 14701-02. Mot.

7 | at 8 (internal quotation marks omitted). For this argument, Nationwide relies on *Safelite Group v.*

8 | *Jepsen*, 764 F.3d 258 (2d Cir. 2014). The plaintiff in *Safelite* was an insurance company that

9 | provided policies covering auto-glass repair and replacement. *Id*. at 259. If a car owner with a

10 | claim concerning auto-glass called the insurance company, a claim administrator might, if

11 | appropriate, recommend the car owner to an affiliated company that did auto-glass repairs. *Id*.

12 | However, a Connecticut law required that an insurance company, if it referred a policy holder to

13 | an affiliated company, must also refer the policy holder to at least one other company that was not

14 | affiliated with the insurance company. *Id*. at 260. The Second Circuit, in holding that the law at

15 | issue was unconstitutional, held that the *Zauderer* standard of review did not apply because the

16 | "law does not mandate disclosure of any information about products or services of affiliated glass

17 | companies or of the competitor's products or services." *Id*. at 264. Instead, the law "requires that

18 | insurance companies or claims administrators choose between silence about the products and

19 | services of their affiliates or give a (random) free advertisement for a competitor." *Id*.

20 | Accordingly, the regulation went "beyond disclosure about the product or services offered by the

21 | would-be speaker." *Id*.

22 |     The Court does not find Nationwide's argument to be persuasive. *Safelite* concerned a law

23 | that mandated that an insurer or claim administrator provide what was in effect a "free

24 | advertisement" for competing companies if the insurer or claim administrator referred the

25 | consumer to an affiliated company. *Id*. In that context, the Second Circuit found that "[p]rohibiting

26 | a business from promoting its own product on the condition that it also promote the product of a

27 |

28 |

15

United States District Court
Northern District of California

competitor is a very serious deterrent to commercial speech." *Id.* In contrast, here Business and Professions Code §§ 14701-02 do not require Nationwide to disclose any information *about a competitor*. Rather, the laws require that Nationwide in certain situations disclose factual information about *Nationwide's* own business, specifically that Nationwide is not affiliated in any way with a consumer's lender. *See, e.g.*, Cal. Bus. & Profs. Code § 14701(a) (where solicitor uses the "name, trade name, logo, or tagline of a lender in a written solicitation," the solicitor must disclose that the solicitor "is not sponsored or affiliated with the lender"). Where, as here, a law mandates "disclosure requirements about a company's own products or services," the *Zauderer* standard of review applies. *Safelite*, 764 F.3d at 264.

For the foregoing reasons, the Court finds that the reasonable relationship standard of review, as articulated by the U.S. Supreme Court in *Zauderer*, applies to the laws at issue here.

### 2. Nationwide's Likelihood of Success on the Merits Under the *Zauderer* Standard of Review

Having determined that *Zauderer* applies, the Court must now determine whether Nationwide has demonstrated that it is "likely to succeed on the merits" such that a preliminary injunction is warranted. *Winter*, 555 U.S. at 22. Under *Zauderer*, to pass constitutional muster a law must be "reasonably related to the State's interest in preventing deception of consumers," and must not be "unduly burdensome." *Zauderer*, 471 U.S. at 651.

To determine whether a law is reasonably related to the state's interest in preventing deception of consumers, courts look to whether there is a reasonable relationship between the purpose of the law and the requirements of the law itself. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 414-15 (D.C. Cir. 2012) (where rule "aims to prevent consumer confusion about the total price they have to pay" for airfare, rule that requires airlines to make the total price the most prominent figure in print advertisements and on web sites "is reasonably related to that interest"); *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94, 108 (2d Cir. 2000) (law which required that advertisements containing hypothetical or simulated account performance disclose that the data was hypothetical was "reasonably related to the government's interest in

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    preventing consumers from being deceived by misleading hypothetical statistical presentations" as

2    stated in legislative findings); *Dwyer v. Cappell*, 762 F.3d 275, 283 (3d Cir. 2014) (under

3    *Zauderer*, "[a] disclosure requirement is reasonably related to the State's interest in preventing

4    deception of consumers where it could plausibly dispel the misleading nature of the advertisement

5    to those who read it.") (internal quotation marks omitted); *see also Bretches v. Kirkland*, 335 F.

6    App'x 675, 682 (9th Cir. 2009) (in other First Amendment context, the reasonable relationship

7    inquiry requires a "rational relationship between the governmental objective and the regulation or

8    act," or a "common-sense connection" between the regulation and a legitimate state objective).

9        Here, as previously discussed, the legislative history of Business and Professions Code

10   §§ 14701-02 states that the laws were passed with the goal of "prevent[ing] the deceptive use of

11   lenders' trade names in consumer solicitations" and prohibiting a person from using "an identical

12   or similar name to a lender in a solicitation where that use confuses consumers as to the lender's

13   sponsorship of the person or its services." Sen. Bill Analysis, S.B. 1150 (June 24, 2004). The

14   statute itself does this in two ways that are relevant here. First, the statute provides that no person

15   can use the "name, trade name, logo, or tagline of a lender in a written solicitation for financial

16   services directed to a consumer who has obtained a loan from the lender without the consent of the

17   lender," unless the solicitation "clearly and conspicuously" provides a statutorily-prescribed

18   disclaimer. Cal. Bus. & Profs. Code § 14701(a). Second, the statute provides that no person shall

19   use a "consumer's loan number or loan amount . . . in a solicitation for services or products

20   without the consent of the consumer" unless the solicitation "clearly and conspicuously" provides

21   a similar statutorily-prescribed disclaimer. *Id*. § 14702. In short, the statute requires that if a

22   solicitor uses, *inter alia*, a lender's name or a consumer's loan information in a solicitation for

23   products or services without consent, the solicitor must disclose certain factual information,

24   including that the solicitor is not affiliated with the lender. *See id*. §§ 14701-02. This bears a

25   reasonable relationship to the statute's stated goals of preventing the deceptive use of lenders'

26   trade names in consumer solicitations, and preventing consumer confusion as to whether a lender

27

28

United States District Court
Northern District of California

17

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1  sponsors the solicitor's products or services.

2       The second requirement under *Zauderer* is that the required disclosure must not be "unduly

3  burdensome." *Zauderer*, 471 U.S. at 651. The U.S. Supreme Court in applying *Zauderer* has

4  found that a required disclosure is "unduly burdensome" when the "detail required in the

5  disclaimer . . . effectively rules out" the commercial speech in the first place. *Ibanez v. Fla. Dep't*

6  *of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 146-47 (1994). *Ibanez* dealt with a

7  plaintiff certified public accountant and certified financial planner who placed the terms "CPA"

8  and "CFA" next to the plaintiff's name on letterhead, business cards, and in a telephone directory

9  listing. *Id*. at 138. However, Florida law required that to use such designations, the plaintiff would

10  have to include in the "immediate proximity" of the designations a "disclaimer stating that the

11  recognizing agency is not affiliated with or sanctioned by the state or federal government," and

12  provide the certifying agency's "requirements for recognition, including, but not limited to,

13  educatio[n], experience and testing." *Id*. at 152. The Court found that, given the plaintiff's desire

14  to use the CPA and CFA designations "on a business card or letterhead, or in a yellow pages

15  listing," the required disclosures were unduly burdensome as the requirements "effectively ruled

16  out" use of such designations in these contexts. *Id*. at 147. Other courts that applied *Zauderer* and

17  found required disclosures to be unduly burdensome similarly look to whether the required

18  disclosure is so detailed or lengthy relative to the speech's context that it "effectively rules out"

19  the speech itself. *See Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 229 (5th

20  Cir. 2011) (requirement that an attorney television advertisement "include, both written in a large

21  font *and* spoken slowly, at least all of the following information: (1) the lawyer's name and office

22  location; (2) a client's responsibility for costs; (3) all jurisdictions in which the lawyer is licensed;

23  (4) the use of simulated scenes or pictures or actors portraying clients; and (5) the use of a

24  spokesperson, whether the spokesperson is a lawyer, and whether the spokesperson is paid" was

25  unduly burdensome) (emphasis in original and internal citations omitted); *see also Tillman v.*

26  *Miller*, 133 F.3d 1402, 1403-04 (11th Cir. 1998) (requirement that attorney include a five-second

27

28
18

1    message about criminal penalties for filing fraudulent claims in thirty-second advertisement was

2    unduly burdensome).

3           Here, Business and Professions Code § 14701(a) provides that if a solicitor uses, *inter alia*,

4    a lender's trade name or logo without the lender's consent, the solicitor must disclose that the

5    solicitor is "not sponsored by or affiliated with the lender," and that "the solicitation is not

6    authorized by the lender, which shall be identified by name." Cal. Bus. & Profs. Code § 14701(a).

7    The disclaimer must be made "in close proximity to, and in the same or larger font size as, the first

8    and the most prominent use or uses of the" lender's name or logo. *Id*. Section 14702 similarly

9    provides that if a solicitor uses a consumer's loan number or loan amount in a solicitation for

10    services without the consumer's consent, the solicitor must state, when applicable, that the

11    solicitor is not "sponsored by or affiliated with the lender and that the solicitation is not authorized

12    by the lender," and that the "consumer's loan information was not provided to that person by that

13    lender." *Id*. § 14702. This disclaimer must be "in close proximity to, and in the same or larger font

14    as, the first and the most prominent use of the consumer's loan information in the solicitation." *Id*.

15           In short, by its plain terms Business and Professions Code §§ 14701-02 require that a

16    solicitor who uses, *inter alia*, a lender's trade name or logo without consent also disclose two

17    relatively brief facts: that the solicitor is not "sponsored by or affiliated with the lender," and that

18    the solicitation is "not authorized by the lender." *Id*. § 14701(a). If a solicitor uses, *inter alia*, a

19    consumer's loan amount without the consumer's consent, the solicitor must make a similar

20    disclosure, as well as state that the consumer's loan information "was not provided by that lender."

21    *Id*. § 14702. These disclaimers must be made in close proximity to, and in at least the same size

22    font as, the first and most prominent use of the lender's name or the consumer's loan amount. *Id*.

23    §§ 14701-02. Therefore, as this law is applied to Nationwide, Nationwide would be required to

24    make these relatively brief disclosures in Nationwide's solicitation letters, which span one to two

25    full pages of text. *See* Lipsky Decl. Ex. A (sample one-page solicitation letter); *id.* Ex. D (sample

26    two-page solicitation letter). In this context, the Court is unable to say that the required disclosures

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    "effectively rule[] out" Nationwide's use of solicitation letters such that the disclosures would be

2    "unduly burdensome." *Cf. Ibanez*, 512 U.S. at 147 (requirement that use of designations "CPA"

3    and "CFA" be accompanied in the "immediate proximity" of the designation by a "disclaimer

4    stating that the recognizing agency is not affiliated with or sanctioned by the state or federal

5    government," and state the certifying agency's "requirements for recognition, including, but not

6    limited to, educatio[n], experience and testing" effectively "ruled out" application of these

7    designations on business cards, letterhead, and a yellow pages listing).

8         In arguing that Business and Professions Code §§ 14701-02 fail the *Zauderer* level of

9    scrutiny, Nationwide also contends that these statutes violate the First Amendment because they

10   "prohibit the republication of publicly available information." Mot. at 15. However, as previously

11   discussed, Business and Professions Code §§ 14701-02 do not *prohibit* speech; rather, §§ 14701-

12   02 mandate that if a solicitor uses certain publicly-available information, such as a "consumer's

13   loan number or loan amount," the solicitor also make certain factual disclosures. *See* Cal. Bus. &

14   Profs. Code § 14702. There are "material differences between disclosure requirements and

15   outright prohibitions on speech." *Zauderer*, 471 U.S. at 650; *see also Milavetz*, 559 U.S. at 250-51

16   (distinguishing between statute which requires an advertiser to disclose "additional information"

17   regarding the advertiser's "legal status and the character of the assistance provided," and statute

18   which "prohibited attorneys from advertising their practice areas in terms other than those"

19   proscribed by regulation). Furthermore, all the cases to which Nationwide cites involve categorical

20   prohibitions by the state against the publication of publicly-available information. *See Smith v.*

21   *Daily Mail Publ'g Co.*, 443 U.S. 97, 98-99 (1979) (state statute which prohibited the publication

22   of publicly-available names of juvenile offenders); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 473-

23   74 (1975) (lawsuit involving state privacy law which permitted reporter to be held liable for

24   publishing publicly-available identity of rape victim). Because Business and Professions Code §§

25   14701-02 contain disclosure requirements and not outright prohibitions on speech, these cases are

26   inapposite here.

27

28

20

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

For the aforementioned reasons, Nationwide fails to demonstrate a likelihood of success on the merits of Nationwide's claim that Business and Professions Code §§ 14701-02 violate the First Amendment or Article I, § 2 of the California Constitution as applied to Nationwide.[6]

### 3.   Whether Nationwide's Speech Qualifies for a Statutory Exception

Nationwide also contends that, apart from whether Business and Professions Code §§ 14701-02 violate the First Amendment and Article I, § 2 of the California Constitution, Nationwide also has shown a likelihood of success on the merits of Nationwide's claim because Nationwide's speech is exempt from liability under Business and Professions Code § 14703. Mot. at 17. Nationwide argues this is the case for two reasons. First, Nationwide claims it uses lenders' names "for the sole purpose of comparing those lenders' typical monthly repayment program with Nationwide's biweekly program." *Id*. at 17-18. Second, Nationwide argues its use of lenders' names qualifies as nominative fair use. *Id*. at 18-21.

California Business and Professions Code § 14703 provides that it is "not a violation of this chapter"—including §§ 14701(a) and 14702—for "a person in an advertisement or solicitation for services or products to use the name, trade name, logo, or tagline of a lender" without the statutorily-prescribed disclaimer in the following two situations. First, if the person's "use is exclusively part of a comparison of like services or products in which the person clearly and conspicuously identifies itself," that person is not liable under the other provisions of the statute. Cal. Bus. & Profs. Code § 14703. Second, if the person's use "otherwise constitutes nominative fair use," that person is exempt from liability. *Id*.

Here, Nationwide argues that it qualifies for the first exception to the statute because Nationwide uses "lenders' names in comparing the Interest Minimizer . . . with the typical

---

[6] In their opposition, Defendants argue that Nationwide cannot demonstrate a likelihood of success on the merits of Nationwide's first claim for relief because, *inter alia*, Nationwide has not alleged that the Defendants' unconstitutional conduct is the result of an official policy, pattern, or practice. Opp'n at 6-8. Because the Court determines that Nationwide fails to demonstrate a likelihood of success on the merits of its claim that the statutes at issue violate the U.S. or California Constitutions, the Court does not address the Defendants' arguments in the alternative.

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1  monthly repayment option offered by most mortgage lenders . . . in an easy-to-read chart

2  comparison." Mot. at 17. The Court does not find this argument to be persuasive, for two reasons.

3  First, to the extent Nationwide argues its "easy-to-read chart comparison" used "the typical

4  monthly repayment option offered by most mortgage lenders," Nationwide only adopted this

5  version of the comparison chart *after* Nationwide received the Enforcement Letter from the

6  Monterey and Marin County District Attorney's Offices on July 30, 2013. *See* Lipsky Decl. ¶ 6

7  (stating that Nationwide stopped using consumers' actual loan information in comparison charts,

8  and instead used information from a hypothetical loan, in December 2013). However, Nationwide

9  and the Defendants have a tolling agreement that makes Nationwide's solicitations going back

10  "several years" relevant to any enforcement action. Hubanks Decl. ¶ 8; Opp'n at 12. Therefore,

11  even assuming that Nationwide's altered solicitations that post-date the Enforcement Letter

12  qualify for § 14703's exception, Nationwide appears to make no argument that its solicitations that

13  *pre-date* the Enforcement Letter similarly qualify.

14  Second, to be exempt from liability, § 14703 requires that a solicitor's use of a lender's

15  name, trade name, logo, or tagline be "*exclusively* part of a comparison of like services." Cal. Bus.

16  & Profs. Code § 14703 (emphasis added). Nationwide does not use lenders' names "exclusively"

17  as part of a "comparison of like services." In fact, the very beginning of Nationwide's solicitation

18  letters (the part which is visible through the envelope window) list the "Lender" of the recipient by

19  name above the recipient's address. Lipsky Decl. Ex. A; Hubanks Decl. Exs. A & B. This use of a

20  lender's name stands apart from any comparison Nationwide makes elsewhere in the letter to

21  Nationwide's services. *See id.* Therefore, because Nationwide does not "exclusively" use lenders'

22  names as "part of a comparison of like services," as required by statute, Nationwide has not

23  demonstrated a likelihood of success in its argument that Nationwide qualifies for the first

24  exception to liability under Business and Professions Code § 14703.

25  In addition, Nationwide argues that its use of lenders' names qualifies as nominative fair

26  use, and therefore falls under the second exception to the statute. *See* Cal. Bus. & Profs. Code

27

28  Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

22

§ 14703 (exempting from liability the use of a lender's name, trade name, logo or tagline when the use "otherwise constitutes nominative fair use."). Nominative fair use is a defense to a trademark infringement suit. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). Here, Defendants have not asserted a claim for trademark infringement. *See* Lipsky Decl. Ex. E (Enforcement Letter stating that Nationwide may have committed violations of Business and Professions Code §§ 14701(a), 14702, 17500, and 17200). Therefore, on its face this exception would appear not to apply to the instant lawsuit. However, it is not clear if the statutory exception for "nominative fair use" is meant to apply only to situations in which a defendant sued for trademark infringement and a violation of Business and Professions Code § 14700 *et seq.* asserts the defense of nominative fair use, or if it is meant to apply to *any* case in which a party is threatened with action under Business and Professions Code § 14700 *et seq.*[7] *See* Cal. Bus. & Profs. Code § 14703 (exempting from liability use of a lender's name, trade name, logo or tagline when the use "otherwise constitutes nominative fair use," without explanation as to when the exception applies). To the extent the statute is meant to apply only to suits for trademark infringement, Nationwide's argument would be foreclosed.

Even assuming that Nationwide could claim that the statutory exemption for nominative fair use applies to the instant lawsuit, Nationwide has not demonstrated a likelihood of success in a nominative fair use defense. To establish nominative fair use, a party must prove each of three elements: (1) that the "product or service in question must be one not readily identifiable without use of the trademark;" (2) that "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service;" and (3) that the user does "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). To satisfy the first element, the party asserting a nominative fair use defense must show that it is not "reasonably

---

[7] The legislative history of the relevant statutes similarly fails to shed light on the context in which the nominative fair use exception applies. *See* Cal. Sen. Bill Analysis, S.B. 1150 (June 24, 2004); Cal. Assem. Bill Analysis, S.B. 1150 (June 15, 2004).

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    possible" to refer to the party's product or service without use of the trademark. *Id.* ("It is no more

2    reasonably possible . . . to refer to the New Kids as an entity than it is to refer to the Chicago

3    Bulls, Volkswagens or the Boston Marathon without using the trademark."); *see also Toyota*

4    *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1180 (9th Cir. 2010) (auto brokers who

5    specialized in selling Lexus vehicles satisfied first element of nominative fair use inquiry because

6    they "needed to communicate that they specialize in Lexus vehicles, and using the Lexus mark in

7    their domain names accomplished this goal.").

8         Here, Nationwide fails to satisfy the first element of nominative fair use. The "product or

9    service in question" is Nationwide's "Interest Minimizer" program. *See* Compl. ¶ 13. However,

10   Nationwide does not argue that Nationwide uses lenders' names in solicitation letters because it is

11   not "reasonably possible" for Nationwide to refer to the "Interest Minimizer" program without

12   using the lenders' names. *New Kids*, 971 F.2d at 308. Rather, Nationwide argues that Nationwide

13   "identifies lenders by name" so that consumers do not think Nationwide's solicitations are "non-

14   targeted mass mailings." Mot. at 19. Put another way, Nationwide argues that its use of lenders'

15   names confers an advantage on Nationwide relative to non-targeted mass mailers who might offer

16   similar services to Nationwide. However, a nominative fair use defense requires a party to show

17   the "product or service in question must be one *not readily identifiable without use of the*

18   *trademark.*" *New Kids*, 971 F.2d at 308 (emphasis added); *Cairns*, 292 F.3d at 1151. Nationwide

19   makes no argument that the "Interest Minimizer" program is "not readily identifiable without use"

20   of lenders' names. Moreover, because Nationwide does not satisfy the first element of the

21   nominative fair use defense, Nationwide does not show a likelihood of success in prevailing on its

22   defense. *See New Kids*, 971 F.2d at 308.

23        For the reasons stated above, the Court finds that Nationwide has not demonstrated a

24   likelihood of success on the merits of its defense that Nationwide qualifies for one of the statutory

25   exceptions in Business and Professions Code § 14703. Furthermore, as detailed herein,

26   Nationwide also has not demonstrated a likelihood of success on the merits of its claim that

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Business and Professions Code §§ 14701-02 violate the First Amendment. Accordingly,

2  Nationwide has not established that it "is likely to succeed on the merits" such that a preliminary

3  injunction is warranted. *Winter*, 555 U.S. at 22.

4  **C.  Likelihood of Suffering Irreparable Harm**

5  A party seeking a preliminary injunction must also establish that "he is likely to suffer

6  irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. "Speculative injury

7  does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."

8  *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 472 (9th Cir. 1984) (emphasis added).

9  Rather, "a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary

10  injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

11  Where, as here, a party seeks "injunctive relief against government actions which allegedly violate

12  the law, 'the injury or threat of injury must be both real and immediate, not conjectural or

13  hypothetical.'" *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 557 (9th Cir. 1990) (quoting *Los

14  Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).

15  Here, Nationwide argues that it has made the requisite showing of irreparable harm

16  because Nationwide faces the loss of First Amendment rights. Mot. at 21. However, the Court has

17  already found that Nationwide has not shown a likelihood of success on the merits of

18  Nationwide's First Amendment claim, and therefore accords this argument little weight. *See

19  Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (where plaintiffs failed to show a

20  probability of success on the merits of their First Amendment claim, "to prevail on their motion

21  they had to show significant irreparable harm."); *Dex Media W., Inc. v. City of Seattle*, 790 F.

22  Supp. 2d 1276, 1289 (W.D. Wash. 2011) ("Because the court finds that Plaintiffs have failed to

23  establish that they are likely to succeed on the merits of their First Amendment claim . . . the court

24  cannot find that Plaintiffs have established that they are likely to suffer irreparable First

25  Amendment injury in the absence of a preliminary injunction.") (internal citation omitted).

26  Nationwide further argues that, absent a preliminary injunction, "Nationwide's entire

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    business could be destroyed." Mot. at 21. The only evidence that Nationwide offers in support of

2    this assertion is the Declaration of Daniel Lipsky ("Lipsky"), Nationwide's president. *See* Lipsky

3    Decl. In his declaration, Lipsky asserts that "[t]he filing of an enforcement action by the District

4    Attorneys . . . *may* result in [Nationwide's] bank partners refusing to do business with

5    Nationwide." *Id.* ¶ 15 (emphasis added). Lipsky also states that "an action by the District

6    Attorneys would *likely* be a reportable event to Nationwide's regulators" who "*may* suspend or

7    revoke Nationwide's licenses to operate in that state"). *Id.* (emphasis added). Finally, Lipsky

8    contends that if an enforcement action is filed, "[i]t is *likely* that numerous customers would

9    demand refunds of their fees after learning of the suit . . . [and Nationwide] would *likely* refund

10   those fees, which *could* also bankrupt the company." *Id.* (emphasis added).

11       There are at least three problems with Lipsky's statements. First, where a party seeks

12   injunctive relief against a governmental action, the "injury or threat of injury must be both real and

13   immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 101-02. An assertion is

14   hypothetical if it is unsupported by credible evidence. *See Dotster, Inc. v. Internet Corp. For*

15   *Assigned Names & Numbers*, 296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003) (noting that,

16   "[a]lthough the loss of goodwill and reputation are important considerations in determining the

17   existence of irreparable injury," a plaintiff must offer "credible" evidence that "such damage

18   threatens Plaintiffs' businesses with termination."). Conclusory allegations without sufficient

19   supporting facts do not suffice. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470,

20   1473 (9th Cir. 1985) (affidavits supplied by company executives regarding the harm the company

21   would experience absent a preliminary injunction "are conclusory and without sufficient support

22   in facts."). Here, Lipsky offers no facts in support of his assertions that an enforcement action

23   "may" result in the suspension or revocation of Nationwide's licenses to operate in other states, or

24   that an enforcement action is "likely" to result in customers demanding refunds of their fees, or

25   "may" result in Nationwide's bank partners refusing to do business with Nationwide. *See* Lipsky

26   Decl. ¶ 15.

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Second, where a party's claim of irreparable harm depends on the actions of third parties,

2    that fact lessens the credibility of the claim. *See V Real Estate Group, Inc. v. U.S. Citizenship &*

3    *Immigration Servs.*, No. 2:14-CV-01096-RCJ, 2014 WL 5243369, at *3 (D. Nev. Oct. 15, 2014)

4    (when claim of irreparable harm relies on "independent decision of those third-parties to withhold

5    their investments" that "does not constitute irreparable injury for the purposes of a preliminary

6    injunction."); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011)

7    (plaintiff failed to show irreparable harm where such harm "hinged on future . . . decision" of an

8    administrative agency). Here, Lipsky's reasons for Nationwide suffering irreparable harm depend

9    on the acts of third-parties such as regulators, banks, and customers. *See* Lipsky Decl. ¶ 15 (the

10   filing of an enforcement action "may result in [Nationwide's] bank partners refusing to do

11   business with Nationwide."); *id.* (other state regulators "may suspend or revoke Nationwide's

12   licenses to operate in that state"); *id.* (if an enforcement action is filed, "[i]t is likely that numerous

13   customers would demand refunds of their fees"). However, Lipsky offers no credible evidence to

14   support his statements regarding what acts independent third parties may take against

15   Nationwide.[8] Accordingly, Lipsky's statements are too "conjectural or hypothetical" to support a

16   finding of irreparable harm. *Lyons*, 461 U.S. at 101-02.

17       Third, according to exhibits submitted by Defendants in conjunction with their opposition,

18   Nationwide has previously entered into consent orders with enforcement agencies or attorney

19   general offices in at least three other states, in which Nationwide agreed to not represent that it

20   was affiliated with consumers' lenders or loan servicers in solicitation materials, and not to use

21   consumers' loan information. *See* Hubanks Decl. Ex. C (stipulated judgment between Nationwide

22

23   _____

[8] Lipsky also states that if an enforcement action is filed against Nationwide, "Nationwide's rating
24   with the Better Business Bureau will immediately decrease by several grades." Lipsky Decl. ¶ 15.
     However, the Better Business Bureau's "Overview of BBB Grade" informational web page states
25   that whether to decrease a Better Business Bureau grade because of government action is at the
     discretion of the Better Business Bureau, not an automatic result of such an investigation. *See* ECF
26   No. 36-2, at 3 (stating that a "business' BBB grade is lowered when BBB has knowledge of," *inter
     alia*, "[g]overnment actions against the business that relate to its marketplace activities and, *in
27   BBB's opinion*, raise" questions of "its reliability in providing products/services.") (emphasis
     added).

28
Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1  and Ohio Attorney General's office whereby Nationwide agreed it would not "represent in any

2  manner that it is sponsored, approved, or affiliated with any specific mortgage lender, bank, or

3  loan servicer" in "written and oral solicitations, envelopes, advertising or promotional materials");

4  *id.* Ex. D (consent order with State of New Hampshire Banking Department which stated that

5  Nationwide failed to ensure that its advertisements did not use the "full or abbreviated name, trade

6  name, or service mark, or trademark of any financial institution in any written, electronic, or oral

7  advertisement or solicitation"); *id.* Ex. E (consent order with Georgia Department of Banking and

8  Finance which provided that Nationwide would not use "an individual's loan number, loan

9  amount, or other publicly available information" unless Nationwide clearly and conspicuously

10  stated that Nationwide was not "authorized by, in sponsorship with, or otherwise affiliated with

11  the individual's lender"). The fact that Nationwide's business was not "destroyed" by entering into

12  these consent orders undermines Nationwide's argument that the Defendants' enforcement action

13  in this case would "destroy[] . . . Nationwide's entire business." Mot. at 21.

14      For the above reasons, the Court finds that Nationwide has not carried its burden to show

15  that "real and immediate" harm would result absent a preliminary injunction. *Thornburgh*, 919

16  F.2d at 557.

17  **D.  Balance of the Equities and the Public Interest**

18      With respect to the balance of the equities and the public interest, these two factors merge

19  into one inquiry—whether an injunction is in the public interest—where, as here, the government

20  is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013); *Nken*

21  *v. Holder*, 556 U.S. 418, 435-36 (2009). Nationwide argues that it has shown an injunction is in

22  the public interest because Business and Professions Code §§ 14701-02 are unconstitutional as

23  applied to Nationwide. *See* Mot. at 22 (arguing that it is in the public interest to "uphold[] First

24  Amendment principles"); *id.* ("Preliminarily enjoining the enforcement of a statute against a party

25  that did not violate that statute or which might constitute an unconstitutional application of the

26  Statute is in the public interest."). However, where a plaintiff has "not shown a likelihood of

27

28

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

success on the merits of [a] First Amendment claim," this fact weighs against finding the public interest favors an injunction. *Preminger*, 422 F.3d at 826.

Moreover, in addressing the public interest inquiry, a court looks to the impact of an injunction on non-parties. *Sammartano v. First Judicial Dist. Court, Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated in part on other grounds by Winter*, 555 U.S. at 24. Here, an injunction would prohibit local officials from enforcing statutes designed to protect consumers from the risk of fraud. In general, there is a "strong public interest in preventing consumer confusion and fraud." *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996). Therefore, Nationwide has not shown that the public interest weighs in favor of granting an injunction.

**IV. CONCLUSION**

For the reasons stated above, the Court DENIES Nationwide's motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: March 17, 2015

_____
LUCY H. KOH
United States District Judge

Case No.: 14-CV-04420-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California