UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio Corporation; LOAN PAYMENT ADMINISTRATION LLC, an Ohio limited liability company; and DANIEL S. LIPSKY, an individual, Plaintiffs,

v.

JOHN F. HUBANKS, Deputy District Attorney, Monterey County District Attorney's Office, in his official capacity; ANDRES H. PEREZ, Deputy District Attorney, Marin County District Attorney's Office, in his official capacity; MONTEREY COUNTY DISTRICT ATTORNEY'S OFFICE, a County Agency; and MARIN COUNTY DISTRICT ATTORNEY'S OFFICE, a County agency, Defendants.

Case No.: 5:14-CV-04420-LHK

EXHIBIT "1"

TO

DEFENDANTS' JOINT REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF JOINT RULE 12(G) JOINING MOTION TO DISMISS

EXHIBIT 1

ENDORSED
FILED
ALAMEDA COUNTY

MAY 15 2015

CLERK OF THE SUPERIOR COURT
By _M Hayes_ Deputy

1  MARY ANN SMITH
   Deputy Commissioner
2  SEAN ROONEY (CA BAR NO. 188843)
   Assistant Chief Counsel
3  ROBERT LUX (CA BAR NO. 189191)
   Senior Counsel
4  California Department of Business Oversight
5  1350 Front Street, #2034
   San Diego, CA 92101
6  Telephone: (619) 525-3729
7  Facsimile:  (866) 275-2677

8

9  DEAN D. FLIPPO
   Monterey County District Attorney
10 JOHN F. HUBANKS (CA BAR NO.163765)
   Deputy District Attorney
11 1200 Aguajito Road, Room 301
   Monterey, CA 93940
12 Telephone: (831) 647-7770
13 Facsimile: (831) 647-7762

14 *Additional counsel listed in Appendix A*

15 *Attorneys for Plaintiff, People of the State of California*

16

17               SUPERIOR COURT OF THE STATE OF CALIFORNIA

18                        COUNTY OF ALAMEDA

19 THE PEOPLE OF THE STATE OF          )  CASE NO. RG15770490
   CALIFORNIA,                         )
20                                     )  COMPLAINT FOR INJUNCTION, CIVIL
                                       )  PENALTIES AND ANCILLARY RELIEF OF
21         Plaintiff,                  )  RESTITUTION AND DISGORGEMENT
                                       )
22       v.                            )  (Business and Professions Code sections 17200,
                                       )  17203, 17204, 17206, 17500, 17535, and 17536;
23 NATIONWIDE BIWEEKLY                 )  Financial Code sections 12105, 12106, 12108,
   ADMINISTRATION, INC., an Ohio Corporation; )  12307.1 and 12316)
24 LOAN PAYMENT ADMINISTRATION, LLC,   )
   an Ohio limited liability company; DANIEL S. )  [VERIFIED ANSWER REQUIRED
25 LIPSKY, an individual;  and DOES 1 through 25, )  PURSUANT TO CODE OF CIVIL
   inclusive,                          )  PROCEDURE SECTION 446]
26                                     )
27         Defendants.                 )
                                       )
28

[Exempt from filing fees pursuant
to Government Code section 6103]

-1-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

1   Plaintiff, the People of the State of California ("Plaintiff" or "the People") appearing by and

2   through Jan Lynn Owen, Commissioner of Business Oversight (the "Commissioner"); Dean D.

3   Flippo, District Attorney of Monterey County, by Deputy District Attorney John F. Hubanks; Edward

4   S. Berberian, District Attorney of Marin County, by Deputy District Attorney Andres H. Perez; and,

5   Nancy E. O'Malley, District Attorney of Alameda County, by Deputy District Attorneys Matthew L.

6   Beltramo and David G. Lim, alleges upon information and belief:

7   ### I.  SUMMARY OF THE CASE

8   1.   At all times herein, the term "Defendants" shall refer collectively and inclusively to

9   Nationwide Biweekly Administration, Inc. ("NBA"), Loan Payment Administration, LLC ("LPA"),

10   Daniel S. Lipsky ("Lipsky"), and DOES 1 through 25.

11   2.   Touting themselves as "one of the country's largest and most recognized

12   administrators for biweekly loan repayment programs," the named Defendants promote, market and

13   operate debt payment services from the State of Ohio, doing business in nearly 40 states, including

14   California.  Foremost among these services is a program known as the "Interest Minimizer" Program

15   ("IM Program"). On April 8, 2015, Defendants issued a press release that they intend to change the

16   name of the IM Program to the "Term Reducer."

17   3.   Generally speaking, a consumer enrolling in Defendants' services, including the IM

18   Program, authorizes Defendants to make payments on his or her behalf toward debts, including

19   residential mortgages, credit cards, automobile loans and student loans ("debt payment services").

20   Defendants' debt payment services purportedly enable the consumer to accelerate debt repayment

21   through an extra annual payment, resulting in "savings" through reduced interest.  For example,

22   whereas the monthly payment plan on a residential mortgage might call for 12 monthly payments to

23   the lender, through the IM Program, Defendants debit a consumer's bank account generally every

24   two weeks (thus the term "biweekly") in an amount equal to one-half of one month's debt payment.

25   Defendants then remit the consumer's payment to the lender at the end of the month, resulting in one

26   "extra" (or 13th) monthly payment each year.

27   4.   Since 2009, Defendants have advertised their debt payment services, including the IM

28   Program, to no fewer than 4.3 million California consumers.  In that time, no fewer than 10,000

State of California - Department of Business Oversight

-2-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

1    California consumers and possibly as many as 25,000 have enrolled in Defendants' debt payment

2    services.  On an annual basis, Defendants collect approximately three hundred million dollars ($300

3    million) from California consumers.  At any one time, Defendants have approximately thirty million

4    dollars ($30 million) in California consumers' money on deposit in one of their financial accounts,

5    pending processing. Since January 2009, Plaintiff is informed and believes that Defendants have

6    collected no less than ten million dollars ($10 million) in total fees from California consumers

7    enrolled in their debt payment services.

8         5.      Defendants' debt payment services meet the definition of those of a "prorater," as that

9    term is defined in California Financial Code ("Financial Code") section 12002.1.  California requires

10   that a prorater be licensed by the California Department of Business Oversight ("Department") before

11   engaging in such activities.  The point and purpose of the prorater law is to protect the public against

12   dishonest and incompetent proraters by requiring the prorater to possess, *inter alia*, evidence of

13   financial solvency (Financial Code sections 12205 and 12221), honesty (Financial Code section

14   12221(a) and (b)), and experience (Financial Code section 12221(e)), and to maintain a surety bond

15   (Financial Code section 12205(a)).  The Financial Code places strict limits on the fees that proraters

16   may collect for their services (Financial Code section 12314).

17        6.      Defendants have never held a prorater license in California.  At all times herein,

18   Defendants intentionally evaded and continue to evade California's licensure mandate and willfully

19   and knowingly violated the requirements of California law.  Defendants do not operate within any

20   recognized statutory exemption to the prorater licensure requirements.

21        7.      The fees that Defendants' charge and keep from consumers include not only a "debit

22   fee" for each of the debits made by Defendants, but also a one-time "set-up" fee—considered an

23   origination fee under California law—equal to one-half (1/2) of the consumer's monthly payment

24   obligation.  Defendants defer the collection of this origination fee, not collecting it until four to six

25   months after the consumer's enrollment.  Defendants' collection of these high origination fees is in

26   blatant violation of Financial Code section 12314(a), which caps the amount of origination fees that

27   can be charged by proraters at $50.00.

28        8.      Defendants' illegal practices are not limited to unlicensed activity and unauthorized

State of California - Department of Business Oversight

-3-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

1    origination fees. To generate sales opportunities, Defendants deliberately employ false advertising

2    and predatory sales tactics to bait California consumers.  Defendants' primary form of advertising are

3    direct mail solicitations ("mailers") enclosed in envelopes which are cleverly disguised to appear to

4    be letters from the consumer's own mortgage lender or creditor.  The envelopes are intended to create

5    a sense of urgency prompting the consumer into opening the mailer.  The enclosed one-page mailer's

6    overall appearance reinforces the consumer's impression that the mailer is a lender communication.

7    Consumers who call the toll-free number identified in the mailer are put into communication with the

8    Defendants' call center, staffed by sales representatives who must adhere to a carefully worded

9    telemarketing script.  For example, if the consumer asks the sales representative if they are talking to

10   his or her lender, the script prohibits the sales representative from answering simply "no."  Instead,

11   the sales representative tells the consumer that the Defendants "have a working relationship" with the

12   consumer's lender.

13       9.     Defendants' mailers, telemarketing and other advertising through the internet and

14   television omit and misstate the nature and amount of Defendants' fees.  This practice reinforces the

15   false impression that: (a) Defendants' debt payment services are affiliated with, sponsored by,

16   approved by or endorsed by the lender or creditor; (b) the consumer's monthly payment obligations

17   will not increase after he or she enrolls in the Defendants' debt payment services; and (c) the

18   consumer will realize immediate savings on interest in the first several years of the debt payment

19   services.

20       10.    The Defendants' mailers, telemarketing, internet and television advertising also falsely

21   and deceptively tout the savings to be realized through their loan payment services.  For instance,

22   some mailers "guarantee" consumers will receive "savings" if they enroll in the IM Program.  Other

23   mailers claim that the consumer will realize "Monthly Interest Savings" or total "Interest Savings" in

24   specific amounts of money.  In truth, most consumers enrolled in the Defendants' loan payment

25   services will not realize any savings for at least the first 3 years, and possibly longer, due in large part

26   to the impact of the origination and debit fees.  In fact, since 2010, none of the California consumers

27   who enrolled in Defendants' loan payment services, including the IM Program, actually realized the

28   savings promised by the Defendants.  In the end, the only true beneficiaries of Defendants' bill

-4-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1 payment services are Defendants.

2      11.    Since at least 2009, the aforementioned marketing and business practices have been

3 the subject of consumer complaints and law enforcement actions, including a pending federal

4 enforcement action filed by the Consumer Financial Protection Bureau, and past state enforcement

5 actions brought by Attorney Generals and public regulatory agencies for the States of Ohio, New

6 Hampshire, Georgia and Washington. Despite the ongoing consumer complaints and multiple

7 enforcement actions, it is business as usual for the Defendants. Without the relief requested herein,

8 California consumers will continue to be targeted and victimized by the Defendants' unlicensed

9 activity, false advertising and illegal business practices.

10      **II.**    **JURISDICTION, VENUE & STATUTE OF LIMITATIONS**

11      12.    The Commissioner's authority to bring this action is derived from the statutory law of

12 the State of California, specifically Government Code section 11180 and Financial Code sections

13 12105, 12106, 12108, 12307.1 and 12316. Similarly, her authority to obtain preliminary and

14 permanent injunctive relief, rescission, restitution, disgorgement, civil penalties, costs, and other

15 equitable relief for violations of the Check Sellers, Bill Payers and Proraters Law ("CSBPPL")

16 derives from sections 12000 *et seq.* of the Financial Code.

17      13.    The District Attorneys' authority to bring this action is derived from the statutory law

18 of the State of California, specifically Business & Professions Code sections 17200, 17203, 17204,

19 17206, 17500, 17535, 17536.12.

20      14.    This Court has jurisdiction of the parties and the subject matter of this action. Venue

21 as to all matters between the parties relating to this action is proper in this court. The Defendants

22 maintain and have maintained systematic, continuous and substantial contacts with California

23 consumers by their presence, in the form of public advertisements, websites, individual financial

24 transactions, and extensive other business activities within and throughout California, including the

25 Counties of Alameda, Marin and Monterey. Defendants advertised and solicited consumers in

26 California for the purpose of inducing California consumers to purchase Defendants' debt payment

27 services. Defendants' websites and technology provide California consumers the means of

28 transacting business with the Defendants online and over the telephone. Defendants' activities in

*State of California - Department of Business Oversight*

-5-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

1  California are and were highly interactive, systemic and continuous, and have and continue to

2  victimize California consumers, so as to support a finding of general jurisdiction in the State.

3      15.    Prior to the filing of this Complaint, Plaintiff and each of the Defendants had agreed to

4  toll any applicable statutes of limitation for each day between October 25, 2013 and October 3, 2014,

5  a total of 344 days (hereinafter referred to as the "Tolling Period").

6                          **III.    THE PARTIES**

7      16.    The People, acting pursuant to its authority under Financial Code sections 12105,

8  12106, 12108, 12307.1, and 12316, and Business &Professions Code sections 17200, 17203, 17206,

9  17500, 17535 and 17536, seeks to enjoin the Defendants from engaging in the marketing and

10  business practices alleged herein.  The People seek permanent injunctive relief, consumer restitution,

11  disgorgement, civil penalties, and reimbursement of investigative costs associated with Defendants'

12  past and ongoing violations.

13      17.    Defendant Lipsky is an individual residing in the State of Ohio.  Lipsky is the founder,

14  sole officer, sole shareholder, principal and managing control person of Defendants NBA and LPA.

15      18.    Defendant Lipsky controls all of NBA's and LPA's business activities within the State

16  of California and throughout the nation.  There is such a unity of interest, ownership, dominion and

17  control of NBA and LPA by Lipsky that any corporate, company or entity forms of NBA and LPA

18  should be disregarded.  NBA and LPA have functioned as Lipsky's alter ego since 2002.  Lipsky, in

19  using NBA and LPA as his alter ego, violated numerous provisions of California law.  At all times

20  herein mentioned and continuing, Lipsky engaged in, caused, permitted, and/or ratified untrue and

21  misleading statements and material fact omissions made by NBA and LBA to consumers in order to

22  induce consumers to purchase Defendants' illegal debt payment services as described herein.

23      19.    Defendant Lipsky has controlled and continues to control all fees, commissions and

24  compensation paid to him and other Defendants.

25      20.    Defendant Lipsky has been and continues to be a signatory on all financial accounts

26  registered to NBA and other Defendants, including DOES 1 to 25, which have been or continue to be

27  used to hold monies and fees generated from California consumers.

28      21.    Defendant Lipsky is not licensed in the State of California to act as a prorater and

-6-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1   none of the named Defendants operate within a statutory exemption from the prorater licensure

2   requirements.

3        22.     Defendant NBA is a corporation formed in the State of Ohio in 2002, with its principal

4   place of business at 855 Lower Bellbrook Road, Xenia, OH 45386. NBA filed with the California

5   Secretary of State for authorization to conduct business in California on January 20, 2004, and has a

6   registered Agent for Service of Process in Sacramento, California.

7        23.     At all relevant times, NBA has not had a license to do business as a prorater in the

8   State of California, and NBA's activities do not qualify under any statutory exemption from the

9   prorater licensure requirements.

10        24.     Since October 8, 2004, NBA has held a California real estate broker's license,

11   #01428771, issued by the California Bureau of Real Estate ("BRE"). Prior to June 1, 2014, NBA

12   designated its place of business with the BRE in the State of California as: 10 Monte Vida Drive, in

13   the City of Orinda, County of Contra Costa, State of California. That designated place of business

14   was, at all relevant times, utilized solely as a private, unrelated residence and was not in fact NBA's

15   place of business. The registered broker and designated officer for NBA in California, Dane Thomas

16   Stanish (California real estate broker's license #01336220), did not supervise the activities of NBA,

17   and in fact had a mailing address located in the State of Florida. Despite having a real estate broker's

18   license, NBA failed to comply with many of the laws and regulations applicable to brokers,

19   including, but not limited to: failing to register its business activities with the Real Estate

20   Commissioner as required by Business & Professions Code section 101232(e); collecting advance

21   fees from consumers in violation of Business & Professions Code section 10085.5; failing to handle

22   consumer funds as required by provisions of Title 10 of the California Code of Regulations pertaining

23   to trust funds, including Cal. Code Regs., tit. 10, sections 2831, 2831.1, 2831.2, 2832 and 2834; and

24   failing to exercise reasonable supervision over the activities of their salespersons as required by Cal.

25   Code Regs., tit. 10, section 2725.

26        25.     Defendant LPA is a limited liability company formed in the State of Ohio in 2002,

27   with its principal place of business at 855 Lower Bellbrook Road, Xenia, OH 45386, and has a

28   registered Agent for Service of Process in Sacramento, California.

*State of California - Department of Business Oversight*

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

26.     Prior to August 25, 2014, LPA was not registered with the California Secretary of State to do business in the State of California.  LPA is not licensed by any public agency in the State of California.

27.     Prior to October 27, 2014, LPA was not authorized by the BRE to function as a "fictitious business" name on behalf of NBA.

28.     Plaintiff is not aware of the true names and capacities of the Defendants sued by the fictitious names DOES 1 through 25, inclusive.  Each of the fictitiously named Defendants is responsible in some manner for the activities alleged in this Complaint.  Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

29.     Defendants, and each of them, have engaged and continue to engage in the illegal activities alleged herein and have made and caused to be made and continue to make untrue and misleading statements and material fact omissions, and engaged in and continue to engage in unfair competition as herein alleged, violating the rights of consumers in California as well as consumers in other states.

30.     Defendants, and each of them, caused and/or ratified each and every violation of the law as herein alleged, violating the rights of consumers throughout the State of California.

31.     At all times herein, each Defendant is and was, the agent, servant, employee, partner, and/or joint venturer of the other Defendants, and each Defendant, in performing the acts alleged in this Complaint, was acting within the scope of such agency, service, employment, partnership or joint venture, and with the knowledge, permission and/or consent of each and every other Defendant. Each Defendant committed the violations of law as described herein pursuant to a common plan and scheme, and did so as the agent for each and every of its co-Defendants in furtherance of the common plan and scheme.

32.     Whenever reference is made in this Complaint to any Defendant doing or causing any act or omission, the allegation shall mean the act of each and every Defendant acting individually, jointly, and severally, and the conspiring of these Defendants to do so.

33.     Whenever reference is made in this Complaint to any act or omission, and/or the making of or causing the making of untrue or misleading statements and /or omissions of material

-8-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1 | fact by Defendants, such reference shall be deemed to include Defendants' managers, directors,

2 | employees, agents, attorney or representatives who authorized, or ratified such acts or omission,

3 | untrue or misleading statements and/or omission of material facts while actively engaged in the

4 | management, direction or control of the affairs of said Defendants or while acting within the course

5 | and scope of their duties.

6 |      34.     Defendants have engaged in a conspiracy, common enterprise, and common course of

7 | conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint.

8 | The conspiracy, common enterprise and, common course of conduct continue to be present.

9 | <div align="center">**IV. DEFENDANTS' BUSINESS PRACTICES**</div>

10 | A.    <u>Defendants' Debt Payment Services</u>

11 |      35.     Since 2009, Defendants have marketed, advertised, offered for sale and sold their debt

12 | payment services to California consumers who have monthly financial obligations associated with

13 | debts such as residential mortgage loans, automobile loans, credit card loans and student loans.

14 |      36.     Generally speaking, Defendants act as a "middle man" between a consumer borrower

15 | and a commercial lender.  Defendants' main service is the IM Program (since April 2015, purportedly

16 | called the "Term Reducer"), in connection with which Defendants debit a consumer's bank account

17 | generally every two weeks (thus the term "biweekly" in NBA's name) in an amount equal to one-half

18 | of one month's debt payment and thereafter remit the consumer's payment to the lender at the end of

19 | the month.  Each year, Defendants are supposed to make 26 debits.  Because two debits are equal to

20 | one monthly payment, this practice results in the equivalent of one "extra" (or 13th) monthly payment

21 | being debited from the consumer's account each year.  The extra payment, in turn, is paid toward the

22 | loan once per year, accelerating payment of principal and reducing the amount of interest the

23 | consumer will pay over the lifetime of the loan.  (In the case of some debts, Defendants may make as

24 | many as 52 weekly debits a year from the consumer's account.)  After debiting the consumer's bank

25 | account, the consumer's funds are held in NBA's *own* bank account until NBA remits the consumer's

26 | payment to the pertinent lender.

27 | ///

28 | ///

<div align="center">-9-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF</div>

State of California - Department of Business Oversight

B.  Defendants' Compensation Structure & Fees

37.  NBA generally charges a "debit fee" of $3.50 for each debit transaction from a consumer's bank account.  Over a typical calendar year, a consumer can expect to pay 26 biweekly debit fees for a total of $91.00 in the case of mortgages, and 52 weekly debit fees for a total of $182.00 in the case of non-mortgage debts.  In a calendar year, Defendants earn at least $900,000.00 in debit fees from California consumers enrolled in their debt payment services.

38.  Notwithstanding the substantial revenue generated by debit fees, Defendants' principal form of compensation—and the way that Defendants front-load their biggest fee onto the consumer— is by way of a deferred "setup" fee.  For most consumers, this set-up fee, which is in effect an origination fee, is equal to one bi-weekly payment (*i.e.*, one-half of one month's mortgage payment) in the case of mortgage debt.  The first time the consumer makes such an "extra" biweekly payment in a single month, NBA keeps that payment in satisfaction of its deferred set-up (origination) fee.  For example, a consumer with a $2,000 per month debt obligation (such as a residential mortgage) would pay Defendants an origination fee of $1,000 after approximately six months, in addition to the biweekly debit fees which total $91.00 per year.

39.  Consumers are obligated to pay the origination fee once they enroll in Defendants' debt payment services.

40.  As described below, the origination fee is not disclosed in the mailers.  Nor is it disclosed in the television or internet advertisements, or until recently, in any telemarketing calls.

41.  Since 2009, many consumers have complained about the deferred origination fee, with complaints including allegations that the fee was: (a) never disclosed; (b) inadequately explained; and (c) non-negotiable and non-refundable.  Some consumers have complained that the Defendants threatened debt collection for refusing to pay the fee.

42.  The third way that Defendants have historically made money is by depositing consumers' funds into interest-bearing "overnight sweep" accounts, thereby generating interest on consumers' funds.  It is unknown what types of accounts are currently used by Defendants to hold California consumers' funds.

///

-10-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

C.   Defendants' Advertising Scheme

43.   Defendants promote their debt payment services throughout California through the aforementioned mailers, telemarketing, internet and television advertisements.

44.   Defendants disseminate their mailers under the names of both NBA and LPA to California consumers.

45.   The majority of these mailers market the Defendants' debt payment services to California homeowners having residential mortgages. Defendants obtain the consumers' respective names, addresses, lender information and loan balance information from public records. The mailers, in turn, contain information such as the consumer's name, property address, lender name or logo, and mortgage balance.

46.   Defendant LPA does not sell or administer a separate debt payment service; rather, it is a wholly owned subsidiary of NBA and advertises NBA's debt payment services, including the IM Program.

47.   Defendants' mailers typically consist of an envelope and an enclosed one-page letter. The letter includes claims and statements promoting Defendants' debt payment services, such as the IM Program, to California consumers.  The claims generally include statements about the "savings" that can purportedly be realized through the IM Program.  The one-page letter references a toll-free telephone number which consumers can call to learn more.

48.   Consumers who call the toll-free number will, in the normal course, speak with a sales representative who must follow a telemarketing script, word for word.

49.   All versions of Defendants' telemarketing scripts have been approved by Lipsky.

50.   Defendants record all telephone communications between sales representatives and California consumers.

51.   In the normal course of an initial sales call, the sales representative asks the consumer to provide his/her personal information, including name, social security number, lender name, loan number, and interest rate.

52.   In the normal course of an initial sales call, the sales representatives will attempt to or actually enroll the consumer in the IM Program.  The sales representative is able to use electronic

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1  signature and voice authorization technology to complete the enrollment.

2       53.    The aforementioned "voice authorization" enables the sales representative to obtain

3  the consumer's immediate consent to commence recurring, biweekly debits from a designated bank

4  account in advance of the consumer signing the contract.  Defendants do not provide such a consumer

5  with a copy of that authorization.

6       54.    In addition to mailers and telemarketing, Defendants advertise throughout the country,

7  including throughout California, by way of the internet, including a website at the URL:

8  www.interestminimizer.com.  This website includes videos of Lipsky explaining the IM Program.

9       55.    The Defendants also advertise in California through television.  In September 2014,

10  Lipsky appeared on a paid infomercial on the Lifetime Channel to promote the IM Program.  The

11  infomercial aired throughout the State of California and remains online on Defendants' websites.

12  D.    <u>Defendants' Advertising Claims: The Mailers</u>

13       56.    Defendants' mailers create the impression that they are a communication from the

14  consumer's finance lender or creditor.  In many cases, the name of a consumer's lender, which is

15  printed on the mailer, is visible through the envelope window.  Additionally, the outside of some

16  envelopes have printed in red ink above the addressee window language such as: "Loan Payment

17  Change Request," "Mortgage Payment Information Enclosed," or "IMPORTANT NOTICE-

18  Additional Mortgage Term Reduction."  Defendants' mailers also include the consumer's loan

19  amount or loan number.

20       57.    Typically, the one-page mailer promotes the IM Program or similar payment services

21  to consumers, including those in California, having residential mortgages.  Defendants' written

22  mailer to California consumers included the name, trade name, logo, or tagline of a lender from

23  whom the consumer has obtained a loan.  In most cases, the use of a lender's name in Defendants'

24  mailers was without the lender's consent.  Defendants' mailers did not state clearly and

25  conspicuously that Defendants are not sponsored by or affiliated with the lender, identified by name.

26  Defendants' mailers did not state clearly and conspicuously that Defendants' mailers were not

27  authorized by the lender, identified by name.  Any statements (however inconspicuous) in

28  Defendants' mailers to the effect that Defendants were not sponsored by or affiliated with a named

<div align="center">-12-</div>

<div align="center">COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF</div>

State of California - Department of Business Oversight

1  lender or that a mailer was not authorized by a named lender were not made in close proximity to,

2  and in the same or larger font size as, the first and the most prominent use or uses of the name, trade

3  name, logo, or tagline in the mailer, including on an envelope or through an envelope window

4  containing the mailer.  In most cases where a lender's name was used in a mailer, the lender's name

5  was located at the top of the mailer letter and any type of disclosure was located at the bottom of the

6  letter in a smaller font.  In most cases where a consumer's lender name was visible through an

7  envelope window, any disclosure on the envelope was limited to stating only that Defendant(s) were

8  not "affiliated" with the lender and was not in close proximity to the lender's name but in the far

9  corner of the envelope.

10         58.    The aforementioned mailers caused consumers to be confused, mistaken or deceived

11  initially as to the lender's sponsorship, affiliation, connection, or association with the Defendant(s).

12  For example, some of Defendants' mailers show the consumer's lender's name through the

13  envelope's address window with the words "Payment Information Enclosed" in bold red letters

14  printed on the envelope above the lender's name.  Defendants were aware that consumers were

15  confused by the use of the consumer's lender's name in the mailers and believed the mailers were

16  from their actual lenders.  Defendants' mailers caused consumers to be confused, mistaken or

17  deceived initially as to the lender's approval or endorsement of the Defendant(s) or Defendants'

18  services or products.  For example, some versions of the one-page letter state: "Nationwide Biweekly

19  Administration administers the biweekly program for borrowers who have loans from over 5000

20  lenders nationwide."  Defendants also included a unique "Bi-Weekly ID #" and/or "Reference ID #"

21  on each mailer.  Use of these identifier numbers in Defendants' initial contact with consumers further

22  led to consumer confusion, mistake or deception as to whether their lender approved or endorsed

23  Defendants' services or whether it was their lender offering the service.

24         59.    Defendants' mailers to California consumers for services or products included the

25  consumer's loan number or loan amount, whether or not publicly available, without the consent of the

26  consumer.  Defendants' mailers did not state clearly and conspicuously, when applicable, that the

27  consumer's loan information was not provided to Defendant(s) by the consumer's lender.  Any

28  statements in Defendants' mailers that the consumer's loan information was not provided to

State of California – Department of Business Oversight

-13-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1  Defendants by the lender were not made in close proximity to, and in the same or larger font as, the

2  first and the most prominent use or uses of the consumer's loan information in the mailer, including

3  on an envelope or through an envelope window containing the mailer. In most cases where a

4  consumer's loan amount was used in a mailer, the loan amount was located at the top of the mailer,

5  and any type of disclosure was located at the bottom of the letter in a smaller font.

6      60.    Some versions of Defendants' mailers imply that the mailer is from the consumer's

7  lender. For example, some of Defendants' mailers state: "[Lender's name] has helped you in

8  providing your new mortgage loan, now let us help you eliminate your interest charges and shorten

9  the term of your loan."

10     61.    Some versions of the mailers describe the IM Program as a different payment

11 "option," rather than what it is, namely a third-party service.

12     62.    Some versions of the mailers misleadingly imply that Defendants' debt payment

13 service is something that must be "waived" if the consumer chooses to opt out: "if you waive the

14 biweekly offer, you will be asked to confirm that you understand that you are voluntarily waiving the

15 interest savings and loan term reduction achieved through the biweekly option."

16     63.    Some versions of the mailers tout the savings a consumer can purportedly achieve in

17 the IM Program, including savings supposedly derived from accelerated payments toward principal,

18 principal reduction, and reduced interest paid over time. For example, some versions state: "How

19 much can I save? You can eliminate an average of **6-10 years** and **$66,120** in interest charges off

20 your loan just by changing the way you make your payments." (sic)

21     64.    Some versions of the mailers state that a consumer's home equity "increases much

22 faster within the first couple of years" after enrolling in the IM program. For example, some versions

23 claim: "The **EQUITY** in your home can build up nearly **TWICE as FAST!**"

24     65.    Some versions of the mailers represent that many of the Defendants' customers have

25 saved or "eliminated" millions of dollars in interest on consumers' residential mortgage loans.

26     66.    Some versions of the mailers represent that enrollment in the IM Program will not

27 increase a consumer's monthly payments. For example, some versions claim: "You **do not increase**

28 **your monthly payment...**"

-14-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

67.     Some versions of the Defendants' mailers represent that, under the IM Program, "All extra funds collected are directed toward the principal of your loan."

68.     Some versions of the mailers state or imply that all extra payments made through the IM Program are applied "100%" to loan principal.

69.     Some versions of the mailers omit to disclose the nature and amount of the Defendants' fees.

70.     The omission of the nature and amount of the Defendants' fees from the mailers creates the impression that the mailer is a communication from the consumer's creditor or lender.

71.     Some versions of the mailers state or imply that NBA is properly licensed and bonded in the State of California.  For instance, some versions state that NBA is "licensed and bonded" and identify license "#OHMT29" without any indication that the license is not issued in California and is not a prorater's license.

72.     Some versions of the mailers state or imply that consumers are guaranteed a full refund if they do not achieve the savings promised them.  For instance, one mailer represents that Defendants "provide a 100% SAVINGS GUARANTEE" to consumers who enroll in the IM Program.

73.     The claims and statements made in all mailers disseminated in California have been approved by Lipsky.

E.     Defendants' Advertising Claims: Telemarketing

74.     Some versions of the telemarketing scripts include claims and statements that state or imply that the Defendants' debt payment services, including the IM Program, is affiliated with or endorsed by the consumer's mortgage lender, servicer or other creditor.

75.     Some versions of the telemarketing script require the sales representative to state that NBA has a "working relationship" with the consumer's lender or servicer.

76.     Some versions of the telemarketing scripts direct the sales representative to misrepresent the affiliation between NBA and the consumer's mortgage lender or servicer by instructing a sales representative: "Do NOT say 'No'" if a consumer asks, 'Do you work with/affiliated with my lender?'"

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

77.     Some versions of the telemarketing scripts require the sales representative to divert the consumer's attention if the consumer directly asks for the cost of Defendants' debt payment services.

78.     Some versions of the telemarketing scripts do not disclose the existence of the "setup fee."

79.     Some versions of the telemarketing scripts permit the sales representative to mention the "setup fee" only if the consumer persists in asking about Defendants' fees.

80.     Some versions of the telemarketing scripts require that the sales representative tell consumers that they cannot achieve similar savings without the Defendants' debt payment services by making biweekly payments on their own to their residential mortgage lender or servicer.

81.     Some versions of the telemarketing scripts require that the sales representative tell the consumer that his or her own lender or servicer does not offer a biweekly payment program.  For instance, one version of the telemarketing script requires the sales representative to tell the consumer that "no, lenders require mortgages to be remitted monthly and will not accept a biweekly payment."

82.     Some versions of the telemarketing scripts require the sales representative to attempt to dissuade consumers from contacting their residential mortgage lender or servicer about the IM Program before enrolling in that program.

83.     Consumers who contact the Defendants' call center will, in the normal course of business, receive additional e-mail or postal mail communications which contain claims, statements and images touting the large interest savings that Defendants' customers have achieved.

F.     Advertising Claims: Websites & Television

84.     The Defendants' websites and television advertising make numerous assertions about the benefits of their debt payment services, including statements that NBA is "helping millions save billions".

85.     In their internet and television advertising, the Defendants do not disclose the existence or amount of the origination fee.  For example, Lipsky did not disclose the existence or amount of the origination fee during his Lifetime channel video infomercial which aired in September 2014 and which can still be found on the Defendants' website.

86.     In their internet and television advertising, the Defendants state that consumers

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1  enrolling in their debt payment services will not see an increase in their monthly payment.  For

2  instance, in one video on NBA's website, Lipsky states, "[Y]ou're not increasing your payment.

3  You're just switching to a smaller biweekly or weekly amount."

4       87.    In their internet and television advertising, the Defendants state that the IM Program

5  has helped consumers realize actual savings through reduced interest obligations.  For example, in its

6  Lifetime video infomercial aired in 2014, Lipsky claimed, "[L]ast year alone, we helped our

7  customers eliminate over $161 million in interest charges."

8  G.    The Truth About The IM Program

9       88.    In fact, Defendants do not have the authorization or consent of any mortgage lenders

10  to use the name of the lender or the borrower's mortgage information in the Defendants' mailers.

11       89.    In fact, NBA is not affiliated with any residential mortgage lenders, banks or creditors.

12       90.    In fact, there is no "working relationship" between NBA and any consumer's lender

13  beyond the simple act of making a monthly mortgage payment on behalf of the consumer to their

14  lender.

15       91.    In fact, many mortgage lenders offer their own biweekly programs that permit their

16  borrowers to enroll in the program on their own at no additional cost.

17       92.    In fact, none of the Defendants' mailers or other marketing strategies advises the

18  consumer about the substantial impact that Defendants' fees will have on the "savings" they

19  "guarantee" the consumer.  For example, none of the claims about "savings" takes into account the

20  alternative investment opportunity a consumer is foregoing when paying origination fees, including

21  the opportunity to apply that money to his/her principal debt by remitting it directly to his or her

22  creditor or lender.

23       93.    In fact, consumers who enroll in Defendants' services, including the IM Program, will

24  not realize any savings in the first several years of the loan, because they will pay more, substantially

25  more, in the way of debit and origination fees than they will realize in principal and interest savings.

26       94.    In fact, contrary to Defendants' advertisements, Defendants' customers did not save

27  $161 million in interest charges in 2013.

28       95.    In fact, Defendants know that most of their California clients have paid more in fees to

-17-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1    Defendants than they ever saved in interest.

2          96.    In fact, a substantial number of Defendants' customers, including a substantial number

3    in California, will not be enrolled in Defendants' debt payment services, including the IM Program,

4    long enough to achieve any savings.  A substantial number of consumers will not begin to save the

5    "Monthly Interest Savings" amount upon enrollment in the Defendant's debt payment services.  For

6    example, NBA claims that, as of 2013, a median consumer using the Defendants' IM Program for a

7    30-year fixed rate mortgage had a mortgage loan of $160,204.00 with in an interest rate of 4.125%.

8    A biweekly consumer in the IM Program with those loan terms will not save enough to recoup the

9    $1,200 in debit and origination fees he or she will have paid Defendants until he or she is nine years

10   into the program.  A biweekly consumer in the IM Program with those loan terms will not realize

11   "Monthly Interest Savings" of the type advertised by the Defendants until he or she has been enrolled

12   in the program for approximately 14 years.  That same consumer will not realize half of the total

13   savings the Defendants promise until he or she has been enrolled for more than 20 years.

14         97.    In fact, only twenty-five percent (25%) of the customers enrolled in the IM Program

15   on December 30, 2014, have been enrolled longer than four years.

16         98.    In fact, not all extra funds collected from the consumer are directed toward principal.

17         99.    In fact, Defendants do not guarantee consumers a refund if they do not achieve the

18   savings promised in the marketing.

19         100.   In fact, consumers who complain that the origination fee was never disclosed to them

20   are routinely denied a full refund and, only after they complain to a public agency or Better Business

21   Bureau, are they offered a partial refund. In fact, consumers who attempt to cancel Defendants' debt

22   payment services before they paid the origination fee are threatened with high cancellation fees and,

23   sometimes, debt collection.

24         101.   Defendants' contracts with California consumers constitute "home solicitation

25   contracts" within the meaning of Civil Code section 1689.5(a). Defendants fail to notify California

26   consumers of their three-day right to cancel their contract. Defendants' contracts fail to include the

27   required notice of cancellation rights in immediate proximity to the space reserved for the consumer's

28   signature on their contracts. Defendants fail to provide California consumers with a separate "Notice

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1  of Cancellation" as set forth in Civil Code section 1689.7(c).  Defendants failed to orally notify

2  California consumers of these rights to cancel at the time consumers executed Defendants' contracts.

3  Failure by Defendants to provide these notices made these contracts cancellable until such

4  notifications were made.

5       102.    In fact, NBA and the other Defendants are not licensed to advertise, promote, offer

6  for sale, sell or operate as a prorater in the State of California as is stated or implied in some versions

7  of their mailers and other advertising.

8       103.    In fact, license #OHMT29, an Ohio license, which is identified on some versions of

9  Defendants' mailers, does not authorize NBA or the other Defendants to conduct any type of licensed

10  services in the State of California.

11       104.    In fact, Defendants know that their advertising, fee structure and licensing compliance

12  have been the subject of numerous consumer complaints and civil enforcement actions in other states

13  since 2009.

14  <div align="center">**FIRST CAUSE OF ACTION – ALL DEFENDANTS**</div>
15  <div align="center">**(Unlicensed Business Activities in Violation**
**of Financial Code Section 12200)**</div>

16

17       105.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 104, as if set

18  forth herein.

19       106.    As described herein, Defendants operate a large national business providing services

20  for consumers holding residential mortgages, credit card debt, student loans, automobile loans and

21  other types of consumer loans.  Defendants' services, including the IM Program, generally work by

22  debiting a consumer's bank account on a biweekly basis in an amount equal to one-half of one

23  month's debt payment.  For each biweekly debit, the consumer is charged a debit fee.   The consumer

24  is also obligated to pay a one-time origination fee, called a "setup fee," which Defendants defer

25  collecting until approximately four to six months after enrollment.  Once Defendants debit the

26  consumer's funds on the biweekly schedule, Defendants deposit and hold those funds in one or more

27  bank accounts under their control until they remit the consumers' payments to the lender.

28       107.    The Commissioner regulates and has jurisdiction over businesses offering services as a

<div align="center">-19-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF</div>

"prorater", which is defined in California Financial Code section 12002.1 as follows:

> A prorater is a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor.

108.    The Defendants' services and business activities fall under the statutory definition of "prorating" in that the Defendants are engaged in the business, for compensation, of receiving money from California consumers for the purpose of distributing the money to the consumers' creditors in payment or partial payment of the consumers' obligations.  Defendants do not fall within any of the statutory exemptions from California prorater licensure laws.

109.    Proraters in California are required to be licensed by the Department.  Financial Code section 12200 states:

> No person shall engage in the business, for compensation, of selling checks, drafts, money orders, or other commercial paper serving the same purpose, or of receiving money as agent of an obligor for the purpose of paying bills, invoices, or accounts of such obligor, or acting as a prorater, nor shall any person, without direct compensation and not as an authorized agent for a utility company, accept money for the purpose of forwarding it to others in payment of utility bills, without first obtaining a license from the commissioner.

110.    On a monthly basis, the Defendants continue to violate California law by engaging in the business of a prorater and accepting compensation from thousands of California consumers without obtaining a license from the Commissioner.

111.    During all times alleged herein, the Defendants have conducted and continue to conduct their business in knowing and willful violation of law by acting as an unlicensed prorater.

112.    The Defendants are subject to injunctive relief to restrain the violation of laws pertaining to proraters, as authorized by Financial Code section 12105(a), which provides in relevant part:

> Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this division, or any rule or order promulgated pursuant to this division, the commissioner may, at his or her discretion, bring an action in the name of the people of the State of California in the superior court to enjoin the acts or practices or to enforce compliance.  Upon a

-20-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

proper showing, a permanent or preliminary injunction, a retaining order, or a writ of mandate shall be granted and a receiver or conservator may be appointed for the defendant's assets.

113. Defendants are subject to ancillary relief of restitution and the disgorgement of wrongfully obtained profits as provided by Financial Code section 12015(b):

> If the commissioner determines it is in the public interest, the commissioner may include in any action under this division a claim for ancillary relief, including, but not limited to, a claim for restitution or disgorgement or damages on behalf of the persons injured by the act or practice constituting the subject matter of the action, and the administrative or civil court shall have jurisdiction to award an additional relief.

114. Defendants are further subject to civil fines for their willful violations of California law as provided by Financial Code section 12015(d):

> Any licensee or person who willfully violates any provision of this division, or any rule or order thereunder, shall be liable for a civil penalty not to exceed ten thousand dollars ($10,000) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the commissioner in any court of competent jurisdiction.

115. Plaintiff seeks restitution, disgorgement, civil fines, and any and all other appropriate relief as provided under California law, according to proof.

## SECOND CAUSE OF ACTION – ALL DEFENDANTS
### (Fee Overcharges and Unauthorized Charges in Violation of Financial Code Sections 12314 and 12314.1)

116. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 115, as if set forth herein.

117. The California Financial Code limits the fees that a prorater may charge California consumers for providing prorating services, and specifically limits the origination fee to no more than fifty dollars ($50.00).  Financial Code section 12314 states in relevant part:

> The total charges received by a prorater, or any other person for the prorater's services, may not exceed in the aggregate twelve percent (12%) for the first three thousand dollars ($3,000), eleven percent (11%) for the next two

State of California - Department of Business Oversight

-21-

thousand dollars ($2,000), and ten percent (10%) for any of the remaining payments distributed by a prorater to the creditors of a debtor, except for payments made on recurrent obligations.  Recurring obligations shall be defined for the purpose of this section as follows: current rent payments, current utility payments, current telephone bills, current alimony payments, current monthly insurance premium payments, and payments made on obligations which are secured by a first mortgage or first deed of trust on real property.

(a)      Notwithstanding the provisions of Section 12315, upon compliance with the provisions of Sections 12315.1, and 12320, **an origination fee of a sum not to exceed fifty dollars ($50) may be charged** (emphasis added);

(b)      A fee not to exceed four dollars ($4) per disbursement on recurring obligations, consisting of current rent payments or obligations which are secured by a first mortgage or first trust deed on real property, may be charged.

(c)      A fee not to exceed one dollar ($1) on other recurring obligations.

118.    The Defendants and each of them violated and are continuing to violate Financial Code section 12314 by charging excessive fees—specifically, the one-time "set-up" fee.  This fee, which equals the amount of one biweekly account debit (one-half of one monthly loan payment), and which Defendants misleadingly "defer" collecting until approximately six months after the consumer's enrollment date, is an origination fee as defined by the Financial Code.  Although the exact amount is unknown at the present time, given that Defendants claim to have at least 10,000 customers in the State of California, Plaintiff believes and alleges that Defendants have received an aggregate of at least several million dollars in unlawful origination fees from 2010 to the present from California consumers.

119.    Financial Code section 12316 states: "If a prorater contracts for, receives or makes any charges in excess of the maximum permitted, the prorater's contract with the debtor shall be void and the prorater shall return to the debtor all charges received from the debtor."  Defendants' activities in contracting and continuing to charge illegal and excessive origination fees in excess of fifty dollars ($50.00) subject such contracts to being held void pursuant to Financial Code section 12316.  Because Defendants' contracts with California consumers are void, Defendants are required to return and shall return all funds received from California consumers pursuant to such void contracts as required under Financial Code section 12316.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

State of California - Department of Business Oversight

120.   Plaintiff specifically seeks all available relief under the Financial Code, including the ancillary relief of voiding of all such client contracts, as well as restitution and disgorgement of all such consumer funds.

### THIRD CAUSE OF ACTION – ALL DEFENDANTS
**(Unlawful Use of Lender's Name in Violation of Business and Professions Code Section 17200/Business & Professions Code section 14701)**

121.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 120 as if set forth herein.

122.   Within four (4) years of the filing of this Complaint, plus the additional time set forth in the Tolling Agreement, Defendants, and each of them, and third parties acting under their control, have engaged in, facilitated, furnished the means to commit and/or conspired to engage in acts of unfair competition, as defined in California Business & Professions Code sections 17200, through the following practices and acts:

A.   Violating Business & Professions Code section 14701(a) by disseminating written solicitations to consumers for financial services which include the name, trade name, logo and tagline of a lender from whom the consumer has obtained a loan without the consent of the lender and without the solicitation clearly and conspicuously stating all of the following: that Defendants are not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, who must be identified by name.

B.   Violating Business & Professions Code section 14701(b) by creating and disseminating written solicitations for financial services to California consumers which included the name of the consumer's lender where the use of the lender's name was likely to cause a reasonable consumer to be confused, initially mistaken or deceived as to either:

(1) The lender's sponsorship, affiliation, connection, or association with NBA or LPA, or,

(2) The lender's approval or endorsement of the person using the name or the person's services or products.

///

-23-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

123.    Defendants are subject to civil penalties, pursuant to Business & Professions Code section 17206, and to injunctive relief, pursuant to Business & Professions Code section 17203.

124.    Unless enjoined by order of the Court, Defendants will continue to violate Business & Professions Code Section 17200.

## FOURTH CAUSE OF ACTION – ALL DEFENDANTS
### (Unlawful Use of Consumer's Loan Information in Violation of
### Business and Professions Code Section 17200/Business and Professions Code Section 14702)

125.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 124 as if set forth herein.

126.    Within four (4) years of the filing of this Complaint, plus the additional time set forth in the Tolling Agreement, Defendants, and each of them, have engaged in, facilitated, furnished the means to commit and/or conspired to engage in acts of unfair competition, as defined in California Business and Professions Code section 17200, through the following practices and acts:

A.    Violating Business & Professions Code section 14702 by disseminating written solicitations to consumers for services or products which included the consumer's loan number or loan amount without the consent of the consumer and without the solicitations clearly and conspicuously stating all of the following: that Defendants were not sponsored by or affiliated with the consumer's lender and that the solicitation was not authorized by the consumer's lender and that the consumer's loan information was not provided to Defendants by that lender, who must be identified by name.

127.    Defendants are subject to civil penalties, pursuant to Business & Professions Code section 17206, and to injunctive relief, pursuant to Business & Professions Code section 17203.

128.    Unless enjoined by order of the Court, Defendants will continue to violate Business & Professions Code Section 17200.

## FIFTH CAUSE OF ACTION – ALL DEFENDANTS
### (False Advertising in Violation of Business & Professions Code
### Section 17500)

129.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 128 as if set

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

forth herein.

130.    Within three (3) years of the filing of this Complaint, plus the additional time set forth in the Tolling Agreement, Defendants, and each of them and others acting under their control, have made or caused to be made and have promoted, facilitated or aided and abetted others to make, within the State of California, untrue and/or misleading statements to the general public about products and services which Defendants know, or through the exercise of reasonable care should know, are untrue or misleading.  Such misleading statements are described at greater detail herein, and include, but are not limited to, the following:

a.  Misleading California consumers that Defendants, including NBA and LPA, are affiliated with, sponsored by, endorsed by, or approved by a consumer's lender or creditor;

b.  Misleading California consumers that Defendants' debt payment services, including the IM Program, are affiliated with, sponsored by, endorsed by, approved by or authorized by a consumers' lender or creditor;

c.  Misleading California consumers about the nature and amount of the fees charged by Defendants for debt payment services, including the IM Program;

d.  Misleading California consumers that Defendants are properly licensed, bonded and duly qualified to do business in the State of California;

e.  Misleading California consumers into believing that their debt payments will not increase if they enroll in the debt payment services, when in fact the consumer does pay more in the form of Defendants' debit fees and one-time origination fee.

f.  Misleading California consumers about the actual interest savings that Defendants' clients have achieved through the Defendants' debt payment services;

g.  Misleading California consumers about the fact that the debit and origination fees charged by Defendants will cause the consumers to pay more in fees than they will realize in savings during the first several years of enrollment in the debt payment services;

h.  Misleading California consumers about the aggregate savings realized by Defendants' clients who had enrolled in the debt payment services;

i.  Misleading California consumers that there is a guaranteed refund if they are not satisfied with the Defendants' products;

j.  Misleading California consumers into believing Defendants' mailers (and the services

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

*State of California - Department of Business Oversight*

State of California - Department of Business Oversight

1  offered therein) are actually from the consumer's lender.

2      131.    Defendants are subject to civil penalties, pursuant to Business & Professions Code

3  section 17536, and to injunctive relief, pursuant to Business & Professions Code section 17535.

4      132.    Unless enjoined by order of the Court, Defendants will continue to violate Business &

5  Professions Code section 17200.

6                              **SIXTH CAUSE OF ACTION**
7              **(Unfair Competition in Violation of Business & Professions Code**
                         **Section 17200 against All Defendants)**
8
9      133.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 132 as if set

forth herein.

10     134.    Within four (4) years of the filing of this Complaint, plus the additional time set forth

11 in the Tolling Agreement, Defendants and each of them, and third parties acting under their control,

12 have engaged in, facilitated, furnished the means to commit and/or conspired to engage in acts of

13 unfair competition, as defined in California Business & Professions Code section 17200, through the

14 following practices and acts:

15     135.    Defendants engaged in unlicensed activity in violation of California Finance Code as

16 more specifically alleged in the First and Second Cause of Action, including, but not limited to:

17         a.  Conducting prorating business activities and receiving and controlling consumers'
18             monies for the purpose of distributing monies to consumers' creditors in payment or
               partial payment of debt obligations, which constitutes prorater activities, and failing to
19             obtain a license from the California Department of Business Oversight, in violation of
               Financial Code section 12200;
20
21         b.  Conducting prorating business activities and receiving and controlling consumers'
22             monies for the purpose of distributing monies to consumers' creditors in payment or
               partial payment of debt obligations, and charging consumers amounts in excess of the
23             statutory maximum permitted by Financial Code section 12314.

24     136.    Defendants engaged in unlawful acts and practices which violated California Business

25 & Professions Code sections 14701(a) & (b), as more specifically alleged in the Third Cause of

26 Action.

27     137.    Defendants engaged in unlawful acts and practices which violated California Business

28

-26-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

State of California - Department of Business Oversight

1 & Professions Code section 14702, as more specifically alleged in the Fourth Cause of Action.

2     138.   Defendants made untrue or misleading statements in violation of Business and

3 Professions Code section 17500, as more specifically set forth in the Fifth Cause of Action.

4     139.   Defendants engaged in unlawful acts and practices which violated Civil Code section

5 1770(e) by representing that their debt payment services had the  sponsorship, approval,

6 characteristics, ingredients, uses, benefits or quantities which they did not have and do not have.

7     140.   Defendants engaged in fraudulent business acts and practices within the meaning of

8 California Business & Professions Code section 17200;

9     141.   Defendants engaged in unlawful acts and practices which violated California Business

10 & Professions Code section 10232(e);

11     142.   Defendants engaged in unlawful acts and practices which violated California Business

12 & Professions Code section 10145(a);

13     143.   Defendants engaged in unlawful acts and practices which violated California Business

14 & Professions Code section 10085.5;

15     144.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

16 10, section 2725;

17     145.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

18 10, section 2831;

19     146.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

20 10, section 2831.1;

21     147.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

22 10, section 2831.2;

23     148.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

24 10, section 2832; and

25     149.   Defendants engaged in unlawful acts and practices which violated Cal. Code Regs., tit.

26 10, section 2834.

27     150.   Defendants engaged in unlawful acts and practices which violated California Civil

28 Code sections 1689.6 and 1689.7.

-27-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

151.    Defendants are subject to civil penalties, pursuant to Business & Professions Code sections 17206 & 17536, and to injunctive relief, pursuant to Business & Professions Code section 17203.

152.    Unless enjoined by order of the Court, Defendants will continue to violate Business and Professions Code Section 17200.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

1.    That all Defendants, their managers, employees, agents, servants, partners, representatives, successors, assignees, and all persons, corporations, and other entities acting in concert or in participation with any Defendants, who have actual or constructive knowledge of the injunction, be preliminarily and permanently enjoined from making or causing to be made untrue or misleading statements and omissions of material facts, and from engaging in unfair competition pursuant to Business & Professions Code sections 17203, 17204, and 17535.

2.    For a preliminary and permanent injunction further restraining and enjoining all Defendants, and their officers, directors, successors in interest, controlling persons, agents, employees, attorneys in fact, and all other persons acting in concert or participating with them, or any of them, from directly or indirectly:

    a.  Engaging in unlicensed prorating activities in violation of Financial Code section 12200;

    b.  Charging or receiving excessive origination fees, cancelation fees and any other illegal fees whether as part of the unlawful activities described herein or otherwise, in violation of Financial Code section 12314 and 12314.1.

3.    That Defendants pay to Plaintiff a civil penalty in the amount of two thousand five hundred dollars ($2,500) for each separate act of violation of Business & Professions Code section 17200, pursuant to Business & Professions Code section 17206, according to proof.

4.    That Defendants pay to Plaintiff a civil penalty in the amount of two thousand five hundred dollars ($2,500) for each separate act in violation of Business & Professions Code section 17500, pursuant to Business & Professions Code section 17536, according to proof.

State of California - Department of Business Oversight

-28-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

5.   That Defendants make restitution of all funds they have wrongfully, improperly or illegally acquired from California consumers by their violations of Business & Professions Code sections 17200 and 17500, and Financial Code sections 12200 and 12314, according to proof.

6.   That Defendants, pursuant to Financial Code section 12105(b), disgorge to injured California consumers all fees, charges, and monies paid to Defendants directly or indirectly for unlawful prorating services, as described herein, according to proof.

7.   That Defendants pay to Plaintiff a civil penalty in the amount of ten thousand dollars ($10,000) for each separate violation of Financial Code section 12105(d), according to proof.

8.   That Defendants' contracts, wherein the Defendants contracted for and/or received any charge in excess of the maximum permitted under the CSBPPL, be declared void pursuant to Financial Code section 12316, and further that the Defendants shall return to all California consumers all fees and monies received by Defendants pursuant to such void contracts.

9.   That Defendants pay to the Commissioner all costs for examination, audit, investigation, attorney's fees, and all other related expenses, as allowed under Financial Code sections 12105, 12106, 12305, and pay Plaintiff's other costs of suit.

10.   That Plaintiff be given such other and further relief as the nature of the case may require and the court deems proper and just.

Dated: May 15, 2015

JAN LYNN OWEN
Commissioner of Business Oversight

By: _____
ROBERT R. LUX
Senior Counsel
California Department of Business Oversight
Attorney for the People of California

State of California - Department of Business Oversight

-29-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

Dated: May 15, 2015

DEAN D. FLIPPO
District Attorney of the County of Monterey

By: _____
JOHN F. HUBANKS
Deputy District Attorney
Attorney for Plaintiff
People of the State of California

**NOTICE:  THIS COMPLAINT IS DEEMED VERIFIED PURSUANT TO CCP 446.**

**NOTICE: PURSUANT TO LAW, INCLUDING AS SET FORTH IN *MOOR V. ALAMEDA COUNTY*, 411 U.S. 693, 717, 93 S. CT. 1785, 36 L. ED. 2D 596 (1973) AND *PEOPLE V. BELTZ TRAVEL SERVICES, INC.* (N.D. CAL. 1974) 379 F. SUPP 948, THIS ACTION CANNOT BE REMOVED TO FEDERAL COURT.**

State of California - Department of Business Oversight

-30-
COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="writing-mode: vertical-rl;">State of California - Department of Business Oversight</div>

**Appendix A**

*Additional Counsel for the People*

NANCY E. O'MALLEY
District Attorney of Alameda County
Matthew L. Beltramo, Deputy District Attorney
(State Bar No. 184796)
David G. Lim, Deputy District Attorney
(State Bar No. 202789)
7677 Oakport Street, Suite 650
Oakland, CA 94621
Telephone: (510) 383-8600
Facsimile: (510) 383-8615

EDWARD S. BERBERIAN
District Attorney of Marin County
Andres H. Perez, Deputy District Attorney
(State Bar No. 186219)
3501 Civic Center Dr., Rm. 130
San Rafael, CA 94903
Telephone: (415) 473-6450
Facsimile: (415) 473-3719

-31-

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND ANCILLARY RELIEF