United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LOAN PAYMENT ADMINISTRATION LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>JOHN F. HUBANKS, et al.,<br><br>　　　　Defendants. | Case No. 14-CV-04420-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 86, 87 |

Before the Court are a motion to dismiss and a motion to strike filed by Defendants John Hubanks, Andres Perez, the Monterey County District Attorney's Office, and the Marin County District Attorney's Office (collectively, "Defendants"). Defendants move to dismiss all three causes of action in a complaint filed by Plaintiffs Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel Lipsky (collectively, "Nationwide"). ECF No. 86. Separately, Defendants have also filed a motion to strike Nationwide's two state law causes of action. ECF No. 87. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby GRANTS Defendants' motion to dismiss, and DENIES as moot Defendants' motion to strike.

**I.　BACKGROUND**

### A. Factual Background

Plaintiff Nationwide Biweekly Administration, Inc. is an Ohio Corporation with its headquarters in Xenia, Ohio. ECF No. 1 ("Compl."), ¶ 2. Loan Payment Administration LLC is a subsidiary of Nationwide Biweekly Administration, Inc. and also has its headquarters in Xenia, Ohio. *Id*. ¶¶ 3, 15. Daniel Lipsky is the sole shareholder of Nationwide Biweekly Administration, Inc. *Id*. ¶ 4.

Defendant John Hubanks ("Hubanks") is a deputy district attorney with the Monterey County District Attorney's Office. *Id*. ¶ 5. Andres Perez ("Perez") is a deputy district attorney with the Marin County District Attorney's Office. *Id*. ¶ 6. The Monterey County District Attorney's Office and the Marin County District Attorney's Office are the local district attorney offices for the Counties of Monterey and Marin, respectively. *Id*. ¶¶ 7–8.

#### 1. Nationwide's "Interest Minimizer" Program

Nationwide is an administrator of biweekly loan repayment programs. *Id*. ¶ 8. Nationwide has approximately 125,000 customers around the country, including over 10,000 in California. *Id*. At issue in the instant litigation is a Nationwide program called the "Interest Minimizer" biweekly program, which is targeted at borrowers with home mortgages. *Id*. ¶ 10. According to Nationwide, most mortgage servicers debit a borrower's mortgage payments on a monthly basis. *Id*. Under Nationwide's "Interest Minimizer" program, Nationwide acts as an intermediary between the borrower and the mortgage servicer. Specifically, Nationwide arranges with the borrower to debit one-half of the borrower's monthly mortgage payment from the borrower's checking account every other week. *Id*. Nationwide then remits the mortgage payments to the mortgage servicer once per month, as required by the servicer. *Id*. However, because Nationwide debits the mortgage payments on a bi-weekly (as opposed to monthly) basis, Nationwide debits 26 times over the course of the year, effectively resulting in the creation of a 13th annual payment (as opposed to 12 annual payments under a traditional monthly repayment plan). *Id*. ¶¶ 9, 12–13. Nationwide claims that the extra payment per year saves its customers money by allowing them to pay off their mortgage loans faster than they otherwise would. *Id*. ¶ 12–13.

2

### 2. The Investigations of the Defendant District Attorneys

On July 30, 2013, Nationwide received a letter from Hubanks, a deputy district attorney in the Consumer Protection Unit of the Monterey County District Attorney's Office. ECF No. 1-1 ("Enforcement Letter"). The Enforcement Letter stated that the District Attorneys for Marin and Monterey County "are in receipt of numerous complaints about the marketing and business practices of Nationwide Bi-Weekly Administration, Inc." *Id*. The Enforcement Letter further stated that these consumer complaints "indicate a pattern of deceptive business practices having an adverse impact on California consumers," based on Nationwide's practice of referencing the names of consumers' lenders and the consumers' loan information in Nationwide's solicitation letters. *Id*.

The Enforcement Letter also stated that Nationwide's solicitation letters violate two state statutes. First, the Enforcement Letter stated that Nationwide's use of lenders' names violates Business and Professions Code § 14701(a), which prohibits a person from using the "name, trade name, logo, or tagline of a lender in a written solicitation . . . without the consent of the lender," unless the letter is accompanied by a statutorily-prescribed disclaimer. *Id*. (quoting California Business and Professions Code § 14701(a)).[1] Second, the Enforcement Letter stated that Nationwide's use of consumers' loan amounts in Nationwide's solicitation letters violates Business and Professions Code § 14702, which prohibits a person from using a consumer's "loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer," unless the solicitation contains a statutorily-prescribed disclaimer.[2] *Id*.

---

[1] The relevant statute provides: "No person shall include the name, trade name, logo, or tagline of a lender in a written solicitation for financial services directed to a consumer who has obtained a loan from the lender without the consent of the lender, unless the solicitation clearly and conspicuously states that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, which shall be identified by name. This statement shall be made in close proximity to, and in the same or larger font size as, the first and the most prominent use or uses of the name, trade name, logo, or tagline in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Profs. Code § 14701(a).

[2] The relevant statute provides: "No person shall include a consumer's loan number or loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer, unless the solicitation clearly and conspicuously states, when applicable,

3
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

at 2.

The Enforcement Letter then stated that, because of Nationwide's alleged violations of Business and Professions Code §§ 14701(a) and 14702, "Nationwide's solicitations have the capacity to deceive and mislead consumers into believing Nationwide is sponsored by or affiliated with the lender, the solicitation is authorized by the lender, or the consumer's loan information was provided by the lender." *Id*. The Enforcement Letter also stated that "the placement of the lender's name in the header of the letter may lead the consumer to believe their lender is, in fact, the originator of the correspondence or affiliated with Nationwide." *Id*. Accordingly, the Enforcement Letter also alleged violations of Business and Professions Code §§ 17200 and 17500. *Id.* at 2–3. The Enforcement Letter concluded by stating in part that the Monterey and Marin County District Attorneys "are now determining what formal legal action, if any, will be taken." *Id*. at 3.

The Enforcement Letter also stated that Nationwide "may be in violation of California's Check Sellers, Bill Payers and Proraters Law" because "it would appear Nationwide is acting as a prorater and therefore required to obtain a prorater license" from the state's Department of Business Oversight. *Id*. Nationwide has filed a related lawsuit based on the prorating issue against Jan Owen, in her official capacity as Commissioner of the Department of Business Oversight for the State of California. *See Nationwide Biweekly Administration, Inc. v. Jan Lynn Owen*, Case No. 14-CV-05166-LHK, ECF No. 5. The Court discusses this suit below.

After Nationwide received the Enforcement Letter, the parties engaged in discussions and informal discovery in an attempt to resolve the matter. Compl. ¶ 20. For example, Nationwide has "worked diligently" with Defendants to "explain the services Nationwide offers, how it uses publicly available data to obtain loan information and mailing addresses for potential customers,

---

that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, and states that the consumer's loan information was not provided to that person by that lender. This statement shall be made in close proximity to, and in the same or larger font as, the first and the most prominent use or uses of the consumer's loan information in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Profs. Code § 14702.

4

ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

and the significant benefits it provides to consumers." *Id.* Nationwide also produced over 78,000 pages of documents and met in person with Hubanks and Perez in 2014. *Id.* However, despite these attempts and several tolling agreements between the parties, the discussions fell apart. *Id.* ¶¶ 21–22. Before the district attorneys could bring an enforcement action in a state forum, Nationwide brought this suit in federal court, predicated on Defendants' enforcement threats. *Id.*

**B. Procedural History**

    **1.** ***Loan Payment Administration LLC, et al. v. Hubanks, et al.***

On October 2, 2014, Nationwide filed the instant lawsuit. *See* Compl. The gravamen of Nationwide's lawsuit is that Business and Professions Code §§ 14701(a) and 14702 constitute illegal restraints on free speech as applied to Nationwide, in violation of the First Amendment of the U.S. Constitution and Article I, § 2 of the California Constitution. *See, e.g.*, Compl. ¶¶ 25, 28. Nationwide brought one cause of action under 42 U.S.C. § 1983 alleging that Defendants' threats to enforce an unconstitutional statute violate Nationwide's First and Fourteenth Amendment rights; a similar cause of action under California's Constitution, Article I, § 2; and a third cause of action for declaratory relief that Nationwide's use of lenders' names is permitted by Business and Professions Code § 14703. *Id*. ¶¶ 23–33.

Also on October 2, 2014, Nationwide filed a motion for a preliminary injunction. ECF No. 5. The motion requested that the Court enjoin Defendants from enforcing California Business and Professions Code § 14700 *et seq. Id*. at 2. On March 17, 2015, the Court denied Nationwide's motion and found that Nationwide failed to demonstrate a likelihood of success on the merits of Nationwide's claim that the challenged statutes violate the First Amendment of the U.S. Constitution or Article I, § 2 of the California Constitution as applied to Nationwide. ECF No. 50 at 21. Nationwide appealed. ECF No. 51 (notice of appeal).

Three aspects of this Court's ruling on the motion for preliminary injunction are important here. First, the Court found that Business and Professions Code §§ 14701–02 sought to counteract misleading commercial speech by compelling the speaker to disclose otherwise accurate information. ECF No. 50 at 12–15. Thus, the statute was not subject to intermediate scrutiny, but

5
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

rather "the lower reasonable relationship—sometimes also referred to as a rational basis—standard of review" set forth in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985). ECF No. 50 at 13. Second, the Court found that Business and Professions Code §§ 14701–02 was likely to survive *Zauderer* review because (1) the statute's goal was preventing the deceptive use of lenders' trade names in consumer solicitations and the statute was reasonably related to that goal, and (2) the statute was not unduly burdensome. *Id.* at 14–15. The Court also considered and rejected Nationwide's argument that the statute barred the publication of publicly available information, and found instead that the statue merely required additional disclosures. *Id.* at 20. Third, the Court considered and rejected Nationwide's contention that it qualified for an exemption from Business and Professions Code §§ 14701–02 under state law. *Id.* at 21–24

On December 30, 2014, Defendants filed a motion to strike and a motion to dismiss. ECF No. 33; ECF No. 34.

On May 15, 2015, Hubanks and Perez, joined by the Alameda County District Attorney's Office and the California Department of Business Oversight, filed a civil enforcement action against Nationwide in Alameda County Superior Court. *California v. Nationwide Biweekly Admin.*, Case No. RG15770490; *see also* ECF No. 57-3.[3] That same day, Defendants filed a supplemental motion to dismiss pursuant to Federal Rule of Civil Procedure 12(g), arguing that the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 57; ECF No. 58 (corrected version filed on May 18, 2015).

On June 17, 2015, the Court granted Defendants' supplemental motion to dismiss and found that a *Younger* abstention was appropriate in light of the ongoing state court proceedings. ECF No. 59. Nationwide again appealed. ECF No. 64 (notice of appeal).

### 2. *Nationwide Biweekly Administration, Inc. v. Owen, et al.*

On November 21, 2014, Nationwide brought a related action that alleged California's

---

[3] The Court previously granted Defendants' unopposed request for judicial notice of the state court proceeding, and does so again here. ECF No. 63 at 6 n.4 (doing so); *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of filings in the public record from a California state court proceeding).

statute limiting prorater licenses to California corporations violated the Dormant Commerce Clause. *See Nationwide Biweekly Administration, Inc. v. Jan Lynn Owen*, Case No. 14-CV-05166-LHK. The *Owen* action's procedural history is similar to that of the present case. Nationwide sought a preliminary injunction, which the Court denied on the grounds that Nationwide was unlikely to succeed on the merits. *See Owen*, ECF No. 45. On June 17, 2015, the Court dismissed the *Owen* action based on the same *Younger* reasoning that the Court applied in this case. ECF No. 59. As in this case, Nationwide appealed the denial of the preliminary injunction and the *Younger*-based dismissal. ECF No. 46; ECF No. 60.

### 3. Ninth Circuit Appeal

On October 10, 2017, the Ninth Circuit consolidated the Court's denial of preliminary injunctions and *Younger*-based dismissals in this case and *Owen*. *See* ECF No. 73. The same day, the Ninth Circuit affirmed in part, reversed in part, and remanded both cases to this Court. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017), *cert. denied sub nom. Nationwide Biweekly Admin., Inc. v. Hubanks*, 2018 WL 1023027 (Apr. 30, 2018).

The Ninth Circuit reversed the Court's dismissals in both cases and found that a *Younger* abstention was inappropriate because the cases had proceeded beyond an "embryonic stage" in federal court before the corresponding state cases were filed. *Id.* at 727–30.[4] The Ninth Circuit also found that the Court erred in denying the preliminary injunction in *Owen* because "Nationwide is likely to succeed on the merits of its Dormant Commerce Clause challenge to California's prorater licensure law." *Id.* at 738.

However, the Ninth Circuit affirmed the Court's denial of a preliminary injunction in this case because "Nationwide is unlikely to succeed on the merits of its First Amendment claim." *Id.* at 736. In particular, the Ninth Circuit agreed that Business and Professions Code §§ 14701–02 should be evaluated under the *Zauderer* standard. *Id.* at 731–34. The Ninth Circuit then rejected Nationwide's arguments that Business and Professions Code §§ 14701–02 are unconstitutional

---

[4] Judge Montgomery dissented, and would have affirmed the *Younger*-based dismissals. *Nationwide*, 873 F.3d at 738–39.

under *Zauderer*, and the Ninth Circuit concluded that the statutes are reasonably related to California's interest in preventing consumer deception and are not unduly burdensome. *Id.* at 733–35. Finally, the Ninth Circuit declined to reach Nationwide's statutory arguments. *Id.* at 735–36. The Ninth Circuit reasoned that even assuming *arguendo* that the statutory arguments were meritorious, Nationwide could not satisfy the other three prongs of injunctive relief—irreparable harm, the balance of the equities, and the public interest—because Nationwide's arguments as to why it satisfied those prongs "are all based, illogically, entirely on the premise that enforcing the statute against Nationwide would infringe on its constitutionally protected speech." *Id.* at 735.

On November 28, 2017, the Ninth Circuit issued its mandate. ECF No. 75.

### 4. On Remand

On February 7, 2018, Defendants filed an amended motion to dismiss. ECF No. 86 ("Mot."). On March 7, 2018, Nationwide filed its opposition. ECF No. 91 ("Opp."). On April 4, 2018, Defendants filed their reply. ECF No. 96 ("Reply").

On February 7, 2018, Defendants filed an amended motion to strike. ECF No. 87. On March 7, 2018, Nationwide filed its opposition. ECF No. 92. On April 4, 2018, Defendants filed their reply. ECF No. 95.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has

8

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Defendants' motion to dismiss advances a number of arguments in favor of dismissal. However, the Court will center its analysis on Defendants' two dispositive arguments.[5] Defendants argue that (1) Nationwide's first cause of action under 42 U.S.C. § 1983 fails because Nationwide has failed to allege that Business and Professions Code §§ 14701–02 violates its First Amendment rights; and (2) the Court should decline to exercise jurisdiction over Nationwide's remaining causes of action, both of which are based on California law. The Court agrees, and therefore grants Defendants' motion to dismiss. Because this disposes of all three of Nationwide's causes of action, the Court denies as moot Defendants' motion to strike.

### A. Section 1983 Claim

There are two parts to Defendants' argument that Nationwide has failed to allege a violation of its First Amendment rights, and thus has failed to state a claim under § 1983. First, Defendants argue that Nationwide's First Amendment claims must be evaluated under the lenient standard set forth in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985). Second, Defendants argue that under rational basis review, Nationwide has failed to allege any violation of its First Amendment rights. The Court agrees.

#### 1. Applicable Level of Scrutiny

A threshold issue is whether the statutes should be evaluated under intermediate scrutiny or the rule set forth in *Zauderer*. Both sides agree the speech at issue here is commercial. *See* Mot. at 2; Opp. at 9. Generally, laws restricting commercial speech are subject to intermediate scrutiny under the First Amendment. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 598 (9th Cir. 2010). More precisely, intermediate scrutiny applies if a law seeks to restrict commercial speech that is "neither misleading nor related to unlawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). In *Central Hudson*, for instance, the U.S.

---

[5] Defendants' other arguments are that (1) Nationwide has failed to join the State of California, and that California is a necessary party; (2) the District Attorneys' Offices are improper parties; (3) Nationwide has not alleged a policy or practice caused its constitutional injury; (4) Nationwide does not qualify for any statutory exceptions to Business and Professions Code §§ 14701–02; (5) Nationwide's cause of action under the California Constitution fails because the scope of its protection is the same as offered by the First Amendment. *See* Mot.

10
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

Supreme Court held that a law which barred "all advertising that promotes the use of electricity" must be justified by a "substantial interest" on the part of the government, and the law must be "no more extensive than necessary to further the State's interest." *Id*. at 558, 564, 569–70 (internal quotation marks omitted). However, where a law is intended to counteract misleading commercial speech by compelling the speaker to disclose otherwise accurate information, that law must meet the lower reasonable relationship—sometimes also referred to as a rational basis—standard of review. *Zauderer*, 471 U.S. at 650–653; *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249–50 (2010) ("Unjustified or unduly burdensome disclosure requirements offend the First Amendment by chilling protected speech, but an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." (internal quotation marks and citation omitted)).

The Court's order denying Nationwide's request for a preliminary injunction found that the *Zauderer* standard of review, rather than intermediate scrutiny, was the appropriate standard. ECF No. 50 at 16. The Ninth Circuit affirmed this finding. *Nationwide*, 873 F.3d at 721 ("The required disclosures are meant to protect against consumer confusion, and are therefore permissible under *Zauderer*."). Specifically, the Ninth Circuit examined the contents of Business and Professions Code §§ 14701–02 in order to "determine whether to scrutinize the California disclosure statutes under *Central Hudson* or *Zauderer*." *Id.* at 732–33. After a detailed analysis, the Ninth Circuit held that *Zauderer* was the applicable standard. *Id.* at 731–34.

Nationwide concedes "that the Ninth Circuit held that *Zauderer* should apply here." Opp. at 10. Nevertheless, Nationwide contends that the Ninth Circuit's decision is not binding on this Court and can be disregarded. Nationwide relies on "[t]he general rule . . . that [Ninth Circuit] decisions at the preliminary injunction phase do not constitute the law of the case." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015) (internal quotation marks and citation omitted). Consequently, because the Ninth Circuit's decision was rendered at the preliminary injunction phase, Nationwide argues that the decision is not the law of the case. Nationwide is correct on the general rule, but overlooks a dispositive exception—Ninth Circuit decisions at the

11

preliminary injunction phase *do* constitute the law of the case for "conclusions on pure issues of law." *Id.* (citation omitted); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (noting that "[a]ny of our conclusions on pure issues of law . . . are binding" at the preliminary injunction phase); 18B Charles Wright & Arthur Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2018) ("A fully considered appellate ruling on an issue of law made on a preliminary injunction appeal . . . become[s] the law of the case for further proceedings in the trial court on remand and in any subsequent appeal."). The *Nationwide* decision that Business and Professions Code §§ 14701–02 should be evaluated under *Zauderer* falls within that exception because the Ninth Circuit was deciding a legal question of what level of scrutiny to apply to the statutes. *See, e.g., Humanitarian Law Project v. U.S. Dep't of Justice*, 352 F.3d 382, 393 (9th Cir. 2003), *vacated on other grounds by* 393 F.3d 902 (9th Cir. 2004) (holding that First Amendment challenges to statutes resolved on appeal from a preliminary injunction decision were considered in full and resolved as matters of law and thus, the law of the case doctrine prevented further review of that issue in a subsequent appeal).

Moreover, even assuming *arguendo* that *Nationwide*'s holding was not binding, the Court would reach the same conclusion. The Court's order denying Nationwide's request for a preliminary injunction examined the statutes, their legislative history, and the case law, and found that *Zauderer* supplied the correct standard. ECF No. 50 at 12–16. The Ninth Circuit agreed, and provided yet more explanation as to why *Zauderer* was the correct standard. *Nationwide*, 873 F.3d at 731–34. Nationwide has not responded to this Court's analysis or that of the Ninth Circuit. In fact, barring a few footnotes Nationwide's opposition is identical to the opposition Nationwide submitted in response to Defendants' original motion to dismiss back on January 27, 2015. *Compare* ECF No. 40 *with* ECF No. 91. Lacking some explanation as to why this Court and the Ninth Circuit both erred in finding *Zauderer* supplies the standard, the Court once again concludes that Business and Professions Code §§ 14701–02 should be evaluated under *Zauderer*.

In sum, the Court finds that the Ninth Circuit's conclusion in *Nationwide* that *Zauderer* supplies the correct standard binds this Court. However, the Court would reach the same

12

conclusion even if *Nationwide*'s decision was not binding.

### 2. Applying *Zauderer*

The second question is whether Business and Professions Code §§ 14701–02 survive scrutiny under the *Zauderer* standard of review. A law passes constitutional muster under *Zauderer* if it is "reasonably related to the State's interest in preventing deception of consumers," and is not "unduly burdensome." *Zauderer*, 471 U.S. at 651; *accord Nationwide*, 873 F.3d at 731–32 (describing *Zauderer* standard). Neither side argues that the Ninth Circuit's decision in *Nationwide* on these issues is a purely legal question that is binding on this Court. *See* Opp. at 10 n.6; Reply at 4; *see Stormans*, 794 F.3d at 1076 n.5 (noting that appellate rulings at preliminary injunction phase are not the law of the case where they concern factual issues or mixed questions of law and fact). Thus, the Court examines each requirement in turn.

To determine whether a law is reasonably related to the state's interest in preventing consumer deception, courts look to whether there is a reasonable relationship between the purpose of the law and the requirements of the law itself. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 414–15 (D.C. Cir. 2012) (rule "requiring the total price [of airfare] to be the most prominent number [in print advertisements and on websites] is reasonably related" to the government's "interest in preventing deception of consumers"); *Dwyer v. Cappell*, 762 F.3d 275, 283 (3d Cir. 2014) (under *Zauderer*, "[a] disclosure requirement is reasonably related to the State's interest in preventing deception of consumers where it could plausibly dispel the misleading nature of the advertisement to those who read it." (internal quotation marks omitted)); *see also Bretches v. Kirkland*, 335 F. App'x 675, 682 (9th Cir. 2009) (in other First Amendment context, the reasonable relationship inquiry requires a "rational relationship between the governmental objective and the regulation or act," or a "common-sense connection" between the regulation and a legitimate state objective).

Both sides agree that the purpose of Business and Professions Code §§ 14701–02 is to prevent consumer deception. Opp. at 12 n.8 (describing statutes' purpose as "preventing consumer deception"); Mot. at 13 (framing statutes' purpose as preventing consumer deception); *see*

13
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

*Nationwide*, 873 F.3d at 734–35 & n.18 (noting statutes' asserted purpose is to prevent consumer deception). Specifically, the legislative history of Business and Professions Code §§ 14701–02 states that the laws were passed with the goal of "prevent[ing] the deceptive use of lenders' trade names in consumer solicitations" and prohibiting a person from using "an identical or similar name to a lender in a solicitation where that use confuses consumers as to the lender's sponsorship of the person or its services." Sen. Bill Analysis, S.B. 1150 (June 24, 2004); *see* ECF No. 50 at 16–17 (examining statutes' legislative history and finding their purpose is preventing consumer deception).[6]

The statutes achieve this goal in two ways that are relevant here. First, Business and Professions Code § 14701(a) provides that no person can use the "name, trade name, logo, or tagline of a lender in a written solicitation for financial services directed to a consumer who has obtained a loan from the lender without the consent of the lender," unless the solicitation "clearly and conspicuously" provides a statutorily-prescribed disclaimer. Second, Business and Professions Code § 14702 provides that no person shall use a "consumer's loan number or loan amount . . . in a solicitation for services or products without the consent of the consumer" unless the solicitation "clearly and conspicuously" provides a similar statutorily-prescribed disclaimer. In short, the statute requires that if a solicitor uses, *inter alia*, a lender's name or a consumer's loan information in a solicitation for products or services without consent, the solicitor must disclose certain factual information, including that the solicitor is not affiliated with the lender. *See id.* §§ 14701–02. Even construing the facts in Nationwide's favor, the Court must conclude that this bears a reasonable relationship to the statutes' professed goals of preventing the deceptive use of lenders' trade names in consumer solicitations, and preventing consumer confusion as to whether a lender sponsors the solicitor's products or services.

Nationwide's argument to the contrary is unpersuasive. It argues that the statutes are not

---

[6] The Court previously granted Defendants' unopposed request to take judicial notice of the legislative history of Business and Professions Code § 14700 *et seq.*, and does again here. ECF No. 50 at 6.

14

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

reasonably related to the prevention of consumer deception because Defendants have not shown that Nationwide's letters are deceptive. Opp. at 11–12. However, the Ninth Circuit considered and rejected this theory:

> It is not necessary to show that any particular solicitation is actually deceptive before disclosure is required. Rather, in the interest of administrative simplicity, the state may reasonably decide to require disclosure for a class of solicitations that it determines pose a risk of deception. Nationwide's proposed rule would require a more costly and uncertain adjudication of the deceptiveness of particular advertisements in each case before disclosure could be required. California reasonably rejected such an unwieldy case-by-case approach in favor of a bright-line rule.

*Nationwide*, 873 F.3d at 735. The Court finds this analysis persuasive, and adopts it. Whether or not Nationwide's individual letters to borrowers were misleading, "[i]t was reasonable for California to determine that use of a lender's name in solicitations of this type poses a risk of consumer deception. The required disclaimers—short, accurate, and to the point—are reasonably related to California's interest in preventing that deception." *Id.* Furthermore, Nationwide's argument fails even on its own terms. After a 7 day bench trial, a court in this district concluded that Nationwide's letters *are* likely to mislead consumers. *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, 2017 WL 3948396, at *6 (N.D. Cal. Sept. 8, 2017) ("[S]ome, but not all, of [Nationwide's] mailers are likely to mislead consumers acting reasonably under the circumstances.").

The second requirement under *Zauderer* is that the required disclosure must not be "unduly burdensome." *Zauderer*, 471 U.S. at 651. Under *Zauderer*, a required disclosure is "unduly burdensome" when the "detail required in the disclaimer . . . effectively rules out" the commercial speech in the first place. *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 146–47 (1994). For example, the *Ibanez* plaintiff was a certified public accountant and certified financial planner who placed the terms "CPA" and "CFA" next to her name on letterhead, business cards, and in a telephone directory listing. *Id*. at 138. However, Florida law required that those designations be accompanied by a "disclaimer stating that the recognizing agency is not affiliated with or sanctioned by the state or federal government," and provide the certifying

15

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

agency's "requirements for recognition, including, but not limited to, educatio[n], experience and testing." *Id*. at 152. Given the plaintiff's desire to use the CPA and CFA designations on business cards, letterhead, and a yellow pages listing, *Ibanez* found the required disclosures were unduly burdensome because they "effectively ruled out" the use of the designations in those contexts. *Id*. at 147; *see Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 229 (5th Cir. 2011) (requirement that an attorney television advertisement "include, both written in a large font *and* spoken slowly, at least all of the following information: (1) the lawyer's name and office location; (2) a client's responsibility for costs; (3) all jurisdictions in which the lawyer is licensed; (4) the use of simulated scenes or pictures or actors portraying clients; and (5) the use of a spokesperson, whether the spokesperson is a lawyer, and whether the spokesperson is paid" was unduly burdensome (internal citations omitted)); *see also Tillman v. Miller*, 133 F.3d 1402, 1403–04 & n.4 (11th Cir. 1998) (requirement that attorney include a five-second message about criminal penalties for filing fraudulent claims in thirty-second advertisement was unduly burdensome).

Here, Business and Professions Code § 14701(a) provides that if a solicitor uses, *inter alia*, a lender's trade name or logo without the lender's consent, the solicitor must disclose that the solicitor is "not sponsored by or affiliated with the lender," and that "the solicitation is not authorized by the lender, which shall be identified by name." Cal. Bus. & Profs. Code § 14701(a). The disclaimer must be made "in close proximity to, and in the same or larger font size as, the first and the most prominent use or uses of the" lender's name or logo. *Id*. Section 14702 similarly provides that if a solicitor uses a consumer's loan number or loan amount in a solicitation for services without the consumer's consent, the solicitor must state, when applicable, that the solicitor is not "sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender," and that the "consumer's loan information was not provided to that person by that lender." *Id*. § 14702. This disclaimer must be "in close proximity to, and in the same or larger font as, the first and the most prominent use of the consumer's loan information in the solicitation." *Id*.

In short, Business and Professions Code §§ 14701–02 require that a solicitor who uses, *inter alia*, a lender's trade name or logo without consent also disclose two brief facts: that the

16
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

solicitor is not "sponsored by or affiliated with the lender," and that the solicitation is "not authorized by the lender." *Id*. § 14701(a). Similarly, if a solicitor uses, *inter alia,* a consumer's loan amount without the consumer's consent, the solicitor must make a similar disclosure, as well as state that the consumer's loan information "was not provided by that lender." *Id*. § 14702. These disclaimers must be made in close proximity to, and in at least the same size font as, the first and most prominent use of the lender's name or the consumer's loan amount. *Id*. §§ 14701–02. As this law is applied to Nationwide, Nationwide would be required to make these relatively brief disclosures in Nationwide's solicitation letters, which span one to two full pages of text. *See* ECF No. 35-1 (sample one-page solicitation letter); ECF No. 35-2 (sample two-page solicitation letter).

The Court finds that the required disclosures do not "effectively rule[] out" Nationwide's use of solicitation letters such that the disclosures would be "unduly burdensome." *Ibanez*, 512 U.S. at 147. Nationwide argues that it may be required to include up to four disclosures in its solicitations—one next to the first unauthorized use of the lender's name, one next to the most prominent unauthorized use of the lender's name, one next to the first use of the consumer's loan number or amount, and one next to the most prominent loan number or amount. Opp. at 12–13. However, even reading the facts in Nationwide's favor those disclosures are not unduly burdensome. *Id.* Requiring four brief disclosures in letters that span one to two pages of text does not "effectively rule[] out" Nationwide's solicitation letters—Nationwide will still able to effectively communicate its message to consumers. Indeed, Nationwide's complaint states that it already includes two disclosures stating, respectively, that Nationwide "is not affiliated with the lender" and is "*not affiliated, connected, or associated with, sponsored by or approved* by the lender listed above." Compl. ¶¶ 15–16 (emphasis in original). Given that Nationwide already makes two disclosures to consumers, requiring two more brief disclosures over the course of a 1 to 2 page letter does not "effectively rule[] out" Nationwide's commercial speech. Indeed, these facts stand in stark contrast with those in *Ibanez*, where the plaintiff was required to place lengthy disclosures on miniscule areas such as business cards, letterheads, and yellow page listings. *See*

17
Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS; DENYING AS MOOT MOTION TO STRIKE

*Ibanez*, 512 U.S. at 147.

In sum, even construing the pleadings in Nationwide's favor, Nationwide has failed to show that Business and Professions Code §§ 14701(a) and 14702 are not reasonably related to the purpose of preventing consumer deception, and Nationwide has failed to show that the statutes are unduly burdensome. Thus, Nationwide has failed to state a claim for violation of Nationwide's First Amendment rights. Accordingly, the Court GRANTS Defendants' motion to dismiss Nationwide's cause of action for violation of 42 U.S.C. § 1983. The Court affords leave to amend because Nationwide may be able to allege sufficient facts to support a 42 U.S.C. § 1983 claim. *See Lopez*, 203 F.3d at 1127 (holding "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### B. State Law Causes of Action

Nationwide's two remaining causes of action are based on California law. Specifically, Nationwide's second cause of action alleges a violation of Article I, section 2 of the California Constitution, and Nationwide's third cause of action seeks declaratory relief that Nationwide's solicitation letters are authorized by Business & Professions Code § 17403. Nationwide does not suggest that either claim provides an independent basis for federal jurisdiction. *See* Opp. at 9 n.5 (agreeing with Defendants that the declaratory relief claim does not provide an independent basis for federal jurisdiction). Thus, the question is whether the Court should exercise supplemental jurisdiction over these two state law claims.

A federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Conversely, a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937–38 (9th Cir. 2003) (as amended) (holding that § 1367(c) grants federal courts the discretion to dismiss state law claims when all

federal claims have been dismissed). In considering whether to retain supplemental jurisdiction, a court should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations and internal quotation marks omitted). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the factors of economy, convenience, fairness, and comity support dismissal of Nationwide's remaining state law claims. This case is still at the pleading stage, and no discovery has taken place. On the other hand, Nationwide's related state court action has progressed much further. Federal judicial resources are conserved by dismissing the state law theories of relief at this stage. This holds especially true in the instant case because formal discovery has not yet commenced, whereas substantial discovery has occurred in the related state court action. ECF No. 101 at 7 (parties' June 12, 2018 joint case management statement noting that "[f]ormal discovery has not commenced in this case" whereas "substantial discovery has already occurred in the related state case"). Further, the Court finds that dismissal promotes comity as it enables California courts to interpret questions of state law.

Accordingly, the Court declines to exercise supplemental jurisdiction over Nationwide's state law claims and instead DISMISSES those claims. The Court provides leave to amend because Nationwide may be able to plead a federal cause of action that warrants the Court's exercise of supplemental jurisdiction.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Nationwide's 42 U.S.C. § 1983 claim with leave to amend, and DISMISSES Nationwide's state law causes of action with leave to amend. In turn, because the Court has dismissed Nationwide's state law causes of action, the Court DENIES as moot Defendants' motion to strike Nationwide's

state law cause of action. ECF No. 87.

Should Nationwide elect to file an amended complaint curing the deficiencies identified herein, Nationwide shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims. Nationwide may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: June 18, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge