1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   LOAN PAYMENT ADMINISTRATION          Case No. 14-CV-04420-LHK
     LLC, et al.,
13                                        **ORDER GRANTING MOTION TO**
                      Plaintiffs,         **DISMISS WITH PREJUDICE**
14
           v.                             Re: Dkt. No. 110
15
     JOHN F. HUBANKS, et al.,
16
                      Defendants.
17

18         Plaintiffs Nationwide Biweekly Administration, Inc.; Loan Payment Administration LLC;

19   and Daniel Lipsky (collectively, "Nationwide") bring this suit against Defendants John Hubanks,

20   Andres Perez, the Monterey County District Attorney's Office, and the Marin County District

21   Attorney's Office (collectively, "Defendants").  Nationwide's lawsuit alleges that California

22   Business and Professions Code §§ 14701–02 violate the U.S. Constitution.  The Court granted

23   Defendants' motion to dismiss Nationwide's complaint, whereupon Nationwide filed a first

24   amended complaint ("FAC").  Before the Court is Defendants' motion to dismiss Nationwide's

25   FAC.  Having considered the parties' submissions, the relevant law, and the record in this case,

26   the Court GRANTS the motion to dismiss the FAC with prejudice.

27

28

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Nationwide Biweekly Administration, Inc. is an Ohio Corporation with its headquarters in Xenia, Ohio.  ECF No. 108 ("FAC."), ¶ 2.  Loan Payment Administration LLC is a subsidiary of Nationwide Biweekly Administration, Inc. and also has its headquarters in Xenia, Ohio.  *Id.* ¶¶ 3, 15.  Daniel Lipsky is an Ohio resident and the sole shareholder of Nationwide Biweekly Administration, Inc.  *Id.* ¶ 4.

Defendant John Hubanks ("Hubanks") is a deputy district attorney with the Monterey County District Attorney's Office.  *Id.* ¶ 5.  Andres Perez ("Perez") is a deputy district attorney with the Marin County District Attorney's Office.  *Id.* ¶ 6.  The Monterey County District Attorney's Office and the Marin County District Attorney's Office are the local district attorney offices for the Counties of Monterey and Marin, respectively.  *Id.* ¶¶ 7–8.

### 1.  Nationwide's "Interest Minimizer" Program

Nationwide is an administrator of biweekly loan repayment programs.  *Id.* ¶ 12. Nationwide has approximately 125,000 customers around the country, including over 10,000 in California.  *Id.*  At issue in the instant litigation is a Nationwide program called the "Interest Minimizer" biweekly program, which is targeted at borrowers with home mortgages.  *Id.* ¶ 13. According to Nationwide, most mortgage servicers debit a borrower's mortgage payments on a monthly basis.  *Id.*  Under Nationwide's "Interest Minimizer" program, Nationwide acts as an intermediary between the borrower and the mortgage servicer. Specifically, Nationwide arranges with the borrower to debit one-half of the borrower's monthly mortgage payment from the borrower's checking account every other week.  *Id.*  Nationwide then remits the mortgage payments to the mortgage servicer once per month, as required by the servicer.  *Id.*  However, because Nationwide debits the mortgage payments on a bi-weekly (as opposed to monthly) basis, Nationwide debits 26 times over the course of the year, effectively resulting in the creation of a 13th annual payment (as opposed to 12 annual payments under a traditional monthly repayment plan).  *Id.*  Nationwide claims that the extra payment per year saves its customers money by

allowing them to pay off their mortgage loans faster than they otherwise would. *Id*. ¶¶ 12–13.

Nationwide sends its solicitations in standard business-size envelopes that contain Nationwide's name and return address; "[a] sentence that reads 'Nationwide Biweekly Administration is not affiliated with the lender' or 'Loan Payment Administration is not affiliated with the lender'"; the addressee's name and address; and the statement "Mortgage Payment Information Enclosed." *Id.* ¶ 45. In the window of the envelope, Nationwide includes the addressee's lender's name and the statement, "regarding your [Lender Name] loan." *Id.*; *see also* ECF No. 35-1 (sample solicitation envelope).

## 2. The Investigations of the Defendant District Attorneys

On July 30, 2013, Nationwide received a letter from Hubanks, a deputy district attorney in the Consumer Protection Unit of the Monterey County District Attorney's Office. *Id.*, Ex. A ("Enforcement Letter"). The Enforcement Letter stated that the District Attorneys for Marin and Monterey County "are in receipt of numerous complaints about the marketing and business practices of Nationwide Bi-Weekly Administration, Inc." *Id*. The Enforcement Letter further stated that these consumer complaints "indicate a pattern of deceptive business practices having an adverse impact on California consumers," based on Nationwide's practice of referencing the names of consumers' lenders and the consumers' loan numbers and loan amounts in Nationwide's solicitation letters. *Id*. Specifically, the Enforcement Letter stated that "Nationwide mails solicitations to consumers which include the name of the consumer's lender in the header of the letter which can be seen through the envelope window." *Id*.

The Enforcement Letter also stated that Nationwide's solicitation letters violate two state statutes. First, the Enforcement Letter stated that Nationwide's use of lenders' names violates Business and Professions Code § 14701(a), which prohibits a person from using the "name, trade name, logo, or tagline of a lender in a written solicitation . . . without the consent of the lender," unless the letter is accompanied by a statutorily-prescribed disclaimer. *Id*. (quoting Cal. Bus. &

Prof. Code § 14701(a)).[1]

Second, the Enforcement Letter stated that Nationwide's use of consumers' loan amounts and loan numbers in Nationwide's solicitation letters violates Business and Professions Code § 14702, which prohibits a person from using a consumer's "loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer," unless the solicitation contains a statutorily-prescribed disclaimer. *Id*. at 2 (quoting Cal. Bus. & Prof. Code § 14702).[2] The Enforcement Letter stated that "Nationwide mails solicitations to consumers which include the consumer's amount in the header of the letter." *Id.*

The Enforcement Letter then stated that, because of Nationwide's alleged violations of Business and Professions Code §§ 14701(a) and 14702, "Nationwide's solicitations have the capacity to deceive and mislead consumers into believing Nationwide is sponsored by or affiliated with the lender, the solicitation is authorized by the lender, or the consumer's loan information was provided by the lender." *Id*. The Enforcement Letter also stated that "the placement of the lender's name in the header of the letter may lead the consumer to believe their lender is, in fact, the originator of the correspondence or affiliated with Nationwide." *Id*. Accordingly, the Enforcement Letter also alleged violations of Business and Professions Code §§ 17200 and 17500. *Id*. at 2–3. The Enforcement Letter concluded by stating in part that the Monterey and Marin

---

[1] The relevant statute provides: "No person shall include the name, trade name, logo, or tagline of a lender in a written solicitation for financial services directed to a consumer who has obtained a loan from the lender without the consent of the lender, unless the solicitation clearly and conspicuously states that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, which shall be identified by name. This statement shall be made in close proximity to, and in the same or larger font size as, the first and the most prominent use or uses of the name, trade name, logo, or tagline in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Prof. Code § 14701(a).

[2] The relevant statute provides: "No person shall include a consumer's loan number or loan amount, whether or not publicly available, in a solicitation for services or products without the consent of the consumer, unless the solicitation clearly and conspicuously states, when applicable, that the person is not sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender, and states that the consumer's loan information was not provided to that person by that lender. This statement shall be made in close proximity to, and in the same or larger font as, the first and the most prominent use or uses of the consumer's loan information in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Prof. Code § 14702.

4

County District Attorneys "are now determining what formal legal action, if any, will be taken." *Id*. at 3.

The Enforcement Letter also stated that Nationwide "may be in violation of California's Check Sellers, Bill Payers and Proraters Law," California Finance Code § 12000, because "it would appear Nationwide is acting as a prorater and therefore required to obtain a prorater license" from the state's Department of Business Oversight. *Id*. Nationwide filed a related lawsuit based on the prorating issue against Jan Owen, in her official capacity as Commissioner of the Department of Business Oversight for the State of California. *See Nationwide Biweekly Admin., Inc. v. Owen*, Case No. 14-CV-05166-LHK, ECF No. 5. The Court discusses this suit below.

Before the district attorneys could bring an enforcement action in a state forum, Nationwide brought this suit in federal court, predicated on Defendants' enforcement threats. *See id*. at ¶¶ 23, 38.

**B. Procedural History**

**1. *Loan Payment Administration LLC, et al. v. Hubanks, et al.***

On October 2, 2014, Nationwide filed the instant lawsuit. FAC ¶ 18. The gravamen of Nationwide's lawsuit is that Business and Professions Code §§ 14701(a) and 14702 constitute illegal restraints on free speech as applied to Nationwide, in violation of the First Amendment of the U.S. Constitution. *See, e.g.*, FAC ¶¶ 39–42. In its original Complaint, Nationwide brought one cause of action under 42 U.S.C. § 1983 alleging that Defendants' threats to enforce an unconstitutional statute violate Nationwide's First and Fourteenth Amendment rights; a similar cause of action under California's Constitution, Article I, § 2; and a third cause of action for declaratory relief that Nationwide's use of lenders' names is permitted by Business and Professions Code § 14703. Compl. ¶¶ 23–33.

Also on October 2, 2014, Nationwide filed a motion for a preliminary injunction. ECF No. 5. The motion requested that the Court enjoin Defendants from enforcing California Business and Professions Code § 14700 *et seq. Id*. at 2. On March 17, 2015, the Court denied Nationwide's

United States District Court
Northern District of California

United States District Court
Northern District of California

motion and found that Nationwide failed to demonstrate a likelihood of success on the merits of Nationwide's claim that the challenged statutes violate the First Amendment of the U.S. Constitution or Article I, § 2 of the California Constitution as applied to Nationwide. ECF No. 50 at 21. Nationwide appealed. ECF No. 51 (notice of appeal).

Three aspects of this Court's ruling on the motion for preliminary injunction are important here. First, the Court found that Business and Professions Code §§ 14701–02 sought to counteract misleading commercial speech by compelling the speaker to disclose otherwise accurate information. ECF No. 50 at 12–15. Thus, the statute was not subject to intermediate scrutiny, but rather "the lower reasonable relationship—sometimes also referred to as a rational basis—standard of review" set forth in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985). *Id.* at 13. Second, the Court found that Business and Professions Code §§ 14701–02 was likely to survive *Zauderer* review because (1) the statute's goal was preventing the deceptive use of lenders' trade names in consumer solicitations and the statute was reasonably related to that goal, and (2) the statute was not unduly burdensome. *Id.* at 14–15. The Court also considered and rejected Nationwide's argument that the statute barred the publication of publicly available information, and found instead that the statute merely required additional disclosures. *Id.* at 20. Third, the Court considered and rejected Nationwide's contention that it qualified for an exemption from Business and Professions Code §§ 14701–02 under state law. *Id.* at 21–24

On December 30, 2014, Defendants filed a motion to strike and a motion to dismiss. ECF Nos. 33 & 34.

On May 15, 2015, Hubanks and Perez (and their respective offices), joined by the Alameda County District Attorney's Office and the California Department of Business Oversight, filed a civil enforcement action against Nationwide in Alameda County Superior Court. *California v. Nationwide Biweekly Admin.*, Case No. RG15770490; *see also* ECF No. 57-3.[3]

---

[3] The Court previously granted Defendants' unopposed request for judicial notice of the state court proceeding, and does so again here. ECF No. 102 at 6 n.3 (doing so); *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of filings in the public record from a California state court proceeding).

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

That same day, Defendants in the instant case filed a supplemental motion to dismiss pursuant to Federal Rule of Civil Procedure 12(g), in which Defendants argued that the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). ECF Nos. 57 & 58 (corrected version filed on May 18, 2015).

On June 17, 2015, the Court granted Defendants' supplemental motion to dismiss and found that *Younger* abstention was appropriate in light of the ongoing state court proceedings. ECF No. 59. Nationwide again appealed. ECF No. 64 (notice of appeal).

### 2. *Nationwide Biweekly Administration, Inc. v. Owen, et al.*

On November 21, 2014, Nationwide brought a related action that alleged California's statute limiting prorater licenses to California corporations violated the Dormant Commerce Clause. *See Nationwide Biweekly Admin., Inc. v. Owen*, Case No. 14-CV-05166-LHK. The *Owen* action's procedural history is similar to that of the present case. Nationwide sought a preliminary injunction, which the Court denied on the grounds that Nationwide was unlikely to succeed on the merits. *See Owen*, ECF No. 45. On June 17, 2015, the Court dismissed the *Owen* action based on the same *Younger* reasoning that the Court applied in this case. ECF No. 59. As in this case, Nationwide appealed the denial of the preliminary injunction and the *Younger*-based dismissal. ECF No. 46; ECF No. 60.

### 3. Ninth Circuit Appeal

On October 10, 2017, the Ninth Circuit consolidated the Court's denial of preliminary injunctions and *Younger*-based dismissals in this case and *Owen*. *See* ECF No. 73. The same day, the Ninth Circuit affirmed in part, reversed in part, and remanded both cases to this Court. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017), *cert. denied sub nom. Nationwide Biweekly Admin., Inc. v. Hubanks*, 138 S. Ct. 1698 (Apr. 30, 2018).

The Ninth Circuit reversed the Court's dismissals in both cases and found that *Younger* abstention was inappropriate because the cases had proceeded beyond an "embryonic stage" in

federal court before the corresponding state cases were filed. *Id.* at 727–30.[4] The Ninth Circuit also found that the Court erred in denying the preliminary injunction in *Owen* because "Nationwide is likely to succeed on the merits of its Dormant Commerce Clause challenge to California's prorater licensure law." *Id.* at 738.

However, the Ninth Circuit affirmed the Court's denial of a preliminary injunction in this case because "Nationwide is unlikely to succeed on the merits of its First Amendment claim." *Id.* at 736. In particular, the Ninth Circuit agreed that Business and Professions Code §§ 14701–02 should be evaluated under the *Zauderer* standard. *Id.* at 731–34. The Ninth Circuit then rejected Nationwide's arguments that Business and Professions Code §§ 14701–02 are unconstitutional under *Zauderer* because the Ninth Circuit concluded that the statutes are reasonably related to California's interest in preventing consumer deception and are not unduly burdensome. *Id.* at 733–35. Finally, the Ninth Circuit declined to reach Nationwide's statutory arguments that Nationwide's disclosures are lawful under Business and Professions Code § 14703. *Id.* at 735–36. The Ninth Circuit reasoned that even assuming *arguendo* that the statutory arguments were meritorious, Nationwide could not satisfy the other three prongs of injunctive relief—irreparable harm, the balance of the equities, and the public interest—because Nationwide's arguments as to why it satisfied those prongs "are all based, illogically, entirely on the premise that enforcing the statute against Nationwide would infringe on its constitutionally protected speech." *Id.* at 735.

On November 28, 2017, the Ninth Circuit issued its mandate. ECF No. 75.

### 4. On Remand

On February 7, 2018, Defendants filed an amended motion to dismiss. ECF No. 86. On March 7, 2018, Nationwide filed its opposition. ECF No. 91. On April 4, 2018, Defendants filed their reply. ECF No. 96.

On February 7, 2018, Defendants filed an amended motion to strike. ECF No. 87. On March 7, 2018, Nationwide filed its opposition. ECF No. 92. On April 4, 2018, Defendants filed

---

[4] Judge Montgomery dissented, and would have affirmed the *Younger*-based dismissals. *Nationwide*, 873 F.3d at 738–39.

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    their reply.  ECF No. 95.

2         On June 18, 2018, the Court granted Defendants' amended motion to dismiss and found

3    moot Defendants' motion to strike.  ECF No. 102.

4         First, the Court dismissed Nationwide's § 1983 claim.  The Court concluded that

5    Nationwide's claim that Business and Professions Code §§ 14701–02 violates the First

6    Amendment should be evaluated under the *Zauderer* standard because the Ninth Circuit's

7    conclusion that *Zauderer* applies is the law of the case.  *Id.* at 11–12.  The Court then concluded

8    that the statutes are reasonably related to the state's interest in preventing consumer deception

9    because both statutes require disclosures only when the solicitor uses a lender's name or

10   consumer's loan number or loan amount in a solicitation without the lender's consent.  *Id.* at 13–

11   15.  Thus, California reasonably determined "that use of a lender's name in solicitations of this

12   type poses a risk of consumer deception."  *Id.* at 15 (quoting *Nationwide*, 873 F.3d at 735).  Next,

13   the Court concluded that the statutes are not unduly burdensome because the disclosures required

14   under the statute are "relatively brief" in the context of letters that "span one to two full pages of

15   text."  *Id.* at 17.  In addition, the Court observed that Nationwide "already includes two

16   disclosures" to consumers, including on the solicitation letter envelope and in the solicitation letter

17   itself.  *Id.* (citing ECF Nos. 35-1 & 35-2).  The Court granted Defendants' motion with leave to

18   amend because "Nationwide may be able to allege sufficient facts to support a 42 U.S.C. § 1983

19   claim."  *Id.* at 18.

20        Second, the Court addressed whether to exercise supplemental jurisdiction over

21   Nationwide's two remaining causes of action, which both arose under California law.  The Court

22   concluded that "the factors of economy, convenience, fairness, and comity" all supported

23   dismissal of Nationwide's state law claims, particularly given the progress in Nationwide's related

24   state court action.  *Id.* at 19.  The Court granted Nationwide leave to amend "because Nationwide

25   may be able to plead a federal cause of action that warrants the Court's exercise of supplemental

26   jurisdiction."  *Id.*  Further, the Court gave Nationwide notice that "failure to cure the deficiencies

27   identified [in the Court's Order] will result in a dismissal with prejudice of the deficient claims."

28

9

*Id.* at 20.

On July 17, 2018, Nationwide filed the FAC. ECF No. 108. The FAC alleges causes of action for (1) violation of the First and Fourteenth Amendments of the U.S. Constitution under § 1983, *id.* ¶¶ 35–63; and (2) declaratory relief in the form of a declaration that Business and Professions Code §§ 14701–02 is an unconstitutional restraint on speech. *Id.* ¶¶ 64–66.

On August 7, 2018, Defendants filed a motion to dismiss the FAC. ECF No. 110 ("Mot."). On August 28, 2018, Nationwide filed its opposition. ECF No. 114 ("Opp."). On September 4, 2018, Defendants filed their reply. ECF No. 116 ("Reply").

## II.    LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B.  Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**III.    DISCUSSION**

In the FAC, Nationwide realleges only Nationwide's cause of action under 42 U.S.C. § 1983 and its cause of action for declaratory relief.  Nationwide does not reallege any cause of action based on the California Constitution.  Primarily, Nationwide uses the FAC to raise new legal contentions, including that the United States Supreme Court's decision in *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"), requires the Court to reconsider its legal conclusions in the Court's order granting Defendants' motion to dismiss Nationwide's original complaint.  Nationwide also purports to include new allegations about the envelopes in which Nationwide sends its solicitations.  However, Nationwide's envelopes and the disclosure thereon were already before the Court when the Court dismissed Nationwide's original complaint.  *See* ECF No. 102 at 17 (referencing sample Nationwide solicitation letters and

envelopes).

Defendants' motion to dismiss advances several arguments for why the Court should dismiss Nationwide's FAC with prejudice. Chiefly, Defendants contend that Nationwide has failed to state a § 1983 cause of action because Nationwide does not sufficiently allege that Business and Professions Code §§ 14701–02 violates Nationwide's First Amendment rights. Defendants also contend that dismissal of Nationwide's § 1983 claim requires the Court to dismiss Nationwide's declaratory relief cause of action. The Court agrees with Defendants, and thus grants Defendants' motion to dismiss.[5]

### A. Section 1983 Claim

In Defendants' motion to dismiss Nationwide's original complaint, Defendant raised a two-part argument for why Nationwide had failed to allege a violation of its First Amendment rights, and thus failed to state a claim under § 1983. Defendants argued that Nationwide's First Amendment claims must be evaluated under the lenient *Zauderer* standard and that under such rational basis review, Nationwide had failed to allege any violation of its First Amendment rights. The Court agreed with Defendants and dismissed Nationwide's original complaint. ECF No. 102 at 10. Defendants raise the same two arguments in their motion to dismiss the FAC. The Court agrees that the FAC must be evaluated under the *Zauderer* standard and that Nationwide has failed to allege any violation of its First Amendment.

#### 1. Applicable Level of Scrutiny

A threshold issue is whether Business and Professions Code §§ 14701–02 should be evaluated under intermediate scrutiny or the rule set forth in *Zauderer*. Both sides agree the speech at issue here is commercial. *See* Mot. at 4; Opp. at 2. Generally, laws restricting commercial speech are subject to intermediate scrutiny under the First Amendment. *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 598 (9th Cir. 2010). More precisely, intermediate scrutiny

---

[5] Defendants also contend that Nationwide's FAC (1) fails to join the State of California, a necessary party; (2) names improper parties as defendants; and (3) fails to state a *Monell* claim. Mot. at 8–9, 13–16. The Court need not reach these arguments.

applies if a law seeks to restrict commercial speech that is "neither misleading nor related to unlawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). In *Central Hudson*, for instance, the U.S. Supreme Court held that a law which barred "all advertising that promotes the use of electricity" must be justified by a "substantial interest" on the part of the government, and the law must be "no more extensive than necessary to further the State's interest." *Id.* at 558, 564, 569–70 (internal quotation marks omitted). However, where a law is intended to counteract misleading commercial speech by compelling the speaker to disclose otherwise accurate information, that law must meet the lower reasonable relationship— sometimes also referred to as a rational basis—standard of review. *Zauderer*, 471 U.S. at 650– 653; *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249–50 (2010) ("Unjustified or unduly burdensome disclosure requirements offend the First Amendment by chilling protected speech, but an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." (internal quotation marks and citation omitted)).

The Court's order denying Nationwide's request for a preliminary injunction found that the *Zauderer* standard of review, rather than intermediate scrutiny, was the appropriate standard. ECF No. 50 at 16. The Ninth Circuit affirmed this finding. *Nationwide*, 873 F.3d at 721 ("The required disclosures are meant to protect against consumer confusion, and are therefore permissible under *Zauderer*."). Specifically, the Ninth Circuit examined the contents of Business and Professions Code §§ 14701–02 in order to "determine whether to scrutinize the California disclosure statutes under *Central Hudson* or *Zauderer*." *Id.* at 732–33. After a detailed analysis, the Ninth Circuit held that *Zauderer* was the applicable standard. *Id.* at 731–34.

On remand, when the Court granted Defendants' motion to dismiss Nationwide's original complaint, the Court concluded that the Ninth Circuit's holding that *Zauderer* applies is the law of the case because the Ninth Circuit "was deciding a legal question of what level of scrutiny to apply to the statutes." ECF No. 102 at 11–12; *see Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1076 n.5 (9th Cir. 2015) (holding that Ninth Circuit decisions at the preliminary injunction phase

constitute the law of the case for "conclusions on pure issues of law") (citation omitted).

Here, Nationwide advances a new argument for why the Ninth Circuit's decision that *Zauderer* applies is not the law of the case. Nationwide contends that the United States Supreme Court's decision in *NIFLA*, 138 S. Ct. 2361, nullifies this Court's conclusion that *Zauderer* applies. The law of the case doctrine does not apply where "intervening controlling authority makes reconsideration appropriate." *Gonzales v. U.S. Dep't of Homeland Sec.*, 712 F.3d 1271, 1277 (9th Cir. 2013) (citation omitted). However, Nationwide's argument fails. Although *NIFLA* post-dates the Court's order granting Defendants' motion to dismiss Nationwide's original complaint, *NIFLA* simply applied the existing *Zauderer* standard.

In *NIFLA*, the United States Supreme Court evaluated a First Amendment challenge to a statute that required certain pregnancy clinics to disclose the following information: (1) "[l]icensed clinics must notify women that California provides free or low-cost services, including abortions, and give them a phone number to call"; and (2) "[u]nlicensed clinics must notify women that California has not licensed the clinics to provide medical services." 138 S. Ct. at 2368.

First, the *NIFLA* Court addressed the notice requirement for licensed clinics, which required the clinics to inform patients that California provides contraceptive services, including abortion. *Id.* at 2369. Such notice was required to be "posted in the waiting room, printed and distributed to all clients, or provided digitally at check-in." *Id.* The *NIFLA* Court characterized the statute as requiring clinics to "provide a government-drafted script about the availability of state-sponsored services, as well as contact information for how to obtain them." *Id.* at 2371. At the outset, the *NIFLA* Court rejected the Ninth Circuit's decision not to apply strict scrutiny to the licensed clinic notice. *Id.* at 2371–72. Citing *Zauderer*, the *NIFLA* Court explained that "our precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'" *Id.* at 2372. However, the *NIFLA* Court concluded that *Zauderer* did not apply to the licensed clinic notice, which was not limited to "purely factual and uncontroversial information about the terms under which . . . services will be available." *Id.* (quoting *Zauderer*, 471 U.S. at 651). Instead, the notice

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

required clinics "to disclose information about state-sponsored services—including abortion, anything but an 'uncontroversial' topic." *Id.* For that reason, the *NIFLA* Court declined to apply *Zauderer* scrutiny to the licensed clinic notice. *Id.* at 2375.

Second, the *NIFLA* Court addressed the notice requirement for unlicensed clinics, which required those clinics to state that "[t]his facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services." *Id.* at 2370 (alteration in original) (quoting Cal. Health & Safety Code § 123472(b)(1). Regarding *Zauderer*'s application to the unlicensed clinic notice, the *NIFLA* Court stated, in full: "The parties dispute whether the *Zauderer* standard applies to the unlicensed notice. Even under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome.'" *Id.* at 2376–77. The *NIFLA* Court then applied *Zauderer* to the unlicensed clinic notice, although the Court noted that the unlicensed clinic notice could not withstand any level of scrutiny. *Id.* at 2377–78.

Thus, *NIFLA* has two holdings relevant to this case: (1) *Zauderer* scrutiny did not apply to the licensed clinic notice because the notice was not limited to "factual and uncontroversial information about the terms under which . . . services will be available"; and (2) the unlicensed clinic notice did not satisfy *Zauderer* scrutiny. *Id.* at 2372, 2377.

Nationwide conflates those two holdings to suit its arguments. Nationwide contends that because "the mandated disclosure requiring Nationwide to state that it is 'not authorized' by the lender" is comparable to the unlicensed notice requirement in *NIFLA*, the *Zauderer* standard does not apply to Business and Professions Code §§ 14701–02. Opp. at 2. Even assuming that the disclosures required by Business and Professions Code §§ 14701–02 are comparable to the unlicensed clinic notice required in *NIFLA*, the *NIFLA* Court expressly applied *Zauderer* to the unlicensed clinic notice. 138 S. Ct. at 2377 (concluding that California had "not met its burden" to prove that the unlicensed notice satisfied *Zauderer*). The *NIFLA* Court only declined to apply *Zauderer* to the licensed clinic notice, which Nationwide does not contend is comparable to the disclosures required by Business and Professions Code §§ 14701–02. Thus, *NIFLA* provides no

United States District Court
Northern District of California

reason to disturb the Court's conclusion that *Zauderer*'s application is the law of the case.

Next, Nationwide asserts that the United States Supreme Court has vacated *CTIA-The Wireless Ass'n v. City of Berkeley, California*, 854 F.3d 1105 (9th Cir. 2017), *vacated and remanded sub nom.*, *CTIA--The Wireless Ass'n v. City of Berkeley, Cal.*, 138 S. Ct. 2708 (2018), which the Ninth Circuit "referenced throughout" its opinion in *Nationwide*. Opp. at 1. However, in *CTIA*, the Ninth Circuit addressed "the question whether, *in the absence of a prevention-of-deception rationale*, the *Zauderer* compelled-disclosure test applies." *CTIA*, 854 F.3d at 1116 (emphasis added). The United States Supreme Court's decision to vacate *CTIA* says little about *Zauderer*'s continued vitality in the deception prevention context.

Nationwide does not meaningfully contest that Business and Professions Code §§ 14701–02 are designed to prevent deception. Nor could Nationwide. The Enforcement Letter attached to Nationwide's FAC alleges that Nationwide is in violation of Business and Professions Code §§ 14701–02 due to Nationwide's "deceptive business practices." FAC, Ex A. Specifically, the Enforcement Letter states that "Nationwide mails solicitations to consumers which include the name of the consumer's lender in the header of the letter which can be seen *through the envelope window*." *Id.* (emphasis added). Moreover, the Enforcement Letter states that "Nationwide's solicitations have the capacity to deceive and mislead consumers into believing Nationwide is sponsored by the lender, or the consumer's loan information was provided by the lender, due to the prominent placement of the lender's name and the consumer's loan amount in the header of the letter." *Id.* Only at the very bottom of the solicitation and in a smaller font does Nationwide disclose that Nationwide "is not affiliated, connected, or associated with the lender listed above." *Id.*

Therefore, the Enforcement Letter asserts that Nationwide's solicitations—including the envelopes—are in violation of Business and Professions Code §§ 14701–02, which require disclosures "in close proximity to" a solicitor's use of a lender's name or a consumer's loan information. Cal. Bus. & Prof. Code §§ 14701(a), 14702.

In addition, the legislative history of Business and Professions Code §§ 14701–02

16

United States District Court
Northern District of California

demonstrates that California found that "[b]orrowers are being inundated with solicitations for new loan, insurance and other home-related services." ECF No. 36-1 at 3.[6] Specifically, "in order to trick the borrowers into believing their lender sent the solicitation or endorses the services being offered, many solicitations prominently use the lender's name and sometimes even its logo, as well as the actual amount of the loan." *Id.* Thus, Business and Professions Code §§ 14701–02—and the Enforcement Letter that forms the basis of Nationwide's suit—have a clear deception prevention rationale.

For all of the above reasons, the Court rejects Nationwide's argument that *NIFLA* requires the Court to reconsider whether the Ninth Circuit's conclusion that *Zauderer* applies is the law of the case.

### 2. Applying *Zauderer*

The second question is whether Business and Professions Code §§ 14701–02 survive scrutiny under the *Zauderer* standard of review. A law passes constitutional muster under *Zauderer* if it is "reasonably related to the State's interest in preventing deception of consumers," and is not "unduly burdensome." *Zauderer*, 471 U.S. at 651; *accord Nationwide*, 873 F.3d at 731–32 (describing *Zauderer* standard).

In its order dismissing Nationwide's complaint, the Court concluded that Business and Professions Code §§ 14701–02 survive *Zauderer* review. ECF No. 102 at 13–18. Nationwide raises two arguments for why the Court should not similarly dismiss Nationwide's FAC. First, Nationwide contends that *NIFLA* altered how courts should apply the *Zauderer* standard. Opp. at 3. Second, Nationwide contends that the FAC includes new facts and now sufficiently alleges that the statutes are "unduly burdensome." *Id.* at 6. Neither contention is persuasive.

To determine whether a law is reasonably related to the state's interest in preventing consumer deception, courts look to whether there is a reasonable relationship between the purpose

---

[6] The Court previously granted Defendants' unopposed request to take judicial notice of the legislative history of Business and Professions Code §§ 14700 *et seq.*, and does again here. ECF No. 102 at 14 n.6.

Case No. 14-CV-04420-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

of the law and the requirements of the law itself.  *See Nationwide*, 873 F.3d at 834 (concluding that the instant statute survives *Zauderer* review because "the disclosure requirements have a relationship to preventing deception"); *see also Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 414–15 (D.C. Cir. 2012) (rule "requiring the total price [of airfare] to be the most prominent number [in print advertisements and on websites] is reasonably related" to the government's "interest in preventing deception of consumers"); *Dwyer v. Cappell*, 762 F.3d 275, 283 (3d Cir. 2014) (under *Zauderer*, "[a] disclosure requirement is reasonably related to the State's interest in preventing deception of consumers where it could plausibly dispel the misleading nature of the advertisement to those who read it." (internal quotation marks omitted)).

The second requirement under *Zauderer* is that the required disclosure must not be "unduly burdensome."  *Zauderer*, 471 U.S. at 651.  Under *Zauderer*, a required disclosure is "unduly burdensome" when the "detail required in the disclaimer . . . effectively rules out" the commercial speech in the first place.  *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 146–47 (1994).  For example, the *Ibanez* plaintiff was a certified public accountant and certified financial planner who placed the terms "CPA" and "CFA" next to her name on letterhead, business cards, and in a telephone directory listing.  *Id*. at 138.  However, Florida law required that those designations be accompanied by a "disclaimer stating that the recognizing agency is not affiliated with or sanctioned by the state or federal government," and provide the certifying agency's "requirements for recognition, including, but not limited to, educatio[n], experience and testing."  *Id*. at 152.  Given the plaintiff's desire to use the CPA and CFA designations on business cards, letterhead, and a yellow pages listing, *Ibanez* found the required disclosures were unduly burdensome because they "effectively ruled out" the use of the designations in those contexts.  *Id*. at 147; *see Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 229 (5th Cir. 2011) (requirement that an attorney television advertisement "include, both written in a large font *and* spoken slowly, at least all of the following information: (1) the lawyer's name and office location; (2) a client's responsibility for costs; (3) all jurisdictions in which the lawyer is licensed; (4) the use of simulated scenes or pictures or actors portraying

18

clients; and (5) the use of a spokesperson, whether the spokesperson is a lawyer, and whether the spokesperson is paid" was unduly burdensome (internal citations omitted)); *see also Tillman v. Miller*, 133 F.3d 1402, 1403–04 & n.4 (11th Cir. 1998) (requirement that attorney include a five-second message about criminal penalties for filing fraudulent claims in thirty-second advertisement was unduly burdensome).

Nationwide variously contends that *NIFLA* "elaborat[ed]" on or "redefined" the two *Zauderer* requirements, which are that the challenged law be "reasonably related to the State's interest in preventing deception of consumers," and not "unduly burdensome." *Zauderer*, 471 U.S. at 651. However, the *NIFLA* Court analyzed the unlicensed clinic notice via a straightforward application of its *Zauderer* precedents. Consider the United States Supreme Court's own words: "*Our precedents* require disclosures to remedy a harm that is 'potentially real not purely hypothetical.'" *NIFLA*, 138 S. Ct. at 2377 (emphasis added) (quoting *Ibanez*, 512 U.S. at 146). Thus, Nationwide's claim that the phrase "potentially real not purely hypothetical" was a new rule announced in *NIFLA* is contradicted by *NIFLA* itself.

This Court in its order dismissing Nationwide's complaint expressly rejected Nationwide's argument that because "Defendants have not shown that Nationwide's letters are deceptive," Nationwide had stated a § 1983 claim. ECF No. 102 at 14–15. The Court agreed with the Ninth Circuit's reasoning that regardless of the deceptive nature of Nationwide's letters, "[i]t was reasonable for California to determine that use of a lender's name in solicitations of this type poses a risk of consumer deception. The required disclaimers—short, accurate, and to the point—are reasonably related to California's interest in preventing that deception." *Id.* at 15 (quoting *Nationwide*, 873 F.3d at 735). As explained, the legislative history of Business and Professions Code §§ 14701–02 demonstrates that California found that "[b]orrowers are being inundated with solicitations for new loan, insurance and other home-related services." ECF No. 36-1 at 3. Moreover, "in order to trick the borrowers into believing their lender sent the solicitation or endorses the services being offered, many solicitations prominently use the lender's name and sometimes even its logo, as well as the actual amount of the loan." *Id.* Thus, California has

19

proffered a "justification for the [statutes] that is more than 'purely hypothetical.'" *NIFLA*, 138 S. Ct. at 2377. The Court again concludes that Business and Professions Code §§ 14701–02 satisfies the first *Zauderer* prong.

Nationwide contends that *NIFLA* "redefined" the second *Zauderer* prong, but all that *NIFLA* did was reach a contrary outcome. Here, Business and Professions Code § 14701(a) provides that if a solicitor uses, *inter alia*, a lender's trade name or logo without the lender's consent—as the Enforcement Letter states that Nationwide does in the header of Nationwide's solicitations, such that the lender name is visible through the envelope window—the solicitor must disclose that the solicitor is "not sponsored by or affiliated with the lender," and that "the solicitation is not authorized by the lender, which shall be identified by name." Cal. Bus. & Prof. Code § 14701(a). The disclaimer must be made "in close proximity to, and in the same or larger font size as, the first and the most prominent use or uses of the" lender's name or logo. *Id.* Section 14702 similarly provides that if a solicitor uses a consumer's loan number or loan amount in a solicitation for services without the consumer's consent, the solicitor must state, when applicable, that the solicitor is not "sponsored by or affiliated with the lender and that the solicitation is not authorized by the lender," and that the "consumer's loan information was not provided to that person by that lender." *Id.* § 14702. This disclaimer must be "in close proximity to, and in the same or larger font as, the first and the most prominent use of the consumer's loan information in the solicitation." *Id.*

In short, Business and Professions Code §§ 14701–02 require that a solicitor who uses, *inter alia*, a lender's trade name or logo without consent also disclose two brief facts: that the solicitor is not "sponsored by or affiliated with the lender," and that the solicitation is "not authorized by the lender." *Id.* § 14701(a). Similarly, if a solicitor uses, *inter alia*, a consumer's loan amount without the consumer's consent—as the Enforcement Letter states that Nationwide does—the solicitor must make a similar disclosure, as well as state that the consumer's loan information "was not provided by that lender." *Id.* § 14702. These disclaimers must be made in close proximity to, and in at least the same size font as, the first and most prominent use of the

20

lender's name or the consumer's loan amount. *Id.* §§ 14701–02. As this law is applied to Nationwide, Nationwide must make these relatively brief disclosures in Nationwide's solicitation letters, which span one to two full pages of text. *See* ECF No. 35-1 (sample one-page solicitation letter); ECF No. 35-2 (sample two-page solicitation letter). Thus, the Court found in its order dismissing Nationwide's complaint that the required disclosures do not "effectively rule[] out" Nationwide's use of solicitation letters such that the disclosures would be "unduly burdensome." *Ibanez*, 512 U.S. at 147.

Nationwide's suggestion that *NIFLA* requires a different result is misplaced. In *NIFLA*, the United States Supreme Court held that the unlicensed notice requirement was unduly burdensome because (1) it required "covered facilities to post California's precise notice, no matter what the facilities say on site or in their advertisements"; (2) it covered "a curiously narrow subset of speakers"; (3) it required a facility to "call attention to the notice, instead of its own message, by some method such as larger text or contrasting type or color"; (4) and the notice was to "be posted in English and as many other languages as California chooses to require," which could reach "13 different languages." 138 S. Ct. at 2377–78. Based on all of those factors, the *NIFLA* Court concluded that "the unlicensed notice drowns out the facility's own message." *Id.* at 2378.

None of those factors is present here. The disclosure requirements in Business and Professions Code §§ 14701–02 only apply if the solicitor uses the name or logo of a lender or the consumer's loan information in a solicitation. Cal. Bus. & Prof. Code §§ 14701(a), 14702. The disclosure requirements apply to any person who sends a qualifying solicitation, not a "narrow subset" of speakers. *Id.* Moreover, as explained, the statutes do not require disclosures in "larger text or contrasting type or color" or in several languages. Thus, the required disclosures do not "drown[] out the [solicitor's] own message." *NIFLA*, 138 S. Ct. at 2378.

Finally, Nationwide contends that the FAC includes new factual allegations that disclosures on Nationwide's envelopes "where space is very limited" impose an undue burden. Opp. at 6. Nationwide further contends that neither this Court nor the Ninth Circuit addressed the effect of Business and Professions Code §§ 14701–02 on Nationwide's envelopes. *Id.*; *see also*

21

Opp. at 7 (contending that the Court "based its prior ruling on the incorrect understanding that the Statute's mandated statements would only be required to be placed on a '1-2 page letter'"). In the FAC, Nationwide alleges that "[b]ecause Nationwide already provides disclosures on the Envelopes, any additional disclosures would be unduly burdensome and would drown out Nationwide's message." FAC ¶ 47.

However, Nationwide's original complaint also alleged that Nationwide's envelopes already contain a disclosure. Compl. ¶ 15. Nationwide's envelopes and the language on them were before the Court. *See* ECF No. 102 at 17 (citing ECF Nos 35-1 & 35-2). In addition, Nationwide argued in opposition to Defendants' motion to dismiss Nationwide's complaint that the disclosures required by Business and Professions Code §§ 14701–02—including disclosures on envelopes—were unduly burdensome. ECF No. 91 at 12–13. When the Court dismissed Nationwide's complaint, the Court rejected Nationwide's argument that Business and Professions Code §§ 14701–02 as applied to Nationwide violates the *Zauderer* standard, and noted that Nationwide alleged that Nationwide already includes disclosures on its envelopes. ECF No. 102 at 17. Business and Professions Code §§ 14701–02, which the Court addressed in full, specifically provides that disclosures may be required "on an envelope." Cal. Bus. & Prof. Code §§ 14701(a), 14702. Nationwide cannot reasonably contend that the Court never evaluated whether disclosures on Nationwide's envelopes are unduly burdensome. To the contrary, the Court found that Nationwide's existing envelope disclosures helped *demonstrate* how additional brief disclosures do not "effectively rule[] out" Nationwide's commercial speech. ECF No. 102 at 17.

Even if the Court had not already addressed Nationwide's envelope allegations, the Court would reach the same result. The required disclosures must be "made in close proximity to, and in the same or larger font size as, the first and most prominent use or uses of the name, trade name, logo, or tagline in the solicitation, including on an envelope or through an envelope window containing the solicitation." Cal. Bus. & Prof. Code § 14701(a). Given that Nationwide already includes disclosures on its envelopes, Business and Professions Code §§ 14701–02 only require

United States District Court
Northern District of California

that Nationwide ensure that the required disclosures are "in close proximity" to and "in the same or larger font size as" Nationwide's use of the lender's name. As the Ninth Circuit has concluded, such "required disclosures are reasonable and not disproportionate." *Nationwide*, 873 F.3d at 734. According to the Enforcement Letter, Nationwide uses the lender's name without consent "in the header of the letter which can be seen through the envelope window." FAC, Ex. A. If Nationwide chooses not to state the lender's name on the envelope or to make it visible through the envelope window—which the Enforcement Letter states is deceptive—Nationwide is not required to include any disclosures on the envelope. Cal. Bus. & Prof. Code § 14701. Therefore, the Court again concludes that Nationwide has not sufficiently alleged that Business and Professions Code §§ 14701–02 unconstitutionally burdens Nationwide's commercial speech.

### 3. Nominative Fair Use

Nationwide also contends that Nationwide's FAC "raise[s] the issue of nominative fair use as a constitutional requirement of the First Amendment." Opp. at 10. However, nominative fair use is simply a defense to violation of Business and Professions Code § 14701:

> "It is not a violation of this chapter for a person in an advertisement or solicitation for services or products to use the name, trade name, logo or tagline of a lender without the statement described in subdivision (a) of Section 14701 if that use is exclusively part of a comparison of like services or products in which the person clearly and conspicuously identifies itself or that otherwise constitutes nominative fair use."

Cal. Bus. & Prof. Code § 14703. Thus, to the extent Nationwide argues that "a statute that precludes such use would violate the First Amendment," Opp. at 11, California's statutory scheme expressly *does not* preclude such use.

### 4. Nationwide's Vagueness Allegations

Nationwide's FAC appears to include allegations that Business and Professions Code §§ 14701–02 are unconstitutionally vague. For example, Nationwide alleges that the words of the statutes are "ambiguous and inexact," fail to "provide guidance about what speech is permitted," and "do[] not provide a person of ordinary intelligence reasonable opportunity to know what is permitted or prohibited." FAC ¶¶ 30, 44, 48. In addition, Nationwide argues in its opposition

brief that Business and Professions Code §§ 14701–02 is unconstitutionally vague "because a person of reasonable intelligence would not know whether the disclosures provided by Nationwide are sufficient and would not know what the 'most prominent' location on the Offer Letter would be." Opp. at 9.

Nationwide's purported vagueness claim suffers from a basic and fatal deficiency. Nationwide's § 1983 cause of action is premised on Defendants' alleged violation of the First Amendment, as applied to the states through the Fourteenth Amendment. FAC ¶¶ 35–63. However, a claim that a statute is void for vagueness is brought under the Fifth Amendment, not the First Amendment. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (explaining that a vagueness challenge asserts that a statute "is impermissibly vague under the Due Process Clause of the Fifth Amendment"); *see also Hunt v. City of L.A.*, 638 F.3d 703, 710 (9th Cir. 2011) ("In making a vagueness challenge, a plaintiff actually raises a due process, as opposed to First Amendment, claim.").

Nationwide thus cannot properly couch its vagueness claim as part of its existing § 1983 cause of action for violation of the First Amendment. Indeed, Nationwide conspicuously avoids any discussion of the constitutional basis for its vagueness claim in both the FAC and its opposition brief. *See* Opp. at 9–10. Moreover, to the extent Nationwide wishes to add a § 1983 cause of action for violation of the Fifth Amendment, the Court gave Nationwide notice that "Nationwide may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15." ECF No. 102 at 20. Therefore, the Court rejects Nationwide's attempt to add a Fifth Amendment vagueness claim.

### 5. Declaratory Relief Claim

In addition, the Court's conclusion that Nationwide has failed to state a § 1983 cause of action for a First Amendment violation requires the Court to also dismiss Nationwide's declaratory relief cause of action. Nationwide's request for declaratory relief is premised entirely on Nationwide's First Amendment cause of action. *See* FAC ¶ 65 (requesting declaratory relief on the basis that Business and Professions Code §§ 14701–02 are "unconstitutional restraints on free

speech"); *see In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1139 (N.D. Cal. 2018) (noting that a declaratory relief claim may survive only if "such relief is premised on other viable claims"). Here, Nationwide's request for declaratory relief is premised only on its First Amendment claim, which the Court has concluded is not viable. Therefore, the Court therefore Nationwide's second cause of action for declaratory relief.

**B. Whether to Grant Leave to Amend**

The Court must consider whether to grant Nationwide a third opportunity to attempt to plead a First Amendment violation. In its order granting Defendants' motion to dismiss Nationwide's original complaint, the Court granted Nationwide leave to amend its § 1983 cause of action because Nationwide "may be able to allege sufficient facts" to support its § 1983 claim. ECF No. 102 at 18. Nationwide has failed to do so. Moreover, Nationwide's primary arguments opposing dismissal were not premised on any new *factual* allegations, but rather that *NIFLA* altered the legal standard applicable to Nationwide's allegations. Nationwide identifies no new factual allegations that Nationwide could allege in a second amended complaint. *See generally* Opp. Nationwide also cannot alter the language of Business and Professions Code §§ 14701–02, which further suggests that amendment would be futile. Nationwide's First Amendment theory has now been rejected on no fewer than four occasions, including in a published Ninth Circuit opinion. *Nationwide*, 873 F.3d at 731–35; ECF Nos. 50 & 102. For all of those reasons, the Court concludes that further amendment would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (explaining that "[f]utility of amendment, by itself, can justify the denial of a motion for leave to amend").

In addition, the Court concludes that amendment would cause undue prejudice to Defendants by forcing Defendants to yet again litigate Nationwide's futile First Amendment theory. *Carvalho*, 629 F.3d at 892–93. Thus, the Court declines to grant Nationwide leave to amend and dismisses Nationwide's FAC with prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court DISMISSES Nationwide's FAC in its entirety with

25

prejudice.

**IT IS SO ORDERED.**

Dated:  December 7, 2018

_____
LUCY H. KOH
United States District Judge